| Fill in this information to identify your case: |
|---|

United States Bankruptcy Court for the:
SOUTHERN DISTRICT OF NEW YORK

Case number *(if known)* _____  Chapter  **11**

☐ Check if this an amended filing

Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy   4/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **1141 Realty Owner LLC** |
| 2. | **All other names debtor used in the last 8 years**  Include any assumed names, trade names and *doing business as* names | **DBA  Flatiron Hotel** |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **47-3661804** |
| 4. | **Debtor's address** | **Principal place of business**  **9 W 26th Street**  **New York, NY 10010**  Number, Street, City, State & ZIP Code  **New York**  County | **Mailing address, if different from principal place of business**  _____  P.O. Box, Number, Street, City, State & ZIP Code  **Location of principal assets, if different from principal place of business**  _____  Number, Street, City, State & ZIP Code |
| 5. | **Debtor's website** (URL) | |
| 6. | **Type of debtor** | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))  ☐ Partnership (excluding LLP)  ☐ Other. Specify: _____ |

Debtor  **1141 Realty Owner LLC**  Case number (*if known*) _____
      Name

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
■ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☐ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)
☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

____

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7
☐ Chapter 9
■ Chapter 11. *Check all that apply*:

    ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).
    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
    ☐ A plan is being filed with this petition.
    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

■ No.
☐ Yes.

If more than 2 cases, attach a separate list.

| District | When | Case number |
|---|---|---|
| District | When | Case number |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
■ Yes.

List all cases. If more than 1, attach a separate list

| | | | | |
|---|---|---|---|---|
| Debtor | **Flatironhotel Operations LLC** | | Relationship | **Affiliate** |
| District | **Southern District of New York** | When | **7/31/18** | Case number, if known |

Official Form 201            **Voluntary Petition for Non-Individuals Filing for Bankruptcy**            page 2

Debtor  **1141 Realty Owner LLC**  
Name                                                                                    Case number (*if known*) _____

---

**11. Why is the case filed in *this district*?**  *Check all that apply:*

- ■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.
- ☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

- ■ No
- ☐ Yes.  Answer below for each property that needs immediate attention. Attach additional sheets if needed.

   **Why does the property need immediate attention?** (*Check all that apply.*)
   - ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
     What is the hazard? _____
   - ☐ It needs to be physically secured or protected from the weather.
   - ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).
   - ☐ Other

   **Where is the property?** _____
   Number, Street, City, State & ZIP Code

   **Is the property insured?**
   - ☐ No
   - ☐ Yes.  Insurance agency _____
              Contact name _____
              Phone _____

---

### ■ Statistical and administrative information

**13. Debtor's estimation of available funds**   *Check one:*

- ■ Funds will be available for distribution to unsecured creditors.
- ☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ■ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ■ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor  **1141 Realty Owner LLC**
Name                                             Case number (*if known*)

### Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is trued and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  **July 31, 2018**
MM / DD / YYYY

**X /s/ Jagdish Vaswani**                            **Jagdish Vaswani**
Signature of authorized representative of debtor      Printed name

Title  **Manager of 1141 Realty LLC (Manager)**

**18. Signature of attorney**

**X /s/ Tracy L. Klestadt**                          Date  **July 31, 2018**
Signature of attorney for debtor                           MM / DD / YYYY

**Tracy L. Klestadt**
Printed name

**Klestadt Winters Jureller Southard & Stevens, LLP**
Firm name

**200 West 41st Street**
**17th Floor**
**New York, NY 10036-7203**
Number, Street, City, State & ZIP Code

Contact phone  **(212) 972-3000**    Email address  **tklestadt@klestadt.com**

**2089985 NY**
Bar number and State

Official Form 201        **Voluntary Petition for Non-Individuals Filing for Bankruptcy**        page 4

# United States Bankruptcy Court
## Southern District of New York

In re  **1141 Realty Owner LLC**                                      Case No.
                            Debtor(s)                                 Chapter   **11**

# CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for **1141 Realty Owner LLC** in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

**1141 Realty LLC**
**9 W 26th Street**
**New York, NY 10010**

☐ None [*Check if applicable*]

| | |
|---|---|
| **July 31, 2018** | /s/ Tracy L. Klestadt |
| Date | **Tracy L. Klestadt** |
| | Signature of Attorney or Litigant |
| | Counsel for   **1141 Realty Owner LLC** |
| | **Klestadt Winters Jureller Southard & Stevens, LLP** |
| | **200 West 41st Street** |
| | **17th Floor** |
| | **New York, NY 10036-7203** |
| | **(212) 972-3000 Fax:(212) 972-2245** |
| | **tklestadt@klestadt.com** |

# United States Bankruptcy Court
### Southern District of New York

In re  **1141 Realty Owner LLC**                                                                 Case No.
                              Debtor(s)                                                          Chapter   **11**

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **1141 Realty LLC**<br>**9 W 26th Street**<br>**New York, NY 10010** | | **100%** | **Membership** |

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the **Manager of 1141 Realty LLC (Manager)** of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.


