UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| 1141 REALTY OWNER LLC, | : | Case No. 18- 12341 (SMB) |
|  | : |  |
|  | : | (Joint Administration Pending) |
| Debtor. | : |  |
|  | : |  |

## DECLARATION OF JAMES KATCHADURIAN PURSUANT TO
## LOCAL BANKRUPTCY RULES 1007-2 AND 9077-1

James Katchadurian, declares as follows pursuant to 28 U.S.C. § 1746:

1.      Since June 22, 2018, I have served as a financial advisor to the debtor (the "Advisor")

of 1141 Realty Owner LLC ("Owner") and Flatironhotel Operations, LLC ("Operator", and

collectively with Owner, the "Debtors")[1], the above-captioned debtors and debtors in possession,

which each filed a voluntary Chapter 11 petition on July 31, 2018 (the "Petition Date"). On June 22,

2018, the Debtors decided to employ CR3 Partners LLC ("CR3"), to provide financial advisory

services and act as the chief restructuring officer ("CRO") post filing, including any related support

to the Debtors to assist them in their financial and operational restructuring. I will be the designated

CRO post-filing.

2.      I submit this declaration (the "Declaration") in accordance with Local Bankruptcy

Rule ("LBR") 1007-2.

3.      I confirmed with the Debtors' proposed counsel, Klestadt Winters Jureller Southard &

Stevens, LLP ("KWJSS"), that it performed a PACER search which revealed that no other or prior

---

1 The Debtors herein and the last four digits of their respective tax identification number are: 1141 Realty
Owner LLC (1804) and Flatironhotel Operations LLC (4773). The Debtors' principal place of business is
9 West 26th Street a/k/a 1141 Broadway, New York, New York.

bankruptcy case was filed by or against the Debtors.  No committee of unsecured creditors was organized prior to the order for relief in the Debtors' Chapter 11 cases.

4.      Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

5.      I have reviewed the voluntary petition and all documents filed in connection therewith and I am generally familiar with the facts alleged and relief requested therein.  The information contained in this Declaration is based upon (i) my review or the review of supporting personnel of certain books and records of the Debtors; (ii) discussions and information furnished by the Debtors' principals, officers and employees; and (iii) my opinion based upon my experience and knowledge with respect to the restructuring of entities like the Debtors.

6.      If I were called to testify, I would testify competently to the facts set forth in this Declaration and I am authorized to submit this Declaration on behalf of the Debtors.

### I. Background and Capital Structure

#### A.    Owner.

7.      Owner was formed on April 8, 2015 pursuant to the Delaware Limited Liability Act. One hundred percent (100%) of the membership interests in Owner are owned by 1141 Realty LLC. Ninety percent (90%) of the membership interests in 1141 Realty LLC are owned by Main Team Hotels LLC ("Main Team LLC").  One hundred percent (100%) of the membership interests in Main Team Hotels LLC are owned by Main Team Trading Ltd. ("Main Team Trading"), and one hundred percent (100%) of the membership interests in Main Team Trading Ltd. are owned by Jagdish Vaswani.

8.      In accordance with the terms of its Limited Liability Company Agreement, dated April 15, 2015, Owner is managed by one Managing Member and two (2) Independent Managers. 1141 Realty LLC is the Managing Member.  Ricardo Beausoleil and Steven P. Zimmer serve as the Independent Managers.

9.      Owner does not have any employees, but it is the fee owner of the Flatiron Hotel, a 62-room boutique hotel (the "Hotel") located at 9 West 26th Street a/k/a 1141 Broadway, New York, New York (the "Property").

10.     Owner is party to a certain Loan Agreement ("Pre-Petition Loan Agreement"), dated as of April 16, 2015, between Owner as borrower and Rialto Realty Finance, LLC, as lender ("Original Pre-Petition Lender") in the original principal amount of $22,500,000. The debtor Operator is not a party to the Loan Agreement or any documents ancillary thereto.

11.     Pursuant to the Pre-Petition Loan Agreement, the Owner executed two promissory notes: (a) a Consolidated, Amended and Restated Promissory Note A in the amount of $22,500,000 ("Note A"); and (b) Promissory Note B in the amount of $2,500,000 ("Note B," and together with Note A, the "Notes").

12.     Pursuant to the Pre-Petition Loan Agreement, the Owner executed a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement dated as of April 16, 2015 (the "Mortgage"), which was recorded in the City Register of the City of New York in City Register File Number 2015000206911 on June 17, 2015. The Owner also executed an Assignment of Leases and Rents (the "Assignment of Leases and Rents"), which was recorded in the City Register of the City of New York in City Register File Number 2015000206912 on June 17, 2017. Finally, the Owner delivered a UCC Financing Statement dated

3

May 14, 2016 (the "Financing Statement"), which was recorded in the City Register of the City of New York in City Register Number 2015000206913 on June 17, 2015.

13.    On or about May 21, 2015, the Original Pre-Petition Lender delivered an Assignment of Mortgage to Wilmington Trust, N.A., solely in its capacity as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28 (the "Successor Pre-Petition Lender"), which was recorded in the City Register of the City of New York in City Register File Number 2015000241846 on July 14, 2015.

14.    On or about May 21, 2015, the Original Lender delivered an Assignment of Assignment of Leases and Rents to the Successor Pre-Petition Lender, which was recorded in the City Register of the City of New York in City Register File Number 2015000241847 on July 14, 2015.

15.    In May 2015, the Original Pre-Petition Lender delivered an Allonge for Note A to the Successor Pre-Petition Lender.

16.    On or about April 16, 2015, the Original Pre-Petition Lender delivered an Allonge for Note B to RMezz Flatiron LLC ("RMezz").

17.    On or about April 24, 2015, the Original Lender and RMezz entered into an Agreement Between Noteholders, pursuant to which Original Lender and RMezz made certain inter-creditor agreements.

18.    On or about May 27, 2015, the Original Pre-Petition Lender delivered an assignment of the Financing Statement to the Successor Pre-Petition Lender, which was recorded in the City Register of the City of New York in City Register File Number 2015000241848 on July 14, 2015.

4

19.    On or about May 21, 2015, Original Pre-Petition Lender delivered a General Assignment to Successor Lender.

20.    As of the Petition Date, the principal balance on the Notes was approximately $24,209,486 Monthly interest payments on the Notes is approximately $149,000.

