UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| 1141 REALTY OWNER LLC, *et al.*, | : | Case No. 18- 12341 (SMB) |
| | : | |
| | : | Jointly Administered |
| Debtor. | : | |
| | : | |

**DECLARATION OF JAMES KATCHADURIAN IN FURTHER
SUPPORT OF DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION,
PRIMING, SENIOR SECURED, SUPERPRIORITY FINANCING PURSUANT
TO 11 U.S.C. §§ 105, 362, 364(c) AND 364(d), BANKRUPTCY RULE 4001(c)
AND LOCAL BANKRUPTCY RULE 4001-2**

James Katchadurian, declares as follows pursuant to 28 U.S.C. § 1746:

1.  I am the proposed Chief Restructuring Officer for debtors 1141 Realty Owner LLC ("Owner") and Flatironhotel Operations, LLC ("Operator", and collectively with Owner, the "Debtors")[1], the above-captioned debtors and debtors in possession, which each filed a voluntary Chapter 11 petition on July 31, 2018 (the "Petition Date").

2.  I submit this declaration (the "Supplemental Declaration") in further support of the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to Obtain Post-Petition, Priming, Senior Secured, Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 362, 364(c) and 364(d), Bankruptcy Rule 4001(c) and Local Bankruptcy Rule 4001-2* (the "DIP Financing Motion") [Docket No. 7].

3.  Except as otherwise indicated, all statements in this Supplemental Declaration are based upon my personal knowledge, my review of the Debtors' books and records and other

---

[1] The Debtors herein and the last four digits of their respective tax identification number are: 1141 Realty Owner LLC (1804) and Flatironhotel Operations LLC (4773). The Debtors' principal place of business is 9 West 26th Street a/k/a 1141 Broadway, New York, New York.

1

relevant documents. Any opinions set forth herein are based on my experience, expertise and knowledge of the Debtors' operations and financial condition, and/or information and materials that the Debtors' professional advisors have supplied to me. If I were called to testify as a witness in this matter, I would testify to the facts set forth herein.

4. I incorporate by reference herein the statements concerning the DIP Financing Motion made in the *Declaration of James Katchadurian Pursuant to Local Bankruptcy Rules 1007-2 and 9077-1* (the "First Day Declaration") [Docket No. 8].

5. By the DIP Financing Motion, the Debtors seek authority, *inter alia*, to enter into that certain Debtor In Possession Loan Agreement, by and among the Debtors and Premier Flatiron LLC, as lender (the "DIP Lender"), attached to the DIP Financing Motion as **Exhibit C** (as amended, supplemented, restated or otherwise modified from time to time in accordance therewith, the "DIP Agreement").

6. The terms of the DIP Agreement are, in my experience, quite reasonable for a commercial loan in a distress scenario. The terms are summarized at paragraph 27 of the DIP Financing Motion. Among other terms, the DIP Agreement provides for interest at a rate of four percent (4%) (the "Non-Default Rate"), payable in kind ("PIK") by capitalizing accrued interest and adding it to the principal balance of the obligations under the DIP Agreement and a default rate of 24% (the "Default Rate"). The DIP Agreement contemplates the grant of priming, first priority, senior secured liens on substantially all of the Debtors' assets pursuant to 11 U.S.C. § 364(d) (the "Priming Lien") and a superpriority claim (the "Superpriority Claim") pursuant to 11 U.S.C. § 364(c)(1).

7. An initial hearing on the DIP Financing Motion was held on August 2, 2018 (the "First Day Hearing"). At the conclusion of the First Day Hearing, the Court declined to grant the DIP Financing Motion on the record before the Court at the time.

8. In connection with the DIP Financing Motion, I contacted several commercial banks and non-bank lenders in New York City that provide commercial loans collateralized by real estate in New York City in an effort to determine if terms better than those provided by the DIP Lender were available. In each case, I summarized the material terms of the DIP Agreement to the bank representative with whom I was discussing the terms. In each case, I was informed that better terms were not available, and that the PIK feature was a distinguishing feature that they could not match.

9. Prior to the continued hearing on the DIP Financing Motion on September 6, 2018, the DIP Lender proposed modified terms to the DIP Agreement (the "Modified Terms"). The significant modified terms are: (1) a change in the Non-Default Rate from four percent (4%) to eight percent (8%); (2) a change in the Default Rate from twenty-four percent (24%) to twelve percent (12%), and (3) in lieu of the Priming Lien and Superpriority Claim, the DIP Lender seeks only a lien and superpriority claim that are subject to the liens and superpriority claims granted to the Successor Pre-Petition Lender[2] pursuant to the Pre-Petition Loan Agreement and documents ancillary thereto and the Interim Stipulation and Order Authorizing Use of Cash Collateral and Granting Adequate Protection [Docket No. 23]. Although the interest rate is higher under the Modified Terms, I believe that it is reasonable in light of the DIP Lender's agreement to lend on a non-priming basis. I also believe that, particularly when combined with the PIK feature, the terms are at or better than market, and the results of my prior inquiries would not change.

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the DIP Financing Motion.

10. In addition, since the First Day Hearing, the Debtors received the appraisal (the "Appraisal") they had commissioned from CBRE, Inc. ("CBRE") prior to the Petition Date. The Appraisal is attached to *the Declaration of Edward R. Eschmann, MAI, in Further Support of the Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to Obtain Post-Petition, Priming, Senior Secured, Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 362, 364(c) and 364(d), Bankruptcy Rule 4001(c) and Local Bankruptcy Rule 4001-2* (the "Eschmann Declaration"), which is being filed with the Court contemporaneously herewith.

11. As described more fully in the Eschmann Declaration and the Appraisal, CBRE appraises the Hotel at $45,300,000 to $56,000,000. The Eschmann Declaration and the Appraisal establish that the Successor Pre-Petition Lender is adequately protected by a substantial equity cushion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:   New York, New York
         September 4, 2018

                                    /s/ James Katchadurian
                                    James Katchadurian
                                    Proposed Chief Restructuring Officer
                                    1141 Realty Owner LLC
                                    Flatironhotel Operations LLC