KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, NY 10036
Tel. (212) 972-3000
Fax. (212) 972-2245

*Proposed Attorneys for the Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| 1141 REALTY OWNER LLC, *et al.*, | : | Case No. 18- 12341 (SMB) |
|  | : |  |
|  | : | Jointly Administered |
| Debtor. | : |  |
|  | : |  |

### NOTICE OF FILING OF (A) REVISED DEBTOR IN POSSESSION LOAN AGREEMENT AND (B) REVISED PROPOSED FORM OF ORDER GRANTING DIP FINANCING MOTION

**PLEASE TAKE NOTICE,** that on July 31, 2018, 1141 Realty Owner LLC and Flatironhotel Operations LLC (collectively, the "Debtors") filed the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to Obtain Post-Petition, Priming, Senior Secured, Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 362, 364(c) and 364(d), Bankruptcy Rule 4001(c) and Local Rule 4001-2* (the "DIP Financing Motion") [Docket No. 7] seeking entry of interim and final orders annexed to the DIP Financing Motion as Exhibits A and B (the "DIP Financing Order") approving financing pursuant to the Debtor in Possession Loan Agreement (the "DIP Agreement") between the Debtors and Premier Flatiron LLC (the "DIP Lender") annexed to the DIP Financing Motion as Exhibit C.

**PLEASE TAKE FURTHER NOTICE**, that on August 2, 2018 (the "First Day Hearing"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") declined to grant the DIP Financing Motion on the record before the Court.

**PLEASE TAKE FURTHER NOTICE**, that following the First Day Hearing, the DIP Lender agreed to certain modifications to the DIP Agreement and DIP Order.

**PLEASE TAKE FURTHER NOTICE**, that annexed hereto as **Exhibit A** is a revised form of Debtor in Possession Loan Agreement (the "Revised DIP Agreement").

**PLEASE TAKE FURTHER NOTICE**, that annexed hereto as **Exhibit B** is a blackline comparison reflecting differences between the DIP Agreement and the Revised DIP Agreement.

**PLEASE TAKE FURTHER NOTICE**, that annexed hereto as **Exhibit C** is a revised form of DIP Financing Order (the "Revised Proposed DIP Order").

**PLEASE TAKE FURTHER NOTICE**, that annexed hereto as **Exhibit D** is a blackline comparison reflecting differences between the DIP Order attached to the DIP Financing Motion as Exhibit B and the Revised Proposed DIP Order.

Dated:  New York, New York
      September 5, 2018

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By:  */s/ Tracy L. Klestadt*
     Tracy L. Klestadt
     Joseph C. Corneau
     200 West 41st Street, 17th Floor
     New York, New York 10036
     Tel: (212) 972-3000
     Fax: (212) 972-2245
     Email: tklestadt@klestadt.com
          jcorneau@klestadt.com

**<u>Exhibit A</u>**

# DEBTOR IN POSSESSION LOAN AGREEMENT

THIS DEBTOR IN POSSESSION LOAN AGREEMENT (this "Agreement"), dated September 5, 2018, is entered into between **1141 Realty Owner, LLC** ("Owner"), a limited liability company organized under the laws of the State of New York, and **Flatironhotel Operations LLC**, a limited liability company organized under the laws of the State of New York ("Operations" and, together with Owner, the "Debtors"), jointly and severally, on one hand, and **Premier Flatiron, LLC**, a limited liability company organized under the laws of the State of New York ("Premier" or, "Lender"), on the other hand.

W I T N E S S E T H :

WHEREAS, on July 31, 2018 (the "Petition Date") the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York; and

WHEREAS, the Debtors have requested that Lender make a DIP Loan (as defined hereinafter) to the Debtors subject to the terms and conditions set forth herein; and

WHEREAS, Lender is willing, on the terms and conditions hereinafter set forth, to make such a DIP Loan.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound hereby, the parties hereto agree as follows:

SECTION 1.   DEFINITIONS.

1.1    Defined Terms.   Certain terms are defined in the text of this Agreement. In addition, as used in this Agreement, the following terms shall have the following meanings:

"Agreement" means this Debtor in Possession Loan Agreement, as it may hereafter be amended, modified, extended, restated or supplemented from time to time.

"Avoidance Actions" means causes of action of Debtors' estates arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code.

"Bankruptcy Code" means Title 11 of the United States Code, as may hereafter be amended from time to time.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as may be amended from time to time.

"Budget" means the budget annexed to the DIP Order, and any subsequent budget for use of the proceeds of the DIP Loan that may be agreed upon by the Debtors and the Lender, in writing.

"Business Day" means any day on which banks are required to be open in New York City.

"Carve Out" has the meaning given to it in the DIP Order.

"Chapter 11 Case" means the jointly administered voluntary bankruptcy cases of the Debtors.

"Collateral" means all Property securing the DIP Obligations hereunder, including, without limitation all assets, all real property and all personal property, tangible or intangible, including without limitation all bank accounts, deposits and cash, wherever located, whether now existing or hereafter acquired, of the Debtors, and all proceeds (including the proceeds of any asset sales to third parties), products, rents, revenues and profits of any of the foregoing, all causes of action (except Avoidance Actions), and such other collateral of any nature as may be provided as security for the DIP Obligations in the DIP Order or otherwise.

"Debtor Representative" shall mean the Debtors' Chief Restructuring Officer, or any agent of the Debtors designated by the foregoing to act as an "Authorized Representative" hereunder.

"Default" means any event specified in Section 6 hereof, whether or not any requirement in connection with such event for the giving of notice, lapse of time, or happening of any further condition has been satisfied.

"Default Rate" has the meaning given such term in Section 3.2(b) hereof.

"DIP Loan" has the meaning given such term in Section 2.1 hereof.

"DIP Loan Commitment" means the commitment of the Lender to loan the Debtors an aggregate principal amount of up to $2,500,000 on a final basis subject to approval of a DIP Order in form and substance acceptable to the Lender.

"DIP Loan Documents" means, collectively, this Agreement, the DIP Order, and each other order of the Court and each other instrument, document or agreement required to be delivered pursuant to this Agreement or any order of the Court or delivered in connection with this Agreement, including without limitation any documents or instruments executed or delivered by any Entity from time to time as security for the DIP Obligations, in each case as amended, modified, waived, substituted, replaced or extended from time to time.

"DIP Obligations" means all present and future obligations, indebtedness and liabilities, and all renewals and extensions of all or any part thereof, of the Debtors to Lender arising from, by virtue of, or pursuant to this Agreement, any DIP Loan Documents, and any and all renewals and extensions thereof or any part thereof, or future amendments thereto, all interest accruing on all or any part thereof and the reasonable attorneys' fees incurred by Lender for the negotiation and preparation of this Agreement and consummation of the same, execution of waivers, amendments and consents, and in connection with the enforcement or the collection of all or any part thereof, and reasonable attorneys' fees incurred by Lender in connection with the enforcement or the collection of all or any part of the DIP Obligations during the continuance of

2

a Default, in each case whether such obligations, indebtedness and liabilities are direct, indirect, fixed, contingent, joint, several or joint and several.

"Entity" means an individual, partnership, limited liability company, joint venture, corporation, trust, Governmental Unit, unincorporated organization, and government, or any department, agency, or political subdivision thereof.

"DIP Order" means the order entered by the Court upon sufficient notice as required by Bankruptcy Rule 4001, in form and substance satisfactory to Lender, in its sole discretion, approving the DIP Loan and the DIP Loan Documents.

"Final Order" means an order, ruling or judgment of a court of competent jurisdiction (a) that is in full force and effect, (b) that is not stayed, (c) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, and no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, and (d) is no longer subject to review, reversal, modification or amendment by appeal or writ of certiorari; provided, however, that an order will be deemed a Final Order notwithstanding the filing of a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules.

"GAAP" means generally accepted accounting principles applied on a consistent basis.

"Governmental Unit" means any state, commonwealth, federal, foreign, territorial, or other court or government body, subdivision, agency, department, commission, board, bureau, or instrumentality of a governmental body.

"Highest Lawful Rate" means, at the particular time in question, the maximum rate of interest which, under applicable law, Lender is then permitted to charge on the DIP Obligations. If the maximum rate of interest which, under applicable law, Lender is permitted to charge on the DIP Obligations shall change after the date hereof, the Highest Lawful Rate shall be increased or decreased automatically, as the case may be, from time to time as of the effective time of each change in the Highest Lawful Rate without notice to the Debtors.

"Law" means any constitution, statute, law, ordinance, regulation, rule, order, writ, injunction, or decree of any Governmental Unit.

"License" means any license, permit, consent, certificate of need, authorization, certification, accreditation, franchise, approval, or grant of rights by, or any filing or registration with, any Governmental Unit or other Entity necessary for such Entity to own, build, maintain, or operate its business or Property.

"Lien" means any properly filed and perfected mortgage, pledge, security interest, encumbrance, lien, or charge of any kind, including without limitation any agreement to give or not to give any of the foregoing, any conditional sale or other title retention agreement, any lease in the nature thereof, and the filing of or agreement to give any financing statement or other similar form of public notice under the Laws of any jurisdiction (except for the filing of a financing statement or notice in connection with an operating lease).

BPOWERS/2195959.5/067679

"Litigation" means any proceeding, claim, lawsuit, arbitration, and/or investigation conducted by or before any Governmental Unit or arbitrator, including without limitation proceedings, claims, lawsuits, and/or investigations under or pursuant to any environmental, occupational, safety and health, antitrust, unfair competition, securities, Tax, or other Law, or under or pursuant to any contract, agreement, or other instrument.

"Material Adverse Change" means any circumstance or event that, by itself or aggregated together with all other events or circumstances, is or would reasonably be expected to materially and adversely affect the validity or enforceability of or any rights of Lender under the DIP Loan Documents, or the DIP Order.

"Permitted Liens" means:

(a)     any Lien in favor of Lender pursuant to the DIP Loan Documents, or the DIP Order to secure the DIP Obligations hereunder;

(b)     Liens existing on the Petition Date or any replacement liens;

(c)     Liens on (i) real estate for real estate Taxes not yet delinquent and (ii) Liens for Taxes, assessments, governmental charges, levies or claims that are being diligently contested in good faith by appropriate proceedings and for which adequate reserves shall have been set aside on the Debtors' books, but only so long as no foreclosure, restraint, sale or similar proceedings have been commenced with respect thereto;

(d)     Liens of carriers, warehousemen, mechanics, laborers and materialmen and other similar Liens incurred in the ordinary course of business for sums not yet due or being contested in good faith, if such reserve or appropriate provision, if any, as shall be required by GAAP shall have been made therefore; and

(e)     Liens incurred in the ordinary course of business after the Petition Date in connection with worker's compensation, unemployment insurance or similar legislation.

"Permitted Weekly Variance" shall mean a weekly variance of up to ten percent (10%) with respect to any one line item of the Budget, provided that the overall weekly disbursements do not exceed one hundred five percent (110%) of the budgeted expenses of the Debtors, as reflected in the Budget.

"Property" means all types of real, personal, tangible, intangible, or mixed property, whether owned or hereafter acquired in fee simple or leased by the Debtor.

"Schedules" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by each Debtor in their respective chapter 11 cases on the Petition Date.

"Superpriority Claims" means any debt or other claim arising out of credit obtained or debt incurred by the Debtors having priority in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code.

BPOWERS/2195959.5/067679

"Tax" or "Taxes" means all taxes, assessments, imposts, fees, or other charges at any time imposed by any Laws or Governmental Unit.

"Tax Code" means the Internal Revenue Code of 1986, as amended.

"UCC" means the Uniform Commercial Code as adopted in the State of New York as of the date of this Agreement.

"U.S. Trustee" means the United States Trustee for Region 2.

1.2     Other Definitional Provisions.

(a)     Unless otherwise specified therein, all terms defined in this Agreement shall have the defined meanings when used in any other DIP Loan Document or any certificate or other document made or delivered pursuant hereto.

(b)     As used herein, in any other DIP Loan Document and in any certificate or other document made or delivered pursuant hereto, accounting terms relating to the Debtor not defined herein, and accounting terms partly defined herein to the extent not defined, shall have the respective meanings given to them under GAAP.

(c)     The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section, subsection, schedule and exhibit references are to this Agreement unless otherwise specified.

(d)     The meanings given to terms defined herein shall be equally applicable to the singular and plural forms of such terms.

SECTION 2.   DIP LOAN.

