SIDLEY AUSTIN LLP
Michael G. Burke
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
mgburke@sidley.com

*Counsel for Wilmington Trust, N.A.,*
*solely in its capacity as Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                    :
In re:                                              :    Chapter 11
                                                    :
1141 Realty Owner LLC, *et al.*                     :    Case No. 18-12341 (SMB)
                                                    :
                                                    :    Jointly Administered
                      Debtors.                      :
------------------------------------------------------X

**OBJECTION TO MOTION FOR AN ORDER TO SECTIONS 363, 364(c), AND 503 OF THE BANKRUPTCY CODE AUTHORIZING DEBTORS IN POSSESSION TO INCUR POST-PETITION SECURED INDEBTEDNESS, GRANTING SECURITY INTERESTS AND PRIORITY CLAIMS, PROVIDING ADEQUATE PROTECTION AND GRANTING ADDITIONAL RELIEF**

Wilmington Trust, N.A., solely in its capacity as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28 (the "Prepetition Secured Lender") hereby objects to the Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to Obtain Post-Petition, Priming, Senior Secured, Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 362, 364(c) and 364(d), Bankruptcy Rule 4001 (c) and Local Bankruptcy Rule 4001-2 [Docket No. 7] (the "DIP Motion").

## RELEVANT BACKGROUND

1. On July 31, 2018 (the "Petition Date"), the Debtors commenced cases under chapter 11 of the Bankruptcy Court by filing voluntary chapter 11 petitions with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2. As set forth in the Cash Collateral Stipulation (as defined herein), the Prepetition Secured Lender has a lien on all of the Owner's assets (the "Collateral") and all cash from the products, offspring, rents or profits from such Collateral, including any and all post-petition rents and revenues generated by the Debtors through the operation and use of the Collateral (including the Hotel), which constitute cash collateral as defined in 11 U.S.C. § 363 (the "Cash Collateral," and, together with all other Collateral under the Prepetition Loan Documents, the "Lender Collateral").[1]

3. At the first day hearing on August 2, 2018, the Prepetition Secured Lender objected to the Debtors' motion for post-petition financing pursuant to section 364(d) of the Bankruptcy Code and the Bankruptcy Court (i) adjourned the hearing on the DIP Motion and (ii) authorized, with the consent of the Prepetition Secured Lender, the limited use of the Prepetition Secured Lender's cash collateral on the terms set forth on the record.

4. On August 9, 2018, this Court entered an order approving an Interim Stipulation and Order Authorizing use of Cash Collateral and Granting Adequate Protection. [Docket No. 23] (the "Cash Collateral Order").

5. On September 5, 2018, the Debtors filed a Notice of Filing of (A) Revised Debtor in Possession Loan Agreement (the "Modified DIP Agreement") and (B) Revised Proposed Form of Order Granting DIP Financing Motion (the "Modified DIP Order") [Docket No. 37]. The

---

[1] All terms not defined herein shall have the meaning ascribed to them in the Cash Collateral Order.

2

proposed DIP lender under the DIP Motion and Modified DIP Agreement is Premier Flatiron, LLC ("Premier").

6. The Modified DIP Agreement contains certain material changes from the terms contained in the DIP Motion that was filed with this Court In July, including (1) a change doubling the interest rate (the "Non-Default Rate") for the DIP loan from four percent (4%) to eight percent (8%); (2) a change in the Default Rate from twenty-four percent (24%) to twelve percent (12%), and (3) in lieu of a Priming Lien and Superpriority Claim, liens and superpriority claims that are subject to the liens and superpriority claims granted to the Prepetition Secured Lender in the Cash Collateral Order. Additionally, the Modified DIP Order permits the Debtors to use the Prepetition Secured Lender's Cash Collateral without the consent of the Prepetition Secured Lender and seemingly does not provide adequate protection for post-petition rents generated from the use and operation of the Lender Collateral (including the Hotel) after September 7, 2018, even though the Cash Collateral Order provided that the Prepetition Secured Lender is entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code.

7. On the same date as the Debtors filed the Modified DIP Agreement, TCG Acquisition Debt Acquisition 2 LLC, the holder of Promissory Note B, ("TCG") provided a binding commitment letter (the "TCG Commitment Letter") to the Debtors whereby it committed to extend non-priming post-petition financing on the terms contained in the Commitment Letter, which is attached hereto as Exhibit A. As set forth therein, those terms would be consistent with the terms set forth in the DIP Motion, except that the Non-Default Rate would be 3%, any liens and claims would be junior to the liens and claims of the Prepetition Secured Lender and the Prepetition Lender would not require current pay interest as adequate protection payments.[2]

---

[2] TCG had not reviewed the Modified DIP Agreement, which was filed today, prior to sending its Commitment Letter to the Debtors this afternoon. TCG is revising its Commitment Letter to reflect that it will enter into a Debtor

3

Moreover, the Prepetition Secured Lender is willing to consent to the continued use by the Debtor of its Cash Collateral pursuant to the terms of the Cash Collateral Stipulation if the Debtors enter into a post-petition financing agreement with TCG.

