KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, NY 10036
Tel. (212) 972-3000
Fax. (212) 972-2245

*Attorneys for the Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| 1141 REALTY OWNER LLC, *et al.*, | : | Case No. 18- 12341 (SMB) |
| | : | |
| | : | Jointly Administered |
| Debtor. | : | |
| | : | |

**NOTICE OF FILING OF FURTHER REVISED
DEBTOR IN POSSESSION LOAN AGREEMENT**

**PLEASE TAKE NOTICE,** that on July 31, 2018, 1141 Realty Owner LLC and

Flatironhotel Operations LLC (collectively, the "Debtors") filed the *Debtors' Motion for Entry of*

*Interim and Final Orders Authorizing the Debtors to Obtain Post-Petition, Priming, Senior*

*Secured, Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 362, 364(c) and 364(d),*

*Bankruptcy Rule 4001(c) and Local Rule 4001-2* (the "DIP Financing Motion") [Docket No. 7]

seeking entry of interim and final orders approving financing pursuant to the Debtor in

Possession Loan Agreement (the "DIP Agreement") between the Debtors and Premier Flatiron

LLC (the "DIP Lender") annexed to the DIP Financing Motion as Exhibit C.

**PLEASE TAKE FURTHER NOTICE**, that on August 5, 2018, the Debtors filed a Notice of Filing of (A) Revised Debtor in Possession Loan Agreement and (B) Revised Proposed Form of Order Granting DIP Financing Motion (the "Notice of Filing") [Docket No. 37], to which a revised form of DIP Agreement was attached as Exhibit A thereto.

**PLEASE TAKE FURTHER NOTICE**, that the Debtors and DIP Lender have agreed to further revise the DIP Agreement.

**PLEASE TAKE FURTHER NOTICE**, that annexed hereto as **Exhibit A** is a further revised form of Debtor in Possession Loan Agreement (the "Revised DIP Agreement").

**PLEASE TAKE FURTHER NOTICE**, that annexed hereto as **Exhibit B** is a blackline comparison reflecting differences between the DIP Agreement attached to the Notice of Filing and the DIP Agreement annexed hereto as Exhibit A.

Dated:   New York, New York
       September 12, 2018

                       KLESTADT WINTERS JURELLER
                       SOUTHARD & STEVENS, LLP

By:   */s/ Tracy L. Klestadt*
      Tracy L. Klestadt
      Joseph C. Corneau
      200 West 41st Street, 17th Floor
      New York, New York 10036
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: tklestadt@klestadt.com
             jcorneau@klestadt.com

**<u>Exhibit A</u>**

## DEBTOR IN POSSESSION LOAN AGREEMENT

THIS DEBTOR IN POSSESSION LOAN AGREEMENT (this "Agreement"), dated September 12, 2018, is entered into between **1141 Realty Owner, LLC** ("Owner"), a limited liability company organized under the laws of the State of New York, and **Flatironhotel Operations LLC**, a limited liability company organized under the laws of the State of New York ("Operations" and, together with Owner, the "Debtors"), jointly and severally, on one hand, and **Premier Flatiron, LLC**, a limited liability company organized under the laws of the State of New York ("Premier" or, "Lender"), on the other hand.

W I T N E S S E T H :

WHEREAS, on July 31, 2018 (the "Petition Date") the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York; and

WHEREAS, the Debtors have requested that Lender make a DIP Loan (as defined hereinafter) to the Debtors subject to the terms and conditions set forth herein; and

WHEREAS, Lender is willing, on the terms and conditions hereinafter set forth, to make such a DIP Loan.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound hereby, the parties hereto agree as follows:

SECTION 1.   DEFINITIONS.

1.1     Defined Terms.   Certain terms are defined in the text of this Agreement. In addition, as used in this Agreement, the following terms shall have the following meanings:

"Agreement" means this Debtor in Possession Loan Agreement, as it may hereafter be amended, modified, extended, restated or supplemented from time to time.

"Avoidance Actions" means causes of action of Debtors' estates arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code.

"Bankruptcy Code" means Title 11 of the United States Code, as may hereafter be amended from time to time.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as may be amended from time to time.

"Budget" means the budget annexed to the DIP Order, and any subsequent budget for use of the proceeds of the DIP Loan that may be agreed upon by the Debtors and the Lender, in writing.

"Business Day" means any day on which banks are required to be open in New York City.

"Carve Out" has the meaning given to it in the DIP Order.

"Chapter 11 Case" means the jointly administered voluntary bankruptcy cases of the Debtors.

"Collateral" means all Property securing the DIP Obligations hereunder, including, without limitation all assets, all real property and all personal property, tangible or intangible, including without limitation all bank accounts, deposits and cash, wherever located, whether now existing or hereafter acquired, of the Debtors, and all proceeds (including the proceeds of any asset sales to third parties), products, rents, revenues and profits of any of the foregoing, all causes of action (except Avoidance Actions), and such other collateral of any nature as may be provided as security for the DIP Obligations in the DIP Order or otherwise.

"Debtor Representative" shall mean the Debtors' Chief Restructuring Officer, or any agent of the Debtors designated by the foregoing to act as an "Authorized Representative" hereunder.

"Default" means any event specified in Section 6 hereof, whether or not any requirement in connection with such event for the giving of notice, lapse of time, or happening of any further condition has been satisfied.

"Default Rate" has the meaning given such term in Section 3.2(b) hereof.

"DIP Loan" has the meaning given such term in Section 2.1 hereof.

"DIP Loan Commitment" means the commitment of the Lender to loan the Debtors an aggregate principal amount of up to $2,500,000 on a final basis subject to approval of a DIP Order in form and substance acceptable to the Lender.

"DIP Loan Documents" means, collectively, this Agreement, the DIP Order, and each other order of the Court and each other instrument, document or agreement required to be delivered pursuant to this Agreement or any order of the Court or delivered in connection with this Agreement, including without limitation any documents or instruments executed or delivered by any Entity from time to time as security for the DIP Obligations, in each case as amended, modified, waived, substituted, replaced or extended from time to time.

"DIP Obligations" means all present and future obligations, indebtedness and liabilities, and all renewals and extensions of all or any part thereof, of the Debtors to Lender arising from, by virtue of, or pursuant to this Agreement, any DIP Loan Documents, and any and all renewals and extensions thereof or any part thereof, or future amendments thereto, all interest accruing on all or any part thereof and the reasonable attorneys' fees incurred by Lender for the negotiation and preparation of this Agreement and consummation of the same, execution of waivers, amendments and consents, and in connection with the enforcement or the collection of all or any part thereof, and reasonable attorneys' fees incurred by Lender in connection with the enforcement or the collection of all or any part of the DIP Obligations during the continuance of

2

a Default, in each case whether such obligations, indebtedness and liabilities are direct, indirect, fixed, contingent, joint, several or joint and several.

