UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:                                                                                    Chapter 11

1141 REALTY OWNER, LLC, *et al.*,                                       Case No. 18-12341 (SMB)

                                            Debtors.                             (Jointly Administered)
----------------------------------------------------------x

**FINAL ORDER PURSUANT TO SECTIONS 363, 364(c), AND 503 OF THE BANKRUPTCY CODE (I) AUTHORIZING DEBTORS IN POSSESSION TO INCUR POST-PETITION SECURED INDEBTEDNESS, GRANTING SECURITY INTERESTS AND PRIORITY CLAIMS, AND GRANTING ADDITIONAL RELIEF; AND (II) AUTHORIZING THE USE OF THE PREPETITION SECURED LENDER'S CASH COLLATERAL AND PROVIDING ADEQUATE PROECTION THEREFOR**

Upon the Motion (the "Motion")[1] of 1141 Realty Owner, LLC and Flatironhotel Operations, LLC, debtors and debtors in possession (the "Debtors"), dated July 31, 2018, for an Order: (1) Authorizing the Debtor to incur post-petition secured indebtedness with DIP Lender Flatiron, LLC ("DIP Lender"); (2) Granting DIP Lender a senior valid, perfected and first priority security interest and lien, pursuant to 11 U.S.C. §§ 364(c) and (d), on, among other things, all of Debtors' pre- and post-petition now existing and after acquired, assets, including but not limited to real property, accounts receivable, cash, accounts, inventory, machinery and equipment, and intangibles together with the proceeds and products thereof; (3) Authorizing the continued limited use of cash collateral; and (4) Modifying the automatic stay as to DIP Lender; the Court finds as follows:

A.    On July 31, 2018 (the "Petition Date"), the each of the Debtors filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code");

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

B. After the Petition Date, the Debtors seek to enter into a Debtor in Possession Loan Agreement attached to the Motion as Exhibit C, and as modified and filed at Docket No. 46 (the "DIP Loan Agreement"). Pursuant to the DIP Loan Agreement, DIP Lender will make loans, advances, and other financial accommodations to and for the benefit of the Debtors, secured by a junior lien on and subordinated security interest in, substantially all of Debtors' assets including but not limited to, all of Debtors' existing and after acquired bank accounts, deposits and cash, wherever located, whether now existing or hereafter acquired, of the Debtors, and all proceeds (including the proceeds of any asset sales to third parties), products, rents, revenues and profits of any of the foregoing, and all causes of action of whatever kind or nature (except Avoidance Actions);

C. The liens and security interests granted under the DIP Loan Agreement are and shall be in all respects subordinated and junior to the liens and security interests granted to the Prepetition Secured Lender as provided for in the order approving a Stipulation and Order Authorizing use of Cash Collateral and Granting Adequate Protection (the "Cash Collateral Order"), which is incorporated by reference herein [Docket No. 23];

D. The successful operation of the business of the Debtors and their ability to propose and consummate a rehabilitation of their businesses and reorganization of their financial affairs is dependent on its ability to obtain, among other things, the loans and advances proposed to be made by DIP Lender and the Prepetition Secured Lender;

E. The Debtors require, and are unable to obtain, the working capital and credit necessary to successfully maintain their ongoing operations absent entry of this Order;

F. The DIP Lender financing and the use of cash collateral proposed hereunder is in the best interest of the Debtors, their estates, creditors, and parties in interest;

G. DIP Lender is willing to lend the Debtors funds upon the terms and conditions of the DIP Loan Agreement and this Order;

H. The Debtors would suffer irreparable harm absent obtaining the financing contemplated herein and in the Cash Collateral Order;

I. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtors' Chapter 11 case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409;

J. The statutory predicates for the relief sought in the Motion are §§ 105, 361, 362, 363 and 364 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Rules");

K. It is in the best interest of the Debtors' estates that they be allowed to obtain financing from DIP Lender (the "DIP Financing") under the terms and conditions set forth in the DIP Loan Agreement, and the use of cash collateral as provided in the Cash Collateral Order as such is necessary to permit the orderly administration of the Debtors' estates;

