# **Exhibit 1**

**1141 Realty Owner LLC And Flatironhotel Operations LLC**
Weekly Cash-Flow Projections

**WEEKLY CASH-FLOW FORECAST**
**CONSOLIDATED**
**DRAFT FOR DISCUSSION**

| All figures in U.S. dollars | | | | | ME | | | | ME | | | | ME | | | | ME | | | | ME | | Total Post-Petition |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 22 weeks ending |
| Week-ending date | 8/3 | 8/10 | 8/17 | 8/24 | 8/31 | 9/7 | 9/14 | 9/21 | 9/28 | 10/5 | 10/12 | 10/19 | 10/26 | 11/2 | 11/9 | 11/16 | 11/23 | 11/30 | 12/7 | 12/14 | 12/21 | 12/28 | 12/28 |
| Pre/Post-petition week | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | Post | |

**Cash revenue**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rooms Revenue | 21,325 | 31,411 | 16,913 | 15,218 | 30,275 | 48,363 | 48,363 | 48,363 | 48,363 | 46,606 | 46,606 | 46,606 | 46,606 | 30,117 | 30,117 | 30,117 | 30,117 | 30,117 | 41,762 | 41,762 | 41,762 | 41,762 | 812,651 |
| Miscellaneous Income | 1,311 | 4,090 | 1,803 | 1,900 | 3,481 | 4,473 | 4,473 | 4,473 | 4,473 | 4,534 | 4,534 | 4,534 | 4,534 | 3,766 | 3,766 | 3,766 | 3,766 | 3,766 | 4,795 | 4,795 | 4,795 | 4,795 | 86,620 |
| Sales-tax collections | 2,539 | 4,575 | 2,262 | 1,694 | 5,744 | 9,080 | 9,080 | 9,080 | 9,080 | 8,770 | 8,770 | 8,770 | 8,770 | 5,741 | 5,741 | 5,741 | 5,741 | 5,741 | 7,923 | 7,923 | 7,923 | 7,923 | 148,612 |
| **TOTAL CASH REVENUE** | **25,175** | **40,076** | **20,978** | **18,812** | **39,501** | **61,915** | **61,915** | **61,915** | **61,915** | **59,910** | **59,910** | **59,910** | **59,910** | **39,624** | **39,624** | **39,624** | **39,624** | **39,624** | **54,481** | **54,481** | **54,481** | **54,481** | **1,047,883** |
| Beginning operating cash balance | - | 40,562 | 71,254 | 364,269 | 363,457 | 314,811 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 32,553 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,004 | - |

**Collections**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rooms Receipts | - | 5,500 | 21,181 | 18,947 | 18,532 | 32,084 | 48,187 | 48,187 | 48,187 | 48,187 | 44,957 | 44,957 | 44,957 | 44,957 | 30,117 | 31,282 | 31,282 | 31,282 | 31,282 | 37,586 | 37,586 | 37,586 | 736,822 |
| Miscellaneous Income | - | - | - | - | 1,900 | 3,481 | 4,473 | 4,473 | 4,473 | 4,473 | 4,534 | 4,534 | 4,534 | 4,534 | 3,766 | 3,766 | 3,766 | 3,766 | 3,766 | 4,795 | 4,795 | 4,795 | 74,620 |
| Sales-tax collections | - | - | - | - | 5,744 | 9,080 | 9,080 | 9,080 | 9,080 | 8,770 | 8,770 | 8,770 | 8,770 | 5,741 | 5,741 | 5,741 | 5,741 | 5,741 | 7,923 | 7,923 | 7,923 | 7,923 | 137,543 |
| Pre-Petition- Signature Bank | 55,000 | 55,008 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 110,008 |
| Restricted Cash- Lockbox | - | - | 293,216 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 293,216 |
| **Total collections** | **55,000** | **60,508** | **314,396** | **18,947** | **26,176** | **44,645** | **61,739** | **61,739** | **61,739** | **61,429** | **58,261** | **58,261** | **58,261** | **55,232** | **39,624** | **40,789** | **40,789** | **40,789** | **42,971** | **50,304** | **50,304** | **50,304** | **1,352,208** |

