UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:                                          Chapter 11

   1141 REALTY OWNER LLC., *et al*.,        Case No.:  18-12341 (SMB)

              Debtors.        (Jointly Administered)

----------------------------------------------------------x

## PLAN OF REORGANIZATION FOR
## 1141 REALTY OWNER LLC AND FLATIRONHOTEL
## OPERATIONS LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

This Plan of Reorganization is proposed and filed by 1141 Realty Owner LLC and Flatironhotel Operations LLC, the above-captioned debtors and debtors-in-possession, pursuant to chapter 11 of the Bankruptcy Code.[1]  The Plan provides for the reorganization and restructuring of the Debtors, the payment of Allowed Claims consistent with the distribution scheme set forth in the Bankruptcy Code, and procedures for the resolution of Disputed Claims. The Plan provides that holders of Allowed Claims against the Debtors will receive distributions of Cash on the Effective Date in full satisfaction of their Allowed Claims, as set forth below.

## ARTICLE I

## DEFINITIONS

For purposes of the Plan, the following terms shall have the meanings set forth below. Terms used in this Plan which are defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules unless otherwise defined in this Plan. The meaning of the defined terms shall be equally applicable to the singular and plural forms of the terms defined, unless a different meaning is clearly required by and explained in the text.

1.01    "Administrative Expense" shall mean any cost or expense of administration of the Chapter 11 Cases entitled to priority in accordance with the provisions of Bankruptcy Code §§ 503(b) and 507(a)(1), including, without limitation: (i) Fee Claims; (ii) Claims relating to goods received by the Debtors within twenty (20) days before the Petition Date in the ordinary course of the Debtors' business; and (iii) any actual, necessary costs and expenses of preserving the Debtors' Estates and of operating the Debtors' business (but only to the extent they are due or payable on or before the Effective Date).

1.02    "Affiliate" shall have the meaning set forth in Bankruptcy Code §101(2).

1.03    "Allowed" shall mean a Claim, other than an Administrative Expense or Interest in the Debtors, which is: (i) listed in the Debtors' Schedules filed in the Chapter 11 Cases as of the Effective Date, and not listed in the Schedules as disputed, contingent, unliquidated or unknown

---

[1]  All capitalized terms used but not defined in the text of this Plan shall have the meanings set forth in Article I of the Plan.

and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; (ii) set forth in a proof of Claim timely and properly filed in the Chapter 11 Cases on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing given to counsel to the Debtors, and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; or (iii) determined to be Allowed by a Final Order of the Bankruptcy Court.  To the extent permitted under Bankruptcy Code §506(b), an Allowed Claim shall include unpaid interest on the Claim and any reasonable unpaid fees, costs or charges provided for in the agreements which govern such Claim arose. Any Claim which has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered an Allowed Claim and shall be expunged without further action by the Debtors or the Reorganized Debtors.

1.04    "Allowed Administrative Expense" shall mean all or that portion of any Administrative Expense which has been Allowed by a Final Order of the Bankruptcy Court.

1.05    "Allowed General Unsecured Claim" shall mean any Allowed Claim that is not an Allowed Administrative Expense, Allowed Fee Claim, Allowed Secured Claim, Allowed Priority Tax Claim, or Allowed Priority (Non-Tax) Claim.

1.06    "Allowed Priority Claim" shall mean any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §§507(a)(3) through (a)(6).

1.07    "Allowed Secured Claim" shall mean that portion of an Allowed Claim which is secured by a valid perfected lien on property of the Debtors, to the extent of the value of the interest of the holder of such Allowed Secured Claim in the property of the Debtors as determined by the Bankruptcy Court pursuant to Bankruptcy Code §506(a), together with interest, fees, costs and charges to the extent allowed by the Bankruptcy Court under Bankruptcy Code §506(b).

1.08    "Allowed Priority Tax Claim" shall mean any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §507(a)(8).

1.09    "Avoidance Actions" shall mean (a) any and all claims, suits and causes of action now held or hereafter acquired by the Debtors, the Estates, the Reorganized Debtors, or the Debtors' creditors under Bankruptcy Code §§544, 547, 548, 549, 550, or 553 and (b) any claim against any transferee of a transfer avoidable under Bankruptcy Code §549 received from the Debtors from and after the Petition Date, but prior to the Effective Date.

1.10    "Bankruptcy Code" shall mean title 11 of the United States Code, as amended.

1.11    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, in which the Debtors' Chapter 11 Cases are pending, and the United States District Court for the Southern District of New York to the extent that in respect of the Chapter 11 Cases the District Court may have withdrawn reference, shall have determined to exercise original jurisdiction, or shall have sole authority to enter a final order or judgment.

1.12    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

1.13    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

2

1.14    "Cash" shall mean cash and cash equivalents, and other readily marketable securities or instruments, including, but not limited to, bank deposits, checks and other similar items.

1.15    "Chapter 11 Cases" shall mean the Debtors' jointly administered chapter 11 cases filed in the Bankruptcy Court, Case Nos. 18-12341 (SMB) and 18-12342 (SMB), administered under Case No. 18-12341 (SMB).

1.16    "Claim" shall mean a claim against the Debtors, as defined in Bankruptcy Code §101(5).

1.17    "Claimant" shall mean the holder of a Claim.

1.18    "Class" shall mean any class into which Allowed Claims and Allowed Interests are classified pursuant to Article II of the Plan.

1.19    "Confirmation Date" shall mean the date the Confirmation Order is entered in the Chapter 11 Case.

1.20    "Confirmation Hearing" shall mean the hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.21    "Confirmation Order" shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with Bankruptcy Code §1129.

1.22    "Creditor" shall have the meaning set forth in Bankruptcy Code §101(10).

1.23    "Debtors" shall mean 1141 Realty Owner LLC and Flatironhotel Operations LLC, as debtors and debtors in possession.

1.24    "DIP Financing Order" shall mean the Bankruptcy Court's final order authorizing the Debtors to obtain debtor in possession financing from Premier (ECF Doc. No. 62).

1.25    "Disallowed Claim" shall mean any Claim or portion of a Claim which has been disallowed by a Final Order of the Bankruptcy Court.