Date  **July 31, 2018**                                                Signature  **/s/ Jagdish Vaswani**
                                                                                  **Jagdish Vaswani**

*Penalty for making a false statement of concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

## WRITTEN CONSENT
## OF THE MANAGERS AND MEMBERS OF
## 1141 REALTY OWNER LLC

The undersigned, constituting the sole member and all of the managers of **1141 Realty Owner LLC** (the "Company"), a Delaware limited liability company, adopted the following resolutions by unanimous written consent in lieu of a meeting:

Following a review, discussion and careful consideration of the Company's financial condition, including the status of the loan held by Wilmington Trust, N.A., solely in its capacity as Trustee for the benefit of the registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, by and through its Special Servicer, Midland Loan Services, A Division of PNC Bank, N.A. ("Wilmington") to the Company and secured by the real property located at 9 West 26th Street (a/k/a 1141 Broadway), New York, New York, and commonly known as the Flatiron Hotel;

**WHEREAS,** in the judgment of the Company it is desirable and in the best interest of the Company, its creditors, members and other interested parties, that a petition be filed by the Company for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"); it is hereby

**RESOLVED,** that the Company be, and hereby is, authorized to file a Petition for relief under the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and perform any and all such acts as are reasonable, advisable, expedient, convenient, proper or necessary to effect any of the foregoing; and it is

**FURTHER RESOLVED,** that 1141 Realty LLC, as Manager of the Company, by Jagdish Vaswani, its Manager shall be, and is authorized, directed and empowered to retain on behalf of the Company, CR3 Partners LLC to provide crisis management services and to provide James Katchadurian to serve as the Company's Chief Restructuring Officer ("CRO") in connection with the Company's financial and operational restructuring, and in connection with the Company's chapter 11 case and other related matters in accordance with the terms of the Engagement Agreement annexed hereto as **Exhibit A**;

**FURTHER RESOLVED,** that the CRO of the Company and/or 1141 Realty LLC, as Manager of the Company, by Jagdish Vaswani, its Manager, shall be, and hereby is, authorized, directed and empowered on behalf of, and in the name of, the Company to: (a) prepare, execute and verify the Petition and all other ancillary documents, and cause the Petition to be filed with the Bankruptcy Court and make or cause to be made prior to execution thereof any modifications to the Petition or ancillary documents, in their discretion, that they deem necessary or desirable to carry out the intent and accomplish the purposes of these resolutions; (b) prepare, execute, verify and file or cause to be filed all petitions, schedules, statements, lists, motions,

1

applications and other papers or documents necessary or desirable in connection with the foregoing; and (c) prepare, execute and verify any and all other documents necessary or appropriate in connection therewith or to administer the Company's chapter 11 case, including without limitation prepare the Company's plan and reporting requirements of the Chapter 11 case as required by applicable bankruptcy rules and US Trustee Guidelines, in such form or forms as they may approve in their reasonable discretion;

**FURTHER RESOLVED**, that the CRO, shall be, and is, authorized, directed and empowered to retain, on behalf of the Company, Klestadt Winters Jureller Southard & Stevens, LLP as general bankruptcy counsel in connection with the Company's chapter 11 case and other related matters, on such terms as the CRO may approve in his reasonable discretion;

**FURTHER RESOLVED**, that the CRO be, and hereby is, authorized, directed and empowered on behalf of, and in the name of, the Company to retain such other professionals as may be necessary, in her reasonable discretion, to assist the Company in its chapter 11 case.

**FURTHER RESOLVED**, that the firms set forth above and any additional professionals selected by the CRO be, and hereby are, authorized, empowered and directed to represent the Company, as debtor, in connection with any chapter 11 case commenced by it under the Bankruptcy Code;

**FURTHER RESOLVED**, that all acts lawfully done or actions lawfully taken or to be taken in connection with the implementation of these resolutions in all respects are hereby ratified, confirmed and approved.