21.    Prior to the Petition Date, credit card receipts were sent to a lockbox (the "Lockbox") controlled by the Successor Pre-Petition Lender. The Successor Pre-Petition Lender has prohibited the Debtors from accessing records as to the funds received and held therein but based upon pleadings filed in the District Court Litigation, it is the Debtors' understanding that there is approximately $183,440 in the Lockbox (the "Lockbox Funds").

22.    There are thirteen (13) judgments against Owner by the City of New York for various violations totaling $35,250; seventeen (17) Environmental Control Board judgments totaling approximately $81,090 and one (1) tax warrant by the New York State Department of Taxation and Finance for $354 that also encumber Owner's property.

23.    Owner has approximately $107,000 due to general unsecured creditors as of the Petition Date.

**B.    Operator**

24.    Operator was formed on January 30, 2015 under the laws of the State of New York. Jagdish Vaswani is the owner of one hundred percent (100%) of the membership interests in Operator.

25.    Operator's only significant assets are the liquor licenses for the restaurant facilities within the Hotel.

26.    Operator has no funded secured debt.

5

27.     Operator has approximately fifteen (15) Employees, consisting of thirteen (13) part-time hourly employees, one (1) independent contractor who is also paid on an hourly basis and one (1) full-time salaried employee.

28.     There is one judgment by the New York State Commissioner of Labor for approximately $60,385, two (2) judgments by the New York State Department of Taxation and Finance totaling approximately $688,335 and six (6) judgments by the New York City Department of Finance totaling approximately $586,408.

29.     Operator has approximately $1,863,683 due to general unsecured creditors as of the Petition Date.

**II. Events Leading to Chapter 11 Filing**

30.     On September 15, 2017, Wilmington Trust sent a Notice of Default and Acceleration related to the Loan Agreement to Owner.

31.     On September 18, 2017, Wilmington Trust commenced a foreclosure action against Owner in the United States District Court for the Southern District of New York (the "District Court"), Case No.: 17-cv-7081-LGS-HBP (the "District Court Action").   In its Complaint, Wilmington Trust alleged that Owner had defaulted under the Loan Agreement by, among other things, (i) serving alcoholic beverages at the Property without the requisite license from the New York State Liquor Authority, and (ii) misappropriating funds generated by food and beverage operations at the Property.  On the same day, Wilmington Trust moved by Order to Show Cause for the appointment of a Receiver (the "First Motion to Appoint a Receiver").

32.     On September 19, 2017, Wilmington Trust and Owner entered into a stipulation, whereby Owner agreed that it would not allow the sale of alcoholic beverage at the Property pending the conclusion of the hearing on the First Motion to Appoint a Receiver.

33.     On October 2, 2017, the District Court issued an Order denying the First Motion to Appoint a Receiver.

34.     On October 19, 2017, Owner filed its Answer in the District Court Action, whereby it denied substantially all of the material allegations contained in Wilmington Trust's complaint, and asserted seven (7) counterclaims against Wilmington Trust seeking entry of a judgment declaring Wilmington's Trust's Notice of Default to be invalid and seeking monetary damages for Wilmington Trust's alleged breach of contract, breach of fiduciary duty, breach of the obligation of good faith and fair dealing.  Owner amended its answer on November 7, 2017 to add an additional counterclaim seeking damages based upon Wilmington Trust's alleged negligent impairment of collateral.

35.     On November 15, 2017, the District Court so ordered a stipulation by and between Wilmington Trust and Owner, whereby they agreed on terms regarding procedural requirements for the release of funds from the Cash Management Account for payment of expenses relating to the Property during the duration of the District Court Action (the "Stipulation and Order").

36.     On December 7, 2017, Wilmington Trust amended its complaint to, among other things, add the following persons as defendants: Jagdish Vaswani, Robert K.Y. Chan, the City of New York and the State of New York, and to add claims seeking a monetary judgment for alleged breaches of the Notes and certain personal guaranties.

37.     On February 2, 2018, Wilmington Trust filed a letter with the District Court requesting authority to file a motion seeking an order compelling Owner's compliance with the terms

7

of the Stipulation and Order.  The District Court subsequently scheduled an evidentiary hearing to determine whether Owner should be held in contempt for failing to comply with the terms of the Stipulation and Order.

38.    On May 30, 2018, Wilmington Trust filed a second motion seeking the appointment of a Receiver (the "Second Motion for Appointment of a Receiver").

39.    On June 11, 2018, after conducting an evidentiary hearing, Magistrate Judge Henry B. Pitman issued his Certification of Facts, Conclusions of Law and Proposed Remedies, recommending (1) an award in Wilmington Trust's favor of reasonable attorneys' fees and costs incurred as a result of prosecuting its contempt motion, and (2) the appointment of a special master to "monitor and report" on Owner's continued compliance with the Stipulation and Order and declining to recommend Wilmington Trust's request that Owner be required to retain a certified public accountant to perform an accounting of Owner's income from November 15, 2017 through the present.

40.    On June 12, 2018, the District Court granted the motion of Owner's counsel to withdraw as counsel in the District Court Action.  As a result of the impact the District Court Action has had on the Debtors' revenue stream, Owner had insufficient funds available to retain replacement counsel.  As a result of Owner's inability to retain new counsel and prosecute its defense and its counterclaims, Wilmington Trust sought leave to move to dismiss Owner's counterclaims.  On July 20, 2018, the District Court approved Wilmington Trust's proposed briefing schedule relating to it proposed motion to dismiss, which would require Owner to file responsive papers on or before August 6, 2018.

41.    The breathing spell afforded by the automatic stay will allow the Debtors to maximize the value of their enterprise by focusing on restructuring their operations with the assistance of debtor in possession financing.  The Debtors will seek to either reinstate the Mortgage or satisfy it through a promptly filed chapter 11 plan.

### III. Agreement with Premier Nomad LLC

42.    On June 15, 2018, Owner, 1141 Realty LLC, Main Team LLC, Jagdish Vaswani and Premier Nomad LLC ("Premier") entered into a letter agreement (the "Premier Letter Agreement"), wherein the parties agreed to a multi-faceted transaction (the "Transaction"), which includes, *inter alia*, the following agreements: (a) Owner will retain Premier or Premier's designee to manage the Hotel and the Property, (b) Main Team LLC would sell to Premier 50% of the membership interests in 1141 Realty LLC,[2] (c) Premier will fund, at its sole and exclusive discretion, the total sum of $3 million for the renovation and capital improvement of the Hotel and Property and/or operating shortfalls for the Owner and/or the Hotel, (d) to the extent alternative commercial loans are not available, Premier will fund, at its sole and exclusive discretion, up to another $2 million to be utilized for any additional renovations and/or operating cost shortfalls for the Owner and/or the Hotel, and (e) subject to the terms of the Premier Letter Agreement, Premier shall have the right to obtain financing to satisfy the loans under Note A and/or Note B and/or to obtain an assignment of Note A and/or Note B.