2.1     DIP Loan Commitment.   Subject to and in accordance with the terms and conditions of this Agreement, including, without limitation, the entry of a DIP Order that is satisfactory to Lender, in its sole discretion, Lender shall make advances to the Debtors up to the maximum principal amount of the DIP Loan Commitment (the "DIP Loan").

2.2     Term.   The Term of the DIP Loan Commitment shall be from the Petition Date through December 31, 2018 (the "Term").   Upon the expiration of the Term, unless otherwise extended by Lender, in its sole discretion, all amounts due and owing under the DIP Loan, including interest and fees, shall immediately become due and owing to Lender.

2.3     Advances.   Provided that no Default shall have occurred and no circumstances exist that, with the giving of notice and/or the passage of time, would constitute a Default, advances under the DIP Loan shall be made if and when requested in writing on behalf of the Debtors by a Debtor Representative in order to meet the Debtors' cash needs as set forth in the Budget.   The Debtor Representative will be required to make any requests for advances from the Lender in writing by 12:00 noon on the Friday preceding the week during which such advances are required in accordance with the Budget and the Debtors' cash position.

BPOWERS/2195959.5/067679

2.4     Use of Proceeds.  The proceeds of the DIP Loan shall be used by the Debtors for the sole purpose of financing expenditures in accordance with the Budget, subject to the Permitted Weekly Variance.

2.5     Collateral.  As provided in the DIP Order, all indebtedness, including DIP Obligations under this Agreement and the DIP Loan Documents shall be secured by automatically perfected security interests and Liens granted pursuant to Section 364(c)(2) and (c)(3) of the Bankruptcy Code.

2.6     Monthly Interest Payments.  The Debtor shall pay monthly interest payments to the Lender in accordance with the terms of this DIP Loan, as computed in accordance with Section 3.2 of this Agreement.  Monthly interest payments shall automatically accrue and be capitalized to the principal amount of the DIP Obligations, and shall thereafter be deemed to be a part of the principal amount of the DIP Obligations.

2.7     Prepayment.  The unpaid principal amount of the DIP Loan, together with any and all accrued interest thereon through the date of prepayment, may be voluntarily paid or prepaid, in whole or in part, without premium or penalty.

2.8     DIP Order.  For the avoidance of doubt and without waiving any discretion or other rights reserved to the Lender in this Agreement, unless otherwise consented to by the Lender through written authorization, the DIP Order, if any, will not be acceptable to the Lender and no DIP Loan shall be funded by the Lender, unless the same contains, inter alia, the following provisions:

(a)     A valid, perfected lien on all of the Collateral shall be granted to Lender to secure repayment of the DIP Loan as contemplated by Section 2.4 hereof;

(b)     A Superpriority Claim shall be granted to the Lender against each Debtor in an amount no less than the DIP Obligations; and

(c)     It shall be an Event of Default under the DIP Order, if any, if the Debtors shall fail to secure the entry of orders of the Bankruptcy Court, in form and substance acceptable to Lender:

(i)     approving a disclosure statement for the Debtors' joint plan of reorganization, on or before November 20, 2018; and

(ii)    confirming a joint plan of reorganization of the Debtors, on or before December 31, 2018.

SECTION 3.   GENERAL PROVISIONS APPLICABLE TO DIP LOAN.

3.1     No Note.  This Agreement, the DIP Loan Documents, and the DIP Order fully evidence and memorialize the DIP Obligations, and no other instrument is required to evidence such DIP Obligations.

3.2     Interest Rates.

BPOWERS/2195959.5/067679

(a)     Interest Rate.  Subject to Section 3.2.(b) hereof, the DIP Loan shall bear interest at a rate of eight (8%) percent per annum.

(b)     Default Rate.  Upon the occurrence and during the continuance of a Default, and provided that Lender shall have provided a Notice of Default as provided in Section 6.2 and any applicable cure period has expired, the DIP Loan and all other amounts unpaid and outstanding under this Agreement shall bear interest at a rate equal to twelve (12%) percent per annum (the "Default Rate").

(c)     Computation of Interest.  Interest on the Advances shall be computed on the basis of a year of 365 days and the actual days elapsed (including the first day but excluding the last day) occurring in the period for which such interest is payable, unless such calculation would exceed the Highest Lawful Rate, in which case interest shall be calculated on the per annum.

3.3     Collateral.

(a)     Grant of Security Interest.  The Debtors each hereby grant to Lender a security interest in all of their respective Collateral as security for the full and prompt payment in cash and performance of the DIP Obligations.

(b)     Perfection; Duty of Care.  Until all the DIP Obligations have been paid and performed in full, the Debtors shall take all actions reasonably requested by Lender or otherwise required to perfect, maintain and protect Lender's security interest in the Collateral, including delivering to Lender all Collateral in which Lender's security interest may be perfected by possession together with such endorsements as Lender may request.  The Debtors shall pay when due all Tax assessments and other charges imposed upon or with respect to the Collateral or any part thereof, first arising after the Petition Date, unless such assessments and charges are subject to a good faith contest adequately reserved for by the Debtors.  If the Debtors shall fail to pay such amounts, upon prior written notice to the Debtors, Lender may do so and add the amount of such payment to the principal owed under the DIP Loan.  Upon prior written notice to the Debtors, Lender may discharge any Lien that is not a Permitted Lien, pay for any insurance, or take any other action the Debtors are required to take pursuant to this Agreement but have not taken, and add the amount of such payment to the principal owed under the DIP Loan.

SECTION 4.  AFFIRMATIVE COVENANTS.

The Debtors hereby agree that, so long as any portion of the DIP Loan or other DIP Obligation remains outstanding and unpaid or any other amount is owing to Lender hereunder, the Debtors shall:

4.1     Payment of Post-Petition Obligations.  Pay, discharge or otherwise satisfy all post-Petition Date obligations and liabilities as required pursuant to the Bankruptcy Code or by order of the Court.

4.2     Insurance.

(a)     Maintain with financially sound and reputable insurance companies insurance on all Collateral in at least such amounts and with only such deductibles as are usually maintained,

7

and against at least such risks as are usually insured against in the same general area, by companies engaged in the same or a similar business; and furnish to Lender, at their request, full information as to the insurance carried.

(b)  Lender shall be named as an additional insured and as its interests may appear on all insurance maintained by the Debtors pursuant to Section 4.2(a) hereof.

4.3  <u>Books and Records</u>.  Keep proper books of record and account in which complete and correct entries are made of all dealings and transactions in relation to the Debtors' business and activities and which permit financial statements to be prepared in conformity with GAAP and all applicable Laws.

4.4  <u>Cash Accounts</u>.  Deposit and maintain all proceeds of the DIP Loan in only such accounts permitted by the Court's order approving the Debtors' use after the Petition Date of its existing bank accounts and cash management system.

4.5  <u>Visits and Inspections</u>.  Promptly permit representatives of Lender, upon prior written notice to the Debtors, from time to time during normal business hours to (a) visit and inspect any Property of the Debtors as often as Lender shall reasonably deem advisable, (b) make such inspections of, abstracts from and copies of the Debtors' books and records as Lender shall deem advisable, and (c) discuss with the Debtors' members, officers and the auditors of the Debtors, the Debtors' business, operations, assets, liabilities, financial positions, results of operations and business prospects as often as Lender shall deem advisable.

4.6  <u>Use of Proceeds</u>.  Use the proceeds of the DIP Loan solely in accordance with the Budget (as applicable) subject to the Permitted Variance and upon the terms and conditions set forth in this Agreement, including without limitation Section 2.3 hereof.

4.7  <u>Compliance with Law</u>.  Comply in all material respects with all requirements of law applicable to the Property (including but not limited to requirements relating to the environment or hazardous or toxic substances) and the Bankruptcy Code.

SECTION 5.  NEGATIVE COVENANTS.

The Debtors hereby agree that each shall not, directly or indirectly so long as the DIP Loan or any of the DIP Obligations remain outstanding and unpaid, or any other amount is owing to Lender hereunder (it being understood that each of the permitted exceptions to each of the covenants in this <u>Section 5</u> is in addition to, and not overlapping with, any other of such permitted exceptions except to the extent expressly provided):

5.1  <u>Debt</u>.  Create, incur, assume or suffer to exist any debt, except:

(a)  Debt in existence on the date of this Agreement;

(b)  the DIP Loan and this Agreement; and

BPOWERS/2195959.5/067679

(c)     Debt incurred by the Debtors within the Budget, subject to the Permitted Weekly Variance, in the ordinary course of business in the form of accounts payable and accrued expenses.

5.2     <u>Limitation on Liens</u>.  Create, incur, assume or suffer to exist any Lien upon any of its property, assets, income or profits, whether now owned or hereafter acquired, except Permitted Liens and the Carve Out.

5.3     <u>Use of Proceeds</u>.  Use the proceeds of the DIP Loan for any purpose not set forth in each respective Budget or in <u>Section 2.3</u> hereof, subject to the Permitted Weekly Variance.

5.4     <u>DIP Financing</u>.  Incur, or apply to the Court for authority to incur, or suffer to exist, any (i) indebtedness having the priority afforded by Section 364(c) or (d) of the Bankruptcy Code (including any Superpriority Claims) other than the financing provided for under this Agreement and the other DIP Loan Documents or (ii) obligation to make adequate protection payments, or otherwise provide adequate protection, other than as contemplated by the DIP Order or in the Budget, or as may be required by order of the Court in connection with the provision of adequate protection to holders of Permitted Liens whose collateral is sold or otherwise disposed of or as to which Lender consents.

5.5     <u>Alteration of Rights of Lender</u>.  Limit, affect or modify, or apply to the Court to limit, affect or modify, any of Lender's rights with respect to the DIP Obligations, including rights with respect to the Collateral and the priority thereof, except with the prior written consent of Lender.

5.6     <u>Chapter 11 Claims</u>.  Except as permitted under the DIP Order, apply to the Court for the authority to incur, create, assume, suffer or permit any claim, Lien or encumbrance (other than Permitted Liens and the Carve Out) against the Debtors, or any of their assets in the Chapter 11 Case to be <u>pari</u> <u>passu</u> with, or senior to, the Liens and claims of Lender granted and arising under the DIP Loan Documents.

5.7     <u>Superpriority Administrative Expense</u>.  Create or permit to exist any Superpriority Claims (other than with respect to this Agreement or the DIP Order and other than the Carve Out).

5.8     <u>Alterations</u>.  Undertake any alterations or modifications to the Property without Lender's prior written consent.

5.9     <u>Transfers</u>.  Transfer, directly or indirectly, any of its right, title or interest in, to or under any of the Collateral without the Lender's prior written consent.

SECTION 6.  DEFAULT.

6.1     <u>Default</u>.  In addition to the Events of Default under the DIP Order, the following shall constitute a Default:

(a)     The Debtors shall fail to pay any principal or interest of the DIP Loan or any other DIP Obligation (including any fees or reimbursable amounts) when any such amount becomes

BPOWERS/2195959.5/067679

due in accordance with the terms hereof, which failure continues for a period of five (5) Business Days after notice thereof from Lender; or

(b)      The Debtors shall default in the observance or performance of any covenant, agreement, obligation or restriction set forth in this Agreement or any other DIP Loan Document, and such Default shall continue for a period of ten (10) Business Days after notice thereof from Lender; or

(c)      The Court shall enter an order with respect to the Debtors dismissing the Chapter 11 Case or converting it to a case under chapter 7 of the Bankruptcy Code, or, without the prior written consent of Lender (i) appointing a trustee in the Chapter 11 Case or (ii) appointing a responsible officer or an examiner with enlarged powers relating to the operation of the Debtors' business (beyond those set forth in Section 1106(a)(3) or (4)) under Bankruptcy Code Section 1106(b); or

(d)      The Debtor shall fail to comply with the terms of the DIP Order; or

(e)      There occurs any Material Adverse Change, including without limitation, any impairment to the value of Collateral which Lender, in good faith, deems will threaten timely payment in full of the DIP Loan; or

(f)      The Court grants any superpriority administrative expense claim or Lien or enters any order granting relief from the automatic stay (if not in favor of Lender) on any assets of the Debtors which have an aggregate value in excess of $250,000, except with the express written consent of Lender.

(g)      The Debtors shall assume or reject any unexpired lease or executory contract relating to the Property without the prior written consent of the Lender.