8.  The Debtors have seemingly rejected TCG's offer to provide post-petition financing because the TCG Commitment Letter was submitted a day prior to the hearing and the Debtors will instead proceed with post-petition financing set forth in the Modified DIP Agreement with Premier, which was only filed with this Court a day before the hearing.

## BASIS FOR OBJECTION

9.  As noted in the DIP Motion, bankruptcy courts routinely defer to a debtor's business judgment in considering whether to approve a debtor's request to obtain post-petition financing. See, e.g., In re United States Mineral Prods. Co., Case No. 01-2471 (JFK), 2005 WL 5887218, at *2 (Bankr. D. Del. Nov. 29, 2005) (approving financing based on debtor's and trustee's exercise of "prudent business judgment"); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (holding that court should defer to debtor's "reasonable business judgment").

10.  Here, TCG provided a DIP Commitment and is willing to provide post-petition financing on substantially the same terms as provided in the Modified DIP Agreement, provided however, that TCG will commit to provide DIP financing at less than half the price (Non-Default Rate at 3% rather than 8%). While the TCG DIP Commitment was submitted the day before the

---

in Possession Loan Agreement on the terms contained in the Modified DIP Agreement; provided, however, it will extend the financing at the Non-Default Interest of 3%.

4

hearing, the Modified DIP Agreement – which doubled the Non-Default Rate originally contained in the DIP Motion -- was filed with the Court and made available to TCG on the very same day.

11. Moreover, there appears to be no immediate need for the funds being advanced through the Modified DIP Agreement because, among other reasons, the Prepetition Secured Lender would be willing to extend the Debtors use of the Prepetition Secured Lender's Cash Collateral after September 7, 2018 to allow for a existing Modified Debtor in Possession Loan Agreement to be formatted and modified to reflect the post-petition financing that TCG is willing provide to the Debtors. Thus, while a Court will generally defer to a debtor's sound business judgment in relation to the approval of post-petition financing, the Debtors have not established that it would be an exercise of sound business judgment to forego the post-petition financing being offered by TCG simply because the TCG Commitment was delivered on September 5, 2018. Here, post-petition financing being proposed by TCG is clearly a better alternative to the post-petition financing being proposed by Premier, so this Court should deny the DIP Motion.

## RESERVATION OF RIGHTS

12. The Prepetition Secured Lender reserves all rights to supplement this objection at or prior to the hearing.

Dated: New York, New York
      September 6, 2018                    SIDLEY AUSTIN LLP

                                      By:   /s/ Michael G. Burke
                                               Michael G. Burke
                                               787 Seventh Avenue
                                               New York, New York 10019
                                               Telephone: (212) 839-5300
                                               Facsimile: (212) 839-5599

                                               *Counsel for Wilmington Trust, N.A.,*
                                               *soley in its capacity as Trustee*

# **<u>Exhibit A</u>**


# TRIANGLE CAPITAL GROUP

TCG Debt Acquisitions 2 LLC
c/o Triangle Capital Group LLC
452 Fifth Avenue, 30th Floor
New York, NY 10018

September 5, 2018

Re: Binding Loan Commitment

TCG Debt Acquisitions 2 LLC ("TCG"), a secured lender in Case No 18-12341 (SMB), is ready, willing and able to provide financing on the same terms set forth in that certain Debtor In Possession Loan Agreement set forth as Exhibit C to Debtor's Motion for Entry of Interim and Final Orders Authorizing the Debtors to Obtain Post-Petition, Priming, Senior Secured, Superpriority Financing (Filed on 7/31/2018).

In addition, TCG is prepared to advance such funds with the following enhancements to the initial proposed financing:

1. The loan would be secured junior liens pursuant to section 364(c)(3) of the Bankruptcy Code and TCG would be entitled to priority claims pursuant 364(c)(1)

2. The Initial Interest Rate will be reduced to 3%

3. Default Rate shall be reduced to 20%

4. To improve the Debtors' liquidity, the Prepetition Senior Secured Lenders will agree to forgo current pay interest as Adequate Protection Payments; provided, however, any interest owing on account of the Prepetition Secured Loan Documents will be part of the Prepetition Secured Lenders' Allowed Secured Claim and be paid in connection with any plan confirmed in these chapter 11 cases.

We received a copy of the proposed DIP Budget last night which we are reviewing and we understand that counsel for the Special Servicer has requested a copy of any proposed modified DIP Order so we can review and modify accordingly.

Signed,

TCG Debt Acquisitions 2 LLC

By: _____
Name: Michael Pinewski
Title: Manager