"Entity" means an individual, partnership, limited liability company, joint venture, corporation, trust, Governmental Unit, unincorporated organization, and government, or any department, agency, or political subdivision thereof.

"DIP Order" means the order entered by the Court upon sufficient notice as required by Bankruptcy Rule 4001, in form and substance satisfactory to Lender, in its sole discretion, approving the DIP Loan and the DIP Loan Documents.

"Final Order" means an order, ruling or judgment of a court of competent jurisdiction (a) that is in full force and effect, (b) that is not stayed, (c) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, and no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, and (d) is no longer subject to review, reversal, modification or amendment by appeal or writ of certiorari; provided, however, that an order will be deemed a Final Order notwithstanding the filing of a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules.

"GAAP" means generally accepted accounting principles applied on a consistent basis.

"Governmental Unit" means any state, commonwealth, federal, foreign, territorial, or other court or government body, subdivision, agency, department, commission, board, bureau, or instrumentality of a governmental body.

"Highest Lawful Rate" means, at the particular time in question, the maximum rate of interest which, under applicable law, Lender is then permitted to charge on the DIP Obligations. If the maximum rate of interest which, under applicable law, Lender is permitted to charge on the DIP Obligations shall change after the date hereof, the Highest Lawful Rate shall be increased or decreased automatically, as the case may be, from time to time as of the effective time of each change in the Highest Lawful Rate without notice to the Debtors.

"Law" means any constitution, statute, law, ordinance, regulation, rule, order, writ, injunction, or decree of any Governmental Unit.

"License" means any license, permit, consent, certificate of need, authorization, certification, accreditation, franchise, approval, or grant of rights by, or any filing or registration with, any Governmental Unit or other Entity necessary for such Entity to own, build, maintain, or operate its business or Property.

"Lien" means any properly filed and perfected mortgage, pledge, security interest, encumbrance, lien, or charge of any kind, including without limitation any agreement to give or not to give any of the foregoing, any conditional sale or other title retention agreement, any lease in the nature thereof, and the filing of or agreement to give any financing statement or other similar form of public notice under the Laws of any jurisdiction (except for the filing of a financing statement or notice in connection with an operating lease).

3

"Litigation" means any proceeding, claim, lawsuit, arbitration, and/or investigation conducted by or before any Governmental Unit or arbitrator, including without limitation proceedings, claims, lawsuits, and/or investigations under or pursuant to any environmental, occupational, safety and health, antitrust, unfair competition, securities, Tax, or other Law, or under or pursuant to any contract, agreement, or other instrument.

"Material Adverse Change" means any circumstance or event that, by itself or aggregated together with all other events or circumstances, is or would reasonably be expected to materially and adversely affect the validity or enforceability of or any rights of Lender under the DIP Loan Documents, or the DIP Order.

"Permitted Liens" means:

(a)    any Lien in favor of Lender pursuant to the DIP Loan Documents, or the DIP Order to secure the DIP Obligations hereunder;

(b)    Liens existing on the Petition Date or any replacement liens;

(c)    Liens on (i) real estate for real estate Taxes not yet delinquent and (ii) Liens for Taxes, assessments, governmental charges, levies or claims that are being diligently contested in good faith by appropriate proceedings and for which adequate reserves shall have been set aside on the Debtors' books, but only so long as no foreclosure, restraint, sale or similar proceedings have been commenced with respect thereto;

(d)    Liens of carriers, warehousemen, mechanics, laborers and materialmen and other similar Liens incurred in the ordinary course of business for sums not yet due or being contested in good faith, if such reserve or appropriate provision, if any, as shall be required by GAAP shall have been made therefore; and

(e)    Liens incurred in the ordinary course of business after the Petition Date in connection with worker's compensation, unemployment insurance or similar legislation.

"Permitted Weekly Variance" shall mean a weekly variance of up to ten percent (10%) with respect to any one line item of the Budget, provided that the overall weekly disbursements do not exceed one hundred five percent (110%) of the budgeted expenses of the Debtors, as reflected in the Budget.

"Property" means all types of real, personal, tangible, intangible, or mixed property, whether owned or hereafter acquired in fee simple or leased by the Debtor.

"Schedules" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by each Debtor in their respective chapter 11 cases on the Petition Date.

"Superpriority Claims" means any debt or other claim arising out of credit obtained or debt incurred by the Debtors having priority in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code.

BPOWERS/2195959.5/067679

"Tax" or "Taxes" means all taxes, assessments, imposts, fees, or other charges at any time imposed by any Laws or Governmental Unit.

"Tax Code" means the Internal Revenue Code of 1986, as amended.

"UCC" means the Uniform Commercial Code as adopted in the State of New York as of the date of this Agreement.

"U.S. Trustee" means the United States Trustee for Region 2.

1.2    Other Definitional Provisions.

(a)    Unless otherwise specified therein, all terms defined in this Agreement shall have the defined meanings when used in any other DIP Loan Document or any certificate or other document made or delivered pursuant hereto.

(b)    As used herein, in any other DIP Loan Document and in any certificate or other document made or delivered pursuant hereto, accounting terms relating to the Debtor not defined herein, and accounting terms partly defined herein to the extent not defined, shall have the respective meanings given to them under GAAP.

(c)    The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section, subsection, schedule and exhibit references are to this Agreement unless otherwise specified.

(d)    The meanings given to terms defined herein shall be equally applicable to the singular and plural forms of such terms.

SECTION 2.    DIP LOAN.

2.1    <u>DIP Loan Commitment</u>.    Subject to and in accordance with the terms and conditions of this Agreement, including, without limitation, the entry of a DIP Order that is satisfactory to Lender, in its sole discretion, Lender shall make advances to the Debtors up to the maximum principal amount of the DIP Loan Commitment (the "<u>DIP Loan</u>").

2.2    <u>Term</u>.    The Term of the DIP Loan Commitment shall be from the Petition Date through December 31, 2018 (the "<u>Term</u>").    Upon the expiration of the Term, unless otherwise extended by Lender, in its sole discretion, all amounts due and owing under the DIP Loan, including interest and fees, shall immediately become due and owing to Lender.

2.3    <u>Advances</u>.    Provided that no Default shall have occurred and no circumstances exist that, with the giving of notice and/or the passage of time, would constitute a Default, advances under the DIP Loan shall be made if and when requested in writing on behalf of the Debtors by a Debtor Representative in order to meet the Debtors' cash needs as set forth in the Budget.    The Debtor Representative will be required to make any requests for advances from the Lender in writing by 12:00 noon on the Friday preceding the week during which such advances are required in accordance with the Budget and the Debtors' cash position.

5

2.4    <u>Use of Proceeds</u>.  The proceeds of the DIP Loan shall be used by the Debtors for the sole purpose of financing expenditures in accordance with the Budget, subject to the Permitted Weekly Variance.