L. The DIP Financing is being extended by DIP Lender in good faith and DIP Lender is entitled to the protection of § 364(e) of the Bankruptcy Code;

M. The Debtors are unable to obtain sufficient levels of unsecured credit allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense necessary to maintain and conduct their business;

N. The Debtors are unable to obtain unsecured credit allowable only under § 364(c)(1) of the Bankruptcy Code or secured credit allowable only under § 364(c)(2) and (c)(3) of the Bankruptcy Code, except under the terms and conditions as provided in the DIP Loan Agreement and this Order; and

O.   Due notice of the Motion and the Cash Collateral Order was given to all creditors, all those who filed Notices of Appearance prior to the date of service of the Motion, all relevant taxing authorities, and the Office of the United States Trustee, pursuant to § 102 of the Bankruptcy Code, Rule 4001(c) of the Rules and any and all applicable Local Bankruptcy Rules.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.   The Motion is granted to the extent set forth herein.  The Debtors are hereby authorized to: (i) Obtain extensions of credit pursuant to the DIP Loan Agreement in accordance with and solely for the purposes set forth in the budget, a copy of which is annexed hereto as Exhibit 1 (the "Budget"), and subject to the terms set forth in this Order; (ii) Make disbursements in accordance with the Budget; (iii) Incur any and all liabilities and obligations under the DIP Loan Agreement. DIP Lender is authorized to make funds available to the Debtors in accordance with the DIP Loan Agreement, including, at DIP Lender's sole discretion, to make funds available to the Debtors in excess of the budgeted amounts.  All obligations owed by the Debtors to DIP Lender shall be due and payable, and shall be paid, by the Debtors in accordance with the requirements of this Order and the DIP Loan Agreement.

2.   Except as specifically and expressly modified herein, DIP Lender's post-petition advances, loans, rights, and remedies, and the Debtors' obligations, consents, and requirements shall be governed in all respects by the terms and conditions of the DIP Loan Agreement, which is deemed incorporated herein, and which shall be in full force and effect with respect to the DIP Financing provided by DIP Lender.  The DIP Loan Agreement shall constitute valid, binding, and enforceable obligations of the Debtors in accordance with its terms.  The Debtors are authorized to do and perform all acts, to make, execute, and deliver any and all agreements, assignments, instruments and documents and to pay all filing fees and recording fees to give

effect to any of the terms and conditions of the DIP Loan Agreement. To the extent necessary, each officer of the Debtors and such other individuals as may be so authorized by the Debtors, are hereby authorized to execute and deliver each document necessary with respect to the DIP Financing, such execution and delivery to be conclusive of their respective authority to act in the name of, and on behalf of the Debtors.

3. The Debtors are authorized to enter into and perform in accordance with the DIP Loan Agreement and this Order, and to borrow money on a secured basis from DIP Lender from time to time on a final basis under the DIP Loan Agreement, in an amount no greater than $2,500,000 and as may be determined pursuant to the DIP Loan Agreement, and hereby grants to DIP Lender a security interest as provided for in the DIP Loan Agreement and this Order, to be used by the Debtors strictly in accordance with the Budget.

4. Subject to the Carve Out, as defined below, and the Cash Collateral Order, to secure the DIP Financing, DIP Lender is hereby granted, pursuant to sections 364(c)(2) and 364(c)(3), and subject to the terms and conditions of the DIP Loan Agreement, valid, enforceable and fully perfected, liens on and security interests in all of the real property, personal property, assets or interests in property or assets of the Debtors, of any kind or nature whatsoever, real or personal, now existing or hereafter acquired or created, and all cash and non-cash proceeds, rents, products and profits of any collateral described above (collectively, the "DIP Lender Collateral"), provided, however, that the liens granted to the DIP Lender herein in the DIP Lender Collateral or otherwise shall be subordinate in all respect to the liens granted to the Prepetition Secured Lender (as defined in the Cash Collateral Order) under the Cash Collateral Order and the Prepetition Loan Documents (as defined in the Cash Collateral Order).