**Operating disbursements**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll and payroll taxes | (14,438) | (16,021) | (12,603) | (11,961) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (14,920) | (323,582) |
| Supplies and services | - | - | (4,609) | - | (1,171) | (4,170) | (4,170) | (4,309) | (4,309) | (2,812) | (2,812) | (2,747) | (2,721) | (8,597) | (8,597) | (8,679) | (8,883) | (6,970) | (6,970) | (6,970) | (6,745) | (6,745) | (102,989) |
| Equipment Leases/Rentals | - | - | - | - | - | - | - | (1,049) | - | - | - | - | - | - | (1,049) | - | - | - | - | - | (1,049) | - | (4,194) |
| Equipment and building repair | - | - | (762) | - | (19,895) | (34,851) | (26,000) | (10,000) | (22,043) | (10,000) | (10,000) | (10,000) | (25,101) | - | - | - | (11,633) | - | - | - | - | (12,376) | (192,659) |
| Utilities and related | - | - | - | (1,407) | (20,692) | - | - | (2,384) | (20,173) | - | - | (24,826) | - | - | (2,384) | - | (26,061) | - | - | (2,384) | - | (22,452) | (125,147) |
| Advertising, marketing and promotions | - | - | - | (3,687) | (4,429) | (4,330) | (4,330) | (4,474) | (4,474) | (5,397) | (5,397) | (5,272) | (5,223) | (5,460) | (5,460) | (5,512) | (5,642) | (4,926) | (4,926) | (4,926) | (4,767) | (4,767) | (93,395) |
| Outside services | - | (1,991) | (2,934) | (1,980) | (5,985) | (5,985) | (6,184) | (6,184) | (6,091) | (12,181) | (5,950) | (5,894) | (6,398) | (6,398) | (6,459) | (6,611) | (6,167) | (6,167) | (6,167) | (5,968) | (5,968) | (5,647) | (123,308) |
| Third-party commissions | - | - | - | - | (1,142) | (740) | (740) | (765) | (765) | (2,676) | (2,676) | (2,614) | (2,589) | (6,357) | (6,357) | (6,417) | (6,569) | (7,643) | (7,643) | (7,643) | (7,396) | (7,396) | (78,128) |
| Insurances | - | - | - | - | - | - | (193) | - | - | - | (193) | - | - | - | (193) | - | - | - | (193) | - | - | (193) | (967) |
| Sales- and use-tax remittances | - | - | - | - | - | (30,715) | - | - | - | (19,535) | - | - | (38,825) | - | - | - | - | (36,675) | - | - | - | - | (125,749) |
| Real- and personal-property taxes | - | - | - | - | - | - | - | - | - | - | - | (172,005) | - | - | - | - | - | - | - | - | - | - | (172,005) |
| Bank and credit-card fees | - | - | (20) | (342) | (1,251) | (1,794) | (3,410) | (1,794) | (1,794) | (1,741) | (3,298) | (1,741) | (1,741) | (2,711) | (1,188) | (1,188) | (1,188) | (1,188) | (1,610) | (1,610) | (3,169) | (1,610) | (34,392) |
| All other operating disbursements | - | (4,000) | (329) | - | (5,145) | (6,240) | (6,240) | (6,281) | (6,281) | (5,655) | (5,655) | (5,640) | (5,634) | (6,384) | (6,384) | (6,397) | (6,430) | (6,705) | (6,705) | (6,705) | (6,650) | (6,650) | (116,110) |
| **Total operating disbursements** | **(14,438)** | **(22,013)** | **(21,258)** | **(19,377)** | **(74,823)** | **(103,744)** | **(65,994)** | **(52,160)** | **(81,043)** | **(74,917)** | **(50,708)** | **(224,266)** | **(89,346)** | **(89,651)** | **(49,364)** | **(53,157)** | **(49,799)** | **(86,405)** | **(85,615)** | **(50,300)** | **(51,489)** | **(82,757)** | **(1,492,625)** |
| **OPERATING CASH FLOW** | **40,562** | **38,495** | **293,139** | **(431)** | **(48,646)** | **(59,100)** | **(4,255)** | **9,579** | **(19,304)** | **(13,487)** | **7,553** | **(166,005)** | **(31,085)** | **(34,419)** | **(9,740)** | **(12,368)** | **(9,010)** | **(45,617)** | **(42,645)** | **4** | **(1,185)** | **(32,452)** | **(140,417)** |

**Non-operating disbursements**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Default Interest, pre-petition debt | - | - | - | - | - | (149,539) | - | - | - | (149,539) | - | - | - | (149,539) | - | - | - | (149,539) | - | - | - | - | (598,158) |
| **Total non-operating disbursements** | **-** | **-** | **-** | **-** | **-** | **(149,539)** | **-** | **-** | **-** | **(149,539)** | **-** | **-** | **-** | **(149,539)** | **-** | **-** | **-** | **(149,539)** | **-** | **-** | **-** | **-** | **(598,158)** |

**Restructuring-related disbursements**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Professional fees, ordinary course | - | - | - | - | - | - | (16,501) | - | - | - | (14,902) | - | - | - | (32,917) | - | - | - | - | - | (18,463) | - | (82,783) |
| Klestadt Winters Jureller Southard & Stevens, LLP | - | - | - | - | - | - | (54,793) | - | - | - | (52,601) | - | - | - | - | - | (52,601) | - | - | - | (32,659) | - | (192,655) |
| CR3 Partners, LLC | - | - | - | - | - | - | (256,873) | - | - | - | (123,584) | - | - | - | - | - | (95,304) | - | - | - | (102,586) | - | (578,346) |
| SilvermanAcampora LLP | - | - | - | - | - | - | (26,462) | - | - | - | (21,170) | - | - | - | - | - | (21,170) | - | - | - | (26,462) | - | (95,263) |
| Omni Management Group | - | - | - | - | - | - | (8,364) | - | - | - | - | - | - | - | (6,691) | - | - | - | (10,037) | - | (8,364) | - | (33,456) |
| Vendor deposits | - | - | - | - | - | (12,317) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (12,317) |
| Critical-vendor payments | - | (7,803) | (124) | (381) | - | - | (315,155) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (323,462) |
| 503(b)(9) claims | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other priority claims | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| All other (sources) / uses | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total restructuring-related disbursements** | **-** | **(7,803)** | **(124)** | **(381)** | **-** | **(315,155)** | **(12,317)** | **(362,994)** | **-** | **-** | **(218,948)** | **-** | **-** | **-** | **(32,917)** | **-** | **(179,111)** | **-** | **-** | **-** | **(188,534)** | **-** | **(1,318,283)** |
| **Total disbursements** | **(14,438)** | **(29,816)** | **(21,381)** | **(19,759)** | **(74,823)** | **(568,439)** | **(78,312)** | **(415,154)** | **(81,043)** | **(224,456)** | **(50,708)** | **(443,214)** | **(89,346)** | **(239,191)** | **(49,364)** | **(86,074)** | **(228,910)** | **(86,405)** | **(235,155)** | **(50,300)** | **(240,023)** | **(82,757)** | **(3,409,066)** |
| **NET CASH FLOW** | **40,562** | **30,692** | **293,015** | **(812)** | **(48,646)** | **(523,794)** | **(16,572)** | **(353,414)** | **(19,304)** | **(163,027)** | **7,553** | **(384,953)** | **(31,085)** | **(183,958)** | **(9,740)** | **(45,285)** | **(188,122)** | **(45,617)** | **(192,184)** | **4** | **(189,718)** | **(32,452)** | **(2,056,857)** |
| Cumulative Net Cash Flow | 40,562 | 71,254 | 364,269 | 363,457 | 314,811 | (208,983) | (225,555) | (578,970) | (598,273) | (761,300) | (753,747) | (1,138,700) | (1,169,785) | (1,353,743) | (1,363,484) | (1,408,769) | (1,596,890) | (1,642,507) | (1,834,691) | (1,834,687) | (2,024,405) | (2,056,857) | |