1.26    "Disputed Claim" shall mean any Claim, proof of which was timely and properly filed, and (a) which is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement between the Debtors and the Claimant or by an order of the Bankruptcy Court, (b) which is subject to a dispute to the extent that the Debtors or the Reorganized Debtors have asserted a claim against the holder of the Disputed Claim, or (c) as to which the Debtors have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to the filing of an objection to a Claim, or the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim shall be considered a Disputed Claim if (x) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the Debtors as other than disputed, contingent or unliquidated, or (y) the Claim is not listed on the Schedules.

1.27    "Disputed Claims Reserve" shall mean the reserves to be established by the Debtors or the Reorganized Debtors on account of Disputed Administrative Expenses, Disputed Priority Claims, and Disputed Unsecured Claims to be used to make Distributions to holders of Disputed

Administrative Expenses, Disputed Claims and Undetermined Claims in the event they become Allowed Claims.

1.28    "Distribute" or "Distribution" shall mean a payment by the Debtors or the Reorganized Debtors under the terms of the Plan.

1.29    "Distribution Date" shall mean any date, subsequent to the Effective Date, on which a Distribution under the Plan is to be made to the holders of Allowed Claims.

1.30    "Effective Date" shall mean the first day on which the Confirmation Order has become a Final Order and on which all of the conditions to the Effective Date in the Plan have been satisfied or waived.

1.31    "Effective Date Payment" shall mean the payment from the Premier Funds to pay Allowed Secured Claims (other than the Prepetition Lender's Secured Claim), Allowed Administrative Expenses, Allowed priority claims, and Allowed General Unsecured Claims.

1.32    "Estates" shall mean the Debtors' chapter 11 estates created on the Petition Date under Bankruptcy Code §541.

1.33    "Exit Facility" shall mean the secured loan to be obtained by the Debtors, as facilitated by Premier, on or before the Effective Date, in an amount sufficient to pay the Prepetition Lender's Claim in full.  To the extent that the Exit Facility is insufficient to pay the Prepetition Lender's Claim in full, the Premier Funds shall be used to supplement the Exit Facility.

1.34    "Fee Claims" shall mean claims by professionals retained by the Debtors during the Chapter 11 Cases for the payment of fees and the reimbursement of expenses incurred prior to the Effective Date.

1.35    "Final Order" shall mean: (i) an order or a judgment of the Bankruptcy Court; or (ii) a stipulation or other agreement entered into which is "so ordered" by the Bankruptcy Court, in either case the operation or effect of which has not been reversed, stayed, modified or amended and as to which (x) any appeal that has been taken has been finally determined or dismissed, or (y) the time to appeal or seek reconsideration has expired by reason of statute or otherwise and as to which no appeal or petition for review, *certiorari* or reconsideration has been taken or is pending (or if such appeal or petition has been granted, it has been finally decided), as a result of which such order, judgment, stipulation or agreement shall have become final in accordance with applicable law.

1.36    "General Unsecured Claim" means an Allowed Claim that is not an Administrative Expense, a Priority (Non-Tax) Claim, Priority Tax Claim, Fee Claim, or Secured Claim.

1.37    "Interest" shall mean any rights of a shareholder in respect of an equity interest in each of the Debtors.

1.38    "Lien" shall have the meaning set forth in Bankruptcy Code §101(37).

1.39    "Objections Bar Date" shall mean the deadline for the Debtors or the Reorganized Debtors to file objections to Claims, which deadline shall be the first Business Day that is one hundred twenty (120) days after the Effective Date of the Plan.

1.40    "Operator" shall mean Flatironhotel Operations LLC.

1.41    "Owner" shall mean 1141 Realty Owner LLC.

1.42    "Person" shall have the meaning set forth in Bankruptcy Code §101(41).

1.43    "Petition Date" shall mean July 31, 2018.

1.44    "Prepetition Lender" shall mean Wilmington Trust, N.A., solely in its capacity as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28.

1.45    "Prepetition Lender's Claim" shall mean any and all Claims or Interests of the Prepetition Lender that have been or may be asserted by the Prepetition Lender against the Debtors, including with respect to the liens granted by the Debtors to the Prepetition Lender on account of monies loaned prior to the Petition Date, as well as those granted pursuant to the stipulation and order authorizing the use of the Prepetition Lender's cash collateral (ECF Doc. No. 23).

1.46    "Plan" shall mean this Plan of Reorganization, as it may be amended or modified.

1.47    "Premier" shall mean Premier Flatiron, LLC.

1.48    "Premier Claim" shall mean the claim against the Debtors granted to Premier pursuant to the DIP Financing Order.

1.49    "Premier Funds" shall mean the funds made available to the Debtors by Premier, in exchange for, among other things, the treatment of Class 6 Interests herein, in an amount sufficient to make the Effective Date Payment.

1.50    "Priority (Non-Tax) Claims" shall mean any Claim that is entitled to priority status in accordance with Bankruptcy Code §507(a), other than Priority Tax Claims and Administrative Expenses.

1.51    "Priority Tax Claims" shall mean any Claim for taxes entitled to priority status in accordance with Bankruptcy Code §§502(i) or 507(a)(8), but specifically excludes any penalty assessed with respect to such taxes.

1.52    "Released Parties" shall have the meaning set forth in Article X of the Plan.

1.53    "Released Claims" shall mean the claims released under Article X of the Plan.

1.54    "Reorganized Debtors" shall mean the Debtors after the Effective Date.

1.55     "Schedules" shall mean the schedules of assets and liabilities, lists and statement of financial affairs and executory contracts filed by the Debtors with the Bankruptcy Court, as they may be amended pursuant to the Bankruptcy Rules.

1.56    "Securities Act" shall mean the Securities Act of 1933, as amended.

1.57    "Unclaimed Property" shall mean any Cash (together with any interest earned thereon) unclaimed on the later of the 180th day following the Effective Date or the last Distribution Date. Unclaimed Property shall include checks (and the funds represented thereby): (i) which have been returned as undeliverable without proper forwarding addresses; (ii) which have not been paid; or (iii) which were not mailed or delivered because of the absence of a proper address for the Claimant.

1.58    "Undetermined Claim" shall mean any Claim that is (i) a Disputed Claim or (ii) an unliquidated or contingent Claim.