**IN WITNESS WHEREOF**, the undersigned, being all of the Managers and all of the Members of the Company, do hereby execute this consent as of July 3/, 2018.

MANAGER AND SOLE MEMBER:

1141 Realty LLC

By: Jagdish Vaswani, its Manager

INDEPENDENT MANAGERS:

_____
Steven P. Zimmer

_____
Ricardo Beausoleil

# Exhibit A



June 22, 2018

**BY EMAIL**

Jay Vaswani
Shareholder
Flatiron Hotel
9 W 26th St
New York, NY 10010

Dear Mr. Vaswani:

Thank you for selecting CR3 Partners as the exclusive restructuring/financial advisor to 1141 Realty Owner LLC and Flatironhotel Operations LLC (collectively, "the Company").

The attached Engagement Agreement and its Exhibits detail the terms and conditions of our agreement.

We appreciate the opportunity to present this agreement to you and look forward to working together.

If the Engagement Agreement is acceptable please sign and return at your earliest convenience. If you have any questions or comments, please contact me.

Sincerely,

*[Signature]*
Digitally signed by Cynthia Romano
DN: cn=Cynthia Romano, o, ou, email=cromano@chrysalismgmt.com, c=US
Date: 2018.06.22 10:45:10 -04'00'

Cynthia Romano
Partner
CR3 Partners, LLC

## Engagement Agreement

## CR3 PARTNERS, LLC
### and
## 1141 REALTY OWNER LLC and FLATIRONHOTEL OPERATIONS LLC

The parties to this Engagement Agreement (the "Agreement") are CR3 Partners, LLC ("CR3"), on the one hand, and 1141 Realty Owner LLC and Flatironhotel Operations LLC (together with any affiliates or successors, the "Company"), on the other hand. This Agreement confirms the Company's retention of CR3 as its exclusive restructuring/financial advisor.

1. **CR3's Services.** From the date hereof until this Agreement is terminated pursuant to paragraph 8 (the "Term"), CR3 will provide services to the Company as described in the attached Exhibit A ("Work Authorization"). The Work Authorization may be amended from time to time with the written approval of CR3 and Company. The services CR3 provides pursuant to this Agreement will be limited to those services that the Company may request within the scope of the Work Authorization. Any additional services that CR3 may agree to provide to the Company will be the subject of a separate agreement between CR3 and the Company. CR3 may without the Company's consent provide advisory services for other persons or entities whose interests may be adverse to the Company's or its affiliates in matters not substantially related to our engagement by the Company.

2. **Compensation.** CR3 will present an invoice to the Company each week for services performed, and expenses incurred, under this Agreement for the preceding week. Each invoice will be due upon presentment to the Company.

   Company shall deliver to CR3 a retainer of $50,000 which CR3 will hold until the completion or termination of the engagement. At that time any unpaid fees and expenses will be deducted from the retainer and the balance will be returned to the Company. The Company hereby grants a security interest in the retainer to CR3 to secure payment due to CR3 of all amounts due hereunder. The Company expressly authorizes CR3 to pay itself amounts past due from the retainer. The Company acknowledges and agrees that CR3's security interest in the retainer is perfected by virtue of possession of such funds.

3. **Expense Reimbursement.** Each week the Company shall reimburse CR3 for all reasonable out of pocket and travel-related expenses incurred in connection with this engagement. CR3 shall provide weekly summaries of expenses for which reimbursement is requested by CR3.

4. **Payments Generally.** No amount payable to any third party, by the Company or any other person or entity in connection with the subject matter of this engagement shall reduce or otherwise affect any amount payable hereunder. CR3 will submit invoices for fees and expenses to the Company, and the Company will pay such invoices promptly following receipt.

5. **Indemnification and Related Matters.** The Company and CR3 agree to the provisions of the attached Exhibit B, which relates to indemnification and related matters.

6. **Information and Reliance.** During the Term, the Company will furnish CR3 with such information regarding the business, financial condition and prospects of the Company as CR3 reasonably requests, all

of which will be accurate and complete in all material respects at the time furnished, other than projections, which will be prepared in good faith and based upon assumptions which, in light of the circumstances under which they are made, are reasonable. During the Term, the Company will promptly notify CR3 if it learns of any material misstatement in, or material omission from, any information previously delivered to CR3. On an ongoing basis during the Term, the Company will inform CR3 of any material developments or matters affecting the business, financial condition and prospects of the Company that occur. In performing its services hereunder, CR3 shall be entitled to rely without investigation upon the accuracy of all information supplied to it by or on behalf of the Company or its advisors, and CR3 shall not in any respect be responsible for independently verifying the accuracy or completeness of any of such information (including by conducting any independent due diligence review).