---

2    As noted above, 1141 Realty LLC is the sole member of Owner; Main Team LLC is the sole member of 1141 Realty LLC; Main Team Trading is the sole member of Main Team LLC; and Jagdish Vaswani is the sole member of Main Team Trading.

43.     Pursuant to the terms of the Premier Letter Agreement, each of the events referenced in subsections (a) through (d) of paragraph 42 would occur only after the Transaction is closed.  The closing of the Transaction will take place upon the occurrence of any of the following events:

(i)     the reinstatement by the applicable lender of the loan under Note A;

(ii)    the consent and/or approval of the Transaction or any matter set forth herein by the applicable lender of the loan under Note A, if and to the extent required under the Loan Agreement and the ancillary documents, unless a court order makes such requirement moot or otherwise unnecessary;

(iii)   the effectiveness of a plan of reorganization approval by the United States Bankruptcy Court, authorizing the Transaction or a transaction substantially similar to the Transaction;

(iv)    the refinancing of the Loans; or

(v)     the mutual agreement of the parties to effectuate the Closing.

44.     Owner, 1141 Realty LLC, Main Team LLC, Jagdish Vaswani have each agreed to use their best efforts to obtain and/or cooperate with Premier to obtain the occurrence of the Closing.

45.     The Debtors view the Transaction as a viable and a vital part of their efforts to restructure their businesses and ensure the long terms financial health of the Hotel and Property.

## IV. Summary of First Day Motions[3]

46.     Subsequent to the filing of the Petitions, the Debtors filed or will soon file the First Day Motions summarized below, which I believe are necessary to enable the Debtors' businesses to operate with a minimum of disruption or productivity loss. The Debtors intend to seek entry of orders approving each of the First Day Motions as soon as possible in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules.

A.    **Joint Administration Motion**

47.    The Debtors have filed a motion (the "Joint Administration Motion") seeking joint administration of their Chapter 11 cases for procedural purposes only.  The Debtors are "affiliates" as that term is defined in section 101(2) of the Bankruptcy Code. Accordingly, they may be jointly administered pursuant to section 101(2) of the Bankruptcy Code. Joint administration would relieve the Court of the burden of entering duplicative orders and maintaining duplicative dockets and files and will simplify the administrative aspects of these Chapter 11 cases.

48.    I believe that the relief requested in the Joint Administration Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest and will save significant time and expense.

B.    **Motion to Extend Time to File Schedules**

49.    The Debtors filed a motion to request an extension of time to file the Schedules and Statement of Financial Affairs for an additional thirty-one (31) days, which will provide the Debtors with a total of forty-five (45) days after the Petition Date to file the Schedules and SOFA.

50.    In the period immediately preceding the Petition Date, the Debtors and their professionals were focused on numerous tasks relating to the filing of the Bankruptcy Cases, including, but not limited to preparing a proposed budget, preparing various "first day" motions aimed at transitioning the Debtors into Chapter 11 with minimal disruption and verifying the accuracy of the Debtors' books and records.  I am not comfortable that the Debtors' pre-petition

---

3      All capitalized terms not defined in the following summary shall have the meanings ascribed to such terms in the motions discussed herein.

books and records are reliable. For that reason, it has taken longer than it might normally take to prepare the Debtors' Schedules and SOFA.

51.     Substantial time and effort is required to prepare accurate and complete the Schedules and SOFA. It is in the best interest of the Debtors and their creditors that the Debtors be granted the extension of time to file their Schedules and SOFA.

52.     As such, the Debtors submit that "cause" exists to extend the deadline for the Debtors to file their Schedules and SOFA by an additional thirty-one (31) days, for a total of forty-five (45) days after the Petition Date.

### C.     Claims and Noticing Agent Motion

53.     The Debtors have filed an application for an order pursuant to 28 U.S.C. § 156(c), Section 105(a) of the Bankruptcy Code and Local Rule 5075-1 for an order appointing Omni Management Group, Inc. ("Omni") to act as claims and noticing agent in order to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtors' Chapter 11 Cases.

54.     The Debtors' selection of Omni to act as the claims and noticing agent is in compliance with the Court's Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (the "S.D.N.Y. Claims Agent Protocol"), in that the Debtors have obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection through a competitive process.

55.     Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Omni's rates are competitive and reasonable given Omni's quality of services and expertise.

56.    By appointing Omni as the claims and noticing agent in these Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the Clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

57.    I believe the relief sought in the Claims and Noticing Agent Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and respectfully request that the Claims and Noticing Agent Motion be granted

### D.    Employee Wage Motion

58.    The Debtors have also filed a motion (the "Employee Wage Motion"), wherein they seek entry of an order (a) authorizing, but not requiring, it to pay or cause to be paid, in its sole discretion, all or a portion of the amounts owing (and associated costs) under or related to Pre-Petition Payroll and Pre-Petition Payroll Taxes (all capitalized terms as defined in the Employee Wage Motion) in accordance with the terms of the Budget, and (b) authorizing applicable banks and other financial institutions to receive, process, and pay any and all checks drawn on the Debtors' payroll accounts and automatic payroll and other transfers to the extent that those checks or transfers relate to any of the foregoing.

59.    Operator has approximately fifteen (15) Employees, consisting of thirteen (13) part-time hourly employees, one (1) independent contractor who is also paid on a fixed fee basis and one (1) full-time salaried employee.  Owner does not have any employees.

60.    The Employees perform a variety of crucial functions for Operator including, but not limited to, welcoming customers, answering customer questions, booking reservations, processing customers' bills, and maintenance of the hotel rooms and property.  The Employees' valuable skill

13

sets, indispensable institutional knowledge and industry expertise and overall understanding of the Debtors' operations make the Employees critical to the success of these Bankruptcy Cases.

61.     In the ordinary course of business, the Employees are paid weekly, on every Friday. Operator's gross weekly payroll is approximately $13,000.