6.2    <u>Notice of Default and Certain Remedies</u>.  If any Default shall occur, Lender may provide written notice (a "<u>Notice of Default</u>") to the Debtors and counsel for the official committee of unsecured creditors, if any, and the U.S. Trustee of such Default.  If a Default shall have occurred and Lender shall have provided a Notice of Default, then, upon expiration of any applicable cure period, so long as any such Default shall be continuing, any of the actions set forth in the next sentence may be taken upon written notice by Lender to the Debtors, the U.S. Trustee, and to the official committee of unsecured creditors of the Debtors, if any.  Lender may (A) without further order of the Court, declare the DIP Loan Commitment reduced to zero whereupon the DIP Loan Commitment and all obligations of Lender relating thereto shall be immediately terminated, (B) without further order of the Court, declare all or a portion of the DIP Loan (with accrued interest thereon) and all other amounts owing under this Agreement to be due and payable forthwith, whereupon the same shall immediately become due and payable, without further notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, protest, or other formalities of any kind, all of which are hereby expressly waived by the Debtors, (C) foreclose or otherwise enforce any Lien granted to Lender for the benefit of itself to secure payment and performance of the DIP Obligations in accordance with the terms of the DIP Loan Documents, and (D) exercise all other rights and remedies available at law or in equity.  Except as expressly provided above in this <u>Section 6</u>, presentment, notice,

BPOWERS/2195959.5/067679

notice of dishonor, notice of acceleration, notice of intent to accelerate, demand, protest and all other notices of any kind are hereby expressly waived.

SECTION 7.  MISCELLANEOUS.

7.1   <u>Amendments and Waivers</u>.  No DIP Loan Document nor any terms thereof may be amended, supplemented or modified except in writing signed by Lender and Debtor.

7.2   <u>Notices</u>.  All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered by hand, or three Business Days after being deposited in the mail, postage prepaid, or one Business Day after being entrusted to a reputable commercial overnight delivery service, or, in the case of electronic mail notice, when sent, addressed as follows in the case of the Debtors and Lender or to such other address as may be hereafter notified by such respective parties hereto:

The Debtors:

      1141 Realty Owner, LLC
      Flatironhotel Operations, LLC
      1141 Broadway
      New York, New York 10001
      Attention: Chief Restructuring Officer

With a copy to

      Klestadt Winters Jureller
      Southard & Stevens, LLP
      292 Madison Avenue, 17th Fl.
      New York, NY  10017
      Attn:  Tracy L. Klestadt
           Joseph Corneau

Lender:

      Premier Flatiron, LLC
      c/o Mermel Associates PLLC
      One Hollow Lane, Suite 303
      Lake Success, New York 11042
      Attn: Uzi Ben Abraham

With a copy to

      SilvermanAcampora LLP
      100 Jericho Quadrangle, Suite 300
      Jericho, New York 11753
      Attn:  Kenneth P. Silverman
           Brian Powers

7.3     No Waiver; Cumulative Remedies.  No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.  The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by Law.

7.4     Survival of Representations and Warranties.  All representations and warranties made hereunder and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the making of the DIP Loan.

7.5     Counterparts.  This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

7.6     Additional Grant of Lien.  All DIP Obligations, contingent or absolute (including, without limitation, the principal thereof, interest thereon, and any costs and expenses owing in connection therewith) which may now or from time to time hereafter be owing by the Debtors to Lender under any of the DIP Loan Documents shall be secured as set forth in the DIP Order.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

[The remainder of this page is intentionally left blank.]

BPOWERS/2195959.5/067679

DEBTORS

**1141 REALTY OWNER, LLC**,

_____
By:_____
Title:_____

**FLATIRONHOTEL OPERATIONS, LLC**.

_____
By:_____
Title:_____

LENDER

**PREMIER FLATIRON LLC**,

_____
By:_____
Title:_____

BPOWERS/2195959.5/067679

**<u>Exhibit B</u>**

## DEBTOR IN POSSESSION LOAN AGREEMENT

THIS DEBTOR IN POSSESSION LOAN AGREEMENT (this "Agreement"), dated September 5, 2018, is entered into between **1141 Realty Owner, LLC** ("Owner"), a limited liability company organized under the laws of the State of New York, and **Flatironhotel Operations LLC**, a limited liability company organized under the laws of the State of New York ("Operations" and, together with Owner, the "Debtors"), jointly and severally, on one hand, and **Premier Flatiron, LLC**, a limited liability company organized under the laws of the State of New York ("Premier" or, "Lender"), on the other hand.

W I T N E S S E T H:

WHEREAS, on July 31, 2018 (the "Petition Date") the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York; and

WHEREAS, the Debtors have requested that Lender make a DIP Loan (as defined hereinafter) to the Debtors subject to the terms and conditions set forth herein; and

WHEREAS, Lender is willing, on the terms and conditions hereinafter set forth, to make such a DIP Loan.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound hereby, the parties hereto agree as follows:

SECTION 1. ~~SECTION 1.~~ DEFINITIONS.

1.1     <u>Defined Terms</u>.   Certain terms are defined in the text of this Agreement. In addition, as used in this Agreement, the following terms shall have the following meanings:

"Agreement" means this Debtor in Possession Loan Agreement, as it may hereafter be amended, modified, extended, restated or supplemented from time to time.

"Avoidance Actions" means causes of action of Debtors' estates arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code.

"Bankruptcy Code" means Title 11 of the United States Code, as may hereafter be amended from time to time.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as may be amended from time to time.

"Budget" means the budget annexed to the ~~Interim DIP Order and/or the Final~~ DIP Order, and any subsequent budget for use of the proceeds of the DIP Loan that may be agreed upon by the Debtors and the Lender, in writing.

"Business Day" means any day on which banks are required to be open in New York City.

"Carve Out" has the meaning given to it in the ~~Final~~ DIP Order.

"Chapter 11 Case" means the jointly administered voluntary bankruptcy cases of the Debtors.

"Collateral" means all Property securing the DIP Obligations hereunder, including, without limitation all assets, all real property and all personal property, tangible or intangible, including without limitation all bank accounts, deposits and cash, wherever located, whether now existing or hereafter acquired, of the Debtors, and all proceeds (including the proceeds of any asset sales to third parties), products, rents, revenues and profits of any of the foregoing, all causes of action (except Avoidance Actions), and such other collateral of any nature as may be provided as security for the DIP Obligations in the ~~Final~~ DIP Order or otherwise.

"Debtor Representative" shall mean the Debtors' Chief Restructuring Officer, or any agent of the Debtors designated by the foregoing to act as an "Authorized Representative" hereunder.

"Default" means any event specified in <u>Section 6</u> hereof, whether or not any requirement in connection with such event for the giving of notice, lapse of time, or happening of any further condition has been satisfied.

"Default Rate" has the meaning given such term in <u>Section 3.2(b)</u> hereof.

"DIP Loan" has the meaning given such term in <u>Section 2.1</u> hereof.

"DIP Loan Commitment" means the commitment of the Lender to loan the Debtors an aggregate principal amount of up to $~~2,500,000.00~~2,500,000 on a final basis subject to approval of a ~~Final~~ DIP Order in form and substance acceptable to the Lender~~, in its sole discretion, and up to $450,000.00 in accordance with the terms of the Interim Order~~.

"DIP Loan Documents" means, collectively, this Agreement, ~~any Interim DIP Order,~~ the ~~Final~~ DIP Order, and each other order of the Court and each other instrument, document or agreement required to be delivered pursuant to this Agreement or any order of the Court or delivered in connection with this Agreement, including without limitation any documents or instruments executed or delivered by any Entity from time to time as security for the DIP Obligations, in each case as amended, modified, waived, substituted, replaced or extended from time to time.

"DIP Obligations" means all present and future obligations, indebtedness and liabilities, and all renewals and extensions of all or any part thereof, of the Debtors to Lender arising from, by virtue of, or pursuant to this Agreement, any DIP Loan Documents, and any and all renewals and extensions thereof or any part thereof, or future amendments thereto, all interest accruing on all or any part thereof and the reasonable attorneys' fees incurred by Lender for the negotiation and preparation of this Agreement and consummation of the same, execution of waivers, amendments and consents, and in connection with the enforcement or the collection of all or any part thereof, and reasonable attorneys' fees incurred by Lender in connection with the enforcement or the collection of all or any part of the DIP Obligations during the continuance of a Default, in each case whether such obligations, indebtedness and liabilities are direct, indirect, fixed, contingent, joint, several or joint and several.

BPOWERS/2195959.5/067679

"Entity" means an individual, partnership, limited liability company, joint venture, corporation, trust, Governmental Unit, unincorporated organization, and government, or any department, agency, or political subdivision thereof.

"~~Final~~ DIP Order" means the order entered by the Court upon sufficient notice as required by Bankruptcy Rule 4001, in form and substance satisfactory to Lender, in its sole discretion, approving the DIP Loan and the DIP Loan Documents.

"Final Order" means an order, ruling or judgment of a court of competent jurisdiction (a) that is in full force and effect, (b) that is not stayed, (c) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, and no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, and (d) is no longer subject to review, reversal, modification or amendment by appeal or writ of certiorari; provided, however, that an order will be deemed a Final Order notwithstanding the filing of a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules.

"GAAP" means generally accepted accounting principles applied on a consistent basis.

"Governmental Unit" means any state, commonwealth, federal, foreign, territorial, or other court or government body, subdivision, agency, department, commission, board, bureau, or instrumentality of a governmental body.

"Highest Lawful Rate" means, at the particular time in question, the maximum rate of interest which, under applicable law, Lender is then permitted to charge on the DIP Obligations. If the maximum rate of interest which, under applicable law, Lender is permitted to charge on the DIP Obligations shall change after the date hereof, the Highest Lawful Rate shall be increased or decreased automatically, as the case may be, from time to time as of the effective time of each change in the Highest Lawful Rate without notice to the Debtors.

~~"Interim DIP Order" means any order entered by the Court with respect to the DIP Loan or the DIP Loan Commitment prior to the Final DIP Order, in form and substance satisfactory to Lender, in its sole discretion, approving the DIP Loan and the DIP Loan Documents.~~

"Law" means any constitution, statute, law, ordinance, regulation, rule, order, writ, injunction, or decree of any Governmental Unit.

"License" means any license, permit, consent, certificate of need, authorization, certification, accreditation, franchise, approval, or grant of rights by, or any filing or registration with, any Governmental Unit or other Entity necessary for such Entity to own, build, maintain, or operate its business or Property.

"Lien" means any properly filed and perfected mortgage, pledge, security interest, encumbrance, lien, or charge of any kind, including without limitation any agreement to give or not to give any of the foregoing, any conditional sale or other title retention agreement, any lease in the nature thereof, and the filing of or agreement to give any financing statement or other similar form of public notice under the Laws of any jurisdiction (except for the filing of a financing statement or notice in connection with an operating lease).

BPOWERS/2195959.5/067679

"Litigation" means any proceeding, claim, lawsuit, arbitration, and/or investigation conducted by or before any Governmental Unit or arbitrator, including without limitation proceedings, claims, lawsuits, and/or investigations under or pursuant to any environmental, occupational, safety and health, antitrust, unfair competition, securities, Tax, or other Law, or under or pursuant to any contract, agreement, or other instrument.

"Material Adverse Change" means any circumstance or event that, by itself or aggregated together with all other events or circumstances, is or would reasonably be expected to materially and adversely affect the validity or enforceability of or any rights of Lender under the DIP Loan Documents, ~~the Interim DIP Order,~~ or the ~~Final~~ DIP Order.

"Permitted Liens" means:

(a)     any Lien in favor of Lender pursuant to the DIP Loan Documents, ~~the Interim DIP Order,~~ or the ~~Final~~ DIP Order to secure the DIP Obligations hereunder;

(b)     Liens existing on the Petition Date or any replacement liens~~, provided, however, that, pursuant to Section 364(d)(1), the Final Order shall provide that all such liens shall be rendered junior and second to the liens and security interest granted Lender herein; provided, however, that on an interim basis, the Lender is prepared to accept the lien priority established by the Interim Order entered in a form that is satisfactory to the Lender in its sole discretion~~;

(c)     Liens on (i) real estate for real estate Taxes not yet delinquent and (ii) Liens for Taxes, assessments, governmental charges, levies or claims that are being diligently contested in good faith by appropriate proceedings and for which adequate reserves shall have been set aside on the Debtors' books, but only so long as no foreclosure, restraint, sale or similar proceedings have been commenced with respect thereto;

(d)     Liens of carriers, warehousemen, mechanics, laborers and materialmen and other similar Liens incurred in the ordinary course of business for sums not yet due or being contested in good faith, if such reserve or appropriate provision, if any, as shall be required by GAAP shall have been made therefore; and

(e)     Liens incurred in the ordinary course of business after the Petition Date in connection with worker's compensation, unemployment insurance or similar legislation.