2.5    <u>Collateral</u>.  As provided in the DIP Order, all indebtedness, including DIP Obligations under this Agreement and the DIP Loan Documents shall be secured by automatically perfected security interests and Liens granted pursuant to Section 364(c)(2) and (c)(3) of the Bankruptcy Code.

2.6    <u>Monthly Interest Payments</u>.  The Debtor shall pay monthly interest payments to the Lender in accordance with the terms of this DIP Loan, as computed in accordance with Section 3.2 of this Agreement.  Monthly interest payments shall automatically accrue and be capitalized to the principal amount of the DIP Obligations, and shall thereafter be deemed to be a part of the principal amount of the DIP Obligations.

2.7    <u>Prepayment</u>.  The unpaid principal amount of the DIP Loan, together with any and all accrued interest thereon through the date of prepayment, may be voluntarily paid or prepaid, in whole or in part, without premium or penalty.

2.8    <u>DIP Order</u>.  For the avoidance of doubt and without waiving any discretion or other rights reserved to the Lender in this Agreement, unless otherwise consented to by the Lender through written authorization, the DIP Order, if any, will not be acceptable to the Lender and no DIP Loan shall be funded by the Lender, unless the same contains, <u>inter</u> <u>alia</u>, the following provisions:

(a)    A valid, perfected lien on all of the Collateral shall be granted to Lender to secure repayment of the DIP Loan as contemplated by Section 2.4 hereof;

(b)    A Superpriority Claim shall be granted to the Lender against each Debtor in an amount no less than the DIP Obligations; and

(c)    It shall be an Event of Default under the DIP Order, if any, if the Debtors shall fail to secure the entry of orders of the Bankruptcy Court, in form and substance acceptable to Lender:

(i)    approving a disclosure statement for the Debtors' joint plan of reorganization, on or before November 20, 2018; and

(ii)    confirming a joint plan of reorganization of the Debtors, on or before December 31, 2018.

SECTION 3.    GENERAL PROVISIONS APPLICABLE TO DIP LOAN.

3.1    <u>No Note</u>.  This Agreement, the DIP Loan Documents, and the DIP Order fully evidence and memorialize the DIP Obligations, and no other instrument is required to evidence such DIP Obligations.

3.2    <u>Interest Rates</u>.

BPOWERS/2195959.5/067679

(a)     Interest Rate.  Subject to Section 3.2.(b) hereof, the DIP Loan shall bear interest at a rate of three (3%) percent per annum.

(b)     Default Rate.  Upon the occurrence and during the continuance of a Default, and provided that Lender shall have provided a Notice of Default as provided in Section 6.2 and any applicable cure period has expired, the DIP Loan and all other amounts unpaid and outstanding under this Agreement shall bear interest at a rate equal to twelve (12%) percent per annum (the "Default Rate").

(c)     Computation of Interest.  Interest on the Advances shall be computed on the basis of a year of 365 days and the actual days elapsed (including the first day but excluding the last day) occurring in the period for which such interest is payable, unless such calculation would exceed the Highest Lawful Rate, in which case interest shall be calculated on the per annum.

3.3     Collateral.

(a)     Grant of Security Interest.  The Debtors each hereby grant to Lender a security interest in all of their respective Collateral as security for the full and prompt payment in cash and performance of the DIP Obligations.

(b)     Perfection; Duty of Care.  Until all the DIP Obligations have been paid and performed in full, the Debtors shall take all actions reasonably requested by Lender or otherwise required to perfect, maintain and protect Lender's security interest in the Collateral, including delivering to Lender all Collateral in which Lender's security interest may be perfected by possession together with such endorsements as Lender may request.  The Debtors shall pay when due all Tax assessments and other charges imposed upon or with respect to the Collateral or any part thereof, first arising after the Petition Date, unless such assessments and charges are subject to a good faith contest adequately reserved for by the Debtors.  If the Debtors shall fail to pay such amounts, upon prior written notice to the Debtors, Lender may do so and add the amount of such payment to the principal owed under the DIP Loan.  Upon prior written notice to the Debtors, Lender may discharge any Lien that is not a Permitted Lien, pay for any insurance, or take any other action the Debtors are required to take pursuant to this Agreement but have not taken, and add the amount of such payment to the principal owed under the DIP Loan.

SECTION 4.   AFFIRMATIVE COVENANTS.

The Debtors hereby agree that, so long as any portion of the DIP Loan or other DIP Obligation remains outstanding and unpaid or any other amount is owing to Lender hereunder, the Debtors shall:

4.1     Payment of Post-Petition Obligations.  Pay, discharge or otherwise satisfy all post-Petition Date obligations and liabilities as required pursuant to the Bankruptcy Code or by order of the Court.

4.2     Insurance.

(a)     Maintain with financially sound and reputable insurance companies insurance on all Collateral in at least such amounts and with only such deductibles as are usually maintained,

BPOWERS/2195959.5/067679

and against at least such risks as are usually insured against in the same general area, by companies engaged in the same or a similar business; and furnish to Lender, at their request, full information as to the insurance carried.

(b)     Lender shall be named as an additional insured and as its interests may appear on all insurance maintained by the Debtors pursuant to Section 4.2(a) hereof.

4.3     Books and Records.  Keep proper books of record and account in which complete and correct entries are made of all dealings and transactions in relation to the Debtors' business and activities and which permit financial statements to be prepared in conformity with GAAP and all applicable Laws.

4.4     Cash Accounts.  Deposit and maintain all proceeds of the DIP Loan in only such accounts permitted by the Court's order approving the Debtors' use after the Petition Date of its existing bank accounts and cash management system.

4.5     Visits and Inspections.  Promptly permit representatives of Lender, upon prior written notice to the Debtors, from time to time during normal business hours to (a) visit and inspect any Property of the Debtors as often as Lender shall reasonably deem advisable, (b) make such inspections of, abstracts from and copies of the Debtors' books and records as Lender shall deem advisable, and (c) discuss with the Debtors' members, officers and the auditors of the Debtors, the Debtors' business, operations, assets, liabilities, financial positions, results of operations and business prospects as often as Lender shall deem advisable.

4.6     Use of Proceeds.  Use the proceeds of the DIP Loan solely in accordance with the Budget (as applicable) subject to the Permitted Variance and upon the terms and conditions set forth in this Agreement, including without limitation Section 2.3 hereof.

4.7     Compliance with Law.  Comply in all material respects with all requirements of law applicable to the Property (including but not limited to requirements relating to the environment or hazardous or toxic substances) and the Bankruptcy Code.

SECTION 5.  NEGATIVE COVENANTS.

The Debtors hereby agree that each shall not, directly or indirectly so long as the DIP Loan or any of the DIP Obligations remain outstanding and unpaid, or any other amount is owing to Lender hereunder (it being understood that each of the permitted exceptions to each of the covenants in this Section 5 is in addition to, and not overlapping with, any other of such permitted exceptions except to the extent expressly provided):

5.1     Debt.  Create, incur, assume or suffer to exist any debt, except:

(a)     Debt in existence on the date of this Agreement;

(b)     the DIP Loan and this Agreement; and

BPOWERS/2195959.5/067679

(c)      Debt incurred by the Debtors within the Budget, subject to the Permitted Weekly Variance, in the ordinary course of business in the form of accounts payable and accrued expenses.