5.      This Order shall be sufficient evidence of DIP Lender's perfected post-petition liens and security interests in and to DIP Lender Collateral and shall be binding, enforceable and perfected upon the entry of this Order.  The Debtors are authorized and directed to execute such documents including, without limitation, Uniform Commercial Code financing statements and to pay such costs and expenses as may be reasonably required to perfect DIP Lender's security interests in the DIP Lender Collateral as provided herein; DIP Lender is authorized (but not required) to file and record financing statements with respect to such security interests and liens, all such financing statements being deemed to have been filed or recorded on the Petition Date.

6.      The provisions of this Order shall inure to the benefit of DIP Lender and the Prepetition Secured Lender, as applicable, and shall be binding upon the Debtors and their respective successors and assigns (including any trustee or other fiduciary herein appointed as a legal representative of the Debtors in this Chapter 11 case or in any succeeding case under Chapter 7 or otherwise with respect to the property of the Debtors' estates).

7.      Subject to the Carve Out as defined below, and the Cash Collateral Order, the DIP Lender is also hereby granted an allowed super priority administrative claim as provided in § 364(c)(1) of the Bankruptcy Code against the Debtors' estates, which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtors and over all administrative expenses or charges against property arising in the Debtors' Chapter 11 cases or any superseding Chapter 7 cases, including without limitation those specified in §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 1113 or 1114 of the Bankruptcy Code, provided, however, that the super priority administrative claim granted to the DIP Lender hereunder shall be subordinate in all respects to the super priority administrative claims granted to  to the Prepetition Secured Lender under the Cash Collateral Order.

8. No payments and transfers of property of the estate to DIP Lender as provided, permitted, and/or required under the DIP Loan Agreement and this Order shall be avoidable or recoverable from DIP Lender. The application of the proceeds of the DIP Lender Collateral shall be in accordance with the Cash Collateral Order, the Prepetition Loan Documents, the DIP Loan Agreement and this Order.

9. DIP Lender is hereby authorized to charge and as applicable, continue to charge, the Debtors' loan account for all interest, administrative and other reasonable fees, transaction costs, legal fees, and expenses with respect to the DIP Financing, and any and all other expenses as provided in the DIP Loan Agreement, as well as such reasonable costs, expenses and fees relating to any mortgages, collateral securitization, or guarantees required by DIP Lender in order to provide the DIP Financing. In the event that DIP Lender seeks reimbursement of fees and expenses of its counsel ("Counsel"), Counsel's invoices with detailed time and expense records shall be sent to the Debtors, any official committee of unsecured creditors (the "Committee"), and the United States Trustee. In the event that no objection is received by DIP Lender within fourteen (14) days of transmission of such invoices, Counsel's fees and expenses may be paid without further Court order.

10. The Debtors shall provide DIP Lender and Prepetition Secured Creditor with such written reports as reasonably requested by DIP Lender or the Prepetition Secured Creditor. In addition, the Debtor shall provide DIP Lender, Prepetition Secured Lender, and the Committee (if any) with: (i) Weekly budget to actual comparison reports; (ii) Weekly accounts receivable aging reports; and (iii) Rolling thirteen (13) week cash flow forecasts. All reports must be in a format acceptable to DIP Lender and the Prepetition Secured Creditor shall be received by DIP Lender and the Prepetition Secured Lender no later than Wednesday of each week. All written

reports of the Debtors by an authorized representative of the Debtors acceptable to DIP Lender and the Prepetition Secured Lender and shall be certified to be accurate to the best of such officer's knowledge, information and belief.