**DIP loan, new money**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Period | Interim | Interim | Interim | Interim | Interim | Final | Final | Final | Final | Final | Final | Final | Final | Final | Final | Final | Final | Final | Final | Final | Final | Final | Final |
| Beginning balance | - | - | - | - | - | - | 233,983 | 251,100 | 605,072 | 625,205 | 789,076 | 790,045 | 1,168,415 | 1,200,760 | 1,386,002 | 1,397,167 | 1,443,885 | 1,633,474 | 1,680,703 | 1,874,535 | 1,876,330 | 2,067,839 | - |
| Add: Advances | - | - | - | - | - | - | 233,983 | 16,572 | 353,414 | 19,304 | 163,027 | - | 377,400 | 31,085 | 183,958 | 9,740 | 45,285 | 188,122 | 45,617 | 192,184 | - | 189,714 | 32,452 | 2,081,857 |
| Add: Interest, PIK | - | - | - | - | - | - | - | 545 | 557 | 829 | 844 | 970 | 1,433 | 1,260 | 1,284 | 1,425 | 1,468 | 1,612 | 1,647 | 1,795 | 1,795 | 1,941 | 20,375 |
| **Ending balance, line of credit balance** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ 233,983** | **$ 251,100** | **$ 605,072** | **$ 625,205** | **$ 789,076** | **$ 790,045** | **$ 1,168,415** | **$ 1,200,760** | **$ 1,386,002** | **$ 1,397,167** | **$ 1,443,885** | **$ 1,633,474** | **$ 1,680,703** | **$ 1,874,535** | **$ 1,876,330** | **$ 2,067,839** | **$ 2,102,233** | **$ 2,102,233** |
| **ENDING OPERATING CASH BALANCE** | **$ 40,562** | **$ 71,254** | **$ 364,269** | **$ 363,457** | **$ 314,811** | **$ 25,000** | **$ 25,000** | **$ 25,000** | **$ 25,000** | **$ 25,000** | **$ 32,553** | **$ 25,000** | **$ 25,000** | **$ 25,000** | **$ 25,000** | **$ 25,000** | **$ 25,000** | **$ 25,000** | **$ 25,000** | **$ 25,000** | **$ 25,004** | **$ 25,000** | **$ 25,000** |

**Working-capital balances**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | Change |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Accounts receivable | 29,784 | 41,754 | 23,274 | 18,530 | 31,855 | 49,125 | 49,300 | 49,476 | 49,652 | 48,132 | 49,781 | 51,430 | 53,079 | 37,471 | 37,471 | 36,306 | 35,141 | 33,977 | 45,487 | 49,663 | 53,839 | 58,016 | 28,232 |
| Inventory | 11,322 | 11,322 | 11,322 | 11,322 | 11,322 | 11,322 | 11,322 | 11,322 | 11,322 | 11,322 | 11,322 | 16,322 | 16,322 | 16,322 | 16,322 | 16,322 | 16,322 | 16,322 | 16,322 | 16,322 | 16,322 | 16,322 | 5,000 |
| Accounts Payable | 13,751 | 28,004 | 43,490 | 61,350 | 54,249 | 46,935 | 61,980 | 65,122 | 79,956 | 58,560 | 76,331 | 82,395 | 88,912 | 65,766 | 77,999 | 56,789 | 69,470 | 40,902 | 53,528 | 66,354 | 65,149 | 71,399 | 57,648 |
| DIP loan, new money | - | - | - | - | - | - | 233,983 | 251,100 | 605,072 | 625,205 | 789,076 | 790,045 | 1,168,415 | 1,200,760 | 1,386,002 | 1,397,167 | 1,443,885 | 1,633,474 | 1,680,703 | 1,874,535 | 1,876,330 | 2,067,839 | 2,102,233 | 2,102,233 |
| Professional fees, accrued and unpaid | (29,303) | 41,914 | 114,422 | 186,931 | 259,439 | 313,938 | 368,437 | 76,444 | 130,944 | 179,406 | 227,868 | 72,285 | 120,748 | 160,001 | 198,557 | 237,811 | 87,156 | 121,359 | 146,967 | 173,271 | 28,808 | 56,778 | 86,082 |