1.59    "Unsecured Creditor" shall mean the holder of an Unsecured Claim.

1.60    "U.S. Trustee" shall mean the United States Trustee for Region 2.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    General Rules of Classification.  A Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent the Claim or Interest qualifies within the description of that Class, and is classified in other Classes to the extent the Claim or Interest qualifies within the description of such Classes.

2.02    Administrative Expenses and Priority Tax Claims.  Administrative Expenses and Priority Tax Claims have not been classified and are excluded from the Classes of Claims in accordance with Bankruptcy Code §1123(a)(1).

2.03    Satisfaction of Claims and Interests. The treatment to be provided for Allowed Claims and Interests under this Plan and the consideration provided under this Plan shall be in full satisfaction, settlement, release and discharge of all Claims and Interests against the Debtors and their property.

2.04    Bar Dates for Claims. Pursuant to the Bankruptcy Court's Order, dated September 24, 2018 (ECF Doc. No. 63), all non-governmental unit Claims against the Debtors, including claims under Bankruptcy Code §503(b)(9) must be filed on or before November 5, 2018, and all Claims of governmental units must be filed on or before January 28, 2019.  Claims arising from the rejection of executory contracts and unexpired leases shall be governed by the specific orders of the Bankruptcy Court regarding the assumption or rejection of executory contracts and unexpired leases and Article VI of the Plan.

2.05    Bar Date for Fee Claims. The Confirmation Order, or the order scheduling the Confirmation Hearing, shall provide a deadline for the filing of requests for payment of Fee Claims incurred prior to the Confirmation Date.  Any Person that fails to file an application for the payment of professional fees and expenses on or before the time and date established in the Confirmation Order or the order scheduling the Confirmation Hearing shall be forever barred from seeking payment or reimbursement from the Debtors, their Estates or the Reorganized Debtors.

2.06    Acceptance of Classification.  Any holder of a Claim or Interest who fails to object in writing to the classification of Claims and Interests provided in the Plan, and who has not filed an objection with the Bankruptcy Court and served the objection upon counsel to the Debtors, counsel to Premier, and the U.S. Trustee at least ten (10) days prior to the Confirmation Hearing shall be deemed to have accepted the classification of such Claim or Interest set forth in the Plan.

2.07    Classification.  For purposes of the Plan, all Allowed Claims shall be placed in the following Classes:

> ➢ Class 1 (Allowed Priority (Non-Tax) Claims)
> ➢ Class 2 (Allowed Premier Secured Claim)
> ➢ Class 3 (Allowed Prepetition Lender Secured Claim)
> ➢ Class 4 (Other Secured Claims)
> ➢ Class 5 (General Unsecured Claims)
> ➢ Class 6 (Interests in the Debtors)

## ARTICLE III

## TREATMENT OF CLASSES

3.01    Administrative Expenses.  Administrative Expenses are not impaired.  Except with respect to Administrative Expenses Allowed under Bankruptcy Code §503(b)(9), which shall be paid as soon as reasonably practicable after the Effective Date or upon such other terms as may be agreed to by the holder thereof and the Debtors, Allowed Administrative Expenses, including Fee Claims, shall be paid by the Debtors or the Reorganized Debtors on the later to occur of (a) the Effective Date, and (b) the date such Claim becomes Allowed by a Final Order of the Bankruptcy Court, or as soon as practicable thereafter, or upon such other terms as may be agreed to by the holder thereof and the Debtors.  In the event of any subsequent conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, all payments on account of any Allowed Administrative Expenses shall be deemed to have been made in the ordinary course of the Debtors' business and shall not be deemed to be avoidable transfers under Bankruptcy Code §549.

3.02    U.S. Trustee Fees.  Statutory fees, and any applicable interest thereon, are all fees payable pursuant to Chapter 123 of Title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. §1930(a)(6) plus any interest due and payable under 31 U.S.C. §3717 ("**U.S. Trustee Fees**").  U.S. Trustee Fees will accrue and be timely paid until the Case is closed, dismissed, or converted to another chapter under the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the Effective Date of the Plan.

3.03    Priority Tax Claims.  Priority Tax Claims are not impaired.  All Allowed Priority Tax Claims shall be paid in full on the Effective Date.  Holders of Priority Tax Claims shall not be entitled to vote on the Plan.

3.04    Class 1 Priority (Non-Tax) Claims.  Class 1 Claims are not impaired.  Allowed Priority (Non-Tax) Claims shall be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable, from the Effective Date Payment.  In accordance with Bankruptcy Code § 1126(f), holders of Class 1 Claims shall not be entitled to vote on the Plan and shall be deemed to have accepted the Plan.

3.05    Class 2 Premier Claim.  The Premier Claim shall be deemed satisfied upon the Effective Date of the Plan with no amounts remaining due by the Debtors to Premier.  Class 2 Claims are Impaired.

3.06    Class 3 Prepetition Lender Claim.  Class 3 Claims are not impaired.  Holders of the Allowed Prepetition Lender's Claim shall be paid in full on the Effective Date from the proceeds of the Exit Facility as and when Allowed by the Bankruptcy Court. To the extent that the Exit Facility does not close within ninety (90) days of the Confirmation Date, either (i) the Debtors shall market and sell their real property to satisfy any Allowed Prepetition Lender's Claim, or (ii) Premier shall provide additional Premier Funds to satisfy any Allowed Prepetition Lender's Claim. From the Confirmation Date through the Effective Date, Holders of the Allowed Prepetition Lender's Claim shall receive monthly interest payments at the rate then-applicable with respect to the Prepetition Lender's Claim.

3.07    Class 4 Other Secured Claims.  Class 4 Claims are not impaired.  Class 4 Claims shall consist of all Allowed Claims secured by property of the Debtors other than the Premier Claim and the Prepetition Lender's Claim.  Class 4 Claims shall be paid in full on the Effective Date from the Effective Date Payment.

3.08    Class 5 General Unsecured Claims. Class 5 Claims are not impaired. Class 5 Claims are comprised of the Allowed Claims of General Unsecured Creditors.  Each holder of an Allowed General Unsecured Claim shall receive payment in full on account of such claim on the Effective Date from the Effective Date Payment.