The Company acknowledges that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by CR3 as the same may be subject to further work, revision and other factors which may result in such drafts being substantially different from any final report or advice issued.

The Company shall retain exclusive rights to ownership of all work output hereunder. Work output includes reports issued pursuant to any Work Authorization, but excludes, among other things, all working papers of CR3 and any correspondence, memoranda, calculations, notes, etc. that CR3 may have used in the development of the reports above or such working papers or in the performance of any work covered by a Work Authorization.

Upon termination of the engagement, papers and property that you have provided to CR3 will, at your request, be returned to you. Copies of papers CR3 has created for you, which you may need but no longer have, will be made available to you. CR3 reserves the right to destroy any items described in this paragraph that CR3 retains.

7. **Governing Law; Venue; Waiver of Jury Trial**. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed and construed in accordance with the laws of the State of New York (without giving regard to the conflicts of law provisions thereof). No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the Company and CR3 hereby submits on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) to the jurisdiction of such courts. The Company hereby waives on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) any and all right to argue that this choice of forum provision is or has become unreasonable. The Company hereby waives on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of CR3 pursuant to, or the performance by CR3 of the services contemplated by, this Agreement.

8. **Termination**. Subject to any required Bankruptcy Court approval, this Agreement may be terminated at any time by CR3 or the Company by giving written notice to the other party, which termination will be effective upon the non-terminating party's receipt of such notice. Upon termination the Company shall pay CR3 all weekly fees and expenses due through the termination date, and any Success Fee which may

have been earned. The provisions of this Section and of Sections 2, 3, 5, 6, 7, 10 and 12 will survive any expiration or termination of this engagement.

9. **Personnel.** Each party hereto agrees that it will not employ personnel or representatives of the other party hereto during the period of work provided for hereunder and for a period of one (1) year after the termination of this Agreement or completion of the project or work contemplated hereunder without the written agreement of the other party. In cases where written permission is granted by CR3, a recruiting fee will be billed for an amount mutually agreed upon and not less than 33% of first year expected annual cash compensation including incentive payments.

10. **Public Announcements.** Notwithstanding the confidentially provisions of Section 12, the Company acknowledges and agrees that CR3 may publish an announcement or "tombstone" following the completion of its engagement, either in newspapers, journals, magazines, or other publications or by direct mailings to third parties, whereby CR3 informs the public or such parties of the fact of its engagement by the Company, the general nature of the services provided by CR3, the time period of such engagement, the general nature of the business or industry in which the Company is engaged, the relative size in financial terms of the Company, and similar information that generally describes the nature and extent of CR3's engagement by the Company.

11. **Miscellaneous.** This Agreement may not be assigned (other than by operation of law) by either party without the prior written consent of the other. The provisions hereof shall inure to the benefit of and be binding upon the successors, assigns, heirs and personal representatives of the Company, CR3 and any person entitled to indemnity under the terms of Exhibit B. The Company and CR3 acknowledge and agree that CR3 has been retained under this Agreement as an independent contractor to the Company, that their respective rights and obligations are contractual in nature and that nothing herein is intended to confer any rights or remedies upon any person other than the Company (including the management, board of directors (or similar governing body) and securityholders of the Company) as against CR3. In addition, it is understood and agreed that this Agreement and CR3's engagement do not create a fiduciary relationship between CR3 and any person (including the Company, its management, its board of directors (or similar governing body) and its securityholders), and the Company disclaims any intention to impose any fiduciary or other non-contractual obligations on CR3. Any advice or opinion, whether written or oral, provided by CR3 is intended solely for the benefit and use of the members of the board of directors (or similar governing body) of the Company (in their capacities as such) in considering the matters to which this Agreement relates. CR3 will not be responsible for and will not be deemed to have provided the Company with any tax, accounting, actuarial, legal or other specialist advice. CR3 will not, as part of any aspect of this engagement, undertake any independent valuation or appraisal of, or provide any formal opinion regarding, any assets, liabilities or the solvency of the Company or any other entity. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction. This Agreement does not constitute a representation, warranty or agreement that a specific outcome or outcomes will be obtained. This Agreement, including the Exhibits hereto (which are hereby incorporated by reference in this Agreement), incorporates the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement may be executed in any number

of counterparts, each of which may contain one or more signatures and each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Copies of this Agreement with facsimile or electronic signatures and copies of this Agreement (or pages hereof) that have been transmitted electronically (e.g., by fax or .pdf) shall be deemed to be original signed versions of this Agreement.