62.     Operator's last payroll was on July 27, 2018 for the period from July 15, 2018 through July 21, 2018.  Prior to the Petition Date, Operator did not pay its Employees on account of wages earned during the period of July 22, 2018 through July 28, 2018. As a result, Operator believes that that the total amount of gross unpaid wages, inclusive of payroll taxes for the period of July 22, 2018 through July 28, 2018 is approximately $12,905.62 and therefore seeks authority to pay any such amounts that have accrued before the Petition Date.  None of the amounts to be paid to each employee will exceed the $12,850.00 priority cap in section 507(a)(4) of the Bankruptcy Code.

63.     If the requested relief is not granted, Operator's relationship with its employees would be adversely impacted and there could well be irreparable harm to the employees' morale, dedication, confidence, and cooperation.  The majority of Operator's employees are hourly wage earners who rely upon their paycheck each week to pay their living expenses.  If employees do not have confidence that they will be paid in the ordinary course of business, they will seek employment elsewhere.  At this early stage, Operator simply cannot risk the substantial damage to its business that would result from the loss of its highly trained employees.

64.     I believe that the relief requested in the Employee Wage Motion is in the best interests of Operator's estate, its creditors, and all other parties in interest and constitutes a critical element in achieving a successful and smooth transition to Chapter 11. Accordingly, on behalf of Operator, I respectfully submit that the Employee Wage Motion should be Approved.

E.    **Critical Vendor Motion**

65.    In connection with the day-to-day operation of its business, Operator relies upon a network of vendors and essential service providers critical to the Debtors' business (the "Critical Vendors")[4], the loss of which could immediately and irreparably harm the Debtors' business, disrupt operations, and significantly impair the Debtors' going-concern value.

66.    The Critical Vendors include companies that provide critical goods and/or services to Operator in order for it to run its operations.  Operator has identified approximately seven (7) service providers and suppliers that may be Critical Vendors.   Operator pays these Critical Vendors approximately $50,000.00 per month and estimates that approximately $169,134.00 is currently owed to the Critical Vendors. The services provided by the Critical Vendors and the approximate amount each is owed is as follows:

| Name | Service Description | Proposed Payment |
| --- | --- | --- |
| Critical Vendor 1 | Air-conditioning/heating service | $ 5,063.00 |
| Critical Vendor 2 | House keeping | $ 12,000.00 |
| Critical Vendor 3 | Booking/reservation platform | $ 4,602.00 |
| Critical Vendor 4 | Property management system | $ 8,062.00 |
| Critical Vendor 5 | IT/cloud support | $ 9,407.00 |
| Critical Vendor 6 | Booking/reservation platform | $ 65,000.00 |
| Critical Vendor 7 | Booking/reservation platform | $ 65,000.00 |
|  | **Total** | $ 169,134.00 |

67.    Operator proposes to condition the payment of any Critical Vendor Claim on the agreement of the Critical Vendor to provide good and services to Operator on the most favorable

---

4 Flatiron is still in the process of reviewing and revising the list of Critical Vendors. The Debtors will provide the list of Critical Vendors to to the United States Trustee, and to any Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases, provided that such information is treated as confidential.

trade terms that such Critical Vendor offered to Operator in the six (6) months prior to the Petition Date.

68.     I believe that authority to pay the Critical Vendors is vital to continued operations and the success of these Bankruptcy Cases. If this Motion is not granted, the Critical Vendors will likely stop providing services to Operator on Customary Trade Terms, which would negatively impact the value of the Debtors' estates.

### F.      Debtor in Possession Financing and Use of Cash Collateral Motion

69.     The Debtors have determined, and I agree, that they require working capital and credit in order to maintain ongoing operations and reorganize their businesses.  For that reason, the Debtors have filed a motion (the "DIP Financing Motion") seeking authority to enter into a Debtor in Possession Loan Agreement (the "DIP Loan Agreement") with Premier Flatiron, LLC as the proposed post-petition lender (the "DIP Lender").  Pursuant to the DIP Loan Agreement, DIP Lender will make loans, advances, and other financial accommodations to and for the benefit of the Debtors, secured by a first lien on and security interest in, substantially all of Debtors' assets including but not limited to, all of Debtors' existing and after acquired bank accounts, deposits and cash, wherever located, whether now existing or hereafter acquired, of the Debtors, and all proceeds (including the proceeds of any asset sales to third parties), products, rents, revenues and profits of any of the foregoing, and all causes of action of whatever kind or nature (except Avoidance Actions).

70.     Owner requires DIP Financing to pay the costs associated with operating its business, including making monthly principal and interest payments on the Notes (the "Adequate Protection Payments") and paying certain costs of owning the Property, including taxes, during the pendency of the Chapter 11 Cases.

71.    Operator requires DIP Financing to continue to operate the Hotel, maintain relationships with the Hotel's vendors and creditors, pay its employees, and satisfy administrative and other ordinary operational costs that are essential to preserve estate value by continuing to operate its business in the ordinary course.

72.    In the absence of DIP Financing, the Debtors' ability to operate will be jeopardized, causing immediate and irreparable harm to the Debtors' estates, creditors, employees, and all other stakeholders by virtue of the loss of significant revenue. Thus, DIP Financing is essential in order to enable the Debtors to pay their ordinary operating costs and administrative expenses during the pendency of the Chapter 11 Cases.

73.    The DIP Lender is willing to provide the DIP Financing to Owner only on a priming, first priority, senior secured, super-priority basis pursuant to section 364(d)(1) of the Bankruptcy Code, subject only to the Carve-Outs (defined below). The Lender is willing to provide the DIP Financing to Operator only on a first priority, senior secured, super-priority basis pursuant to section 364(c), subject only the Carve-Outs.

74.    I believe the Debtors would be unable to obtain unsecured financing and would be unable to obtain secured financing on terms more favorable than those contained in the DIP Loan Agreement.

75.    The salient terms of the DIP Loan Agreement, which were negotiated in good faith and at arms' length are as follows:

- DIP Loan Commitment: The DIP Lender has agreed to loan the Debtors an aggregate principal amount of up to $2,500,000.00 on a final basis subject to approval of a Final DIP Order in form and substance acceptable to the DIP Lender, in its sole discretion, and up to $450,000.00 in accordance with the terms of the Interim Order.