"Permitted Weekly Variance" shall mean a weekly variance of up to ten percent (10%) with respect to any one line item of the Budget, provided that the overall weekly disbursements do not exceed one hundred five percent (110%) of the budgeted expenses of the Debtors, as reflected in the Budget.

"Property" means all types of real, personal, tangible, intangible, or mixed property, whether owned or hereafter acquired in fee simple or leased by the Debtor.

"Schedules" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by each Debtor in their respective chapter 11 cases on the Petition Date.

BPOWERS/2195959.5/067679

"Superpriority Claims" means any debt or other claim arising out of credit obtained or debt incurred by the Debtors having priority in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code.

"Tax" or "Taxes" means all taxes, assessments, imposts, fees, or other charges at any time imposed by any Laws or Governmental Unit.

"Tax Code" means the Internal Revenue Code of 1986, as amended.

"UCC" means the Uniform Commercial Code as adopted in the State of New York as of the date of this Agreement.

"U.S. Trustee" means the United States Trustee for Region 2.

1.2     Other Definitional Provisions.

(a)     Unless otherwise specified therein, all terms defined in this Agreement shall have the defined meanings when used in any other DIP Loan Document or any certificate or other document made or delivered pursuant hereto.

(b)     As used herein, in any other DIP Loan Document and in any certificate or other document made or delivered pursuant hereto, accounting terms relating to the Debtor not defined herein, and accounting terms partly defined herein to the extent not defined, shall have the respective meanings given to them under GAAP.

(c)     The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section, subsection, schedule and exhibit references are to this Agreement unless otherwise specified.

(d)     The meanings given to terms defined herein shall be equally applicable to the singular and plural forms of such terms.

SECTION 2.     ~~SECTION 2.~~ DIP LOAN.

2.1     DIP Loan Commitment.     Subject to and in accordance with the terms and conditions of this Agreement, including, without limitation, the entry of a ~~Final~~ DIP Order that is satisfactory to Lender, in its sole discretion, Lender shall make advances to the Debtors up to the maximum principal amount of the DIP Loan Commitment (the "DIP Loan")~~, in Lender's sole discretion~~.

2.2     Term.     The Term of the DIP Loan Commitment shall be from the Petition Date through December 31, 2018 (the "Term").     Upon the expiration of the Term, unless otherwise extended by Lender, in its sole discretion, all amounts due and owing under the DIP Loan, including interest and fees, shall immediately become due and owing to Lender.

BPOWERS/2195959.5/067679

2.3     Advances.  Provided that no Default shall have occurred and no circumstances exist that, with the giving of notice and/or the passage of time, would constitute a Default, advances under the DIP Loan shall be made if and when requested in writing on behalf of the Debtors by a Debtor Representative in order to meet the Debtors' cash needs as set forth in the Budget.  The Debtor Representative will be required to make any requests for advances from the Lender in writing by 12:00 noon on the Friday preceding the week during which such advances are required in accordance with the Budget and the Debtors' cash position.

2.4     Use of Proceeds.  The proceeds of the DIP Loan shall be used by the Debtors for the sole purpose of financing expenditures in accordance with the Budget, subject to the Permitted Weekly Variance.

2.5     Collateral.  As provided in the ~~Final~~ DIP Order, all indebtedness, including DIP Obligations under this Agreement and the DIP Loan Documents shall be secured by automatically perfected security interests and Liens granted pursuant to Section 364(c)(2) and ~~364~~(dc)(~~1) of the Bankruptcy Code, with first priority on all Collateral; provided, however, that on an interim basis, the Lender is prepared to accept the lien priority established by an Interim Order entered in a form that is satisfactory to the Lender in its sole discretion~~3) of the Bankruptcy Code.

2.6     Monthly Interest Payments.  The Debtor shall pay monthly interest payments to the Lender in accordance with the terms of this DIP Loan, as computed in accordance with Section 3.2 of this Agreement.  Monthly interest payments shall automatically accrue and be capitalized to the principal amount of the DIP Obligations, and shall thereafter be deemed to be a part of the principal amount of the DIP Obligations.

2.7     Prepayment.  The unpaid principal amount of the DIP Loan, together with any and all accrued interest thereon through the date of prepayment, may be voluntarily paid or prepaid, in whole or in part, without premium or penalty.

2.8     ~~Interim and Final~~ DIP ~~Orders~~Order.  For the avoidance of doubt and without waiving any discretion or other rights reserved to the Lender in this Agreement, unless otherwise consented to by the Lender through written authorization, the ~~Interim DIP Order and Final~~ DIP Order, if any, will not be acceptable to the Lender and no DIP Loan shall be funded by the Lender, unless the same contains, inter alia, the following provisions:

(a)     ~~(a)     A first priority,~~A valid, perfected~~, priming~~ lien on all of the Collateral shall ~~be granted~~be granted to Lender to secure repayment of the DIP Loan as contemplated by Section 2.4 hereof~~; provided, however, that on an interim basis, the Lender is prepared to accept the lien priority established by an Interim Order entered in a form that is satisfactory to the Lender in its sole discretion~~;

(b)     A Superpriority Claim shall be granted to the Lender against each Debtor in an amount no less than the DIP Obligations; and

(c)     It shall be an Event of Default under the ~~Final~~DIP Order, if any, if the Debtors shall fail to secure the entry of orders of the Bankruptcy Court, in form and substance acceptable to Lender:

BPOWERS/2195959.5/067679

<blockquote>
(i) approving a disclosure statement for the Debtors' joint plan of reorganization, on or before November 20, 2018; and

(ii) confirming a joint plan of reorganization of the Debtors, on or before December 31, 2018.
</blockquote>

SECTION 3. ~~SECTION 3.~~ GENERAL PROVISIONS APPLICABLE TO DIP LOAN.

3.1 <u>No Note</u>. This Agreement, the DIP Loan Documents, ~~any Interim DIP Orders~~ and the ~~Final~~ DIP Order fully evidence and memorialize the DIP Obligations, and no other instrument is required to evidence such DIP Obligations.

3.2 <u>Interest Rates</u>.

(a) <u>Interest Rate</u>. Subject to <u>Section 3.2.(b)</u> hereof, the DIP Loan shall bear interest at a rate of ~~four~~eight (~~4~~8%) percent per annum.

(b) <u>Default Rate</u>. Upon the occurrence and during the continuance of a Default, and provided that Lender shall have provided a Notice of Default as provided in Section 6.2 and any applicable cure period has expired, the DIP Loan and all other amounts unpaid and outstanding under this Agreement shall bear interest at a rate equal to ~~twenty-four~~twelve (~~24~~12%) percent per annum ~~or the Highest Lawful Rate, whichever is greater~~ (the "<u>Default Rate</u>").

(c) <u>Computation of Interest</u>. Interest on the Advances shall be computed on the basis of a year of 365 days and the actual days elapsed (including the first day but excluding the last day) occurring in the period for which such interest is payable, unless such calculation would exceed the Highest Lawful Rate, in which case interest shall be calculated on the per annum.

3.3 <u>Collateral</u>.

(a) <u>Grant of Security Interest</u>. The Debtors each hereby grant to Lender a security interest in all of their respective Collateral as security for the full and prompt payment in cash and performance of the DIP Obligations.

(b) <u>Perfection; Duty of Care</u>. Until all the DIP Obligations have been paid and performed in full, the Debtors shall take all actions reasonably requested by Lender or otherwise required to perfect, maintain and protect Lender's security interest in the Collateral, including delivering to Lender all Collateral in which Lender's security interest may be perfected by possession together with such endorsements as Lender may request. The Debtors shall pay when due all Tax assessments and other charges imposed upon or with respect to the Collateral or any part thereof, first arising after the Petition Date, unless such assessments and charges are subject to a good faith contest adequately reserved for by the Debtors. If the Debtors shall fail to pay such amounts, upon prior written notice to the Debtors, Lender may do so and add the amount of such payment to the principal owed under the DIP Loan. Upon prior written notice to the Debtors, Lender may discharge any Lien that is not a Permitted Lien, pay for any insurance, or take any other action the Debtors are required to take pursuant to this Agreement but have not taken, and add the amount of such payment to the principal owed under the DIP Loan.

SECTION 4. ~~SECTION 4.~~ AFFIRMATIVE COVENANTS.

The Debtors hereby agree that, so long as any portion of the DIP Loan or other DIP Obligation remains outstanding and unpaid or any other amount is owing to Lender hereunder, the Debtors shall:

4.1     Payment of Post-Petition Obligations.   Pay, discharge or otherwise satisfy all post-Petition Date obligations and liabilities as required pursuant to the Bankruptcy Code or by order of the Court.

4.2     Insurance.

(a)     Maintain with financially sound and reputable insurance companies insurance on all Collateral in at least such amounts and with only such deductibles as are usually maintained, and against at least such risks as are usually insured against in the same general area, by companies engaged in the same or a similar business; and furnish to Lender, at their request, full information as to the insurance carried.

(b)     Lender shall be named as an additional insured and as its interests may appear on all insurance maintained by the Debtors pursuant to Section 4.2(a) hereof.

4.3     Books and Records.   Keep proper books of record and account in which complete and correct entries are made of all dealings and transactions in relation to the Debtors' business and activities and which permit financial statements to be prepared in conformity with GAAP and all applicable Laws.

4.4     Cash Accounts.   Deposit and maintain all proceeds of the DIP Loan in only such accounts permitted by the Court's order approving the Debtors' use after the Petition Date of its existing bank accounts and cash management system.

4.5     Visits and Inspections.   Promptly permit representatives of Lender, upon prior written notice to the Debtors, from time to time during normal business hours to (a) visit and inspect any Property of the Debtors as often as Lender shall reasonably deem advisable, (b) make such inspections of, abstracts from and copies of the Debtors' books and records as Lender shall deem advisable, and (c) discuss with the Debtors' members, officers and the auditors of the Debtors, the Debtors' business, operations, assets, liabilities, financial positions, results of operations and business prospects as often as Lender shall deem advisable.

4.6     Use of Proceeds.   Use the proceeds of the DIP Loan solely in accordance with the Budget (as applicable) subject to the Permitted Variance and upon the terms and conditions set forth in this Agreement, including without limitation Section 2.3 hereof.

4.7     Compliance with Law.   Comply in all material respects with all requirements of law applicable to the Property (including but not limited to requirements relating to the environment or hazardous or toxic substances) and the Bankruptcy Code.

SECTION 5. ~~SECTION 5.~~ NEGATIVE COVENANTS.

BPOWERS/2195959.5/067679

The Debtors hereby agree that each shall not, directly or indirectly so long as the DIP Loan or any of the DIP Obligations remain outstanding and unpaid, or any other amount is owing to Lender hereunder (it being understood that each of the permitted exceptions to each of the covenants in this Section 5 is in addition to, and not overlapping with, any other of such permitted exceptions except to the extent expressly provided):

5.1    Debt.  Create, incur, assume or suffer to exist any debt, except:

(a)    Debt in existence on the date of this Agreement;

(b)    the DIP Loan and this Agreement; and

(c)    Debt incurred by the Debtors within the Budget, subject to the Permitted Weekly Variance, in the ordinary course of business in the form of accounts payable and accrued expenses.

5.2    Limitation on Liens.  Create, incur, assume or suffer to exist any Lien upon any of its property, assets, income or profits, whether now owned or hereafter acquired, except Permitted Liens and the Carve Out.

5.3    Use of Proceeds.  Use the proceeds of the DIP Loan for any purpose not set forth in each respective Budget or in Section 2.3 hereof, subject to the Permitted Weekly Variance.

5.4    DIP Financing.  Incur, or apply to the Court for authority to incur, or suffer to exist, any (i) indebtedness having the priority afforded by Section 364(c) or (d) of the Bankruptcy Code (including any Superpriority Claims) other than the financing provided for under this Agreement and the other DIP Loan Documents or (ii) obligation to make adequate protection payments, or otherwise provide adequate protection, other than as contemplated by the ~~Interim Order or the Final~~ DIP Order or in the Budget, or as may be required by order of the Court in connection with the provision of adequate protection to holders of Permitted Liens whose collateral is sold or otherwise disposed of or as to which Lender consents~~, provided, however, that on an interim basis, the Lender is prepared to accept the lien priority established by the Interim Order entered in a form that is satisfactory to the Lender in its sole discretion~~.