5.2      <u>Limitation on Liens</u>.  Create, incur, assume or suffer to exist any Lien upon any of its property, assets, income or profits, whether now owned or hereafter acquired, except Permitted Liens and the Carve Out.

5.3      <u>Use of Proceeds</u>.  Use the proceeds of the DIP Loan for any purpose not set forth in each respective Budget or in <u>Section 2.3</u> hereof, subject to the Permitted Weekly Variance.

5.4      <u>DIP Financing</u>.  Incur, or apply to the Court for authority to incur, or suffer to exist, any (i) indebtedness having the priority afforded by Section 364(c) or (d) of the Bankruptcy Code (including any Superpriority Claims) other than the financing provided for under this Agreement and the other DIP Loan Documents or (ii) obligation to make adequate protection payments, or otherwise provide adequate protection, other than as contemplated by the DIP Order or in the Budget, or as may be required by order of the Court in connection with the provision of adequate protection to holders of Permitted Liens whose collateral is sold or otherwise disposed of or as to which Lender consents.

5.5      <u>Alteration of Rights of Lender</u>.  Limit, affect or modify, or apply to the Court to limit, affect or modify, any of Lender's rights with respect to the DIP Obligations, including rights with respect to the Collateral and the priority thereof, except with the prior written consent of Lender.

5.6      <u>Chapter 11 Claims</u>.  Except as permitted under the DIP Order, apply to the Court for the authority to incur, create, assume, suffer or permit any claim, Lien or encumbrance (other than Permitted Liens and the Carve Out) against the Debtors, or any of their assets in the Chapter 11 Case to be <u>pari</u> <u>passu</u> with, or senior to, the Liens and claims of Lender granted and arising under the DIP Loan Documents.

5.7      <u>Superpriority Administrative Expense</u>.  Create or permit to exist any Superpriority Claims (other than with respect to this Agreement or the DIP Order and other than the Carve Out).

5.8      <u>Alterations</u>.  Undertake any alterations or modifications to the Property without Lender's prior written consent.

5.9      <u>Transfers</u>.  Transfer, directly or indirectly, any of its right, title or interest in, to or under any of the Collateral without the Lender's prior written consent.

SECTION 6.   DEFAULT.

6.1      <u>Default</u>.  In addition to the Events of Default under the DIP Order, the following shall constitute a Default:

(a)      The Debtors shall fail to pay any principal or interest of the DIP Loan or any other DIP Obligation (including any fees or reimbursable amounts) when any such amount becomes

BPOWERS/2195959.5/067679

due in accordance with the terms hereof, which failure continues for a period of five (5) Business Days after notice thereof from Lender; or

(b)      The Debtors shall default in the observance or performance of any covenant, agreement, obligation or restriction set forth in this Agreement or any other DIP Loan Document, and such Default shall continue for a period of ten (10) Business Days after notice thereof from Lender; or

(c)      The Court shall enter an order with respect to the Debtors dismissing the Chapter 11 Case or converting it to a case under chapter 7 of the Bankruptcy Code, or, without the prior written consent of Lender (i) appointing a trustee in the Chapter 11 Case or (ii) appointing a responsible officer or an examiner with enlarged powers relating to the operation of the Debtors' business (beyond those set forth in Section 1106(a)(3) or (4)) under Bankruptcy Code Section 1106(b); or

(d)      The Debtor shall fail to comply with the terms of the DIP Order; or

(e)      There occurs any Material Adverse Change, including without limitation, any impairment to the value of Collateral which Lender, in good faith, deems will threaten timely payment in full of the DIP Loan; or

(f)      The Court grants any superpriority administrative expense claim or Lien or enters any order granting relief from the automatic stay (if not in favor of Lender) on any assets of the Debtors which have an aggregate value in excess of $250,000, except with the express written consent of Lender.

(g)      The Debtors shall assume or reject any unexpired lease or executory contract relating to the Property without the prior written consent of the Lender.

6.2      <u>Notice of Default and Certain Remedies</u>.  If any Default shall occur, Lender may provide written notice (a "<u>Notice of Default</u>") to the Debtors and counsel for the official committee of unsecured creditors, if any, and the U.S. Trustee of such Default.  If a Default shall have occurred and Lender shall have provided a Notice of Default, then, upon expiration of any applicable cure period, so long as any such Default shall be continuing, any of the actions set forth in the next sentence may be taken upon written notice by Lender to the Debtors, the U.S. Trustee, and to the official committee of unsecured creditors of the Debtors, if any.  Lender may (A) without further order of the Court, declare the DIP Loan Commitment reduced to zero whereupon the DIP Loan Commitment and all obligations of Lender relating thereto shall be immediately terminated, (B) without further order of the Court, declare all or a portion of the DIP Loan (with accrued interest thereon) and all other amounts owing under this Agreement to be due and payable forthwith, whereupon the same shall immediately become due and payable, without further notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, protest, or other formalities of any kind, all of which are hereby expressly waived by the Debtors, (C) foreclose or otherwise enforce any Lien granted to Lender for the benefit of itself to secure payment and performance of the DIP Obligations in accordance with the terms of the DIP Loan Documents, and (D) exercise all other rights and remedies available at law or in equity.  Except as expressly provided above in this <u>Section 6</u>, presentment, notice,

BPOWERS/2195959.5/067679

notice of dishonor, notice of acceleration, notice of intent to accelerate, demand, protest and all other notices of any kind are hereby expressly waived.

SECTION 7.  MISCELLANEOUS.

    7.1    <u>Amendments and Waivers</u>.  No DIP Loan Document nor any terms thereof may be amended, supplemented or modified except in writing signed by Lender and Debtor.

    7.2    <u>Notices</u>.  All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered by hand, or three Business Days after being deposited in the mail, postage prepaid, or one Business Day after being entrusted to a reputable commercial overnight delivery service, or, in the case of electronic mail notice, when sent, addressed as follows in the case of the Debtors and Lender or to such other address as may be hereafter notified by such respective parties hereto:

The Debtors:

    1141 Realty Owner, LLC
    Flatironhotel Operations, LLC
    1141 Broadway
    New York, New York 10001
    Attention: Chief Restructuring Officer

With a copy to

    Klestadt Winters Jureller
    Southard & Stevens, LLP
    292 Madison Avenue, 17th Fl.
    New York, NY  10017
    Attn:  Tracy L. Klestadt
        Joseph Corneau

Lender:

    Premier Flatiron, LLC
    c/o Mermel Associates PLLC
    One Hollow Lane, Suite 303
    Lake Success, New York 11042
    Attn: Uzi Ben Abraham

With a copy to

    SilvermanAcampora LLP
    100 Jericho Quadrangle, Suite 300
    Jericho, New York 11753
    Attn:  Kenneth P. Silverman
        Brian Powers

BPOWERS/2195959.5/067679

7.3    <u>No Waiver; Cumulative Remedies</u>.    No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.    The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by Law.