11. Each of the following shall constitute an "Event of Default" for purposes of this Order:

(a) The Court enters an order authorizing the sale of all or substantially all assets of the Debtors that does not provide for the payment in full to DIP Lender of its claims, in cash, upon the closing of the sale, unless otherwise agreed by DIP Lender in its sole and absolute discretion;

(b) The Court enters an order granting relief from the automatic stay with respect to assets of the Debtors' estates to any third party if the affected assets of the Debtors total more than $250,000;

(c) The Debtors cease operations of their present business as such existed on the Petition Date or take any material action for the purpose of effecting the foregoing without the prior written consent of DIP Lender;

(d) Either or both of the Debtors' bankruptcy cases are either dismissed or converted to Chapter 7 cases, pursuant to an order of the Court, the effect of which has not been stayed;

(e) A Chapter 11 trustee, an examiner, or any other responsible person or officer of the Court with similar powers is appointed by order of the Court, the effect of which has not been stayed;

(f) A change in the Debtors' ownership or management occurs, in a manner that is not reasonably acceptable to DIP Lender;

(g) This Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of DIP Lender; (i) materially and adversely affect the rights of DIP Lender hereunder, or (ii) materially and adversely affect the priority of any or all of DIP Lender's claims and/or the liens granted herein;

(h) The occurrence, subsequent to the Petition Date, of an Event of Default under the DIP Loan Agreement. In the event of any inconsistency between the Events of Default of this Final Order and the DIP Loan Agreement, the provisions of this Final Order shall govern;

  (i) The Debtor expends any funds or monies for any purpose other than those set forth on the Budget within a variance of up to ten percent (10%) with respect to any one line item of the Budget, provided that the overall weekly disbursements do not exceed one hundred ten percent (110%) of the budgeted expenses of the Debtors, but any accrued expenses of the professionals retained by the Debtors or the Committee in excess of the budgeted amounts shall not, in and of itself, be an Event of Default;

  (j) The occurrence of a material adverse change, including without limitation any such occurrence resulting from the entry of any order of the Court, or otherwise in each case as determined by DIP Lender in: (1) the condition (financial or otherwise), operations, assets, business or business prospects of the Debtors; (2) the Debtors' ability to repay DIP Lender; and/or (3) the value of the DIP Lender Collateral;

  (k) Any material and/or intentional misrepresentation by the Debtors in any financial reporting or certifications to be provided by the Debtors to DIP Lender;

  (l) The Debtors' non-compliance with or default under any of the terms and provisions of this Order or the DIP Loan Agreement; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtors within seven (7) days after notice of such non-compliance or default is given to the Debtors by DIP Lender; and

  (m) The Court enters an order authorizing the Debtors to obtain credit or the incur indebtedness secured by a lien or security interest which is equal or senior to the liens or security interests held by DIP Lender, or which is entitled to priority administrative status which is equal to or superior to that granted to DIP Lender herein, unless, (i) DIP Lender shall have given its prior written consent thereto, (ii) such order determines that DIP Lender is adequately protected; or (iii) such Order requires that there shall first be indefeasibly paid in full to DIP Lender all debts and obligations of the Debtors which arise or result from the DIP Loan Agreement and the obligations, loans, credit, security interests and liens authorized herein

  12. Upon the occurrence of an Event of Default and five (5) day's written notice thereof by DIP Lender to the Debtors' counsel, the Committee's counsel, counsel to the Prepetition Secured Lender and the Office of the U.S. Trustee (which notice may be given by facsimile or e-mail transmission) (the "Default Notice"), or upon the occurrence of the maturity date set forth in the DIP Loan Agreement, the Debtors' right to borrow under the DIP Loan

ACTIVE 235829102

Agreement shall terminate and DIP Lender shall have no obligation to make any further DIP Financing.

13. With respect to an Event of Default as to which a Default Notice has been given, the Debtors, the Committee, and/or the U.S. Trustee shall have seven (7) days from the receipt of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court on notice to DIP Lender enjoining or restraining DIP Lender from exercising rights and remedies based upon the Event of Default specified in the Default Notice (the "Restraint on Remedies").