**Notes:**
Amounts in grey are reported actuals.

**Exhibit 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                                                    :

In re:                                               :                    Chapter 11

1141 Realty Owner LLC, *et al.*          :                    Case No. 18-12341 (SMB)

                                                   :                    Joint Administration Pending

                             Debtors.     :
-----------------------------------------------------X

## INTERIM STIPULATION AND ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

1141 Realty Owner LLC ("Owner") and Flatironhotel Operations LLC ("Operator" and together with the Owner, the "Debtors") have reached an agreement with Wilmington Trust, N.A., solely in its capacity as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28 (the "Prepetition Secured Lender") to allow the Debtors to use the Prepetition Secured Lender's cash collateral pursuant to certain terms and conditions, in connection with which the Debtors and the Prepetition Secured Lender submit to the Court the following stipulations in connection with this stipulation and agreed order (this "Stipulation and Order"):

## STIPULATIONS

A.       On July 31, 2018 (the "Petition Date"), the Debtors commenced cases under chapter 11 of the Bankruptcy Court by filing voluntary chapter 11 petitions with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

B.       As of the Petition Date, the Debtors' principal business was the ownership and operation of a hotel under the name of the Flatiron Hotel, a 62-room boutique hotel (the "Hotel") located at 9 West 26th Street a/k/a 1141 Broadway, New York, New York (the "Property").

C. At the first day hearing on August 2, 2018, the Prepetition Secured Lender objected to the Debtors' motion for post-petition financing pursuant to section 364(d) of the Bankruptcy Code (the "Priming DIP Motion") and the Bankruptcy Court (i) adjourned the hearing on the Priming DIP Motion and (ii) authorized, with the consent of the Prepetition Secured Lender, the limited use of the Prepetition Secured Lender's cash collateral on the terms set forth on the record.

D. Owner, as borrower, is party to a certain Loan Agreement (the "Prepetition Loan Agreement"), dated as of April 16, 2015 with Rialto Realty Finance, LLC (the "Original Lender").

E. Pursuant to the Prepetition Loan Agreement, the Owner executed (i) two promissory notes: (a) a Consolidated, Amended and Restated Promissory Note A; and (b) Promissory Note B (the "Notes"), (ii) a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement (the "Mortgage") and (iii) an Assignment of Leases and Rents (the "Assignment of Leases and Rents" and together with the Prepetition Loan Agreement, Notes, Mortgage, Assignment of Leases and Rents and all financing statements and other transaction documents, the ("Prepetition Loan Documents").

F. On or about May 21, 2018, the Prepetition Loan Documents were validly assigned to the Prepetition Secured Lender by the Original Lender.

G. The Prepetition Secured Lender asserts that it holds valid, enforceable, perfected and unavoidable security interests and liens in substantially all of the Owner's assets, including but not limited to the Property, cash, accounts receivable, inventory, equipment, and general intangibles and other collateral as is more fully set forth in the Prepetition Loan Documents (collectively, the "Collateral").

H. The Collateral secures all indebtedness owed by the Debtors to the Prepetition Secured Lender under the Prepetition Loan Documents as of the date of the filing of the voluntary

chapter 11 petitions (the "Petition Date"). Such indebtedness is referred to as the "Prepetition Secured Loan Indebtedness". The Prepetition Secured Lender asserts that the Prepetition Secured Loan Indebtedness is not less than $33,723,722.47 plus, without limitation, all interest, fees, costs, charges, and any other amounts allowable under Section 506(b) of the Bankruptcy Code.

I. All proceeds of the Collateral, and all cash from the products, offspring, rents or profits from such Collateral, including any and all post-petition rents and revenues generated by the Debtors through the operation and use of the Collateral (including the Hotel), constitute cash collateral as defined in 11 U.S.C. § 363 (the "Cash Collateral," and, together with all other Collateral under the Prepetition Loan Documents, the "Lender Collateral"). The Prepetition Secured Lender is entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code.

J. On September 15, 2017, the Prepetition Secured Lender sent a Notice of Default and Acceleration to Owner accelerating the debt under the Prepetition Loan Documents. The Prepetition Secured Lender subsequently commenced foreclosure proceedings in the United States District Court for the Southern District of New York (the "District Court"), Case No.: 17-cv-7081-LGS-HBP and sought appointment of a receiver.

K. On June 11, 2018, after conducting an evidentiary hearing, Magistrate Judge Henry B. Pitman issued his Certification of Facts, Conclusions of Law and Proposed Remedies, recommending (1) an award in Wilmington Trust's favor of reasonable attorneys' fees and costs incurred as a result of prosecuting its contempt motion, and (2) the appointment of a special master to "monitor and report" on Owner's continued compliance with the Stipulation and Order and declining to recommend Wilmington Trust's request that Owner be required to retain a certified

3

public accountant to perform an accounting of Owner's income from November 15, 2017 through the present.

L. The Debtors' estates do not have sufficient available sources of working capital and financing to carry on the operation of its business without the use of Cash Collateral in which the Prepetition Secured Lender has an interest. In addition, the Debtors critical need for use of Cash Collateral is immediate. In the absence of the use of Cash Collateral, serious and irreparable harm to the estates' business will occur including but not limited to the cessation of the operation of the Debtors' hotel property.

M. The Debtors acknowledge that pursuant to Section 363(c)(2) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors are unable to use the Cash Collateral without the Prepetition Secured Lender's consent or order of the Court.

N. Consideration of this Stipulation and Order constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (K), (M), and (O).