3.09    Class 6 Interests.  Class 6 Interests are impaired. All existing membership interests in the Debtors shall be cancelled, and the Reorganized Debtors' membership interests shall be reissued as follows: (i) with respect to Owner, Fifty (50%) Percent shall be owned by 1141 Realty LLC and Fifty (50%) Percent shall be owned by Premier Nomad LLC; and (ii) with respect to Operator, One Hundred (100%) Percent shall be owned by Premier Nomad LLC.

## ARTICLE IV

## CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

4.01    Claims and Interests in Classes 2 and 6 are impaired under the Plan, and are entitled to vote on the Plan. Claims in Classes 1, 3, 4 and 5 are not impaired under the Plan, and are not entitled to vote on the Plan.

4.02    Pursuant to Bankruptcy Code §1126(c), a Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the holders of Allowed Claims in such Class that vote on the Plan.  Pursuant to Bankruptcy Code §1126(d), holders of Interest in Class 6 shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in amount of the Allowed Interests of Class 6.

4.03    Classes 2 and 6 are currently entitled to vote to accept or reject the Plan.  To the extent that any Class entitled to vote rejects the Plan, the Debtors intend to seek confirmation of the Plan in accordance with Bankruptcy Code §1129(b).

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.01    Payments on the Effective Date.  The payments under the Plan will be made from the (a) Exit Facility, and (b) the Premier Funds.  With respect to the portion of the Effective Date Payment to be funded by the Premier Funds, no later than ten (10) business days prior to the anticipated Effective Date, the Debtors shall provide Premier with an accounting of all amounts the Debtors believe must be paid from such funds.  No later than two (2) business days prior to the anticipated Effective Date, Premier shall transfer the Premier Funds to the Debtors for the purposes of making the Effective Date Payment.

5.02    Exit Facility.  The Debtors or Reorganized Debtors, as applicable, with the assistance of Premier, shall obtain the Exit Facility in an amount sufficient to satisfy the Allowed portion of the Prepetition Lender's Claim.  The Exit Facility shall be used to satisfy the Allowed portion the Prepetition Lender's Claim and, at the Reorganized Debtors' discretion, may be used

8

to fund ongoing operations of the Reorganized Debtors.  To the extent that the Exit Facility does not close within ninety (90) days of the Confirmation Date, either (i) the Debtors shall market and sell their real property to satisfy any Allowed Prepetition Lender's Claim, or (ii) Premier shall provide additional Premier Funds to satisfy any Allowed Prepetition Lender's Claim.

5.03    Release of Avoidance Actions. On the Effective Date, the Debtors, on behalf of themselves and their Estates, shall release any and all Avoidance Actions, and the Debtors and the Reorganized Debtors, and any of their successors and assigns and any entity acting on behalf of the Debtors or the Reorganized Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions.

5.04    Reserves. On the Effective Date, or as soon thereafter as is reasonably practical, the Debtors shall establish and maintain adequate reserves for Disputed Claims.

On the later to occur of (a) the Effective Date, and (b) the date such Claim becomes Allowed by a Final Order of the Bankruptcy Court, or as soon thereafter is reasonably practicable, the Debtors shall use available Cash to pay Allowed Claims in accordance with Article III of the Plan.

5.05    Investments by the Debtors.    All Cash held by the Debtors prior to full consummation of this Plan, whether held in investment accounts, bank accounts, any Disputed Claims Reserve, or any escrow accounts, shall be invested in accordance with Bankruptcy Code §345 in a financial institution that is an authorized depository under the U.S. Trustee Operating Guidelines.

5.06    Delivery of Distributions. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder, or (b) the last known address of such holder if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address.

5.07    Undeliverable Distributions and Unclaimed Property. If any distribution made by the Debtors or the Reorganized Debtor, as applicable, is returned as undeliverable, the Debtors or the Reorganized Debtors, as applicable, may, in their sole discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made, but no distributions to any Holder of an Allowed Claim will be made until the Debtors  or the Reorganized Debtors, as applicable, have determined the current address of the Holder of such Allowed Claim, at which time the distribution will be made without interest. The Debtors or the Reorganized Debtors, as applicable, shall have sole discretion to determine how to make distributions in the most efficient and cost-effective manner.   Amounts in respect of any undeliverable distributions made by the Debtors or the Reorganized Debtors, as applicable, shall be returned to, and held in trust by, the Debtors or the Reorganized Debtors, as applicable, until the distributions are claimed, or are deemed to be Unclaimed Property upon the expiration of six (6) months from the date of the return of the undeliverable distribution. Unclaimed Property shall revert to the Reorganized Debtors in accordance with the provisions of the Plan.

5.08    Record Date for Distributions.  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the date of the entry of the Confirmation Order will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule

3001 for objecting to the transfer may not have expired by the date of the entry of the Confirmation Order. The Debtors and Reorganized Debtors shall have no obligation to recognize any transfer of any Claim occurring after the date of the entry of the Confirmation Order. In making any Distribution with respect to any Claim, the Debtors shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the proof of Claim filed with respect thereto or on the Schedules, as applicable, as the holder thereof as of the close of business on the date of the entry of the Confirmation Order, and upon such other evidence or record of transfer or assignment that are known to the Debtors as of the date of the entry of the Confirmation Order.

5.09    Distributions to Holders of Claims – Generally.

(a)    Distributions on Account of Allowed Claims Only.  Except as otherwise provided in this Plan, Disputed Claims shall not be entitled to any Distribution until such Disputed Claim becomes an Allowed Claim.

(b)    Method of Cash Distributions.  Any payment of Cash to be made pursuant to the Plan will be in U.S. dollars and may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(c)    Distributions on Non-Business Days.  Any payment or Distribution due on a day other than a Business Day may be made, without interest, on the next Business Day.

(d)    No Distribution in Excess of Allowed Amount of Claim.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution (of a value set forth herein or in the Disclosure Statement) in excess of the Allowed amount of such Claim.

(e)    Interest on Claims.  Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, other than the Claim of Premier in accordance with the DIP Financing Order or the Claim of the Prepetition Lender in accordance with its applicable loan documents.  Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Petition Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be allowed to the extent that it is for postpetition interest or other similar charges.

(f)    Disputed Payments.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Reorganized Debtors may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account or hold such Distribution in reserve until the disposition thereof shall be determined by Bankruptcy Court order, or by written agreement among the interested parties to such dispute.