12. **Confidentiality**. CR3 shall use all confidential information provided to it by or on behalf of the Company in connection with CR3's engagement hereunder (the "Confidential Information") solely for the purpose of providing the services which are the subject of this Agreement, and, except as contemplated in connection with such services and CR3's engagement hereunder, shall keep all Confidential Information confidential; provided, however, that nothing herein shall prevent CR3 or any of its Agents (as defined below) from disclosing any Confidential Information (i) pursuant to the order of any court or administrative agency or in any pending legal or administrative proceeding, or otherwise as required by applicable law, rule or regulation or legal or administrative process, (ii) upon the request or demand of any regulatory authority having jurisdiction over CR3 or any of its Agents, (iii) to CR3's or its affiliates' officers, directors, employees, legal counsel, independent auditors and other experts or agents who need to know such information and are informed of the confidential nature of such information, (iv) to any of its affiliates (any of the persons described in clauses (iii) or (iv) to whom Confidential Information is disclosed, "Agents") or (v) for purposes of establishing a "due diligence" defense. The term Confidential Information does not include information that (A) is or becomes publicly available other than by reason of disclosure by CR3 in violation of this Section 12; (B) was in the possession of CR3 at the time of its disclosure by or on behalf of the Company; (C) is acquired from a third party that is not, to CR3's knowledge, prohibited from disclosing such information by an obligation of confidentiality to the Company; or (D) is developed without reference to the Confidential Information. This Section 12 and the obligations hereunder shall survive the expiration or termination of this engagement for a period of one year and shall then terminate.

*[Signature page follows.]*

Agreed to this twenty second (22nd) day of June, 2018 by:

**1141 REALTY OWNER LLC:**

By: _____
Name: Jay Vaswani
Title: Managing Member

**FLATIRONHOTEL OPERATIONS LLC:**

By: _____
Name: Jay Vaswani
Title: Managing Member

**CR3 PARTNERS, LLC:**

By: _____
Digitally signed by Cynthia Romano
DN: cn=Cynthia Romano, o, ou,
email=cromano@chrysalismgmt.com, c=US
Date: 2018.06.22 10:44:50 -04'00'
Name: Cynthia Romano
Title: Partner

# United States Bankruptcy Court
## Southern District of New York

In re   **1141 Realty Owner LLC**                                             Case No.
                                   Debtor(s)                                  Chapter   **11**

# VERIFICATION OF CREDITOR MATRIX

I, the Manager of 1141 Realty LLC (Manager) of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:   **July 31, 2018**                           **/s/ Jagdish Vaswani**
                                                    **Jagdish Vaswani**/**Manager of 1141 Realty LLC (Manager)**
                                                    Signer/Title

```
Consolidated Edison Company Of N.Y. Inc
c/o William O Brien, Esq.
199 Church Street, 14th Floor
New York, NY 10007


Consolidated Edison Company Of NY
Jaf Station
P.O. Box 1702
New York, NY 11016-1702


Consolidated Edison Company Of NY
122 East 124Th Street
New York, NY 10116-1702


Midland Loan Services
a Division of PNC Bank, N.A.
10851 Mastin Street, Suite 300
Overland Park, KS 66210


Midland Loan Services
a Division of PNC Bank, N.A.
Attn  David Eckels
10851 Mastin Street, Suite 300
Overland Park, KS 66210


Midland Loan Services, a Div of PNC Bank
c/o Sidley Austin LLP
Attn  Mark Poole, Esq.
787 Seventh Ave.
New York, NY 10019


Midland Loan Services, a Div of PNC Bank
c/o Sidley Austin LLP
Attn  Kathleen A Zink
787 Seventh Ave.
New York, NY 10019


Midland Loan Services, a Div of PNC Bank
c/o Sidley Austin LLP
Attn  Andrew D. Hart
787 Seventh Ave.
New York, NY 10019
```

```
Midland Loan Services, a Div of PNC Bank
c/o Sidley Austin LLP
Attn  Elizabeth W. Walker
555 W 5th St.
Los Angeles, CA 90013


Nyc Property Tax  Ach
66 John Street, 2Nd Floor
New York, NY 10038


Nyc Water Board
P.O. Box 11863
Newark, NJ 07101-8163


Nyc Water Board
59-17 Junction Blvd
Flushing, NY 11373
```