17

- Term: The Term shall be from the Petition Date through December 31, 2018. Upon the expiration of the Term, unless otherwise extended by the DIP Lender, in its sole discretion, all amounts due and owing under the DIP Loan Agreement, including interest and fees, shall immediately become due and owing to the DIP Lender.

- Interest Rate: Four percent (4%) per annum based upon a 360-day year with a default interest rate of twenty-four percent (24%). Monthly interest payments shall be payable in kind and shall automatically accrue and be capitalized to the principal amount of the DIP Obligations, and shall thereafter be deemed to be a part of the principal amount of the DIP Obligations

- Use of Proceeds: The proceeds of the DIP Loan shall be used by the Debtors for the sole purpose of financing expenditures in accordance with the Budget, subject to the Permitted Weekly Variance.

- Collateral: The DIP Obligations shall be secured by automatically perfected security interests and Liens granted pursuant to Section 364(c) and 364(d)(1) of the Bankruptcy Code, with first priority on all Collateral; provided, however, that on an interim basis, the Lender is prepared to accept the lien priority established by an Interim Order entered in a form that is satisfactory to the Lender in its sole discretion.

- Defaults:            The Debtors shall fail to pay any principal or interest of the DIP Loan or any other DIP Obligation (including any fees or reimbursable amounts) when any such amount becomes due in accordance with the terms hereof, which failure continues for a period of five (5) Business Days after notice thereof from Lender; or

  The Debtors shall default in the observance or performance of any covenant, agreement, obligation or restriction set forth in this Agreement or any other DIP Loan Document, and such Default shall continue for a period of ten (10) Business Days after notice thereof from Lender; or

  The Court shall enter an order with respect to the Debtors dismissing the Chapter 11 Case or converting it to a case under chapter 7 of the Bankruptcy Code, or, without the prior written consent of Lender (i) appointing a trustee in the Chapter 11 Case or (ii) appointing a responsible officer or an examiner with enlarged powers relating to the operation of the

18

Debtors' business (beyond those set forth in Section 1106(a)(3) or (4)) under Bankruptcy Code Section 1106(b); or The Debtor shall fail to comply with the terms of the Interim DIP Order or the Final DIP Order, if any; or There occurs any Material Adverse Change, including without limitation, any impairment to the value of Collateral which Lender, in good faith, deems will threaten timely payment in full of the DIP Loan; or

The Court grants any superpriority administrative expense claim or Lien or enters any order granting relief from the automatic stay (if not in favor of Lender) on any assets of the Debtors which have an aggregate value in excess of $100,000, except with the express written consent of Lender; or

The Debtors shall assume or reject any unexpired lease or executory contract relating to the Property without the prior written consent of the Lender.

- Carve Out:        The "Carve Out" includes the following: (i) Quarterly fees, and interest thereon, of the United States Trustee and other fees due the United States Bankruptcy Court pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717, and any fees due to the Clerk of the Court; (ii) Allowed fees and expenses of the professionals retained by the Debtors and the Official Committee of Unsecured Creditors, if one is appointed, in excess of the retainers paid by the Debtors, pursuant to Bankruptcy Court order, in an aggregate amount not to exceed the sum of the dollar amount of such fees and expenses to the extent (a) incurred prior to the expiration of seven (7) days after receipt by a debtor of a Default Notice the ("Remedy Notice Period") for an Event of Default and remaining unpaid, and/or (b) previously or subsequently allowed by Court Order, and at all times and in both cases, limited in amount to the aggregate amounts specifically provided for in the Budget for each professional, regardless of the date on which such amounts appear in the Budget, and (c) fees and expenses of such professionals incurred subsequent to the expiration of the Remedy Notice Period for an Event of Default not to exceed the amount of $20,000 in the aggregate; and (iii) any costs and fees of a Chapter 7 Trustee, should one be appointed, however, not to exceed the amount of $20,000. Any amount of the Carve Out paid or otherwise funded by the

19

DIP Lender shall be treated as advances under the DIP Financing.

76.     As adequate protection to the Successor Pre-Petition Lender for the priming of its liens, the Debtors propose to pay interest at the default rate of approximately $149,000 per month each month.  In addition, the Debtors propose that the Lockbox Funds be released and applied to the Pre-Petition Indebtedness owed to the Successor Pre-Petition Lender, provided it provides the Debtors an accounting of receipts and disbursement thereof.

77.     I believe there is a substantial equity cushion in the Property. I also believe that prior to the Final Hearing on the DIP Financing Motion, the Debtors will have obtained a current appraisal of the Property that demonstrates that the Successor Pre-Petition Lender is adequately protected by the equity cushion alone.

78.     I believe the relief sought in the DIP Financing Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest, and respectfully request that the DIP financing Motion be granted.

**V.       Required Contents of Declaration**

A.       Debtor's Case Not Originally Commenced Under Chapter 7

79.     The Chapter 11 Case was not originally commenced under chapter 7 of the Bankruptcy Code.  Accordingly, L.B.R. 1007-2(a)(2) is not applicable.

B.       Pre-petition Creditors' Committee

80.     In accordance with L.B.R. 1007-2(a)(3), to the best of the Debtor's knowledge, no pre-petition creditors' committee has been formed.

C.    Holders of the Twenty Largest Unsecured Claims

81.    In accordance with L.B.R. 1007-2(a)(4), a consolidated list setting forth the Debtors' twenty (20) largest unsecured creditors excluding those persons who constitute "insiders" under Bankruptcy Code section 101(31) of the Debtor is attached as **Exhibit 1**.  As required by L.B.R. 1007-2(a)(4), Exhibit 1 includes the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated or disputed.

D.    Holders of Five Largest Secured Claims

82.    In accordance with L.B.R. 1007-2(a)(5), a consolidated list of the Debtors five largest secured creditors is annexed hereto as **Exhibit 2**.

E.    Summary of Assets and Liabilities

83.    As required by L.B.R. 1007-2(a)(6), a summary of the Debtor's assets and liabilities is provided above.

F.    Debtors' Securities.

84.    Owner has no class of equity that is publicly held.  As disclosed above, one hundred percent (100%) of the membership interests in Owner are owned by 1141 Realty LLC.  Ninety percent (90%) of the membership interests in 1141 Realty are owned by Main Team Hotels LLC. One hundred percent (100%) of the membership interests in Main Team Hotels LLC are owned by Main Team Trading Ltd. and one hundred percent of the membership interests in Main Team Trading Ltd. are owned by Jagdish Vaswani.