5.5    Alteration of Rights of Lender.  Limit, affect or modify, or apply to the Court to limit, affect or modify, any of Lender's rights with respect to the DIP Obligations, including rights with respect to the Collateral and the priority thereof, except with the prior written consent of Lender.

5.6    Chapter 11 Claims.  Except as permitted under the ~~Final~~ DIP Order, apply to the Court for the authority to incur, create, assume, suffer or permit any claim, Lien or encumbrance (other than Permitted Liens and the Carve Out) against the Debtors, or any of their assets in the Chapter 11 Case to be pari passu with, or senior to, the Liens and claims of Lender granted and arising under the DIP Loan Documents.

5.7    Superpriority Administrative Expense.  Create or permit to exist any Superpriority Claims (other than with respect to this Agreement or the ~~Interim or Final~~ DIP ~~Orders~~Order and other than the Carve Out).

BPOWERS/2195959.5/067679

5.8    Alterations.  Undertake any alterations or modifications to the Property without Lender's prior written consent.

5.9    Transfers.  Transfer, directly or indirectly, any of its right, title or interest in, to or under any of the Collateral without the Lender's prior written consent.

SECTION 6.  ~~SECTION 6.~~  DEFAULT.

6.1    Default.  In addition to the Events of Default under the ~~Interim DIP Order and/or Final~~ DIP Order, the following shall constitute a Default:

(a)    The Debtors shall fail to pay any principal or interest of the DIP Loan or any other DIP Obligation (including any fees or reimbursable amounts) when any such amount becomes due in accordance with the terms hereof, which failure continues for a period of five (5) Business Days after notice thereof from Lender; or

(b)    The Debtors shall default in the observance or performance of any covenant, agreement, obligation or restriction set forth in this Agreement or any other DIP Loan Document, and such Default shall continue for a period of ten (10) Business Days after notice thereof from Lender; or

(c)    The Court shall enter an order with respect to the Debtors dismissing the Chapter 11 Case or converting it to a case under chapter 7 of the Bankruptcy Code, or, without the prior written consent of Lender (i) appointing a trustee in the Chapter 11 Case or (ii) appointing a responsible officer or an examiner with enlarged powers relating to the operation of the Debtors' business (beyond those set forth in Section 1106(a)(3) or (4)) under Bankruptcy Code Section 1106(b); or

(d)    The Debtor shall fail to comply with the terms of the ~~Interim~~ DIP Order ~~or the Final DIP Order, if any~~; or

(e)    There occurs any Material Adverse Change, including without limitation, any impairment to the value of Collateral which Lender, in good faith, deems will threaten timely payment in full of the DIP Loan; or

(f)    The Court grants any superpriority administrative expense claim or Lien or enters any order granting relief from the automatic stay (if not in favor of Lender) on any assets of the Debtors which have an aggregate value in excess of $~~100,000,~~250,000, except with the express written consent of Lender.

(g)    The Debtors shall assume or reject any unexpired lease or executory contract relating to the Property without the prior written consent of the Lender.

6.2    Notice of Default and Certain Remedies.  If any Default shall occur, Lender may provide written notice (a "Notice of Default") to the Debtors and counsel for the official committee of unsecured creditors, if any, and the U.S. Trustee of such Default.  If a Default shall have occurred and Lender shall have provided a Notice of Default, then, upon expiration of any applicable cure period, so long as any such Default shall be continuing, any of the actions set forth

BPOWERS/2195959.5/067679

in the next sentence may be taken upon written notice by Lender to the Debtors, the U.S. Trustee, and to the official committee of unsecured creditors of the Debtors, if any. Lender may (A) without further order of the Court, declare the DIP Loan Commitment reduced to zero whereupon the DIP Loan Commitment and all obligations of Lender relating thereto shall be immediately terminated, (B) without further order of the Court, declare all or a portion of the DIP Loan (with accrued interest thereon) and all other amounts owing under this Agreement to be due and payable forthwith, whereupon the same shall immediately become due and payable, without further notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, protest, or other formalities of any kind, all of which are hereby expressly waived by the Debtors, (C) foreclose or otherwise enforce any Lien granted to Lender for the benefit of itself to secure payment and performance of the DIP Obligations in accordance with the terms of the DIP Loan Documents, and (D) exercise all other rights and remedies available at law or in equity. Except as expressly provided above in this <u>Section 6</u>, presentment, notice, notice of dishonor, notice of acceleration, notice of intent to accelerate, demand, protest and all other notices of any kind are hereby expressly waived.

<u>SECTION 7.</u>   ~~SECTION 7.~~ MISCELLANEOUS.

7.1    <u>Amendments and Waivers</u>.   No DIP Loan Document nor any terms thereof ~~maybe~~<u>may be</u> amended, supplemented or modified except in writing signed by Lender and Debtor.

7.2    <u>Notices</u>.   All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered by hand, or three Business Days after being deposited in the mail, postage prepaid, or one Business Day after being entrusted to a reputable commercial overnight delivery service, or, in the case of electronic mail notice, when sent, addressed as follows in the case of the Debtors and Lender or to such other address as may be hereafter notified by such respective parties hereto:

The Debtors:

        1141 Realty Owner, LLC
        Flatironhotel Operations, LLC
        1141 Broadway
        New York, New York 10001
        Attention: Chief Restructuring Officer

With a copy to

        Klestadt Winters Jureller
        Southard & Stevens, LLP
        292 Madison Avenue, 17th Fl.
        New York, NY  10017
        Attn:  Tracy L. Klestadt
            Joseph Corneau

Lender:

Premier Flatiron, LLC
c/o Mermel Associates PLLC
One Hollow Lane, Suite 303
Lake Success, New York 11042
Attn: Uzi Ben Abraham

With a copy to

SilvermanAcampora LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Attn:  Kenneth P. Silverman
       Brian Powers

7.3   No Waiver; Cumulative Remedies.   No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.  The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by Law.

7.4   Survival of Representations and Warranties.   All representations and warranties made hereunder and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the making of the DIP Loan.

7.5   Counterparts.  This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

7.6   Additional Grant of Lien.  All DIP Obligations, contingent or absolute (including, without limitation, the principal thereof, interest thereon, and any costs and expenses owing in connection therewith) which may now or from time to time hereafter be owing by the Debtors to Lender under any of the DIP Loan Documents shall be secured as set forth in the Final DIP Order.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

[The remainder of this page is intentionally left blank.]

BPOWERS/2195959.5/067679

DEBTORS

**1141 REALTY OWNER, LLC**,

_____

By:_____
Title:_____

**FLATIRONHOTEL OPERATIONS, LLC**,

_____

By:_____
Title:_____

LENDER

**PREMIER FLATIRON LLC**,

_____

By:_____
Title:_____

BPOWERS/2195959.5/067679

# EXHIBIT A

## BUDGET

Document comparison by Workshare Professional on Wednesday, September 05, 2018 10:25:33 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\BPowers\Desktop\1141 - DIP Agreement (as filed).doc |
| Description | 1141 - DIP Agreement (as filed) |
| Document 2 ID | interwovenSite://SA_DMS/SA/2195959/5 |
| Description | #2195959v5<SA> - 1141 Realty - DIP Loan Agreement |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 23 |
| Deletions | 54 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 77 |

## Exhibit C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                                    Chapter 11

1141 REALTY OWNER, LLC, *et al.*,                   Case No. 18-12341 (SMB)

                                     Debtors.          (Jointly Administered)
--------------------------------------------------------x

## FINAL ORDER PURSUANT
## TO SECTIONS 363, 364(c), AND 503
## OF THE BANKRUPTCY CODE AUTHORIZING
## DEBTORS IN POSSESSION TO INCUR POST-PETITION SECURED
## INDEBTEDNESS, GRANTING SECURITY INTERESTS AND PRIORITY CLAIMS,
## PROVIDING ADEQUATE PROTECTION AND GRANTING ADDITIONAL RELIEF

Upon the Motion (the "Motion")[1] of 1141 Realty Owner, LLC and Flatironhotel

Operations, LLC, debtors and debtors in possession (the "Debtors"), dated July 31, 2018, for an

Order: (1) Authorizing the Debtor to incur post-petition secured indebtedness with DIP Lender

Flatiron, LLC ("DIP Lender"); (2) Granting DIP Lender a senior valid, perfected and first

priority security interest and lien, pursuant to 11 U.S.C. §§ 364(c) and (d), on, among other

things, all of Debtors' pre- and post-petition now existing and after acquired, assets, including

but not limited to real property, accounts receivable, cash, accounts, inventory, machinery and

equipment, and intangibles together with the proceeds and products thereof; (3) Authorizing the

continued limited use of cash collateral; and (4) Modifying the automatic stay as to DIP Lender;

the Court finds as follows:

A.       On July 31, 2018 (the "Petition Date"), the each of the Debtors filed a voluntary

petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy

Code").

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

B.	After the Petition Date, the Debtors seek to enter into a Debtor in Possession Loan Agreement (the "DIP Loan Agreement").  Pursuant to the DIP Loan Agreement, DIP Lender will make loans, advances, and other financial accommodations to and for the benefit of the Debtors, secured by a lien on and security interest in, substantially all of Debtors' assets including but not limited to, all of Debtors' existing and after acquired bank accounts, deposits and cash, wherever located, whether now existing or hereafter acquired, of the Debtors, and all proceeds (including the proceeds of any asset sales to third parties), products, rents, revenues and profits of any of the foregoing, and all causes of action of whatever kind or nature (except Avoidance Actions);

C.	The successful operation of the business of the Debtors and their ability to propose and consummate a rehabilitation of their businesses and reorganization of their financial affairs is dependent on its ability to obtain, among other things, the loans and advances proposed to be made by DIP Lender;

D.	The Debtors require, and are unable to obtain, the working capital and credit necessary to successfully maintain their ongoing operations absent entry of this Order;

E.	The DIP Lender financing proposed hereunder is in the best interest of the Debtors, their estates, creditors, and parties in interest;

F.	DIP Lender is willing to lend the Debtors funds upon the terms and conditions of the DIP Loan Agreement and this Order;

G.	The Debtors would suffer irreparable harm absent obtaining the financing contemplated herein;

H.	The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtors' Chapter 11 case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409;

I.       The statutory predicates for the relief sought in the Motion are §§ 105, 362, 363 and 364 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Rules");

J.       It is in the best interest of the Debtors' estates that they be allowed to obtain financing from DIP Lender (the "DIP Financing") under the terms and conditions set forth in the DIP Loan Agreement, as such is necessary to permit the orderly administration of the Debtors' estates;

K.       The DIP Financing is being extended by DIP Lender in good faith and DIP Lender is entitled to the protection of § 364(e) of the Bankruptcy Code;

L.       The Debtors are unable to obtain sufficient levels of unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense necessary to maintain and conduct their business;

M.       The Debtors are unable to obtain unsecured credit allowable only under § 364(c)(1) of the Bankruptcy Code or secured credit allowable only under § 364(c)(2) and (c)(3) of the Bankruptcy Code, except under the terms and conditions as provided in the DIP Loan Agreement and this Order;

N.       Due notice of the Motion has been given to all creditors, all those who filed Notices of Appearance prior to the date of service of the Motion, all relevant taxing authorities, and the Office of the United States Trustee, pursuant to § 102 of the Bankruptcy Code, Rule 4001(c) of the Rules and any and all applicable Local Bankruptcy Rules; and

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.       The Motion is granted to the extent set forth herein.  The Debtors are hereby authorized to: (i) Obtain extensions of credit pursuant to the DIP Loan Agreement in accordance

with and solely for the purposes set forth in the budget, a copy of which is annexed hereto as Exhibit 1 (the "Budget"), and subject to the terms set forth in this Order; (ii) Make disbursements in accordance with the Budget; (iii) Incur any and all liabilities and obligations under the DIP Loan Agreement. DIP Lender is authorized to make funds available to the Debtors in accordance with the DIP Loan Agreement, including, at DIP Lender's sole discretion, to make funds available to the Debtors in excess of the budgeted amounts.  All obligations owed by the Debtors to DIP Lender shall be due and payable, and shall be paid, by the Debtors in accordance with the requirements of this Order and the DIP Loan Agreement.