7.4    <u>Survival of Representations and Warranties</u>.    All representations and warranties made hereunder and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the making of the DIP Loan.

7.5    <u>Counterparts</u>.    This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

7.6    <u>Additional Grant of Lien</u>.    All DIP Obligations, contingent or absolute (including, without limitation, the principal thereof, interest thereon, and any costs and expenses owing in connection therewith) which may now or from time to time hereafter be owing by the Debtors to Lender under any of the DIP Loan Documents shall be secured as set forth in the DIP Order.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

[The remainder of this page is intentionally left blank.]

BPOWERS/2195959.5/067679

DEBTORS

**1141 REALTY OWNER, LLC**,

_____

By:_____

Title:_____

**FLATIRONHOTEL OPERATIONS, LLC**.

_____

By:_____

Title:_____

LENDER

**PREMIER FLATIRON LLC**,

_____

By:_____

Title:_____

13

**<u>Exhibit B</u>**

## DEBTOR IN POSSESSION LOAN AGREEMENT

THIS DEBTOR IN POSSESSION LOAN AGREEMENT (this "Agreement"), dated September 6, 2018, is entered into between **1141 Realty Owner, LLC** ("Owner"), a limited liability company organized under the laws of the State of New York, and **Flatironhotel Operations LLC**, a limited liability company organized under the laws of the State of New York ("Operations" and, together with Owner, the "Debtors"), jointly and severally, on one hand, and **Premier Flatiron, LLC**, a limited liability company organized under the laws of the State of New York ("Premier" or, "Lender"), on the other hand.

W I T N E S S E T H :

WHEREAS, on July 31, 2018 (the "Petition Date") the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York; and

WHEREAS, the Debtors have requested that Lender make a DIP Loan (as defined hereinafter) to the Debtors subject to the terms and conditions set forth herein; and

WHEREAS, Lender is willing, on the terms and conditions hereinafter set forth, to make such a DIP Loan.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound hereby, the parties hereto agree as follows:

SECTION 1.   DEFINITIONS.

1.1   Defined Terms.   Certain terms are defined in the text of this Agreement. In addition, as used in this Agreement, the following terms shall have the following meanings:

"Agreement" means this Debtor in Possession Loan Agreement, as it may hereafter be amended, modified, extended, restated or supplemented from time to time.

"Avoidance Actions" means causes of action of Debtors' estates arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code.

"Bankruptcy Code" means Title 11 of the United States Code, as may hereafter be amended from time to time.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as may be amended from time to time.

"Budget" means the budget annexed to the DIP Order, and any subsequent budget for use of the proceeds of the DIP Loan that may be agreed upon by the Debtors and the Lender, in writing.

"Business Day" means any day on which banks are required to be open in New York City.

"Carve Out" has the meaning given to it in the DIP Order.

"Chapter 11 Case" means the jointly administered voluntary bankruptcy cases of the Debtors.

"Collateral" means all Property securing the DIP Obligations hereunder, including, without limitation all assets, all real property and all personal property, tangible or intangible, including without limitation all bank accounts, deposits and cash, wherever located, whether now existing or hereafter acquired, of the Debtors, and all proceeds (including the proceeds of any asset sales to third parties), products, rents, revenues and profits of any of the foregoing, all causes of action (except Avoidance Actions), and such other collateral of any nature as may be provided as security for the DIP Obligations in the DIP Order or otherwise.

"Debtor Representative" shall mean the Debtors' Chief Restructuring Officer, or any agent of the Debtors designated by the foregoing to act as an "Authorized Representative" hereunder.

"Default" means any event specified in Section 6 hereof, whether or not any requirement in connection with such event for the giving of notice, lapse of time, or happening of any further condition has been satisfied.

"Default Rate" has the meaning given such term in Section 3.2(b) hereof.

"DIP Loan" has the meaning given such term in Section 2.1 hereof.

"DIP Loan Commitment" means the commitment of the Lender to loan the Debtors an aggregate principal amount of up to $2,500,000 on a final basis subject to approval of a DIP Order in form and substance acceptable to the Lender.

"DIP Loan Documents" means, collectively, this Agreement, the DIP Order, and each other order of the Court and each other instrument, document or agreement required to be delivered pursuant to this Agreement or any order of the Court or delivered in connection with this Agreement, including without limitation any documents or instruments executed or delivered by any Entity from time to time as security for the DIP Obligations, in each case as amended, modified, waived, substituted, replaced or extended from time to time.

"DIP Obligations" means all present and future obligations, indebtedness and liabilities, and all renewals and extensions of all or any part thereof, of the Debtors to Lender arising from, by virtue of, or pursuant to this Agreement, any DIP Loan Documents, and any and all renewals and extensions thereof or any part thereof, or future amendments thereto, all interest accruing on all or any part thereof and the reasonable attorneys' fees incurred by Lender for the negotiation and preparation of this Agreement and consummation of the same, execution of waivers, amendments and consents, and in connection with the enforcement or the collection of all or any part thereof, and reasonable attorneys' fees incurred by Lender in connection with the enforcement or the collection of all or any part of the DIP Obligations during the continuance of

2

a Default, in each case whether such obligations, indebtedness and liabilities are direct, indirect, fixed, contingent, joint, several or joint and several.

"Entity" means an individual, partnership, limited liability company, joint venture, corporation, trust, Governmental Unit, unincorporated organization, and government, or any department, agency, or political subdivision thereof.

"DIP Order" means the order entered by the Court upon sufficient notice as required by Bankruptcy Rule 4001, in form and substance satisfactory to Lender, in its sole discretion, approving the DIP Loan and the DIP Loan Documents.

"Final Order" means an order, ruling or judgment of a court of competent jurisdiction (a) that is in full force and effect, (b) that is not stayed, (c) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, and no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, and (d) is no longer subject to review, reversal, modification or amendment by appeal or writ of certiorari; provided, however, that an order will be deemed a Final Order notwithstanding the filing of a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules.

"GAAP" means generally accepted accounting principles applied on a consistent basis.

"Governmental Unit" means any state, commonwealth, federal, foreign, territorial, or other court or government body, subdivision, agency, department, commission, board, bureau, or instrumentality of a governmental body.

"Highest Lawful Rate" means, at the particular time in question, the maximum rate of interest which, under applicable law, Lender is then permitted to charge on the DIP Obligations. If the maximum rate of interest which, under applicable law, Lender is permitted to charge on the DIP Obligations shall change after the date hereof, the Highest Lawful Rate shall be increased or decreased automatically, as the case may be, from time to time as of the effective time of each change in the Highest Lawful Rate without notice to the Debtors.