14. With respect to an Event of Default as to which a Default Notice has been given: (i) Immediately upon expiration of the Remedy Notice Period, unless a Restraint on Remedies has timely been obtained from the Court, or (ii) Immediately upon the occurrence of the maturity date set forth in the DIP Loan Agreement, the Debtors' right to borrow shall terminate pursuant to this Order, the Budget shall cease, and the obligations due DIP Lender shall be immediately due and payable. Immediately upon the expiration of the Remedy Notice Period, unless a Restraint on Remedies has been timely obtained from the Court, DIP Lender, upon filing with the Court a notice of the expiration of the Remedy Notice Period, shall have the right, free of the restrictions of § 362 or under any other section of the Bankruptcy Code, to exercise all of its contractual, legal and equitable rights and remedies as to all or such part of the DIP Lender Collateral as DIP Lender shall elect.

15. As consideration for DIP Lender providing DIP Financing and the Carve Out, as defined below, no expenses of administration of the Debtors' Chapter 11 case or any future proceeding which may result from such case, including liquidation in this Chapter 11 case or other proceedings under the Bankruptcy Code, shall be charged against DIP Lender Collateral pursuant to § 506(c) of the Bankruptcy Code, other than the Carve Out, defined below, as

applicable, without the prior written consent of DIP Lender and no such consent shall ever be implied from any other action, inaction or acquiescence by DIP Lender.

16.     The automatic stay provided by § 362 of the Bankruptcy Code shall be and is hereby vacated and terminated to the extent necessary as to DIP Lender with respect to the creation, perfection and implementation of DIP Lender's post-petition liens and security interests in the DIP Lender Collateral.

17.     The provisions of this Order and any action pursuant thereto shall be and remain in effect unimpaired and shall survive entry of any order which may be entered confirming a Plan of Reorganization of the Debtors or converting this case from Chapter 11 to Chapter 7 and the terms and provisions of this Order, as well as the priorities, liens and security interests created hereunder, shall continue in this or any other superseding case under the Code, and such liens and security interests shall maintain that priority as provided for in this Order until satisfied and discharged in full.

18.     The term "Carve Out" means: (i) Quarterly fees, and interest thereon, of the United States Trustee and other fees due the United States Bankruptcy Court pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717, and any fees due to the Clerk of the Court; (ii) Allowed fees and expenses of the professionals retained by the Debtors and the Committee, in excess of the retainers paid by the Debtors, pursuant to Bankruptcy Court order, in an aggregate amount not to exceed the sum of the dollar amount of such fees and expenses to the extent (a) incurred prior to the expiration of the Remedy Notice Period for an Event of Default and remaining unpaid, and/or (b) previously or subsequently allowed by Court Order, and at all times and in both cases, limited in amount to the aggregate amounts specifically provided for in the Budget for each professional, regardless of the date on which such amounts appear in the Budget, and (c)

fees and expenses of such professionals incurred subsequent to the expiration of the Remedy Notice Period for an Event of Default not to exceed the amount of $20,000 in the aggregate; and (iii) any costs and fees of a Chapter 7 Trustee, should one be appointed, however, not to exceed the amount of $50,000. Any amount of the Carve Out paid or otherwise funded by DIP Lender shall be treated as advances under the DIP Financing.

19. Unless DIP Lender is paid in full on the effective date of a confirmed plan of reorganization, or DIP Lender expressly consents in writing, no plan of reorganization shall be proposed by the Debtors in this case that shall impair, affect, amend or otherwise modify the rights of DIP Lender under this Order or DIP Loan Agreement.

20. This Order has been negotiated in good faith and at arm's length between the Debtors and DIP Lender, and any credit extended and loans made to the Debtors pursuant to this Order shall be deemed to be extended in good faith as that term is used in § 364(e) of the Bankruptcy Code.

21. Other than the DIP Lender and the Prepetition Secured Creditor, no rights are created under this Order for the benefit of any other creditor of the Debtors, any other party in interest in the Debtors' bankruptcy case, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

22. The terms and conditions of this Order shall be: (a) immediately enforceable notwithstanding Rule 6004(h) of the Rules; and (b) not be stayed absent (1) an application by a party in interest for such stay conforming with Rule 8007 of the Rules, and (2) a hearing upon notice to the Debtors and DIP Lender.