O. This Court has jurisdiction over this proceeding, the parties and the property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

P. The Prepetition Secured Lender has consented to the Debtors' use of the Cash Collateral through the Termination Date (as defined below) to pay expenses permitted by the Budget (as hereinafter defined) and on the express terms and conditions set forth herein, all of which have been negotiated in good faith and at arm's length. The terms of such use of Cash Collateral and the adequate protection arrangements authorized hereunder are fair and reasonable under the circumstances and reflect the Debtors' exercise of prudent business judgment.

Q. Entry of this Stipulation and Order is in the best interests of the estates and its creditors and is fair and reasonable as its implementation will, among other things, allow for the continued operation of the Debtors' existing business, the preservation of its going concern value and the retention of jobs at the hotel property.

R. The terms of this Stipulation and Order have been negotiated in good faith and at arm's length between the Debtors and Prepetition Secured Lender.

S. The Prepetition Secured Lender will not be adequately protected, as defined in 11 U.S.C. §§ 361 and 363, without conditioning the Debtors' use of the Cash Collateral on the observance of the provisions of this Stipulation and Order as hereinafter set forth.

T. The Debtors and the Prepetition Secured Lender have agreed to entry of the Stipulation and Order to permit the Debtors to use the Cash Collateral, subject to the terms outlined below.

**NOW THEREFORE, IT IS HEREBY STIPULATED, AGREED, FOUND AND ORDERED**[1]

1. The above stipulations are incorporated by reference in this Stipulation and Order, and paragraphs ~~I, L,~~ **the last sentence of P,** Q and R shall constitute findings of fact, and **paragraphs N and O shall constitute** conclusions of law. **[SMB: 8/9/18]**

2. Subject to the terms and conditions set forth in this Stipulation and Order, the Prepetition Secured Lender authorizes and consents to the Debtors' use of Cash Collateral on an interim basis from July 31, 2018 through and including the September 7, 2018 (the "Cash Collateral Period") up to an aggregate amount not to exceed $400,000 (the "Cash Collateral

---

[1] The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

5

Limit"); provided, however, the consensual use of Cash Collateral may terminate at any time prior to September 7, 2018 upon the occurrence of an Event of Default (as defined below).

3. The Debtors are hereby authorized to use Cash Collateral of the Prepetition Secured Lender to pay their actual, necessary, post-petition expenses, only in accordance with the budget attached hereto as **Exhibit A** (the "Budget") and the terms of this Stipulation and Order. The Debtors shall not prepay any expenses without the prior written consent of the Prepetition Secured Lender. The Budget may not be modified or amended without the express written approval of the Prepetition Secured Lender.

4. All funds, monies, cash, deposit accounts or other cash equivalents which represent the proceeds of Lender Collateral, including without limitation all Cash Collateral in excess of the Cash Collateral Limit, now or hereafter in the possession or control of the Debtors, if any, shall be deposited and held in three accounts at Signature Bank (the "Signature Accounts") and may not be used by the estate except in accordance with the terms and conditions set forth in this Stipulation and Order and pursuant to the Budget. The Prepetition Secured Lender is hereby granted an automatically perfected lien and security interest in the Signature Accounts and any other account not previously subject to the Prepetition Secured Lenders liens, if any, and all cash maintained in such Signature Account or other accounts now or hereinafter in possession or control of the Debtors is deemed to be Cash Collateral, except for account number ending 9253, which is an account used solely for deposit of sales and use taxes and other trust fund taxes. The Debtors may not maintain or transfer any of the Cash Collateral in or to an account of the Debtors that is not subject to the Prepetition Secured Lenders' liens, if any; provided, however, that nothing herein shall restrict the ability of the Debtors to make payments in accordance with the Budget.

5. The Debtors shall provide the Prepetition Secured Lender with (i) a weekly budget-to-actual comparison due each Tuesday for the prior week, and (ii) any other financial information

6

reasonably requested by the Prepetition Secured Lender, to be promptly provided by the Debtors following a written request for same. Item (i) herein shall be certified as true and correct by the chief restructuring officer of the Debtors.

6. The Debtors shall maintain insurance with respect to all of the Lender Collateral for all the purposes and in the amounts maintained by the Debtors in accordance with the requirements of the Prepetition Loan Documents as is currently in place. Such insurance shall contain a standard mortgage clause with the Prepetition Secured Lender named as loss payee, except that the Prepetition Secured Lender shall not be named as loss payee for any particular items of equipment as to which the Prepetition Secured Lender's liens are not superior to the liens of any other lien claimant.

7. The Prepetition Secured Lender's consent to the use of Cash Collateral is expressly conditioned on the appointment of James Katchadurian as Chief Restructuring Officer, being appointed to manage the Debtors' businesses on the Petition Date. The Debtors and their officers, directors and employees shall not take any action, nor shall they assist or participate directly or indirectly with any other party or party in interest in any actions which would knowingly contravene any provision of this Stipulation and Order; provided, however, nothing contained in the paragraph shall modify the fiduciary obligations owed by the Debtors to the estates.