(g)    Withholding Taxes.  Any federal or state withholding taxes or other amounts required to be withheld under any applicable law may be deducted and withheld from any Distributions under the Plan.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.  The Reorganized Debtors may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Reorganized Debtors to the

appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within ninety (90) days after the date of first notification to the holder of the need for such information, or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as Unclaimed Property herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

(h)     Time Bar to Cash Payments by Check.  Checks issued by the Reorganized Debtors on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Section may be made directly to the Reorganized Debtors by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim with respect to such voided check must be made in writing, on or before the later of the first anniversary of the Effective Date, or the six (6) month anniversary of the date on which the Distribution was made.  After that date, all Claims with respect to voided checks shall be discharged and forever barred and the proceeds of those checks shall be deemed Unclaimed Property in accordance with Bankruptcy Code §347(b) and be distributed as provided herein.

(i)     No Payments of Fractional Dollars.  Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be required to be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made may, at the Debtors' election, reflect a rounding down of such fraction to the nearest whole dollar.

(j)     Minimum Distributions.  Notwithstanding anything herein to the contrary, the Reorganized Debtors shall not be required to make distributions or payments of less than $25.00, and shall not be required to make partial distributions or payments of fractions of dollars. Any Holder of an Allowed Claim whose aggregate distribution under this Plan is less than $25.00 shall forfeit, at the option of the Reorganized Debtors, such amount to, and such amount shall vest in, the Debtors for distribution in accordance with the terms of the Plan.

(k)     Setoff and Recoupment.  The Reorganized Debtors may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature that the Reorganized Debtors or the Estates may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates, or the Reorganized Debtors, of any right of setoff, recoupment claims, rights or Avoidance Actions that the Debtors, the Estates, or the Reorganized Debtors, or any of their successors may possess against such holder. Any setoff or recoupment shall only be made after the affected creditor is provided not less than five days notice.

5.10    Quarterly Reports.  Until the Chapter 11 Cases are closed, the Reorganized Debtors shall file quarterly reports setting forth the status of Distributions to holders of Allowed Claims and any other open matters in the Chapter 11 Cases.  The quarterly reports shall be filed on or before the 15th day of January, April, July, and October.

5.11    Vesting of Assets. As of the Effective Date, pursuant to provisions of Bankruptcy Code §§ 1141(b) and (c), all property and assets of the Debtors shall be transferred to and shall vest in the Reorganized Debtors free and clear of all Liens, Claims and Interests, except as otherwise expressly provided in this Plan and/or the Confirmation Order.

11

    5.12    Continuing Existence.  From and after the Effective Date, the Reorganized Debtors will continue in existence and shall continue normal operations of their business as limited liability companies under applicable law.

## ARTICLE VI

## EXECUTORY CONTRACTS AND LEASES

    6.01    All executory contracts and unexpired leases listed on **Exhibit 1** hereto shall be deemed assumed by the Debtors as of the Effective Date. Simultaneously with service of the Plan and Disclosure Statement, the Debtors shall provide a notice to all counter-parties to executory contracts proposed to be assumed, substantially in the former annexed hereto as **Exhibit 2**.  Such counter-parties shall have until seven (7) days prior to the Confirmation Hearing to file an objection to the proposed cure amount provided in such notice.  All objections to cure amounts shall be heard at the Confirmation.

    6.02    Any executory contract or unexpired lease of the Debtors not listed on Exhibit 1 hereto and which has not been assumed or rejected by Final Order of the Bankruptcy Court, or which is not the subject of a pending motion to assume or reject on the Confirmation Date, shall be deemed rejected by the Debtors on the Effective Date. Any entity with a Claim that arises from the rejection of an executory contract or unexpired lease must file its Claim within thirty (30) days after the later of the date of the order rejecting the executory contract or unexpired lease and the Confirmation Date, and shall have the same rights as a Class 5 Claimant to the extent such Claim becomes an Allowed General Unsecured Claim. **Any Claims arising from the rejection of an executory contract or unexpired lease not filed with the Bankruptcy Court within such time will be automatically treated as a Disallowed Claim, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objections by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other entity, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or any proof of Claim to the contrary.**

## ARTICLE VII

## PROCEDURE FOR RESOLVING DISPUTED CLAIMS

    7.01    Disputed Claim Reserves. Except as provided for below, the Debtors shall set aside and reserve for the benefit of each holder of a Disputed Claim an amount equal to the Distributions to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to the amount of such Claim as estimated by the Bankruptcy Court pursuant to an order. Such reserved amounts, and the difference between the amount so reserved for each such Claim and the amount of federal, state and local taxes paid by the Debtors with respect to such Claim shall constitute the maximum Distribution amount to which the holder of such Claim may ultimately become entitled to receive.

    7.02    Distributions to Holders of Allowed Claims. After the Effective Date, the Reorganized Debtors shall make one or more Distributions to holders of Allowed Claims in accordance with the Plan.

(i)     Distributions on Disputed Claims.  No Distributions shall be made with respect to a Disputed Claim until the resolution of such dispute by agreement with the Debtors, the Reorganized Debtors, or Final Order.  On or as soon as reasonably practicable after the first Business Day of the next calendar quarter after a Disputed Claim becomes an Allowed Claim, the Debtors shall distribute to the holder thereof Cash, from the Disputed Claims Reserve, in an amount equal to the aggregate amount of Cash that would have been distributed to such holder in respect of such Claim had such Claim been an Allowed Claim, in the amount in which it is ultimately allowed.

(ii)     Treatment of Excess Cash in Disputed Claims Reserve.  To the extent a Disputed Claim becomes a Disallowed Claim or is reclassified, any Cash previously reserved for such portion of such Disputed Claim shall be distributed in accordance with the Plan. To the extent all payments required under the Plan have already been made, Cash previously reserved for Disputed Claims shall be paid to the Reorganized Debtor in accordance with Section 5.11 of the Plan.