85.    Operator has no class of equity that is publicly held.  One hundred percent (100%) of the membership interest in Operator are owned by Jagdish Vaswani.

21

G.     Property in Possession or Custody of Custodian

86.     In accordance with L.B.R. 1007-2(a)(8), the Debtors have no property in possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, other than as set forth herein regarding the Lockbox.

H.     Premises Where the Debtor Conducts Business

87.     In accordance with L.B.R. 1007-2(a)(9), the Debtors conduct business at the Property.

I.     Location of Debtor's Assets and Books and Records

88.     Pursuant to L.B.R. 1007-2(a)(10), the majority of the Debtor's books and records and physical assets are maintained at the Property.

J.     Threatened or Pending Actions Against the Debtor

89.     Pursuant to L.B.R. 1007-2(a)(11), a list of pending or threatened actions is annexed hereto as **Exhibit 3**.

K.     The Debtor's Senior Management

90.     Pursuant to L.B.R. 1007-2(a)(12), Owner's senior management consists of the following: 1141 Realty LLC (Managing Member), Ricardo Beausoleil (Independent Manager), Steven P. Zimmer (Independent Manager).  Operator's senior management consists of Jagdish Vaswani (Managing Member), Yousef S. Iskander (Operator) and Sally Tadros (General Manager).

**II.     Additional Information Required by L.B.R. 1007-2(b)**

91.     In accordance with L.B.R. 1007-2(b), the Debtors intend to continue the operation of their businesses and the management of their property as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

22

92.    In accordance with L.B.R. 1007-2(b)(1), the estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date is approximately $26,800.

93.    In accordance with L.B.R. 1007-2(b)(2), the amounts paid and proposed to be paid for the thirty (30) day period following the Petition Date for services rendered by the Debtor's officers is approximately $0.00.

94.    The Debtors do not expect to retain a financial or business consultant, therefore L.B.R. 1007-2(b)(2)(C) is not applicable.

95.    In accordance with L.B.R. 1007-2(b)(3), the Owner anticipates receipts or disbursements during the 30-day period following the filing of the Chapter 11 Case in the amount of $406,000 and anticipates to generate receivables in the amount of $30,000 and incur obligations in the amount of $50,000.

Dated: New York, New York
　　　　July 31, 2018

　　　　　　　　　　　　　　　　　　　　 _/s/ James Katchadurian_____
　　　　　　　　　　　　　　　　　　　　 James Katchadurian
　　　　　　　　　　　　　　　　　　　　 Chief Financial Officer

**Exhibit "1"**

**Exhibit "1"**

**Fill in this information to identify the Case:**

Debtor:  Flatiron Hotel Operations LLC

United States Bankruptcy Court for the: Southern District of New York

Case Number (if known):_____

☐ Check if this is an
amended filing

OFFICIAL FORM 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 25 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case.  Include claims which the debtor disputes.  Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| Name of Creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount.  If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured |
| 1.  Booking.Com B.V. Herengracht 597 Amsterdam, 1017 CE Netherlands | Booking.Com B.V. Tel.: 31 20 7125600 Fax: 31 20 7125609 eMail: Website General Contact | Reservation System | Unliquidated | | | $230,039.32 |
| 2.  ABC Star Cleaning Enterprises Corp 2225 Benson Ave Apt. 2D Brooklyn, NY 11214 | ABC Star Cleaning Enterprises Corp Tel.: 646-286-8315 Fax:  Not Available eMail: tamarafratea@yandex.com | Cleaning Service | Unliquidated | | | $91,197.75 |
| 3.  M3 Accounting & Analytics 1715 N. Brown Road Building A, Suite 200 Lawrenceville, GA 30043 | M3 Accounting & Analytics Tel.: 516-354-5666 Fax:  770-297-1925 eMail: donna@m3as.com | Accounting Software | Unliquidated | | | $88,984.09 |
| 4.  Expedia Travel 275 Madison Ave #1202 New York, NY 10016 | Expedia Travel Tel.: 212-867-8757 Fax:  425-702-2722 eMail: info@expedia.com | Reservation System | Unliquidated | | | $85,465.60 |
| 5.  Consolidated Edison Company of N.Y. Inc c/o William O'Brien, Esq. 199 Church Street, 14th Floor New York, NY 10007 | Consolidated Edison Company of N.Y. Inc Tel.: 212-243-2591 Fax:  212-529-9265 eMail: Website General Contact | Utility Electric | Unliquidated | | | $59,530.00 |

Debtor  Name  __Flatiron Hotel Operations LLC__    _____ Case number (if known) _____

| Name of Creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount.  If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured |
| 6. Aetna<br>151 Farmington Avenue<br>Hartford, CT 06156 | Aetna<br>Tel.:  800-872-3862<br>Fax:  860-975-3110<br>eMail: KrocheskiJ@aetna.com | Insurance | Unliquidated | | | $48,276.14 |
| 7. Sabre Hospitality Solutions<br>Division Of Sabre Glbl Inc,<br>7285 Collection Center Drive<br>Chicago, IL 60693 | Sabre Hospitality Solutions<br>Division Of Sabre Glbl Inc,<br>Tel.:  817-567-9792<br>Fax:  682-606-9010<br>eMail: hsbilling@sabre.com | Reservation System | Unliquidated | | | $38,758.73 |
| 8. Aggressive Energy - 43-7117-2002-0001-7<br>78 Rapelye Street<br>Brooklyn, NY 11231 | Aggressive Energy - 43-7117-2002-0001-7<br>Tel.:  718-836-9222<br>Fax:  718-643-6356<br>eMail: info@AggressiveEnergy.com | Utility<br>Gas | Unliquidated | | | $37,314.84 |
| 9. American Express Charge Card<br>Attn: Express Mail Remittance Processing<br>20500 Belshaw Ave<br>Carson, CA 90746<br><br>American Express Charge Card<br>P.O. Box 1270<br>Newark, NJ 07101 | American Express Charge Card<br>Tel.:  800-528-4800<br>Fax:  623-444-3001<br>eMail: Website General Contact<br><br>American Express Charge Card<br>Tel.:  800-528-4800<br>Fax:  623-444-3001<br>eMail: Website General Contact | Credit Card | Unliquidated | | | $24,436.42 |
| 10. NYC Fire Department<br>9 Metro Tech Ctr<br>Downtown<br>Brooklyn, NY 11201<br><br>NYC Fire Department<br>Church Street Station<br>P.O. Box 840<br>New York, NY 10008-0840 | NYC Fire Department<br>Tel.:  718-999-2000<br>Fax:  718-999-0098<br>eMail: Website General Contact<br><br>NYC Fire Department<br>Tel.:  718-999-2000<br>Fax:  718-999-0098<br>eMail: Website General Contact | Fines | Unliquidated | | | $23,340.00 |
| 11. Time Warner Cable<br>60 Columbus Circle<br>New York, NY 10023<br><br>Time Warner Cable<br>P.O. Box 223085<br>Pittsburgh, PA 15251-2085 | Time Warner Cable<br>Tel.:  212-364-8200<br>Fax:  203-328-0604<br>eMail: twc.cotp@twcable.com<br><br>Time Warner Cable<br>Tel.:  877-892-4662<br>Fax:  203-328-0604<br>eMail: twc.cotp@twcable.com | Utility<br>Cable | Unliquidated | | | $21,441.51 |
| 12. East Coast Mechanical Contracting Corp<br>340 Jackson Avenue<br>Bronx, NY 10454 | East Coast Mechanical Contracting Corp<br>Tel.:  718-402-5107<br>Fax:  718-402-4336<br>eMail: info@eastcoastpetro.com | Generator Maintenance | Unliquidated | | | $21,328.55 |