2.      Except as specifically and expressly modified herein, DIP Lender's post-petition advances, loans, rights, and remedies, and the Debtors' obligations, consents, and requirements shall be governed in all respects by the terms and conditions of the DIP Loan Agreement, which is deemed incorporated herein, and which shall be in full force and effect with respect to the DIP Financing provided by DIP Lender.  The DIP Loan Agreement shall constitute valid, binding, and enforceable obligations of the Debtors in accordance with its terms.  The Debtors are authorized to do and perform all acts, to make, execute, and deliver any and all agreements, assignments, instruments and documents and to pay all filing fees and recording fees to give effect to any of the terms and conditions of the DIP Loan Agreement.  To the extent necessary, each officer of the Debtors and such other individuals as may be so authorized by the Debtors, are hereby authorized to execute and deliver each document necessary with respect to the DIP Financing, such execution and delivery to be conclusive of their respective authority to act in the name of, and on behalf of the Debtors.

3.      The Debtors are authorized to enter into and perform in accordance with the DIP Loan Agreement and this Order, and to borrow money on a secured basis from DIP Lender from

time to time on a final basis under the DIP Loan Agreement, in an amount no greater than $2,500,000 and as may be determined pursuant to the DIP Loan Agreement, and hereby grants to DIP Lender a security interest as provided for in the DIP Loan Agreement and this Order, to be used by the Debtors strictly in accordance with the Budget.

4.      Subject to the Carve Out, as defined below, to secure the DIP Financing, DIP Lender is hereby granted, pursuant to sections 364(c)(2) and 364(c)(3), and subject to the terms and conditions of the DIP Loan Agreement, valid, enforceable and fully perfected, liens on and security interests in all of the real property, personal property, assets or interests in property or assets of the Debtors, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created, and all cash and non-cash proceeds, rents, products and profits of any collateral described above (collectively, the "DIP Lender Collateral"), however no lien granted herein shall be superior to those granted to the Successor Pre-Petition Lender in the Court's order authorizing the Debtors' use of cash collateral (ECF Doc. No. 23) (the "Cash Collateral Order").

5.      This Order shall be sufficient evidence of DIP Lender's perfected post-petition liens and security interests in and to DIP Lender Collateral and shall be binding, enforceable and perfected upon the entry of this Order.  The Debtors are authorized and directed to execute such documents including, without limitation, Uniform Commercial Code financing statements and to pay such costs and expenses as may be reasonably required to perfect DIP Lender's security interests in the DIP Lender Collateral as provided herein; DIP Lender is authorized (but not required) to file and record financing statements with respect to such security interests and liens, all such financing statements being deemed to have been filed or recorded on the Petition Date.

6.     The provisions of this Order shall inure to the benefit of DIP Lender and shall be binding upon the Debtors and their respective successors and assigns (including any trustee or other fiduciary herein appointed as a legal representative of the Debtors in this Chapter 11 case or in any succeeding case under Chapter 7 or otherwise with respect to the property of the Debtors' estates).

7.     Subject to the Carve Out as defined below, DIP Lender is also hereby granted an allowed super priority administrative claim as provided in § 364(c)(1) of the Bankruptcy Code against the Debtors' estates, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over all administrative expenses or charges against property arising in the Debtors' Chapter 11 cases or any superseding Chapter 7 cases, including without limitation those specified in §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 1113 or 1114 of the Bankruptcy Code, however such super priority administrative claim shall be not be superior to any similar claim granted to the Successor Pre-Petition Lender in the Cash Collateral Order.

8.     No payments and transfers of property of the estate to DIP Lender as provided, permitted, and/or required under the DIP Loan Agreement and this Order shall be avoidable or recoverable from DIP Lender.  The application of the proceeds of the DIP Lender Collateral shall be in accordance with the DIP Loan Agreement and this Order.

9.     DIP Lender is hereby authorized to charge and as applicable, continue to charge, the Debtors' loan account for all interest, administrative and other reasonable fees, transaction costs, legal fees, and expenses with respect to the DIP Financing, and any and all other expenses as provided in the DIP Loan Agreement, as well as such reasonable costs, expenses and fees relating to any mortgages, collateral securitization, or guarantees required by DIP Lender in

order to provide the DIP Financing.  In the event that DIP Lender seeks reimbursement of fees and expenses of its counsel ("Counsel"), Counsel's invoices with detailed time and expense records shall be sent to the Debtors, any official committee of unsecured creditors (the "Committee"), and the United States Trustee.  In the event that no objection is received by DIP Lender within fourteen (14) days of transmission of such invoices, Counsel's fees and expenses may be paid without further Court order.

10.     The Debtors shall provide DIP Lender with such written reports as reasonably requested by DIP Lender, and contemporaneously deliver copies of such reports to the Committee.  In addition, the Debtor shall provide DIP Lender and the Committee with: (i) Weekly budget to actual comparison reports; (ii) Weekly accounts receivable aging reports; and (iii) Rolling thirteen (13) week cash flow forecasts.  All reports must be in a format acceptable to DIP Lender and shall be received by DIP Lender no later than Wednesday of each week.  All written reports of the Debtors to DIP Lender shall be certified by an authorized representative of the Debtors acceptable to DIP Lender to be accurate to the best of such officer's knowledge, information and belief.

11.     Each of the following shall constitute an "Event of Default" for purposes of this Order:

(a)     The Court enters an order authorizing the sale of all or substantially all assets of the Debtors that does not provide for the payment in full to DIP Lender of its claims, in cash, upon the closing of the sale, unless otherwise agreed by DIP Lender in its sole and absolute discretion;

(b)     The Court enters an order granting relief from the automatic stay with respect to assets of the Debtors' estates to any third party if the affected assets of the Debtors total more than $250,000;

(c)     The Debtors cease operations of their present business as such existed on the Petition Date or take any material action for the purpose of effecting the foregoing without the prior written consent of DIP Lender;

(d)        Either or both of the Debtors' bankruptcy cases are either dismissed or converted to Chapter 7 cases, pursuant to an order of the Court, the effect of which has not been stayed;

(e)        A Chapter 11 trustee, an examiner, or any other responsible person or officer of the Court with similar powers is appointed by order of the Court, the effect of which has not been stayed;

(f)        A change in the Debtors' ownership or management occurs, in a manner that is not reasonably acceptable to DIP Lender;

(g)        This Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of DIP Lender; (i) materially and adversely affect the rights of DIP Lender hereunder, or (ii) materially and adversely affect the priority of any or all of DIP Lender's claims and/or the liens granted herein;

(h)        The occurrence, subsequent to the Petition Date, of an Event of Default under the DIP Loan Agreement. In the event of any inconsistency between the Events of Default of this Final Order and the DIP Loan Agreement, the provisions of this Final Order shall govern;

(i)        The Debtor expends any funds or monies for any purpose other than those set forth on the Budget within a variance of up to ten percent (10%) with respect to any one line item of the Budget, provided that the overall weekly disbursements do not exceed one hundred ten percent (110%) of the budgeted expenses of the Debtors, but any accrued expenses of the professionals retained by the Debtors or the Committee in excess of the budgeted amounts shall not, in and of itself, be an Event of Default;

(j)        The occurrence of a material adverse change, including without limitation any such occurrence resulting from the entry of any order of the Court, or otherwise in each case as determined by DIP Lender in: (1) the condition (financial or otherwise), operations, assets, business or business prospects of the Debtors; (2) the Debtors' ability to repay DIP Lender; and/or (3) the value of the DIP Lender Collateral;

(k)        Any material and/or intentional misrepresentation by the Debtors in any financial reporting or certifications to be provided by the Debtors to DIP Lender;

(l)        The Debtors' non-compliance with or default under any of the terms and provisions of this Order or the DIP Loan Agreement; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtors within seven (7) days after

notice of such non-compliance or default is given to the Debtors by DIP Lender; and

(m)    The Court enters an order authorizing the Debtors to obtain credit or the incur indebtedness secured by a lien or security interest which is equal or senior to the liens or security interests held by DIP Lender, or which is entitled to priority administrative status which is equal to or superior to that granted to DIP Lender herein, unless, (i) DIP Lender shall have given its prior written consent thereto, (ii) such order determines that DIP Lender is adequately protected; or (iii) such Order requires that there shall first be indefeasibly paid in full to DIP Lender all debts and obligations of the Debtors which arise or result from the DIP Loan Agreement and the obligations, loans, credit, security interests and liens authorized herein

12.    Upon the occurrence of an Event of Default and five (5) day's written notice thereof by DIP Lender to the Debtors' counsel, the Committee's counsel, and the Office of the U.S. Trustee (which notice may be given by facsimile or e-mail transmission) (the "Default Notice"), or upon the occurrence of the maturity date set forth in the DIP Loan Agreement, the Debtors' right to borrow under the DIP Loan Agreement shall terminate and DIP Lender shall have no obligation to make any further DIP Financing.

13.    With respect to an Event of Default as to which a Default Notice has been given, the Debtors, the Committee, and/or the U.S. Trustee shall have seven (7) days from the receipt of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court on notice to DIP Lender enjoining or restraining DIP Lender from exercising rights and remedies based upon the Event of Default specified in the Default Notice (the "Restraint on Remedies").

14.    With respect to an Event of Default as to which a Default Notice has been given: (i) Immediately upon expiration of the Remedy Notice Period, unless a Restraint on Remedies has timely been obtained from the Court, or (ii) Immediately upon the occurrence of the maturity date set forth in the DIP Loan Agreement, the Debtors' right to borrow shall terminate pursuant to this Order, the Budget shall cease, and the obligations due DIP Lender shall be immediately

due and payable. Immediately upon the expiration of the Remedy Notice Period, unless a Restraint on Remedies has been timely obtained from the Court, DIP Lender, upon filing with the Court a notice of the expiration of the Remedy Notice Period, shall have the right, free of the restrictions of § 362 or under any other section of the Bankruptcy Code, to exercise all of its contractual, legal and equitable rights and remedies as to all or such part of the DIP Lender Collateral as DIP Lender shall elect.

15. As consideration for DIP Lender providing DIP Financing and the Carve Out, as defined below, no expenses of administration of the Debtors' Chapter 11 case or any future proceeding which may result from such case, including liquidation in this Chapter 11 case or other proceedings under the Bankruptcy Code, shall be charged against DIP Lender Collateral pursuant to § 506(c) of the Bankruptcy Code, other than the Carve Out, defined below, as applicable, without the prior written consent of DIP Lender and no such consent shall ever be implied from any other action, inaction or acquiescence by DIP Lender.

16. The automatic stay provided by § 362 of the Bankruptcy Code shall be and is hereby vacated and terminated to the extent necessary as to DIP Lender with respect to the creation, perfection and implementation of DIP Lender's post-petition liens and security interests in the DIP Lender Collateral.

17. The provisions of this Order and any action pursuant thereto shall be and remain in effect unimpaired and shall survive entry of any order which may be entered confirming a Plan of Reorganization of the Debtors or converting this case from Chapter 11 to Chapter 7 and the terms and provisions of this Order, as well as the priorities, liens and security interests created hereunder, shall continue in this or any other superseding case under the Code, and such

liens and security interests shall maintain that priority as provided for in this Order until satisfied and discharged in full.

18.     The term "Carve Out" means: (i) Quarterly fees, and interest thereon, of the United States Trustee and other fees due the United States Bankruptcy Court pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717, and any fees due to the Clerk of the Court; (ii) Allowed fees and expenses of the professionals retained by the Debtors and the Committee, in excess of the retainers paid by the Debtors, pursuant to Bankruptcy Court order, in an aggregate amount not to exceed the sum of the dollar amount of such fees and expenses to the extent (a) incurred prior to the expiration of the Remedy Notice Period for an Event of Default and remaining unpaid, and/or (b) previously or subsequently allowed by Court Order, and at all times and in both cases, limited in amount to the aggregate amounts specifically provided for in the Budget for each professional, regardless of the date on which such amounts appear in the Budget, and (c) fees and expenses of such professionals incurred  subsequent to the expiration of the Remedy Notice Period for an Event of Default not to exceed the amount of $20,000 in the aggregate; and (iii) any costs and fees of a Chapter 7 Trustee, should one be appointed, however, not to exceed the amount of $50,000.  Any amount of the Carve Out paid or otherwise funded by DIP Lender shall be treated as advances under the DIP Financing.

19.     Unless DIP Lender is paid in full on the effective date of a confirmed plan of reorganization, or DIP Lender expressly consents in writing, no plan of reorganization shall be proposed by the Debtors in this case that shall impair, affect, amend or otherwise modify the rights of DIP Lender under this Order or DIP Loan Agreement.

20.     This Order has been negotiated in good faith and at arm's length between the Debtors and DIP Lender, and any credit extended and loans made to the Debtors pursuant to this

Order shall be deemed to be extended in good faith as that term is used in § 364(e) of the Bankruptcy Code.