"Law" means any constitution, statute, law, ordinance, regulation, rule, order, writ, injunction, or decree of any Governmental Unit.

"License" means any license, permit, consent, certificate of need, authorization, certification, accreditation, franchise, approval, or grant of rights by, or any filing or registration with, any Governmental Unit or other Entity necessary for such Entity to own, build, maintain, or operate its business or Property.

"Lien" means any properly filed and perfected mortgage, pledge, security interest, encumbrance, lien, or charge of any kind, including without limitation any agreement to give or not to give any of the foregoing, any conditional sale or other title retention agreement, any lease in the nature thereof, and the filing of or agreement to give any financing statement or other similar form of public notice under the Laws of any jurisdiction (except for the filing of a financing statement or notice in connection with an operating lease).

3

"Litigation" means any proceeding, claim, lawsuit, arbitration, and/or investigation conducted by or before any Governmental Unit or arbitrator, including without limitation proceedings, claims, lawsuits, and/or investigations under or pursuant to any environmental, occupational, safety and health, antitrust, unfair competition, securities, Tax, or other Law, or under or pursuant to any contract, agreement, or other instrument.

"Material Adverse Change" means any circumstance or event that, by itself or aggregated together with all other events or circumstances, is or would reasonably be expected to materially and adversely affect the validity or enforceability of or any rights of Lender under the DIP Loan Documents, or the DIP Order.

"Permitted Liens" means:

(a)     any Lien in favor of Lender pursuant to the DIP Loan Documents, or the DIP Order to secure the DIP Obligations hereunder;

(b)     Liens existing on the Petition Date or any replacement liens;

(c)     Liens on (i) real estate for real estate Taxes not yet delinquent and (ii) Liens for Taxes, assessments, governmental charges, levies or claims that are being diligently contested in good faith by appropriate proceedings and for which adequate reserves shall have been set aside on the Debtors' books, but only so long as no foreclosure, restraint, sale or similar proceedings have been commenced with respect thereto;

(d)     Liens of carriers, warehousemen, mechanics, laborers and materialmen and other similar Liens incurred in the ordinary course of business for sums not yet due or being contested in good faith, if such reserve or appropriate provision, if any, as shall be required by GAAP shall have been made therefore; and

(e)     Liens incurred in the ordinary course of business after the Petition Date in connection with worker's compensation, unemployment insurance or similar legislation.

"Permitted Weekly Variance" shall mean a weekly variance of up to ten percent (10%) with respect to any one line item of the Budget, provided that the overall weekly disbursements do not exceed one hundred five percent (110%) of the budgeted expenses of the Debtors, as reflected in the Budget.

"Property" means all types of real, personal, tangible, intangible, or mixed property, whether owned or hereafter acquired in fee simple or leased by the Debtor.

"Schedules" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by each Debtor in their respective chapter 11 cases on the Petition Date.

"Superpriority Claims" means any debt or other claim arising out of credit obtained or debt incurred by the Debtors having priority in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code.

BPOWERS/2195959.5/067679

"Tax" or "Taxes" means all taxes, assessments, imposts, fees, or other charges at any time imposed by any Laws or Governmental Unit.

"Tax Code" means the Internal Revenue Code of 1986, as amended.

"UCC" means the Uniform Commercial Code as adopted in the State of New York as of the date of this Agreement.

"U.S. Trustee" means the United States Trustee for Region 2.

1.2    Other Definitional Provisions.

(a)    Unless otherwise specified therein, all terms defined in this Agreement shall have the defined meanings when used in any other DIP Loan Document or any certificate or other document made or delivered pursuant hereto.

(b)    As used herein, in any other DIP Loan Document and in any certificate or other document made or delivered pursuant hereto, accounting terms relating to the Debtor not defined herein, and accounting terms partly defined herein to the extent not defined, shall have the respective meanings given to them under GAAP.

(c)    The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section, subsection, schedule and exhibit references are to this Agreement unless otherwise specified.

(d)    The meanings given to terms defined herein shall be equally applicable to the singular and plural forms of such terms.

SECTION 2.    DIP LOAN.

2.1    <u>DIP Loan Commitment</u>.    Subject to and in accordance with the terms and conditions of this Agreement, including, without limitation, the entry of a DIP Order that is satisfactory to Lender, in its sole discretion, Lender shall make advances to the Debtors up to the maximum principal amount of the DIP Loan Commitment (the "<u>DIP Loan</u>").

2.2    <u>Term</u>.    The Term of the DIP Loan Commitment shall be from the Petition Date through December 31, 2018 (the "<u>Term</u>").    Upon the expiration of the Term, unless otherwise extended by Lender, in its sole discretion, all amounts due and owing under the DIP Loan, including interest and fees, shall immediately become due and owing to Lender.

2.3    <u>Advances</u>.    Provided that no Default shall have occurred and no circumstances exist that, with the giving of notice and/or the passage of time, would constitute a Default, advances under the DIP Loan shall be made if and when requested in writing on behalf of the Debtors by a Debtor Representative in order to meet the Debtors' cash needs as set forth in the Budget.    The Debtor Representative will be required to make any requests for advances from the Lender in writing by 12:00 noon on the Friday preceding the week during which such advances are required in accordance with the Budget and the Debtors' cash position.

BPOWERS/2195959.5/067679

2.4    <u>Use of Proceeds</u>.  The proceeds of the DIP Loan shall be used by the Debtors for the sole purpose of financing expenditures in accordance with the Budget, subject to the Permitted Weekly Variance.

2.5    <u>Collateral</u>.  As provided in the DIP Order, all indebtedness, including DIP Obligations under this Agreement and the DIP Loan Documents shall be secured by automatically perfected security interests and Liens granted pursuant to Section 364(c)(2) and (c)(3) of the Bankruptcy Code.

2.6    <u>Monthly Interest Payments</u>.  The Debtor shall pay monthly interest payments to the Lender in accordance with the terms of this DIP Loan, as computed in accordance with Section 3.2 of this Agreement.  Monthly interest payments shall automatically accrue and be capitalized to the principal amount of the DIP Obligations, and shall thereafter be deemed to be a part of the principal amount of the DIP Obligations.

2.7    <u>Prepayment</u>.  The unpaid principal amount of the DIP Loan, together with any and all accrued interest thereon through the date of prepayment, may be voluntarily paid or prepaid, in whole or in part, without premium or penalty.

2.8    <u>DIP Order</u>.  For the avoidance of doubt and without waiving any discretion or other rights reserved to the Lender in this Agreement, unless otherwise consented to by the Lender through written authorization, the DIP Order, if any, will not be acceptable to the Lender and no DIP Loan shall be funded by the Lender, unless the same contains, <u>inter</u> <u>alia</u>, the following provisions:

(a)    A valid, perfected lien on all of the Collateral shall be granted to Lender to secure repayment of the DIP Loan as contemplated by Section 2.4 hereof;

(b)    A Superpriority Claim shall be granted to the Lender against each Debtor in an amount no less than the DIP Obligations; and

(c)    It shall be an Event of Default under the DIP Order, if any, if the Debtors shall fail to secure the entry of orders of the Bankruptcy Court, in form and substance acceptable to Lender:

(i)    approving a disclosure statement for the Debtors' joint plan of reorganization, on or before November 20, 2018; and

(ii)    confirming a joint plan of reorganization of the Debtors, on or before December 31, 2018.