23. To the extent that any of the provisions of this Order shall conflict with any of the provisions of the DIP Loan Agreement, this Order is deemed to control and shall supersede the

conflicting provision(s). To the extent that any of the provisions of this Order shall conflict with any order of the Court authorizing the Debtors to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then this Order is deemed to control and supersede the conflicting provision(s) in said orders. As it relates to the rights, remedies and protections of the Prepetition Secured Lender, to the extent that any of the provisions of this Order adversely modify or conflict with the Cash Collateral Order, the Cash Collateral Order shall control.

24.     DIP Lender and the Debtors may amend, modify or supplement any of the provisions of the DIP Loan Agreement (collectively, a "Modification") without further order of the Court, provided that: (a) Such Modification is not material; (b) Notice of such Modification is filed with the Court and given to Committee counsel, the U.S. Trustee and the Prepetition Secured Creditor, reasonably prior to the proposed effective date thereof, except that filing with the Court shall not be required with respect to any Modification that in addition to being non-material is also technical and/or ministerial; and (c) the Committee, U.S. Trustee or Successor Prepetition Secured Lender does not oppose such Modification within three (3) business days of such Notice. The foregoing provisions shall not apply to any forbearance or waiver by DIP Lender with respect to any Event(s) of Default which may have occurred (and the foregoing provisions shall not limit or impair DIP Lender's absolute discretion to agree to such forbearance or waiver), provided that such forbearance or waiver is not itself conditioned upon the Debtors' agreeing to any Modification that is material.

25.     The Debtors' authorization to obtain DIP Financing pursuant to this Order, shall be in effect for the period commencing with the Petition Date through and including the maturity date set forth in the DIP Loan Agreement (the "Expiration Date"). The Debtors, DIP Lender, the

Prepetition Secured Lender, and the Committee may amend or provide for new Budgets and extend the Expiration Date, without the need for further Court approval, provided that any amended Budget and notice of any extension of the Expiration Date is filed with the Court.

26. DIP Lender shall not be subject to the equitable doctrines of "marshalling" or any similar claim or doctrine with respect to any DIP Lender Collateral.

27. The Cash Collateral Order, attached hereto as Exhibit 2, including the senior liens, super priority administrative claims granted therein and all other provisions contained therein, and the use of the Prepetition Secured Lender's Cash Collateral on the terms set forth therein is approved in its entirety on a final basis effective immediately without the need for the entry of any further order of the Court; provided, however, the Cash Collateral Order shall be deemed modified solely to the extent to extend the Cash Collateral Period through December 31, 2018 (subject to the Prepetition Secured Lender's termination rights thereunder), deem all references to September 7, 2018 as changed to December 31, 2018, and remove the dollar amount of Cash Collateral Limit in paragraph 2 provided, further, however, that Debtors may use the Prepetition Secured Lender's Cash Collateral only in accordance with the Budget approved pursuant to this Order and such Budget supersedes and replaces the budget that was filed with the Cash Collateral Order.

28. In addition to the adequate protection provided to the Prepetition Secured Lender in the Cash Collateral Order, the Debtors will pay to the Prepetition Secured Lender, as additional adequate protection, $149,000 per month as contemplated by the Budget, the acceptance of which shall not waive or prejudice any rights, remedies or arguments of the Prepetition Secured Lender with respect to, among other things, any plan of reorganization,

including any plan that seeks reinstatement of the Prepetition Loan Documents, Section 506(b) or otherwise.

29.    The rights of all parties in interest with respect any plan of reorganization proposed in these chapter 11 cases are fully reserved.

**Dated:  New York, New York**
             **September _20th_, 2018**

                              **/s/ STUART M. BERNSTEIN**
                              **Hon. Stuart M. Bernstein**
                              **United States Bankruptcy Judge**