8. As adequate protection for the use of the Prepetition Secured Lender's Cash Collateral on and after the Petition Date, as well as any diminution in value of the Lenders Collateral, including as a result from the use of Cash Collateral pursuant to this Stipulation and Order:

    a. Subject to the provisions of paragraph 13, the Prepetition Secured Lender is hereby granted under sections 361, 362 and 363(e) of the Bankruptcy Code replacement liens and

security interests (the "Replacement Liens") on all assets of the Debtors and their estates, whether now existing or hereafter acquired, and the proceeds, income, rents profits and offspring of any of the foregoing, to secure the Debtors' use of Cash Collateral, whether pursuant to this Stipulation or otherwise, and to secure any diminution of value in the Lenders Collateral from and after the Petition Date (collectively, the "Replacement Lien Collateral"). The Replacement Liens (i) are subordinate only to the Carve-Out (as defined below), (ii) shall attach with the same rights and in the same order of priority that existed as to the Lender Collateral under applicable non-bankruptcy law (including by agreement of the Prepetition Secured Lender) as of the Petition Date, (iii) are automatically perfected, and (iv) exclude any and all claims or causes of action arising under chapter 5 of the Bankruptcy Code or applicable state fraudulent-transfer law and any proceeds thereof (together, "Avoidance Actions").

b. Subject to the provisions of paragraph 13, the Prepetition Secured Lender is granted pursuant to Bankruptcy Code Sections 507(b) and 361, an allowed super-priority administrative expense claim in an amount not less than the aggregate amount of all Cash Collateral used on and after the Petition Date (whether under this Stipulation and Order or otherwise), plus the amount of any other diminution in the value of the Lender Collateral on and after the Petition Date, which super-priority administrative expense claim shall have priority over any and all other administrative expenses of the kind specified in, or ordered pursuant to, Bankruptcy Code Sections 105, 326, 328, 330, 331, 503(b), 507(a), and 507(b). No costs or administrative expenses which have been or may be incurred in the Debtors' chapter 11 cases or in any subsequent case(s) under chapter 7 of the Bankruptcy Code, and no priority claims, are or will be prior to or on a parity with the respective claims of the Prepetition Secured Lender except

18-13341-smb Doc 262 Filed 08/09/18 Entered 08/09/18 02:52:01 Main Document Pg 8 of 20

8

for costs, if any, imposed by a final order of the Bankruptcy Court, after notice and a hearing, against the Lender Collateral under section 506(c) of the Bankruptcy Code.

9. The Debtors shall cooperate with the Prepetition Secured Lender to execute such documents and instruments and do such other things as the Prepetition Secured Lender may reasonably request to evidence the perfection of the Replacement Liens, although such Replacement Liens are deemed perfected without the need for any additional action.

10. The Debtors' consensual use of Cash Collateral terminates on the earlier of (a) September 7, 2018 or (b) upon the occurrence of an Event of Default (as defined below) ("Termination Date"). Each of the following shall constitute an "Event of Default": (a) the appointment of a chapter 11 trustee, (b) the conversion of any of the Debtors' cases to a chapter 7 case, (c) the lifting of the automatic stay to allow the Prepetition Secured Lender or any other secured creditor to foreclose its liens on any material portion of the Lender Collateral, (d) the occurrence of a default (following the expiration of any applicable cure period) or termination event under any financing facility or order or stipulation approving the use of cash collateral in the bankruptcy cases of the Debtors, (e) the entry of any order granting relief under section 506(c) of the Bankruptcy Code with respect to any of the Collateral, (f) prior to September 7, 2018, the entry of an order authorizing financing under section 364 of the Bankruptcy Code from any person other than the Prepetition Secured Lender, (g) prior to September 7, 2018, the filing by either of the Debtors, without the Prepetition Secured Lender's prior written consent, of any motion to sell any of the Collateral or to grant a lien on any of the Lender Collateral, or (h) the Debtors' failure to comply with any provision of this Stipulation and Order. The Prepetition Secured Lender shall be required to provide written notice to the Debtors of any default under items (d) and (h) above and the Debtors shall have five (5) business days to cure any such default. In addition, in the event of

9

the occurrence of any Event of Default under this Stipulation and Order (unless such Event of Default is specifically waived in writing by the Prepetition Secured Lender, which waiver shall not be implied from any other action, inaction or acquiescence by Lender), this Court shall conduct an emergency hearing five (5) days following the occurrence of any Event of Default (or as soon thereafter as this Court's schedule permits)) at which time the Debtors, or any successor in interest to the Debtors' estates as the case may be, shall have the burden to show cause why the Court should not (i) vacate and modify the automatic stay provided for pursuant to Bankruptcy Code Section 362 and any other restrictions on the enforcement by the Prepetition Secured Lender of its liens upon and security interests in the Lender Collateral or any other rights under the Prepetition Loan Documents granted to or for the benefit of the Prepetition Secured Lender, or pursuant to this Stipulation and Order or otherwise, and (ii) authorize the Prepetition Secured Lender, without further notice, hearing or approval of this Court, in the sole discretion of the Prepetition Secured Lender, to take any and all actions or remedies which the Prepetition Secured Lender may deem appropriate to proceed against and realize upon the Lender Collateral and any other property of the Debtors' estate upon which the Prepetition Secured Lender has been or may hereafter be granted liens and security interests to obtain indefeasible repayment in full of all obligations.