7.03    Resolution of Disputed Claims.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, after the Confirmation Date the Reorganized Debtors shall have the right to make and file objections to all Claims, and shall serve a copy of each objection upon the holder of the Claim to which the objection is made, as soon as practicable, but in no event later than the Objections Bar Date.  From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Reorganized Debtors elect to withdraw any claim objection, or the Reorganized Debtors and the claimant elect to compromise, settle or otherwise resolve any claim objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without further approval of the Bankruptcy Court. A Disputed Claim as to which no objection is filed by the Objections Bar Date shall become an Allowed Claim.

7.04    Procedure for Omnibus Objections to Claims.  The Debtors and the Reorganized Debtors are permitted to file omnibus objections to claims (an "**Omnibus Objection**") on any grounds, including but not limited to those grounds specified in Bankruptcy Rule 3007(d).  For claims that have been transferred, a notice shall be provided only to the person or persons listed as being the owner of such claim on the Debtors' claims register as of the record date as provided for in Article V of the Plan.  The notice of an Omnibus Objection shall include a copy of the relevant Omnibus Objection but not the exhibits thereto listing all claims subject to the objection thereby; rather, the notice shall (i) identify the particular claim or claims filed by the claimant that are the subject of the Omnibus Objection, (ii) provide a unique, specified and detailed basis for the objection, (iii) explain the proposed treatment of the claim, (iv) notify such claimant of the steps that must be taken to contest the objection, and (v) otherwise comply with the Bankruptcy Rules.

7.05    Maintenance of Disputed Claims Reserve.  To the extent that the property placed in a Disputed Claims Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account in a financial institution that is an authorized depository under the U.S. Trustee Operating Guidelines. The Disputed Claims Reserve shall be closed and extinguished by the Reorganized Debtors when all Distributions and other dispositions of Cash or other property required to be made under the Plan from such reserves will have been made in accordance with the terms of the Plan.

## ARTICLE VIII

## RETENTION OF JURISDICTION

8.01    The Bankruptcy Court shall retain jurisdiction over the Debtors, the Reorganized Debtors, and the Chapter 11 Cases pursuant to chapter 11 of the Bankruptcy Code and for the purposes set forth in Bankruptcy Code §1127(b), including, without limitation, with respect to the following matters:

(a)    to hear and determine any claim or cause of action belonging to the Estates, and any disputes concerning the classification, allowance, or estimation of any Claim;

(b)    to resolve any disputes concerning any funds held in the Disputed Claims Reserve;

(c)    to hear and determine all disputed issues relating to a security or ownership interest in any property of the Estates, or in any proceeds thereof;

(d)    to hear and determine all Claims arising out of any agreement entered into by the Debtors after the Petition Date but prior to the entry of the Confirmation Order;

(e)    to recover all assets and property of the Debtors wherever located;

(f)    to alter, modify and amend the Plan pursuant to Bankruptcy Code §1127 or to remedy any defect, cure any omissions, or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purpose and intent of the Plan, and to extent authorized by the Bankruptcy Code or Bankruptcy Rules;

(g)    to hear and determine all matters related to the sale of the Debtors' real property prior to the Effective Date;

(h)    to hear and determine such other matters as may be provided for in the Confirmation Order and for the purposes set forth in Bankruptcy Code §§1127(b) and 1142, or in Bankruptcy Rules 1019 and 3020(d);

(i)    to hear and determine all applications for compensation of professionals for services rendered and expenses incurred through the Confirmation Date, and thereafter to hear and determine any objections to compensation of professionals;

(j)    to hear and determine any and all pending applications, adversary proceedings, contested matters and litigated matters;

(k)    to hear and determine any disputed issues with respect to the payments to be made under the Plan;

(l)    to enter orders that are necessary or appropriate to carry out the provisions of the Plan, including orders interpreting the provisions of the Plan;

(m)    to enter a Final Order or decree concluding the Debtors' Chapter 11 Cases; and

(n)    to determine such other matters as may be provided for in the Confirmation Order, or as may be authorized under the provisions of the Bankruptcy Code.

## ARTICLE IX

## CONFIRMATION AND EFFECTIVE DATE

9.01   Conditions Precedent to Confirmation. The following are the conditions precedent to the Confirmation of the Plan:

(a)   The Debtors shall have entered into a commitment letter for the Exit Facility, conditioned upon the entry of the Confirmation Order;

(b)   All terms, conditions and provisions of the Plan are approved in the proposed Confirmation Order; and

(c)   The proposed Confirmation Order shall be in form and substance acceptable to counsel to the Debtors, counsel to Premier, and the U.S. Trustee.

The conditions precedent set forth in subparagraphs (a), (b), and (c) above, may be waived by the Debtors, only with the consent of Premier and upon reasonable notice to the U.S. Trustee.

9.02   Conditions Precedent to the Effective Date.   The following are the conditions precedent to the Effective Date of the Plan:

(a)   The Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order; and

(b)   The Debtors shall have made the Effective Date Payment.

## ARTICLE X

## DISCHARGE OF CLAIMS, RELEASES AND EXCULPATION

10.01   Interest Holders of the Debtors shall be treated as provided in section 3.09 of this plan.

10.02   Injunction.   EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE CONFIRMATION DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE DEBTORS' PROPERTY, OR THE ESTATES BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE CONFIRMATION DATE, INCLUDING ANY CLAIMS THAT ARE PROPERTY OF THE DEBTORS' BANKRUPTCY ESTATES (COLLECTIVELY, THE "RELEASED CLAIMS"); PROVIDED THAT NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTORS, OR ANY OF THE DEBTORS' OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTORS' PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES, OR

ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

10.03    Release by the Debtors.  PURSUANT TO BANKRUPTCY CODE §1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, THE DEBTORS AND REORGANIZED DEBTORS SHALL RELEASE UNCONDITIONALLY, AND HEREBY ARE DEEMED TO FOREVER RELEASE UNCONDITIONALLY THE FOLLOWING PERSONS (COLLECTIVELY, THE "RELEASED PARTIES"): (A) PREMIER ITS DIRECTORS, OFFICERS, ADVISORS, ACCOUNTANTS, CONSULTANTS, AND ATTORNEYS; AND (B) THE DEBTORS' ADVISORS, INCLUDING ATTORNEYS AND ACCOUNTANTS, FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING THE RELEASED CLAIMS (EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN AND THE RIGHT TO FILE AN OBJECTION WITH THE BANKRUPTCY COURT WITH RESPECT TO ANY FEE CLAIMS), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR THOSE CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES.   IN ADDITION, THE RELEASE PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