Top25_07302018 v4.docx
Official Form 204        Chapter 11 or Chapter 9 Cases: List of Creditors Who have the 25 Largest Unsecured Claims

| Name of Creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim  If the claim is fully unsecured, fill in only unsecured claim amount.  If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured |
| 13.  Elite In-Flite Services Division Of Elite Airline Linen Of New York Inc. 11-07 Redfern Avenue Far Rockaway, NY 11691 | Elite In-Flite Services Division Of Elite Airline Linen Of New York Inc. Tel.:  718-337-9390 Fax:  718-337-9392 eMail:  jglabman@eliteairlineservices.com | Laundry Service | Unliquidated | | | $18,499.96 |
| 14.  Paritz & Company, P.A. 15 Warren Street Hackensack, NJ 07601 | Paritz & Company, P.A. Tel.:  201-342-7753 Fax:  201-342-7598 eMail:  info@paritz.com | Accounting Service | Unliquidated | | | $17,002.00 |
| 15.  Holiday Inn NYC (Hold) 125 West 26Th Street New York, NY 10001 | Holiday Inn NYC (Hold) Tel.:  212-430-8500 Fax:  212-430-8501 eMail:  info@hi-nyc.com | Relocation Service | Unliquidated | | | $15,686.15 |
| 16.  P&W Elevators 544 Park Ave Suite 130 Brooklyn, NY 11205 | P&W Elevators Tel.:  212-354-3686 Fax:  718-855-8054 eMail:  info@pwelevators.com | Elevator Maintenance | Unliquidated | | | $15,080.10 |
| 17.  Diverse Recycling Solutions 195 Montague Street, 14th Floor Brooklyn, NY 11201 | Diverse Recycling Solutions Tel.:  855-273-2328 Fax:  855-714-5300 eMail:  inquire@diverserecycling.com | Recycling Service | Unliquidated | | | $13,238.14 |
| 18.  Maestro Pms 65 Allstate Parkway Suite 100 Marham, ON L3R 9X1 | Maestro Pms Tel.:  905-940-1923 Fax:  905-940-1925 eMail:  info@maestropms.com | Property Management System | Unliquidated | | | $12,753.13 |
| 19.  Minibar North America 7340 Westmore Road Rockville, MD 20850 | Minibar North America Tel.:  301-354-5055 Fax:   301-309-1115 eMail:  info@minibarNA.com | Rental Service | Unliquidated | | | $9,436.86 |
| 20.  Onyx Center Source As 229 E 105Th St Apt #B3 New York, NY 10029 | Onyx Center Source As Tel.:  214-396-3280 Fax:  47-33-01-86-80 eMail:  support.recoverpro@Onyxcentersource.com | Travel Agency | Unliquidated | | | $9,107.01 |
| 21.  Telco Experts 169 Ramapo Valley Rd Oakland, NJ 07436-2509 | Telco Experts Tel.:  201-935-9100 Fax:  201-935-9170 eMail:  Service@telcoexperts.com | Utility Telephone | Unliquidated | | | $7,748.20 |

Top25_07302018 v4.docx
Official Form 204         Chapter 11 or Chapter 9 Cases: List of Creditors Who have the 25 Largest Unsecured Claims

Debtor  Name  __Flatiron Hotel Operations LLC__                                  Case number (if known) _____

| Name of Creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim  If the claim is fully unsecured, fill in only unsecured claim amount.  If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured |
| 22.  Tekconn Services Inc 237 West 35Th Street Suite 805 New York, NY 10001 | Tekconn Services Inc Tel.:  212-461-4310 Fax:  Not Available eMail:  Website General Contact | Tech Support | Unliquidated | | | $7,639.98 |
| 23.  Commtrak c/o William O'Brien, Esq. 199 Church Street, 14th Floor New York, NY 10007 | Commtrak Tel: 302-644-1600 Fax: 302-644-1659 eMail: Office@commtrak.com | Travel Agency | Unliquidated | | | $7,231.70 |
| 24.  Edge Linen Services (Hold) (Edge Linen) 2040 Edwin Avenue Fort Lee, NJ 07024 | Edge Linen Services (Hold) (Edge Linen) Tel.:  Unknown Fax:  Not available eMail:  Website General Contact | AP Trade, Linen Services | Unliquidated | | | $7,034.15 |
| 25.  Diverse Recycling Solutions, LLC (Diverse Re) 195 Montague Street 14th Floor Brooklyn, NY 11201 | Diverse Recycling Solutions, LLC (Diverse Re) Tel.:  855-273-2328 Tel.:  646-217-8343 Fax:  855-714-5300 eMail:  inquire@diverserecycling.com | Trade, Recycling Service | Unliquidated | | | $6,482.44 |

4

**Exhibit "2"**

**Exhibit "2"**

**Fill in this information to identify the Case:**

Debtor:  Flatiron Hotel Operations LLC

United States Bankruptcy Court for the: Southern District of New York

Case Number (if known):_____

☐ Check if this is an
amended filing

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 5 Largest Secured Claims and Are Not Insiders                    12/15