21.     No rights are created under this Order for the benefit of any creditor of the Debtors, any other party in interest in the Debtors' bankruptcy case, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

22.     The terms and conditions of this Order shall be: (a) immediately enforceable notwithstanding Rule 6004(h) of the Rules; and (b) not be stayed absent (1) an application by a party in interest for such stay conforming with Rule 8007 of the Rules, and (2) a hearing upon notice to the Debtors and DIP Lender.

23.     To the extent that any of the provisions of this Order shall conflict with any of the provisions of the DIP Loan Agreement, this Order is deemed to control and shall supersede the conflicting provision(s).  To the extent that any of the provisions of this Order shall conflict with any order of the Court authorizing the Debtors to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then this Order is deemed to control and supersede the conflicting provision(s) in said orders.

24.     DIP Lender and the Debtors may amend, modify or supplement any of the provisions of the DIP Loan Agreement (collectively, a "Modification") without further order of the Court, provided that: (a) Such Modification is not material; (b) Notice of such Modification is filed with the Court and given to Committee counsel and the U.S. Trustee, reasonably prior to the proposed effective date thereof, except that filing with the Court shall not be required with respect to any Modification that in addition to being non-material is also technical and/or ministerial; and (c) the Committee does not oppose such Modification within three (3) business days of such Notice.  The foregoing provisions shall not apply to any forbearance or waiver by

DIP Lender with respect to any Event(s) of Default which may have occurred (and the foregoing provisions shall not limit or impair DIP Lender's absolute discretion to agree to such forbearance or waiver), provided that such forbearance or waiver is not itself conditioned upon the Debtors' agreeing to any Modification that is material.

25.     The Debtors' authorization to obtain DIP Financing pursuant to this Order, shall be in effect for the period commencing with the Petition Date through and including the maturity date set forth in the DIP Loan Agreement (the "Expiration Date").  The Debtors, DIP Lender, the Successor Pre-Petition Lender, and the Committee may amend or provide for new Budgets and extend the Expiration Date, without the need for further Court approval, provided that any amended Budget and notice of any extension of the Expiration Date is filed with the Court.

26.     DIP Lender shall not be subject to the equitable doctrines of "marshalling" or any similar claim or doctrine with respect to any DIP Lender Collateral.

27.     The Cash Collateral Order shall be deemed to be a final order of the Court as entered, except that: (i) the Cash Collateral Period (as defined therein) shall be extended indefinitely and the Debtors' use of cash collateral shall not terminate on September 7, 2018, (ii) the Cash Collateral Limit (as defined therein) shall be increased without limit, and (iii) the Budget approved herein shall supersede the budget annexed to the Cash Collateral Order, and may be amended pursuant to paragraph 25 hereof.

Dated:  New York, New York
        September __, 2018


        _____
        Hon. Stuart M. Bernstein
        United States Bankruptcy Judge

## Exhibit D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                          Chapter 11

1141 REALTY OWNER, LLC, *et al.*,                               Case No. 18-12341 (SMB)

                                    Debtors.                    (Joint Administration
--------------------------------------------------------x      Pending)(Jointly Administered)


**FINAL ORDER PURSUANT
TO SECTIONS 361, 363, 364(c), 364(d), 503, AND 503
507(b) OF THE BANKRUPTCY CODE AUTHORIZING
DEBTORS IN POSSESSION TO INCUR POST-PETITION SECURED INDEBTEDNESS,
GRANTING SECURITY INTERESTS AND PRIORITY CLAIMS, <u>PROVIDING
ADEQUATE PROTECTION AND GRANTING ADDITIONAL RELIEF</u>**

Upon the Motion (the "<u>Motion</u>")[1] of 1141 Realty Owner, LLC and Flatironhotel

Operations, LLC, debtors and debtors in possession (the "<u>Debtors</u>"), dated July 31, 2018, for an

Order: (1) Authorizing the Debtor to incur post-petition secured indebtedness with DIP Lender

Flatiron, LLC ("<u>DIP Lender</u>"); (2) Granting DIP Lender a senior valid, perfected and first priority

security interest and lien, pursuant to 11 U.S.C. §§ 364(c) and (d), on, among other things, all of

Debtors' pre- and post-petition now existing and after acquired, assets, including but not limited to

real property, accounts receivable, cash, accounts, inventory, machinery and equipment, and

intangibles together with the proceeds and products thereof; (3) Authorizing the continued limited

use of cash collateral; and (4) Modifying the automatic stay as to DIP Lender; the Court finds as

follows:

A.      On July 31, 2018 (the "<u>Petition Date</u>"), the each of the Debtors filed a voluntary

petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy</u>

<u>Code</u>").

B.     After the Petition Date, the Debtors seek to enter into a Debtor in Possession Loan Agreement (the "DIP Loan Agreement").  Pursuant to the DIP Loan Agreement, DIP Lender will make loans, advances, and other financial accommodations to and for the benefit of the Debtors, secured by a ~~first~~ lien on and security interest in, substantially all of Debtors' assets including but not limited to, all of Debtors' existing and after acquired bank accounts, deposits and cash, wherever located, whether now existing or hereafter acquired, of the Debtors, and all proceeds (including the proceeds of any asset sales to third parties), products, rents, revenues and profits of any of the foregoing, and all causes of action of whatever kind or nature (except Avoidance Actions);

C.     The successful operation of the business of the Debtors and their ability to propose and consummate a rehabilitation of their businesses and reorganization of their financial affairs is dependent on its ability to obtain, among other things, the loans and advances proposed to be made by DIP Lender;

D.     The Debtors require, and are unable to obtain, the working capital and credit necessary to successfully maintain their ongoing operations absent entry of this Order;

E.     The DIP Lender financing proposed hereunder is in the best interest of the Debtors, their estates, creditors, and parties in interest;

F.     DIP Lender is willing to lend the Debtors funds upon the terms and conditions of the DIP Loan Agreement and this Order;

G.     The Debtors would suffer irreparable harm absent obtaining the financing contemplated herein;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

H. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtors' Chapter 11 case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409;

I. The statutory predicates for the relief sought in the Motion are §§ 105, ~~361,~~ 362, 363 and 364 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Rules");

J. It is in the best interest of the Debtors' estates that they be allowed to obtain financing from DIP Lender (the "DIP Financing") under the terms and conditions set forth in the DIP Loan Agreement, as such is necessary to permit the orderly administration of the Debtors' estates;

K. The DIP Financing is being extended by DIP Lender in good faith and DIP Lender is entitled to the protection of § 364(e) of the Bankruptcy Code;

L. The Debtors are unable to obtain sufficient levels of unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense necessary to maintain and conduct their business;

M. The Debtors are unable to obtain unsecured credit allowable only under § 364(c)(1) of the Bankruptcy Code or secured credit allowable only under § 364(c)(~~1~~2) and (c)(~~2~~3) of the Bankruptcy Code, except under the terms and conditions as provided in the DIP Loan Agreement and this Order;

~~N. The proposed adequate protection to the Successor Pre-petition Lender described in the Motion is sufficient under the circumstances to satisfy the requirements of § 361 of the Bankruptcy Code;~~

N. ~~O.~~ Due notice of the Motion has been given to all creditors, all those who filed Notices of Appearance prior to the date of service of the Motion, all relevant taxing authorities, and the Office of the United States Trustee, pursuant to § 102 of the Bankruptcy Code, Rule 4001(c) of the Rules and any and all applicable Local Bankruptcy Rules; and

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.       The Motion is granted to the extent set forth herein.  The Debtors are hereby authorized to: (i) Obtain extensions of credit pursuant to the DIP Loan Agreement in accordance with and solely for the purposes set forth in the budget, a copy of which is annexed hereto as Exhibit 1 (the "Budget"), and subject to the terms set forth in this Order; (ii) Make disbursements in accordance with the Budget; (iii) Incur any and all liabilities and obligations under the DIP Loan Agreement. DIP Lender is authorized to make funds available to the Debtors in accordance with the DIP Loan Agreement, including, at DIP Lender's sole discretion, to make funds available to the Debtors in excess of the budgeted amounts.  All obligations owed by the Debtors to DIP Lender shall be due and payable, and shall be paid, by the Debtors in accordance with the requirements of this Order and the DIP Loan Agreement.

2.       Except as specifically and expressly modified herein, DIP Lender's post-petition advances, loans, rights, and remedies, and the Debtors' obligations, consents, and requirements shall be governed in all respects by the terms and conditions of the DIP Loan Agreement, which is deemed incorporated herein, and which shall be in full force and effect with respect to the DIP Financing provided by DIP Lender.  The DIP Loan Agreement shall constitute valid, binding, and enforceable obligations of the Debtors in accordance with its terms.  The Debtors are authorized to do and perform all acts, to make, execute, and deliver any and all agreements, assignments, instruments and documents and to pay all filing fees and recording fees to give effect to any of the

terms and conditions of the DIP Loan Agreement. To the extent necessary, each officer of the Debtors and such other individuals as may be so authorized by the Debtors, are hereby authorized to execute and deliver each document necessary with respect to the DIP Financing, such execution and delivery to be conclusive of their respective authority to act in the name of, and on behalf of the Debtors.

3.      The Debtors are authorized to enter into and perform in accordance with the DIP Loan Agreement and this Order, and to borrow money on a ~~first priority~~ secured basis from DIP Lender from time to time on a final basis under the DIP Loan Agreement, in an amount no greater than $~~2,500,000.00~~2,500,000 and as may be determined pursuant to the DIP Loan Agreement, and hereby grants to DIP Lender a security interest as provided for in the DIP Loan Agreement and this Order, to be used by the Debtors strictly in accordance with the Budget.

4.      Subject to the Carve Out, as defined below, to secure the DIP Financing, DIP Lender is hereby granted, pursuant to sections 364(c)(2)~~, and~~ 364(c)(3), ~~and 364(d)(1),~~ and subject to the terms and conditions of the DIP Loan Agreement, valid, enforceable and fully perfected, ~~first priority priming~~ liens on and ~~senior~~ security interests in all of the real property, personal property, assets or interests in property or assets of the Debtors, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created, and all cash and non-cash proceeds, rents, products and profits of any collateral described above (collectively, the "<u>DIP Lender Collateral</u>"), <u>however no lien granted herein shall be superior to those granted to the Successor Pre-Petition Lender in the Court's order authorizing the Debtors' use of cash collateral (ECF Doc. No. 23) (the "Cash Collateral Order</u>").

5.      This Order shall be sufficient evidence of DIP Lender's perfected post-petition liens and security interests in and to DIP Lender Collateral and shall be binding, enforceable and

perfected upon the entry of this Order.  The Debtors are authorized and directed to execute such documents including, without limitation, Uniform Commercial Code financing statements and to pay such costs and expenses as may be reasonably required to perfect DIP Lender's security interests in the DIP Lender Collateral as provided herein; DIP Lender is authorized (but not required) to file and record financing statements with respect to such security interests and liens, all such financing statements being deemed to have been filed or recorded on the Petition Date.

6.      The provisions of this Order shall inure to the benefit of DIP Lender and shall be binding upon the Debtors and their respective successors and assigns (including any trustee or other fiduciary herein appointed as a legal representative of the Debtors in this Chapter 11 case or in any succeeding case under Chapter 7 or otherwise with respect to the property of the Debtors' estates).

7.      Subject to the Carve Out as defined below, DIP Lender is also hereby granted an allowed super priority administrative claim as provided in § ~~507~~364(~~b~~c)(1) of the Bankruptcy Code against the Debtors' estates, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over all administrative expenses or charges against property arising in the Debtors' Chapter 11 cases or any superseding Chapter 7 cases, including without limitation those specified in §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 1113 or 1114 of the Bankruptcy Code, however such super priority administrative claim shall be not be superior to any similar claim granted to the Successor Pre-Petition Lender in the Cash Collateral Order.

8.      No payments and transfers of property of the estate to DIP Lender as provided, permitted, and/or required under the DIP Loan Agreement and this Order shall be avoidable or

recoverable from DIP Lender. The application of the proceeds of the DIP Lender Collateral shall be in accordance with the DIP Loan Agreement and this Order.