SECTION 3.    GENERAL PROVISIONS APPLICABLE TO DIP LOAN.

3.1    <u>No Note</u>.  This Agreement, the DIP Loan Documents, and the DIP Order fully evidence and memorialize the DIP Obligations, and no other instrument is required to evidence such DIP Obligations.

3.2    <u>Interest Rates</u>.

BPOWERS/2195959.5/067679

(a)     <u>Interest Rate</u>.  Subject to <u>Section 3.2.(b)</u> hereof, the DIP Loan shall bear interest at a rate of ~~eight (8~~three (3%) percent per annum.

(b)     <u>Default Rate</u>.  Upon the occurrence and during the continuance of a Default, and provided that Lender shall have provided a Notice of Default as provided in Section 6.2 and any applicable cure period has expired, the DIP Loan and all other amounts unpaid and outstanding under this Agreement shall bear interest at a rate equal to twelve (12%) percent per annum (the "<u>Default Rate</u>").

(c)     <u>Computation of Interest</u>.  Interest on the Advances shall be computed on the basis of a year of 365 days and the actual days elapsed (including the first day but excluding the last day) occurring in the period for which such interest is payable, unless such calculation would exceed the Highest Lawful Rate, in which case interest shall be calculated on the per annum.

3.3     Collateral.

(a)     <u>Grant of Security Interest</u>.  The Debtors each hereby grant to Lender a security interest in all of their respective Collateral as security for the full and prompt payment in cash and performance of the DIP Obligations.

(b)     <u>Perfection; Duty of Care</u>.  Until all the DIP Obligations have been paid and performed in full, the Debtors shall take all actions reasonably requested by Lender or otherwise required to perfect, maintain and protect Lender's security interest in the Collateral, including delivering to Lender all Collateral in which Lender's security interest may be perfected by possession together with such endorsements as Lender may request.  The Debtors shall pay when due all Tax assessments and other charges imposed upon or with respect to the Collateral or any part thereof, first arising after the Petition Date, unless such assessments and charges are subject to a good faith contest adequately reserved for by the Debtors.  If the Debtors shall fail to pay such amounts, upon prior written notice to the Debtors, Lender may do so and add the amount of such payment to the principal owed under the DIP Loan.  Upon prior written notice to the Debtors, Lender may discharge any Lien that is not a Permitted Lien, pay for any insurance, or take any other action the Debtors are required to take pursuant to this Agreement but have not taken, and add the amount of such payment to the principal owed under the DIP Loan.

SECTION 4.   AFFIRMATIVE COVENANTS.

The Debtors hereby agree that, so long as any portion of the DIP Loan or other DIP Obligation remains outstanding and unpaid or any other amount is owing to Lender hereunder, the Debtors shall:

4.1     <u>Payment of Post-Petition Obligations</u>.  Pay, discharge or otherwise satisfy all post-Petition Date obligations and liabilities as required pursuant to the Bankruptcy Code or by order of the Court.

4.2     <u>Insurance</u>.

(a)     Maintain with financially sound and reputable insurance companies insurance on all Collateral in at least such amounts and with only such deductibles as are usually maintained,

BPOWERS/2195959.5/067679

and against at least such risks as are usually insured against in the same general area, by companies engaged in the same or a similar business; and furnish to Lender, at their request, full information as to the insurance carried.

(b)    Lender shall be named as an additional insured and as its interests may appear on all insurance maintained by the Debtors pursuant to Section 4.2(a) hereof.

4.3    Books and Records.  Keep proper books of record and account in which complete and correct entries are made of all dealings and transactions in relation to the Debtors' business and activities and which permit financial statements to be prepared in conformity with GAAP and all applicable Laws.

4.4    Cash Accounts.  Deposit and maintain all proceeds of the DIP Loan in only such accounts permitted by the Court's order approving the Debtors' use after the Petition Date of its existing bank accounts and cash management system.

4.5    Visits and Inspections.  Promptly permit representatives of Lender, upon prior written notice to the Debtors, from time to time during normal business hours to (a) visit and inspect any Property of the Debtors as often as Lender shall reasonably deem advisable, (b) make such inspections of, abstracts from and copies of the Debtors' books and records as Lender shall deem advisable, and (c) discuss with the Debtors' members, officers and the auditors of the Debtors, the Debtors' business, operations, assets, liabilities, financial positions, results of operations and business prospects as often as Lender shall deem advisable.

4.6    Use of Proceeds.  Use the proceeds of the DIP Loan solely in accordance with the Budget (as applicable) subject to the Permitted Variance and upon the terms and conditions set forth in this Agreement, including without limitation Section 2.3 hereof.

4.7    Compliance with Law.  Comply in all material respects with all requirements of law applicable to the Property (including but not limited to requirements relating to the environment or hazardous or toxic substances) and the Bankruptcy Code.

SECTION 5.  NEGATIVE COVENANTS.

The Debtors hereby agree that each shall not, directly or indirectly so long as the DIP Loan or any of the DIP Obligations remain outstanding and unpaid, or any other amount is owing to Lender hereunder (it being understood that each of the permitted exceptions to each of the covenants in this Section 5 is in addition to, and not overlapping with, any other of such permitted exceptions except to the extent expressly provided):

5.1    Debt.  Create, incur, assume or suffer to exist any debt, except:

(a)    Debt in existence on the date of this Agreement;

(b)    the DIP Loan and this Agreement; and

8

(c)      Debt incurred by the Debtors within the Budget, subject to the Permitted Weekly Variance, in the ordinary course of business in the form of accounts payable and accrued expenses.

5.2      <u>Limitation on Liens</u>.  Create, incur, assume or suffer to exist any Lien upon any of its property, assets, income or profits, whether now owned or hereafter acquired, except Permitted Liens and the Carve Out.

5.3      <u>Use of Proceeds</u>.  Use the proceeds of the DIP Loan for any purpose not set forth in each respective Budget or in <u>Section 2.3</u> hereof, subject to the Permitted Weekly Variance.

5.4      <u>DIP Financing</u>.  Incur, or apply to the Court for authority to incur, or suffer to exist, any (i) indebtedness having the priority afforded by Section 364(c) or (d) of the Bankruptcy Code (including any Superpriority Claims) other than the financing provided for under this Agreement and the other DIP Loan Documents or (ii) obligation to make adequate protection payments, or otherwise provide adequate protection, other than as contemplated by the DIP Order or in the Budget, or as may be required by order of the Court in connection with the provision of adequate protection to holders of Permitted Liens whose collateral is sold or otherwise disposed of or as to which Lender consents.