11. Upon the occurrence of any Event of Default, and upon five (5) business days' written notice (which may be delivered by electronic mail) to the Debtors, their counsel, the U.S. Trustee, and counsel for any official committee (if appointed), unless the Debtors obtain an order from the Court (subject to the Prepetition Secured Lender's rights to object to any request for such order) extending the use of Cash Collateral or otherwise maintaining the automatic stay in effect within such five-day notice period because this Court determines that an Event of Default has not occurred or the Debtors may use Cash Collateral over the Prepetition Secured Lender's objection,

10

the automatic stay of section 362(a) of the Bankruptcy Code shall be deemed terminated (and the fourteen-day stay provided by Bankruptcy Rule 4001(a)(3) shall be deemed waived) without the necessity of any further action by the Prepetition Secured Lender or any further authorization by this Court in order to permit the Prepetition Secured Lender to exercise all rights and remedies provided for in this Stipulation, the Prepetition Loan Documents and applicable law, including, but not limited to, the Prepetition Secured Lender's rights to apply the Cash Collateral and any other proceeds of the Lender Collateral to the Prepetition Secured Loan Indebtedness in accordance with the terms of the Prepetition Loan Documents and applicable law, subject to amounts eligible to be paid from the Carve-Out (defined below) that are in excess of any prepetition retainers otherwise available to pay such eligible amounts. Nothing in this paragraph shall limit the ability of the Debtors to seek authority to use Cash Collateral (on a consensual or non-consensual basis) after the Termination Date, or the Petition Secured Lender's right to object to the use of Cash Collateral.

12. Notwithstanding the foregoing, the obligations of the Debtors and the rights, claims, security interests, liens and priorities of Prepetition Secured Lender with respect to all transactions which occurred prior to the termination of Debtors right to use Cash Collateral in accordance with this Stipulation and Order shall remain unimpaired and unaffected by any such termination and shall survive any such termination.

13. The Prepetition Secured Lender's security interests in and liens upon any of the Lender Collateral securing the Prepetition Secured Loan Indebtedness, and the super-priority administrative expense claim granted to the Prepetition Secured Lender pursuant to the terms of this Stipulation and Order shall be subordinate only to (i) the fees and expenses of the Clerk of this Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any

11

18-13341-smb Doc 262-1 Filed 08/09/18 Entered 08/09/18 13:02:53 Exhibit Pg 15 of 20

applicable interest due pursuant to 31 U.S.C. § 3717; (ii) the amount of outstanding and unpaid Allowed Professional Fees (as defined below), in excess of the retainers paid by the Debtors, up to an aggregate amount not to exceed $20,000 in the aggregate for all estate professionals; and (iii) all fees and expenses up to $15,000 (and any interest thereon) incurred by a trustee under section 726(b) of the Bankruptcy Code (the "Carve-Out"). For purposes of this paragraph, the "Allowed Professional Fees" shall mean the outstanding and unpaid commissions, fees and expenses awarded or allowed by final orders of the Court to the Debtors and any professionals retained by the Debtors or any official committee (the "Estate Professionals"), subject to the rights and interests of all parties in interest of this case to object to the allowance and/or payment of any commissions, fees and expenses requested by any Estate Professional, provided, however, that the payment of Allowed Professional Fees on account of the Carve-Out shall be made only from Cash Collateral generated from the operations of the estates' business during the chapter 11 case. The Prepetition Secured Lender shall have absolutely no obligation, liability or duty whatsoever to pay, fund or otherwise ensure the payment of any Carve-Out. Furthermore, the Carve-Out shall not be used for the payment or reimbursement of any fees or disbursements of the Debtors or any Estate Professional incurred in connection with the assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (i) invalidating, setting aside, avoiding, subordinating, in whole or in part, the Prepetition Secured Loan Indebtedness or the liens and security interests in any of the Lender Collateral granted in favor of the Prepetition Secured Lender; or (ii) preventing, hindering or delaying, Prepetition Secured Lender's assertion or enforcement of its liens. Other than with respect to the Carve-Out, the Prepetition Secured Lender shall not be responsible for the payment or reimbursement of any fees or disbursements of

12

any Estate Professionals or any other professionals incurred in connection with the chapter 11 case of the Debtors or any succeeding case(s) under the Bankruptcy Code and nothing in this paragraph shall be construed to obligate the Prepetition Secured Lender in any way, to pay compensation or expense reimbursement to Estate Professionals or to assure that the Debtors have sufficient funds on hand to pay such compensation or expense reimbursement. Except as provided for herein, no other claim shall be granted or allowed with priority superior to or *pari passu* with the priority of the claims of the Prepetition Secured Lender granted by this Stipulation and Order in favor of the Prepetition Secured Lender while any Prepetition Secured Loan Indebtedness remains outstanding. Any payment or reimbursement made by or on behalf of the Prepetition Secured Lender at any time in respect of any Allowed Professional Fees pursuant to this paragraph shall permanently reduce the Carve-Out on a dollar-for-dollar basis. The Carve-Out shall survive conversion of this case to a case under chapter 7 of the Bankruptcy Code

14. In the event of the sale of any of the Lender Collateral pursuant to section 363 of the Bankruptcy Code or under a plan of reorganization or liquidation, the Prepetition Secured Lender shall have the right (at an auction or otherwise) to credit-bid an amount equal to all or any portion of the Prepetition Secured Loan Indebtedness.