10.04    Exculpation. TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), NEITHER THE RELEASED PARTIES NOR THEIR ADVISORS, ACCOUNTANTS, AND ATTORNEYS, SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASES IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE RELEASED PARTIES SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. IN ADDITION, THE EXCULPATION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF

THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE A RELEASE OF AN INDEPENDENT CLAIM HELD BY A CREDITOR OR INTEREST HOLDER AGAINST A NON-DEBTOR ENTITY OR PERSON BASED ON ACTS OR OMISSIONS UNRELATED TO THE DEBTORS OR THE CHAPTER 11 CASES.  IN ADDITION, NOTHING CONTAINED HEREIN OR IN THE PLAN SHALL RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES AND SETTLEMENTS CONTAINED IN THE PLAN.**

**NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, INCLUDING, WITHOUT LIMITATION, ANY CLAIM ARISING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST: (I) THE DEBTORS; (II) ANY OF THE DEBTORS' MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS; AND (III) THE RELEASED PARTIES. IN ADDITION, SUBJECT TO BANKRUPTCY CODE §§ 524 AND 1141, THE RELEASES DESCRIBED HEREIN SHALL NOT PRECLUDE POLICE, FEDERAL TAX, OR REGULATORY AGENCIES FROM FULFILLING THEIR STATUTORY DUTIES.**

**THE RELEASES DESCRIBED IN THIS SECTION ARE IN ADDITION TO, AND NOT IN LIEU OF, ANY OTHER RELEASE SEPARATELY GIVEN, CONDITIONALLY OR UNCONDITIONALLY, BY THE DEBTORS TO ANY OTHER PERSON.  ANY RELEASE GIVEN BY THE DEBTORS OR A PERSON WHICH IS PART OF OR SUBJECT TO A FINAL ORDER OF THE BANKRUPTCY COURT REMAINS IN FULL FORCE AND EFFECT AND ARE RATIFIED BY THE PLAN.**

10.05   Persons or Entities Not Released by the Debtors.  Except for the releases contained in the Plan, the Confirmation Order and the DIP Financing Order, the Debtors and the Estates are not releasing any claims or actions against any Person, or their respective affiliates, assigns, agents, directors, officers, advisors, accountants, investment bankers, consultants, attorneys and other representatives of any of the foregoing.

10.06   Good Faith. The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code §§1125(e) and 1129(a)(3), with respect to the foregoing.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.01   Headings.  The headings used in the Plan are inserted for convenience or reference only and are not part of the Plan.

11.02   Notices.  Notices shall be deemed given when received.  All notices, requests or demands described in or required to be made in accordance with the Plan shall be in writing and shall be delivered by overnight mail and email transmission as follows:

(a)   If to the Debtors or Reorganized Debtors:
Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Attn: Tracy L. Klestadt
(212) 972-3000
TKlestadt@Klestadt.com

(b)   If to Premier:
SilvermanAcampora LLP
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
Attn: Kenneth P. Silverman
(516) 479-6300
KSilverman@SilvermanAcampora.com

(c)   If to the U.S. Trustee:
Office of the U.S. Trustee
201 Varick Street, Suite 1006
New York, New York 10014
Attn: Susan Arbeit
(212) 510-0500
Susan.Arbeit@USDOJ.gov

If to a holder of a Claim or Interest, at the address set forth in its proof of Claim or proof of Interest filed with and allowed by the Court, or, if none, at its address set forth in the Schedules prepared and filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

11.03   Change of Address.  Any of the parties identified in section 11.02 of the Plan may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to counsel to the Debtors.

11.04   Modification of the Plan. The Debtors reserve the right, in accordance with the Bankruptcy Code, upon written consent of counsel to Premier, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter.  After the Confirmation Date, the Debtors or the Reorganized Debtors may, upon appropriate motion, notice, and order of the Court, remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

11.05   Reservation of Rights. Nothing contained herein shall prohibit the Debtors or the Reorganized Debtors from prosecuting or defending any of the rights of the Debtors' Estates.

11.06   Severability. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

11.07   Successors and Assigns. The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

11.08   Governing Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

11.09   The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the bankruptcy Court to close the Chapter 11 Cases.

11.10   Section and Article References.  Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

**[ONE SIGNATURE PAGE TO FOLLOW]**

Dated: New York, New York
      January 18, 2018

**1141 REALTY OWNER, LLC**
  **By: 1141 Realty LLC**, Manager and Sole Member

By:  _/s/ Jagdish Vaswani_
Name:  Jagdish Vaswani
Title:  Manager

Dated: New York, New York
      January 18, 2018

**FLATIRONHOTEL OPERATIONS LLC**

By:  _/s/ Jagdish Vaswani_
Name:  Jagdish Vaswani
Title:  Managing Member

**Approved as to Form Only:**

Dated: New York, New York
      January 18, 2018

By:  _/s/ James Katchadurian_
Name:  James Katchadurian
Title: Chief Restructuring Officer for the Debtors

**<u>Exhibit 1</u>**

| Creditor | Address1 | Address2 | Address3 | Address4 | Description | Case | Debtor | Cure Amount |
|---|---|---|---|---|---|---|---|---|
| Telco Experts | 169 Ramapo Valley Rd | Oakland, NJ 07436-2509 | | | Utility Contract | 18-12341 | 1141 Realty Owner LLC | $0.00 |
| Time Warner Cable | 60 Columbus Cir | New York, NY 10023 | | | Utility Contract | 18-12341 | 1141 Realty Owner LLC | $0.00 |
| Sabre Hospitality Solutions | Division of Sabre Glbl Inc, | 7285 Collection Center Dr | Chicago, IL 60693 | | IT Services Agreement | 18-12342 | Flatironhotel Operations LLC | $0.00 |
| Revenue Optimization Consultants, LLC | 347 West 36 St, Suite 802 | New York, NY 10018 | | | Revenue Management Agreement | 18-12342 | Flatironhotel Operations LLC | $0.00 |
| Maestro Pms | 65 Allstate Parkway | Suite 100 | Marham, ON L3R 9X1 | Canada | IT Platform Agreement | 18-12342 | Flatironhotel Operations LLC | $0.00 |