A list of creditors holding the 5 largest secured claims must be filed in a Chapter 11 or Chapter 9 case.

| Name of Creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of secured claim — If the claim is fully secured, fill in only secured claim amount.  If claim is partially unsecured, fill in total claim amount and deduction for value of collateral or setoff to calculate secured claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially unsecured | Deduction for value of collateral or setoff | Secured |
| 1. Midland Loan Services, a Division of PNC Bank, N.A. 10851 Mastin Street, Suite 300 Overland Park, KS 66210<br><br>Midland Loan Services, a Division of PNC Bank, N.A. Attn: David Eckels 10851 Mastin Street, Suite 300 Overland Park, KS 66210<br><br>Midland Loan Services, a Division of PNC Bank, N.A. c/o Sidley Austin LLP Attn: Andrew D. Hart 787 Seventh Ave. New York, NY 10019<br><br>Midland Loan Services, a Division of PNC Bank, N.A. c/o Sidley Austin LLP Attn: Kathleen A Zink 787 Seventh Ave. New York, NY 10019<br><br>Midland Loan Services, a Division of PNC Bank, N.A. c/o Sidley Austin LLP Attn: Mark Poole, Esq. 787 Seventh Ave. New York, NY 10019 | Midland Loan Services, a Division of PNC Bank, N.A. Tel.:  913-253-9000 Fax:  913-253-3001 eMail: mlsbusinessdevelopment@midlandls.com<br><br>Midland Loan Services, a Division of PNC Bank, N.A. Tel.:  913-253-9224 Fax:  913-253-3001 eMail:  deckels@midlandls.com<br><br>Midland Loan Services, a Division of PNC Bank, N.A. Tel.:  212-839-5966 Fax:  212-839-5599 eMail:  Ahart@Sidley.com<br><br>Midland Loan Services, a Division of PNC Bank, N.A. Tel.:  212-839-5914 Fax:  212-839-5599 eMail:  Kzink@Sidley.com<br><br>Midland Loan Services, a Division of PNC Bank, N.A. Tel.:  212-839-5582 Fax:  212-839-5599 eMail: Mpoole@Sidley.com | Lien, Secured Lender | Unliquidated | | | $24,209,486.00 |

Debtor  Name  __Flatiron Hotel Operations LLC_____    Case number (if known) _____

| Name of Creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of secured claim  If the claim is fully secured, fill in only secured claim amount.  If claim is partially unsecured, fill in total claim amount and deduction for value of collateral or setoff to calculate secured claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially unsecured | Deduction for value of collateral or setoff | Secured |
| Midland Loan Services, a Division of PNC Bank, N.A. c/o Sidley Austin LLP Attn: Elizabeth W. Walker 555 W 5th St. Los Angeles, CA 90013  Wilmington Trust National Assoc. as Trustee for Midland Loan Services, a Division of PNC Bank, N.A 1100 North Market Street Wilmington, DE 19890 | Midland Loan Services, a Division of PNC Bank, N.A. Tel.: 213-896-6123 Fax: 213-896-6600 eMail: Ewalker@Sidley.com  Wilmington Trust National Assoc. as Trustee for Midland Loan Services, a Division of PNC Bank, N.A. Tel.: 302-651-1000 Fax: 302-636-8587 eMail: inquiries@wilmingtontrust.com | | | | | |
| 2. NYC Department of Finance 66 John Street New York, NY 10038 | NYC Department of Finance Tel.: 212-639-9675 Fax: 718-488-2491 eMail: Website General Contact | Lien, Taxing Authority  Secured Party | Contingent, Unliquidated | | | $688,335.00 |
| 3. NYS Department of Taxation and Finance Bankruptcy Section P.O. Box 5300 Albany, NY 12205-0300  Harriman Campus Rd Albany, NY 12226 | NYS Department of Taxation and Finance Tel.: 518-457-4448 Fax: 518-435-8532 eMail: Treasury.Inquiry@tax.ny.gov | Lien, Taxing Authority  Secured Party | Contingent, Unliquidated | | | $586,408.00 |
| 4. New York State Commissioner of Labor New York State Department of Labor 175 Central Ave #1 Albany, NY 12206 | New York State Commissioner of Labor Tel.: 518-462-7600 Fax: 518-457-9378 eMail: Ingrid.Gonzalez@labor.ny.gov | Lien, Taxing Authority  Secured Party | Contingent, Unliquidated | | | $60,385.00 |
| 5. Reliant Security Services Inc. 87-02 23Rd Ave East Elmhurst, NY 11369 | Reliant Security Services Inc. Tel.: 631-522-0190 Fax: 212-695-1225 eMail: reliantsecurityinc@gmail.com | Lien, Security Services  Secured Party | Contingent, Unliquidated | | | $51,449.97 |

Top5_07302018 Secured v4.docx
Official Form 204        Chapter 11 or Chapter 9 Cases: List of Creditors Who have the 5 Largest Secured Claims

**Exhibit "3"**

**Exhibit "3"**

**Exhibit 3**

| 1. Case title | 2. Case Number | 3. Nature of Case | 4. Court or agency's name | 5. Status of case |
|---|---|---|---|---|
| Minibar North America, Inc. v. Flatiron Hotel T LLC, et al | Case No. 1655-2018 | Seeking past due rent | District Court of Maryland for Montgomery County | Pending |
| Reliant Security Services, Inc. vs., Flatiron Hotel, a/k/a Flatiron otel T LLC, Flatiron Hotel T Mangement LLC and Flatiron Hotel Toshi., LLC. | Index No.: 606029/2018 | Defendant has failed to remit servies (Fire safety personnel) | Supreme Court of the State of New York County of Suffolk | Pending |
| American Express Travel Related Services Company, Inc., vs. FlatironHotel Operations, LLC. | Index No. 05665-18 | Defendant has failed to make payments | Civil Court County of New York | Pending |
| Emerson Miranda, against 1141 Realty LLC, 1141 Realty LLC now known as 1141 Realty Owners LLC and Flatiron Hotel T LLC | Index No. 25926/2016 | Personal injury sustained by the plaintiff while he was working on the premise | Supreme Court of the State of New York County of Bronx | Pending |
| Commissioners of the State Insurance Fund, against Flatironhotel Operations LLC and 1141 Broadway Restaurant & Penthouse Operations LLC | Index No.: 451677/17 | Defendant has failed to make payments | Supreme Court of the State of New York County of New York | Pending |