9. DIP Lender is hereby authorized to charge and as applicable, continue to charge, the Debtors' loan account for all interest, administrative and other reasonable fees, transaction costs, legal fees, and expenses with respect to the DIP Financing, and any and all other expenses as provided in the DIP Loan Agreement, as well as such reasonable costs, expenses and fees relating to any mortgages, collateral securitization, or guarantees required by DIP Lender in order to provide the DIP Financing. In the event that DIP Lender seeks reimbursement of fees and expenses of its counsel ("Counsel"), Counsel's invoices with detailed time and expense records shall be sent to the Debtors, any official committee of unsecured creditors (the "Committee"), and the United States Trustee. In the event that no objection is received by DIP Lender within fourteen (14) days of transmission of such invoices, Counsel's fees and expenses may be paid without further Court order.

10. The Debtors shall provide DIP Lender with such written reports as reasonably requested by DIP Lender, and contemporaneously deliver copies of such reports to the Committee. In addition, the Debtor shall provide DIP Lender and the Committee with: (i) Weekly ~~borrowing base and collateral~~ budget to actual comparison reports; (ii) Weekly accounts receivable aging ~~report~~ reports; and (iii) Rolling thirteen (13) week cash flow forecasts. All reports must be in a format acceptable to DIP Lender and shall be received by DIP Lender no later than Wednesday of each week. All written reports of the Debtors to DIP Lender shall be certified by an authorized representative of the Debtors acceptable to DIP Lender to be accurate to the best of such officer's knowledge, information and belief.

11.     Each of the following shall constitute an "Event of Default" for purposes of this

Order:

(a)     The Court enters an order authorizing the sale of all or substantially all assets of the Debtors that does not provide for the payment in full to DIP Lender of its claims, in cash, upon the closing of the sale, unless otherwise agreed by DIP Lender in its sole and absolute discretion;

(b)     The Court enters an order granting relief from the automatic stay with respect to assets of the Debtors' estates to any third party if the affected assets of the Debtors total more than $250,000;

(c)     The Debtors cease operations of their present business as such existed on the Petition Date or take any material action for the purpose of effecting the foregoing without the prior written consent of DIP Lender;

(d)     Either or both of the Debtors' bankruptcy cases are either dismissed or converted to Chapter 7 cases, pursuant to an order of the Court, the effect of which has not been stayed;

(e)     A Chapter 11 trustee, an examiner, or any other responsible person or officer of the Court with similar powers is appointed by order of the Court, the effect of which has not been stayed;

(f)     A change in the Debtors' ownership or management occurs, in a manner that is not reasonably acceptable to DIP Lender;

(g)     This Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of DIP Lender; (i) materially and adversely affect the rights of DIP Lender hereunder, or (ii) materially and adversely affect the priority of any or all of DIP Lender's claims and/or the liens granted herein;

(h)     The occurrence, subsequent to the Petition Date, of an Event of Default under the DIP Loan Agreement. In the event of any inconsistency between the Events of Default of this Final Order and the DIP Loan Agreement, the provisions of this Final Order shall govern;

(i)     The Debtor expends any funds or monies for any purpose other than those set forth on the Budget within a variance of up to ten percent (10%) with respect to any one line item of the Budget, provided that the overall weekly disbursements do not exceed one hundred ten percent (110%) of the budgeted expenses of the Debtors, but any accrued expenses of the professionals retained by the Debtors or the Committee in excess of the budgeted amounts shall not, in and of itself, be an Event of Default;

BPOWERS/2196136.4/067679

(j) The occurrence of a material adverse change, including without limitation any such occurrence resulting from the entry of any order of the Court, or otherwise in each case as determined by DIP Lender in: (1) the condition (financial or otherwise), operations, assets, business or business prospects of the Debtors; (2) the Debtors' ability to repay DIP Lender; and/or (3) the value of the DIP Lender Collateral;

(k) Any material and/or intentional misrepresentation by the Debtors in any financial reporting or certifications to be provided by the Debtors to DIP Lender;

(l) The Debtors' non-compliance with or default under any of the terms and provisions of this Order or the DIP Loan Agreement; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtors within seven (7) days after notice of such non-compliance or default is given to the Debtors by DIP Lender; and

(m) The Court enters an order authorizing the Debtors to obtain credit or the incur indebtedness secured by a lien or security interest which is equal or senior to the liens or security interests held by DIP Lender, or which is entitled to priority administrative status which is equal to or superior to that granted to DIP Lender herein, unless, (i) DIP Lender shall have given its prior written consent thereto, (ii) such order determines that DIP Lender is adequately protected; or (iii) such Order requires that there shall first be indefeasibly paid in full to DIP Lender all debts and obligations of the Debtors which arise or result from the DIP Loan Agreement and the obligations, loans, credit, security interests and liens authorized herein

12. Upon the occurrence of an Event of Default and five (5) day's written notice thereof by DIP Lender to the Debtors' counsel, the Committee's counsel, and the Office of the U.S. Trustee (which notice may be given by facsimile or e-mail transmission) (the "Default Notice"), or upon the occurrence of the maturity date set forth in the DIP Loan Agreement, the Debtors' right to borrow under the DIP Loan Agreement shall terminate and DIP Lender shall have no obligation to make any further DIP Financing.

13. With respect to an Event of Default as to which a Default Notice has been given, the Debtors, the Committee, and/or the U.S. Trustee shall have seven (7) days from the receipt of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court on notice to DIP

BPOWERS/2196136.4/067679

Lender enjoining or restraining DIP Lender from exercising rights and remedies based upon the Event of Default specified in the Default Notice (the "Restraint on Remedies").

14.     With respect to an Event of Default as to which a Default Notice has been given: (i) Immediately upon expiration of the Remedy Notice Period, unless a Restraint on Remedies has timely been obtained from the Court, or (ii) Immediately upon the occurrence of the maturity date set forth in the DIP Loan Agreement, the Debtors' right to borrow shall terminate pursuant to this Order, the Budget shall cease, and the obligations due DIP Lender shall be immediately due and payable.  Immediately upon the expiration of the Remedy Notice Period, unless a Restraint on Remedies has been timely obtained from the Court, DIP Lender, upon filing with the Court a notice of the expiration of the Remedy Notice Period, shall have the right, free of the restrictions of § 362 or under any other section of the Bankruptcy Code, to exercise all of its contractual, legal and equitable rights and remedies as to all or such part of the DIP Lender Collateral as DIP Lender shall elect.

15.     As consideration for DIP Lender providing DIP Financing and the Carve Out, as defined below, no expenses of administration of the Debtors' Chapter 11 case or any future proceeding which may result from such case, including liquidation in this Chapter 11 case or other proceedings under the Bankruptcy Code, shall be charged against DIP Lender Collateral pursuant to § 506(c) of the Bankruptcy Code, other than the Carve Out, defined below, as applicable, without the prior written consent of DIP Lender and no such consent shall ever be implied from any other action, inaction or acquiescence by DIP Lender.

16.     The automatic stay provided by § 362 of the Bankruptcy Code shall be and is hereby vacated and terminated to the extent necessary as to DIP Lender with respect to the

creation, perfection and implementation of DIP Lender's post-petition liens and security interests in the DIP Lender Collateral.

17.     The provisions of this Order and any action pursuant thereto shall be and remain in effect unimpaired and shall survive entry of any order which may be entered confirming a Plan of Reorganization of the Debtors or converting this case from Chapter 11 to Chapter 7 and the terms and provisions of this Order, as well as the priorities, liens and security interests created hereunder, shall continue in this or any other superseding case under the Code, and such liens and security interests shall maintain that priority as provided for in this Order until satisfied and discharged in full.

18.     The term "Carve Out" means: (i) Quarterly fees, and interest thereon, of the United States Trustee and other fees due the United States Bankruptcy Court pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717, and any fees due to the Clerk of the Court; (ii) Allowed fees and expenses of the professionals retained by the Debtors and the Committee, in excess of the retainers paid by the Debtors, pursuant to Bankruptcy Court order, in an aggregate amount not to exceed the sum of the dollar amount of such fees and expenses to the extent (a) incurred prior to the expiration of the Remedy Notice Period for an Event of Default and remaining unpaid, and/or (b) previously or subsequently allowed by Court Order, and at all times and in both cases, limited in amount to the aggregate amounts specifically provided for in the Budget for each professional, regardless of the date on which such amounts appear in the Budget, and (c) fees and expenses of such professionals incurred  subsequent to the expiration of the Remedy Notice Period for an Event of Default not to exceed the amount of $20,000 in the aggregate; and (iii) any costs and fees of a Chapter 7 Trustee, should one be appointed, however, not to exceed the amount of $50,000.  Any amount of the Carve Out paid or otherwise funded by DIP Lender shall be treated as advances under the DIP Financing.

19.     Unless DIP Lender is paid in full on the effective date of a confirmed plan of reorganization, or DIP Lender expressly consents in writing, no plan of reorganization shall be proposed by the Debtors or the Committee in this case that shall impair, affect, amend or otherwise modify the rights of DIP Lender under this Order or DIP Loan Agreement.

20.     This Order has been negotiated in good faith and at arm's length between the Debtors and DIP Lender, and any credit extended and loans made to the Debtors pursuant to this Order shall be deemed to be extended in good faith as that term is used in § 364(e) of the Bankruptcy Code.

21.     No rights are created under this Order for the benefit of any creditor of the Debtors, any other party in interest in the Debtors' bankruptcy case, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

22.     The terms and conditions of this Order shall be: (a) immediately enforceable notwithstanding Rule 6004(h) of the Rules; and (b) not be stayed absent (1) an application by a party in interest for such stay conforming with Rule 8007 of the Rules, and (2) a hearing upon notice to the Debtors and DIP Lender.

23.     To the extent that any of the provisions of this Order shall conflict with any of the provisions of the DIP Loan Agreement, this Order is deemed to control and shall supersede the conflicting provision(s).  To the extent that any of the provisions of this Order shall conflict with any order of the Court authorizing the Debtors to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then this Order is deemed to control and supersede the conflicting provision(s) in said orders.

24.     DIP Lender and the Debtors may amend, modify or supplement any of the provisions of the DIP Loan Agreement (collectively, a "Modification") without further order of

the Court, provided that: (a) Such Modification is not material; (b) Notice of such Modification is filed with the Court and given to Committee counsel and the U.S. Trustee, reasonably prior to the proposed effective date thereof, except that filing with the Court shall not be required with respect to any Modification that in addition to being non-material is also technical and/or ministerial; and (c) the Committee does not oppose such Modification within three (3) business days of such Notice. The foregoing provisions shall not apply to any forbearance or waiver by DIP Lender with respect to any Event(s) of Default which may have occurred (and the foregoing provisions shall not limit or impair DIP Lender's absolute discretion to agree to such forbearance or waiver), provided that such forbearance or waiver is not itself conditioned upon the Debtors' agreeing to any Modification that is material.

25.     The Debtors' authorization to obtain DIP Financing pursuant to this Order, shall be in effect for the period commencing with the Petition Date through and including the maturity date set forth in the DIP Loan Agreement (the "Expiration Date"). The Debtors, DIP Lender, the Successor Pre-Petition Lender, and the Committee may amend or provide for new Budgets and extend the Expiration Date, without the need for further Court approval, provided that any amended Budget and notice of any extension of the Expiration Date is filed with the Court.

26.     DIP Lender shall not be subject to the equitable doctrines of "marshalling" or any similar claim or doctrine with respect to any DIP Lender Collateral.

27.     As adequate protection for the priming of the Successor Pre-Petition Lender's liens, the Debtors are hereby authorized to make the Adequate Protection Payments. In addition, the Successor Pre-Petition Lender may release the Lockbox Funds and apply them to the obligations of Owner under the Pre-Petition Loan Agreement, provided it provides the Debtors an accounting of receipts and disbursement thereof. The Cash Collateral Order shall be deemed to be a

final order of the Court as entered, except that: (i) the Cash Collateral Period (as defined therein) shall be extended indefinitely and the Debtors' use of cash collateral shall not terminate on September 7, 2018, (ii) the Cash Collateral Limit (as defined therein) shall be increased without limit, and (iii) the Budget approved herein shall supersede the budget annexed to the Cash Collateral Order, and may be amended pursuant to paragraph 25 hereof.

Dated:  New York, New York
~~August~~September __, 2018


_____
Hon. Stuart M. Bernstein
United States Bankruptcy Judge

Document comparison by Workshare Professional on Wednesday, September 05, 2018 10:24:07 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\BPowers\Desktop\1141 - Final DIP Order (as filed).doc |
| Description | 1141 - Final DIP Order (as filed) |
| Document 2 ID | interwovenSite://SA_DMS/SA/2196136/4 |
| Description | #2196136v4<SA> - 1141 Realty - FINAL DIP Financing Order |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 21 |
| Deletions | 23 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 44 |