5.5      <u>Alteration of Rights of Lender</u>.  Limit, affect or modify, or apply to the Court to limit, affect or modify, any of Lender's rights with respect to the DIP Obligations, including rights with respect to the Collateral and the priority thereof, except with the prior written consent of Lender.

5.6      <u>Chapter 11 Claims</u>.  Except as permitted under the DIP Order, apply to the Court for the authority to incur, create, assume, suffer or permit any claim, Lien or encumbrance (other than Permitted Liens and the Carve Out) against the Debtors, or any of their assets in the Chapter 11 Case to be <u>pari passu</u> with, or senior to, the Liens and claims of Lender granted and arising under the DIP Loan Documents.

5.7      <u>Superpriority Administrative Expense</u>.  Create or permit to exist any Superpriority Claims (other than with respect to this Agreement or the DIP Order and other than the Carve Out).

5.8      <u>Alterations</u>.  Undertake any alterations or modifications to the Property without Lender's prior written consent.

5.9      <u>Transfers</u>.  Transfer, directly or indirectly, any of its right, title or interest in, to or under any of the Collateral without the Lender's prior written consent.

SECTION 6.  DEFAULT.

6.1      <u>Default</u>.  In addition to the Events of Default under the DIP Order, the following shall constitute a Default:

(a)      The Debtors shall fail to pay any principal or interest of the DIP Loan or any other DIP Obligation (including any fees or reimbursable amounts) when any such amount becomes

BPOWERS/2195959.5/067679

due in accordance with the terms hereof, which failure continues for a period of five (5) Business Days after notice thereof from Lender; or

(b)    The Debtors shall default in the observance or performance of any covenant, agreement, obligation or restriction set forth in this Agreement or any other DIP Loan Document, and such Default shall continue for a period of ten (10) Business Days after notice thereof from Lender; or

(c)    The Court shall enter an order with respect to the Debtors dismissing the Chapter 11 Case or converting it to a case under chapter 7 of the Bankruptcy Code, or, without the prior written consent of Lender (i) appointing a trustee in the Chapter 11 Case or (ii) appointing a responsible officer or an examiner with enlarged powers relating to the operation of the Debtors' business (beyond those set forth in Section 1106(a)(3) or (4)) under Bankruptcy Code Section 1106(b); or

(d)    The Debtor shall fail to comply with the terms of the DIP Order; or

(e)    There occurs any Material Adverse Change, including without limitation, any impairment to the value of Collateral which Lender, in good faith, deems will threaten timely payment in full of the DIP Loan; or

(f)    The Court grants any superpriority administrative expense claim or Lien or enters any order granting relief from the automatic stay (if not in favor of Lender) on any assets of the Debtors which have an aggregate value in excess of $250,000, except with the express written consent of Lender.

(g)    The Debtors shall assume or reject any unexpired lease or executory contract relating to the Property without the prior written consent of the Lender.

6.2    <u>Notice of Default and Certain Remedies</u>.  If any Default shall occur, Lender may provide written notice (a "<u>Notice of Default</u>") to the Debtors and counsel for the official committee of unsecured creditors, if any, and the U.S. Trustee of such Default.  If a Default shall have occurred and Lender shall have provided a Notice of Default, then, upon expiration of any applicable cure period, so long as any such Default shall be continuing, any of the actions set forth in the next sentence may be taken upon written notice by Lender to the Debtors, the U.S. Trustee, and to the official committee of unsecured creditors of the Debtors, if any.  Lender may (A) without further order of the Court, declare the DIP Loan Commitment reduced to zero whereupon the DIP Loan Commitment and all obligations of Lender relating thereto shall be immediately terminated, (B) without further order of the Court, declare all or a portion of the DIP Loan (with accrued interest thereon) and all other amounts owing under this Agreement to be due and payable forthwith, whereupon the same shall immediately become due and payable, without further notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, protest, or other formalities of any kind, all of which are hereby expressly waived by the Debtors, (C) foreclose or otherwise enforce any Lien granted to Lender for the benefit of itself to secure payment and performance of the DIP Obligations in accordance with the terms of the DIP Loan Documents, and (D) exercise all other rights and remedies available at law or in equity.  Except as expressly provided above in this <u>Section 6</u>, presentment, notice,

10

notice of dishonor, notice of acceleration, notice of intent to accelerate, demand, protest and all other notices of any kind are hereby expressly waived.

SECTION 7.   MISCELLANEOUS.

7.1   <u>Amendments and Waivers</u>.   No DIP Loan Document nor any terms thereof may be amended, supplemented or modified except in writing signed by Lender and Debtor.

7.2   <u>Notices</u>.   All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered by hand, or three Business Days after being deposited in the mail, postage prepaid, or one Business Day after being entrusted to a reputable commercial overnight delivery service, or, in the case of electronic mail notice, when sent, addressed as follows in the case of the Debtors and Lender or to such other address as may be hereafter notified by such respective parties hereto:

The Debtors:

> 1141 Realty Owner, LLC
> Flatironhotel Operations, LLC
> 1141 Broadway
> New York, New York 10001
> Attention: Chief Restructuring Officer

With a copy to

> Klestadt Winters Jureller
> Southard & Stevens, LLP
> 292 Madison Avenue, 17th Fl.
> New York, NY  10017
> Attn:  Tracy L. Klestadt
>         Joseph Corneau

Lender:

> Premier Flatiron, LLC
> c/o Mermel Associates PLLC
> One Hollow Lane, Suite 303
> Lake Success, New York 11042
> Attn: Uzi Ben Abraham

With a copy to

> SilvermanAcampora LLP
> 100 Jericho Quadrangle, Suite 300
> Jericho, New York 11753
> Attn:  Kenneth P. Silverman
>         Brian Powers

11

7.3    No Waiver; Cumulative Remedies.    No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.    The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by Law.

7.4    Survival of Representations and Warranties.    All representations and warranties made hereunder and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the making of the DIP Loan.

7.5    Counterparts.    This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

7.6    Additional Grant of Lien.    All DIP Obligations, contingent or absolute (including, without limitation, the principal thereof, interest thereon, and any costs and expenses owing in connection therewith) which may now or from time to time hereafter be owing by the Debtors to Lender under any of the DIP Loan Documents shall be secured as set forth in the DIP Order.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

[The remainder of this page is intentionally left blank.]

BPOWERS/2195959.5/067679

DEBTORS

**1141 REALTY OWNER, LLC**,

_____

By:_____

Title:_____

**FLATIRONHOTEL OPERATIONS, LLC**.

_____

By:_____

Title:_____

LENDER

**PREMIER FLATIRON LLC**,

_____

By:_____

Title:_____

BPOWERS/2195959.5/067679

# ~~EXHIBIT A~~

## ~~BUDGET~~

Formatte