15. Subject to paragraph 14 above, the proceeds (net of any taxes and closing costs) from the sale of any Lender Collateral or Replacement Lien Collateral outside the ordinary course of business after the Cash Collateral Period or any insurance proceeds arising from a casualty or other insured loss of Lender Collateral or Replacement Lien Collateral, shall not be available for use as cash collateral but shall be delivered to the Prepetition Secured Lender for permanent reduction of the Prepetition Secured Loan Indebtedness due under the terms of the Prepetition Loan Documents, with all such payments to be applied by the Prepetition Secured Lender to the

13

Prepetition Secured Loan Indebtedness under the prepetition secured loan made by the Prepetition Secured Lender to the Debtors in which either of the Debtors are borrowers as the Prepetition Secured Lender shall determine in its sole discretion and subject to the provisions of section 506 of the Bankruptcy Code. Notice of payment of such proceeds to the Prepetition Secured Lender shall be provided by the Debtors and

16. Subject to entry of the a final order containing this section 506(c) waiver, the Debtors, on behalf of themselves and their bankruptcy estates, waive any and all claims, rights and powers to surcharge the Prepetition Secured Lender, the Lender Collateral and any other property or assets of the Debtors subject in any manner whatsoever to the liens and security interests of the Prepetition Secured Lender (including the Replacement Liens) pursuant to section 506(c) or section 105(a) of the Bankruptcy Code.

17. The automatic stay of section 362(a) of the Bankruptcy Code is hereby vacated and modified to the extent necessary to permit the Prepetition Secured Lender to take all actions necessary to implement this Stipulation and Order prior to the occurrence of the Termination Date; provided, however, the exercise of remedies by the Prepetition Secured Lender after an Event of Default shall be in accordance with paragraph 11.

18. The provisions of this Stipulation and Order shall be binding on and inure to the benefit of the assigns, representatives and successors of the parties hereto, including any Trustee appointed by the Court under chapter 11 or chapter 7 of the Bankruptcy Code, and all creditors and other parties in interest. Notwithstanding the foregoing, Prepetition Secured Lender shall have no obligation to permit the use of the Lender Collateral, including Cash Collateral, or extend any financing to any trustee or similar responsible person appointed for the estate of any Debtor.

19. Nothing in this Stipulation and Order shall obligate the Prepetition Secured Lender with respect to any plan of reorganization or sale that may be proposed in these cases or shall constitute a waiver of any right or remedy of the Prepetition Secured Lender, including the right to seek relief from the automatic stay, to seek conversion or dismissal of these cases, to enforce any guarantees against any non-debtor, or to oppose confirmation of any plan of reorganization or sale proposed by the Debtors. Nothing in this Stipulation and Order shall constitute an agreement or admission by the Prepetition Secured Lender as to the value of the Lender Collateral or the treatment of their claims under any plan of reorganization. The approval of the Budget does not prohibit any party in interest from objecting to any specific request to allow a claim or other expense that is identified generally in the Budget.

20. The Prepetition Secured Lender shall not be construed or deemed to be acting as a "responsible person" or an "owner and operator" or a person in "control" with respect to the governance, management or operation of the Debtors or their businesses (as such terms, or any similar terms, are used in the Internal Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, as each may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the entry of an order by this Court approving this Stipulation and Order ~~or by exercising any rights or remedies authorized by or permitted under this Stipulation and Order~~. **[SMB: 8/9/18]**

21. The provisions of this Stipulation and Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in the Debtor's case; (b) converting the Debtors' chapter 11 cases to chapter 7 cases; or (c) dismissing the Debtors' chapter 11 cases; or (d) appointing a successor trustee, and the terms and provisions of this as well as the Replacement Liens granted pursuant to this Stipulation shall

15

continue in full force and effect notwithstanding the entry of such order, and such Replacement Liens shall maintain their priority as provided by this Stipulation and Order until all of the Prepetition Secured Indebtedness are indefeasibly paid in full and discharged on terms acceptable to Prepetition Secured Lender.

22. The Prepetition Secured Lender expressly preserves and reserves the right to seek any adequate protection in addition to, or in lieu of (in part or in whole), the adequate protection provided to the Prepetition Secured Lender under this Stipulation and Order at any time, and is not waving, and has not waived, any claims, defenses, arguments or rights in connection with its conditional consent to the Debtors' use of the Cash Collateral.

23. Notwithstanding Fed. R. Bankr. P. 4001(a)(3) and 6004(h), this Stipulation and Order shall be immediately effective and enforceable nunc pro tunc to the Petition Date immediately upon entry by the Bankruptcy Court of this Stipulation and Order.

24. Upon written direction from the Prepetition Secured Lender, Wells Fargo Bank, NA is authorized to transfer funds held in the lockbox accounts at Wells Fargo Bank, NA to the Debtors' debtor in possession accounts at Signature Accounts and such funds constitute Cash Collateral.

25. The Court has and will retain jurisdiction to enforce this Stipulation and Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Stipulation and Order.

26. A final hearing will be held on September 6, 2018 at 10:00 a.m.

Dated: August 7, 2018

| | |
|---|---|
| SIDLEY AUSTIN LLP | KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP |
| By: /s/ *Michael G. Burke* <br> Michael G. Burke <br> 787 Seventh Avenue <br> New York, New York 10019 <br> Telephone: (212) 839-5300 <br> Facsimile: (212) 839-5599 <br> mgburke@sidley.com <br><br> *Counsel for Wilmington Trust, N.A., solely in its capacity as Trustee* | By: /s/ *Tracy L. Klestadt* <br> Tracy L. Klestadt <br> Joseph C. Corneau <br> 200 West 41st Street, 17th Floor <br> New York, New York 10036 <br> Tel: (212) 972-3000 <br> Fax: (212) 972-2245 <br> Email: tklestadt@klestadt.com <br>         jcorneau@klestadt.com <br><br> *Proposed Attorneys for the Debtors and Debtors-in-Possession* |

SO ORDERED, this 9th day of August, 2018:

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge

17