**Exhibit 2**

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP                           **Objection Date:  March __, 2019**
Tracy L. Klestadt                                              **Time:  4:00 p.m.**
Joseph C. Corneau
Christopher Reilly
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

Attorneys for the Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                    :
In re:                                                              :   Chapter 11
                                                                    :
1141 REALTY OWNER LLC, et al.,                                      :   Case No. 18-12341(SMB)
                                                                    :
                              Debtors.                              :   Jointly Administered
                                                                    :
----------------------------------------------------------------- X

**NOTICE AND SCHEDULE OF DEBTORS' CALCULATIONS
OF CURE AMOUNTS OWED ON THEIR CONTRACTS AND LEASES TO
<u>BE ASSUMED AS PART OF THEIR PROPOSED PLAN OF REORGANIZATION</u>**

**Lease/Contract and Counterparty:        Refer to Schedule A**

> **For questions regarding the cure amounts set forth on Schedule A, or to attempt to resolve any assumption or cure issues consensually, please contact Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036 (Attn: Tracy L. Klestadt), Telephone (212) 972-3000; tklestadt@klestadt.com.**

**PLEASE TAKE NOTICE** that, pursuant to the proposed plan of reorganization (the "**Plan**"),[1] filed by 1141 Realty Owner LLC and Flatironhotel Operations LLC (the "**Debtors**") in the above-captioned case, the Debtors propose to assume certain executory contracts and unexpired leases, as described on **Schedule A** annexed hereto (the "**Assumed Contracts**"). Copies of the Plan and the related disclosure statement accompany this notice.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek to assume all of the Assumed Contracts (each, an "**Assumption**"), and have the Assumption date in each instance be

---

[1] Capitalized terms not otherwise defined in this Notice shall have the definitions ascribed to them in the Plan.

effective as of the Effective Date under the Plan.

**PLEASE TAKE FURTHER NOTICE** that, as of January 18, 2018 (the "**Determination Date**"), the Debtors believe that they owe to the respective vendees the corresponding amount listed on the attached schedule (the "**Cure Amount**").

**PLEASE TAKE FURTHER NOTICE**, that objections to an Assumption, Cure Amount, if any, and/or timing of payment of the Cure Amount, shall be in writing, filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's electronic case filing system and, by all other parties in interest, mailed to the Clerk of the United States Bankruptcy Court, One Bowling Green, New York, New York 10004-1408, on a CD-Rom or flash drive, preferably in Portable Document format (PDF), WordPerfect or any other Windows-based word processing format (with a two hard copies delivered directly to the Chambers of the Honorable Stuart M. Bernstein, United States Bankruptcy Court, One Bowling Green, New York, New York 10004, and served in accordance with General Order M-399 upon: (i) Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Tracy L. Klestadt; (ii) SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York, 11753, Attn: Kenneth P. Silverman; and (iii) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, New York, New York 10014, Attn: Susan Arbeit, so as to be received no later than **4:00 p.m.** on **_____**, **2019** (the "**Cure Schedule Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no objections are received by the Cure Schedule Objection Deadline, the cure amounts set forth in the Cure Schedule shall be binding under the Plan and upon the other party to each Assumed Contract for all purposes and will constitute a final determination of total cure amounts required to be paid or obligations required to be performed by the Debtors in connection with any Assumption of each Assumed Contract as of the Determination Date. In addition, each vendee under an Assumed Contract shall be barred from objecting to the cure information set forth in the Cure Schedule, including, without limitation, the right to assert any additional cure or other amounts with respect to the Assumed

2

Contract arising or relating to any period prior to the Determination Date.

　　　　**PLEASE TAKE FURTHER NOTICE** that any determination of cure amounts as set forth in the Cure Schedule shall be without prejudice to any of the vendees' respective rights to object to the assumption of any Assumed Contract; provided, however, that such objection must be filed with the Court and received prior to the Cure Schedule Objection Deadline.

Dated:　New York, New York
　　　　January ___, 2019

　　　　　　　　　　　　　　　KLESTADT WINTERS JURELLER
　　　　　　　　　　　　　　　SOUTHARD & STEVENS, LLP


　　　　　　　　　　　By:　*DRAFT*　　　　　　　　　　　　
　　　　　　　　　　　　　　Tracy L. Klestadt
　　　　　　　　　　　　　　Joseph C. Corneau
　　　　　　　　　　　　　　Christopher Reilly
　　　　　　　　　　　　　　200 West 41st Street, 17th Floor
　　　　　　　　　　　　　　New York, New York 10036
　　　　　　　　　　　　　　Tel: (212) 972-3000
　　　　　　　　　　　　　　Fax: (212) 972-2245
　　　　　　　　　　　　　　Email: tklestadt@klestadt.com
　　　　　　　　　　　　　　　　　 jcorneau@klestadt.com
　　　　　　　　　　　　　　　　　 creilly@klestadt.com

　　　　　　　　　　　　　　*Attorneys for the Debtor and*
　　　　　　　　　　　　　　*Debtor-in-Possession*

**SCHEDULE A**

| Creditor | Address1 | Address2 | Address3 | Address4 | Description | Case | Debtor | Cure Amount |
|---|---|---|---|---|---|---|---|---|
| Telco Experts | 169 Ramapo Valley Rd | Oakland, NJ 07436-2509 | | | Utility Contract | 18-12341 | 1141 Realty Owner LLC | $0.00 |
| Time Warner Cable | 60 Columbus Cir | New York, NY 10023 | | | Utility Contract | 18-12341 | 1141 Realty Owner LLC | $0.00 |
| Sabre Hospitality Solutions | Division of Sabre Glbl Inc, | 7285 Collection Center Dr | Chicago, IL 60693 | | IT Services Agreement | 18-12342 | Flatironhotel Operations LLC | $0.00 |
| Revenue Optimization Consultants, LLC | 347 West 36 St, Suite 802 | New York, NY 10018 | | | Revenue Management Agreement | 18-12342 | Flatironhotel Operations LLC | $0.00 |
| Maestro Pms | 65 Allstate Parkway | Suite 100 | Marham, ON L3R 9X1 | Canada | IT Platform Agreement | 18-12342 | Flatironhotel Operations LLC | $0.00 |