UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                              Chapter 11

   1141 REALTY OWNER LLC., *et al*.,         Case No.:  18-12341 (SMB)

                 Debtors.         (Jointly Administered)

-----------------------------------------------------------x

**DISCLOSURE STATEMENT FOR FIRST AMENDED PLAN OF
REORGANIZATION FOR 1141 REALTY OWNER LLC AND FLATIRONHOTEL
<u>OPERATIONS LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

**KLESTADT WINTERS JURELLER SOUTHARD
& STEVENS, LLP**
Attorneys for the Debtors
200 West 41st Street, 17th Floor
New York, New York 10036
(212) 972-3000
Tracy L. Klestadt
Joseph C. Corneau

Dated:  New York, New York
       February 20, 2019

## I.    INTRODUCTION

1141 Realty Owner LLC ("**Owner**") and Flatironhotel Operations LLC ("**Operator**" and, together with Owner, the "**Debtors**"), the above-captioned debtors and debtors-in-possession submit this Disclosure Statement (the "**Disclosure Statement**") pursuant to section 1125 of title 11, United States Code (the "**Bankruptcy Code**").  The Disclosure Statement is provided to all of the Debtors' known creditors in order to disclose the information deemed to be material, important, and necessary for the Debtors' creditors to arrive at a reasonably informed decision in exercising their rights to vote on the First Amended Plan of Reorganization proposed by the Debtors (the "**Plan**").[1]   A copy of the Plan is annexed hereto as **Exhibit A**.   Also accompanying the Plan and Disclosure Statement is a creditor's voting ballot (the "**Ballot**") for the acceptance or rejection of the Plan, together with a copy of the Order provisionally approving the Disclosure Statement and Scheduling a Hearing on Confirmation of the Plan.

**Definitions and Exhibits**

Definitions.  The definitions and designations of terms and names in the Plan apply to the Disclosure Statement and you should refer to the Plan for such definitions and designations.

Exhibits.  All Exhibits to the Disclosure Statement are incorporated as if fully set forth and are a part of the Disclosure Statement.

**Notice to Creditors**

The Debtors believe that confirmation and implementation of the Plan is in the best interest of the Debtors' estates, their creditors and Interest holders.  Based on the liquidation analysis annexed hereto as **Exhibit B** (the "**Liquidation Analysis**"), the Debtors believe that the distributions provided for in this Plan exceed the distributions that unsecured creditors would receive if the Debtors' assets were liquidated.  For this reason, the Debtors believe that approval of the Plan is the best opportunity for Creditors to receive payments with respect to Allowed Claims.

Pursuant to Bankruptcy Code § 1125, on February __, 2019, the Bankruptcy Court provisionally approved this Disclosure Statement for submission to the holders of Claims against, or Interests in, the Debtors.  On **March __, 2019** at **10:00 a.m.** (the "**Confirmation Hearing**") a hearing will be held to consider confirmation of the Plan before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, United States Bankruptcy Court, One Bowling Green, New York, New York.

The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed on or before **4:00 p.m.** on **March __, 2019**.  The Confirmation Hearing may be adjourned by the Bankruptcy Court without further notice except for the filing of a notice of the adjourned date on the Bankruptcy Court's docket, or the announcement of the adjourned date at the Confirmation Hearing (or at any subsequent adjourned date for the Confirmation Hearing). Creditors entitled to vote may vote on the Plan by filling out and mailing the accompanying Ballot to Omni Management Group, 5955 DeSoto Avenue, Suite 100, Woodland Hills, CA

---

[1]  Capitalized terms not otherwise defined in this Disclosure Statement shall have the meanings set forth in the Plan.

91367
so that the Ballot is received on or before **March __, 2019** at **4:00 p.m.**

Under the Bankruptcy Code, acceptance of a plan by a class of claims occurs when holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that cast ballots for acceptance or rejection of the plan, vote to accept the plan. Thus, acceptance of the Plan by a particular class will occur only if at least two-thirds in dollar amount and a majority in number of the holders of the claims in that class, that cast their Ballots, vote to accept the Plan. Under the Bankruptcy Code, acceptance of a plan by a class of Interests occurs when holders of at least two-thirds (2/3) in amount of such Interests that cast ballots for acceptance or rejection of the Plan, vote to accept the Plan. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or produced in good faith or in accordance with the provisions of the Bankruptcy Code.

Bankruptcy Code § 1129(b) permits confirmation of the Plan, notwithstanding rejection by one or more Classes of Claims, if: (i) at least one impaired Class has accepted the Plan; and (ii) the Bankruptcy Court finds that the Plan does not "discriminate unfairly," and is "fair and equitable" with respect to the rejecting Class. This procedure is generally referred to as "cram-down."

The purpose of this Disclosure Statement is to inform all Claim holders of the information deemed to be material, important and necessary in order to make an informed judgment about the Plan, and to vote for the acceptance or rejection of the Plan, where voting is necessary.

The approval by the Bankruptcy Court of this Disclosure Statement does not constitute a recommendation by the Bankruptcy Court as to the merits of the Plan, only that the Disclosure Statement contains "adequate information" from which creditors may form an opinion as to the merits of the Plan.

The financial information contained in this Disclosure Statement has not been subject to a certified audit. Accordingly, the Debtors are unable to warrant or represent that the information is accurate and complete in all respects, although the Debtors have used their best efforts to set forth information and disclosures which are complete and accurate. This Disclosure Statement has been prepared on the basis of assumptions which the Debtors believe to be reasonable, however, there can be no assurance that these assumptions will prove to have been accurate.

## II.    EXPLANATION OF CHAPTER 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor may reorganize or liquidate its business and assets.

Since the Petition Date, the Debtors have managed their affairs as debtors and debtors in possession under Bankruptcy Code §§ 1107 and 1108.

The formulation and confirmation of a plan of reorganization or liquidation is the principal purpose of a chapter 11 case. A chapter 11 plan sets forth the means of satisfying or

discharging the claims against or interests in a chapter 11 debtor. Chapter 11 does not require that each holder of a claim against a debtor vote in favor of a plan in order for the Bankruptcy Court to approve a plan. If any class of claimants is impaired by a plan, the plan must be accepted by at least one "impaired" class of claims or interests. A claim or interest is deemed impaired if the plan provides that the claimant: (i) will not be repaid in full; (ii) will have any of its legal rights altered; or (iii) has an interest that is adversely affected. The holder of an impaired claim or interest is entitled to vote to accept or reject the plan if the claim or interest is an allowed claim or interest under Bankruptcy Code § 502, or temporarily allowed for voting purposes under Bankruptcy Rule 3018.

## III.   THE DEBTORS PRIOR TO THE CHAPTER 11 CASES

### Description of the Debtors' Business

Owner is the fee owner of the Flatiron Hotel, a 62-room boutique hotel (the "**Hotel**") located at 9 West 26th Street a/k/a 1141 Broadway, New York, New York (the "**Property**"). Operator manages the Hotel and, prior to the Petition Date, Operator had approximately fifteen (15) employees, consisting of thirteen (13) part-time hourly employees, one (1) independent contractor who was also paid on an hourly basis, and one (1) full-time salaried employee.

### The Debtors' Current Ownership and Structure

Owner was formed on April 8, 2015 pursuant to the Delaware Limited Liability Act. One hundred percent (100%) of the membership interests in Owner are owned by 1141 Realty LLC. Ninety percent (90%) of the membership interests in 1141 Realty LLC are owned by Main Team Hotels LLC ("Main Team LLC"). One hundred percent (100%) of the membership interests in Main Team Hotels LLC are owned by Main Team Trading Ltd. ("Main Team Trading"), and one hundred percent (100%) of the membership interests in Main Team Trading Ltd. are owned by Jagdish Vaswani. In accordance with the terms of its Limited Liability Company Agreement, dated April 15, 2015, Owner is managed by one Managing Member and two (2) Independent Managers. 1141 Realty LLC is the Managing Member. Ricardo Beausoleil and Steven P. Zimmer serve as the Independent Managers.

Operator was formed on January 30, 2015 under the laws of the State of New York. Jagdish Vaswani is the owner of one hundred percent (100%) of the membership interests in Operator.

### Prepetition Secured Debt

Owner is party to a certain Loan Agreement ("**Pre-Petition Loan Agreement**"), dated as of April 16, 2015, between Owner as borrower and Rialto Realty Finance, LLC, as lender ("**Rialto**") in the original principal amount of $22,500,000. Operator is not a party to the Loan Agreement or any documents ancillary thereto.

Pursuant to the Pre-Petition Loan Agreement, Owner executed two promissory notes: (a) a Consolidated, Amended and Restated Promissory Note A in the amount of $22,500,000 ("**Note A**"); and (b) Promissory Note B in the amount of $2,500,000 ("**Note B**," and together with Note

A, the "**Notes**"). Pursuant to the Pre-Petition Loan Agreement, Owner executed a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement dated as of April 16, 2015 (the "**Mortgage**"), which was recorded in the City Register of the City of New York in City Register File Number 2015000206911 on June 17, 2015. Owner also executed an Assignment of Leases and Rents (the "**Assignment of Leases and Rents**"), which was recorded in the City Register of the City of New York in City Register File Number 2015000206912 on June 17, 2017. Finally, Owner delivered a UCC Financing Statement dated May 14, 2016 (the "**Financing Statement**"), which was recorded in the City Register of the City of New York in City Register Number 2015000206913 on June 17, 2015.

On or about May 21, 2015, Rialto delivered an Assignment of Mortgage to the Prepetition Lender, which was recorded in the City Register of the City of New York in City Register File Number 2015000241846 on July 14, 2015. On or about May 21, 2015, the Original Lender delivered an Assignment of Assignment of Leases and Rents to the Prepetition Lender, which was recorded in the City Register of the City of New York in City Register File Number 2015000241847 on July 14, 2015.

In May 2015, the Original Pre-Petition Lender delivered an Allonge for Note A to the Prepetition Lender. On or about April 16, 2015, the Original Pre-Petition Lender delivered an Allonge for Note B to RMezz Flatiron LLC ("**RMezz**"), and on or about April 24, 2015, the Original Lender and RMezz entered into an Agreement Between Noteholders, pursuant to which Original Lender and RMezz made certain inter-creditor agreements.

On or about May 27, 2015, the Original Pre-Petition Lender delivered an assignment of the Financing Statement to the Prepetition Lender, which was recorded in the City Register of the City of New York in City Register File Number 2015000241848 on July 14, 2015. On or about May 21, 2015, Original Pre-Petition Lender delivered a General Assignment to Successor Lender.

As of the Petition Date, the principal balance on the Notes were approximately $24,209,486, and monthly interest payments on the Notes were approximately $149,000.

Prior to the Petition Date, credit card receipts were sent to a lockbox (the "**Lockbox**") controlled by the Prepetition Lender. The Prepetition Lender has prohibited the Debtors from accessing records as to the funds received and held therein but based upon pleadings filed in the District Court Litigation, it is the Debtors' understanding that there is approximately $183,440 in the Lockbox.

Additionally, there are thirteen (13) judgments against Owner by the City of New York for various violations totaling $35,250; seventeen (17) Environmental Control Board judgments totaling approximately $81,090, and one (1) tax warrant by the New York State Department of Taxation and Finance for $354 that also encumber Owner's property. As against Operator, there is one judgment by the New York State Commissioner of Labor for approximately $60,385, two (2) judgments by the New York State Department of Taxation and Finance totaling approximately $688,335, and six (6) judgments by the New York City Department of Finance totaling approximately $586,408.

**The Debtors' Liabilities and Assets**

In addition to the secured debt described above, prior to the Bar Date (defined herein) the claims have been filed against the Debtors totaling approximately $3.06 million in unsecured debt. The Debtors believe that certain of those claims are either duplicative, overstated, or both, and intend to file objections to those claims if a resolution cannot be reached with the claimant(s).

Owner's sole asset is the Property. Pursuant to an appraisal obtained by the Debtors during the pendency of these Chapter 11 Cases, the Property is currently valued at approximately $45 million. Operator's primary asset is the liquor license that is used in the operations of the Hotel.

**The Events Leading up to the Chapter 11 Cases**

On September 15, 2017, the Prepetition Lender sent a Notice of Default and Acceleration related to the Loan Agreement to Owner, and on September 18, 2017, Prepetition Lender commenced a foreclosure action against Owner[2] in the United States District Court for the Southern District of New York (the "**District Court**"), Case No.: 17-cv-7081-LGS-HBP (the "**District Court Action**").

In its Complaint, Prepetition Lender alleged that Owner had defaulted under the Loan Agreement by, among other things, (i) serving alcoholic beverages at the Property without the requisite license from the New York State Liquor Authority, and (ii) misappropriating funds generated by food and beverage operations at the Property. On the same day, Prepetition Lender moved by Order to Show Cause for the appointment of a Receiver (the "**First Motion to Appoint a Receiver**").

On September 19, 2017, Prepetition Lender and Owner entered into a stipulation, whereby Owner agreed that it would not allow the sale of alcoholic beverages at the Property pending the conclusion of the hearing on the First Motion to Appoint a Receiver. On October 2, 2017, the District Court issued an Order denying the First Motion to Appoint a Receiver.

On October 19, 2017, Owner filed its Answer in the District Court Action, whereby it denied substantially all of the material allegations contained in Prepetition Lender's complaint, and asserted seven (7) counterclaims against Prepetition Lender seeking entry of a judgment declaring the Prepetition Lender's Notice of Default to be invalid and seeking monetary damages for Prepetition Lender's alleged breach of contract, breach of fiduciary duty, breach of the obligation of good faith and fair dealing. Owner amended its answer on November 7, 2017 to add an additional counterclaim seeking damages based upon Prepetition Lender's alleged negligent impairment of collateral.

---

[2] On December 7, 2017, Prepetition Lender amended its complaint to, among other things, add the following persons as defendants: Jagdish Vaswani, Robert K.Y. Chan, the City of New York and the State of New York, and to add claims seeking a monetary judgment for alleged breaches of the Notes and certain personal guaranties.

On November 15, 2017, the District Court so ordered a stipulation by and between Prepetition Lender and Owner, whereby they agreed on terms regarding procedural requirements for the release of funds from the Cash Management Account for payment of expenses relating to the Property during the duration of the District Court Action (the "**Stipulation and Order**").

On February 2, 2018, Prepetition Lender filed a letter with the District Court requesting authority to file a motion seeking an order compelling Owner's compliance with the terms of the Stipulation and Order. The District Court subsequently scheduled an evidentiary hearing to determine whether Owner should be held in contempt for failing to comply with the terms of the Stipulation and Order.

On May 30, 2018, Prepetition Lender filed a second motion seeking the appointment of a Receiver (the "**Second Motion for Appointment of a Receiver**"). On June 11, 2018, after conducting an evidentiary hearing, Magistrate Judge Henry B. Pitman issued his Certification of Facts, Conclusions of Law and Proposed Remedies, recommending (1) an award in Prepetition Lender's favor of reasonable attorneys' fees and costs incurred as a result of prosecuting its contempt motion, and (2) the appointment of a special master to "monitor and report" on Owner's continued compliance with the Stipulation and Order and declining to recommend Prepetition Lender's request that Owner be required to retain a certified public accountant to perform an accounting of Owner's income from November 15, 2017 through the present.

On June 12, 2018, the District Court granted the motion of Owner's counsel to withdraw as counsel in the District Court Action. As a result of the impact the District Court Action has had on the Debtors' revenue stream, Owner had insufficient funds available to retain replacement counsel.

## IV.    THE DEBTORS' CHAPTER 11 CASE

After the Petition Date, the Debtors, as debtors in possession, have been authorized to manage their businesses and assets in the ordinary course of business. Below is a summary of the salient motions brought before the Bankruptcy Court in the Chapter 11 Cases.

**Retention Orders**

The Bankruptcy Court has entered the following orders of retention (the "**Retention Orders**"):

- By Order dated September 20, 2018 (ECF Doc. No. 58), the Bankruptcy Court approved the Debtors' application to retain KWJS&S as their general bankruptcy counsel, *nunc pro tunc* to the Petition Date.

- By Order dated September 20, 2018 (ECF Doc. No. 54), the Bankruptcy Court approved application for the employment of CR3 Partners, LLC ("**CR3**") to provide James Katchadurian, a partner of CR3, as Chief Restructuring Officer and to provide related services to the Debtors, *nunc pro tunc* to the Petition Date.

- By Order dated September 20, 2018 (ECF Doc. No. 61), the Bankruptcy Court approved application for the employment of Verdolino & Lowey, P.C. as the Debtors' accountant, *nunc pro tunc* to the Petition Date.

**First Day Motions**

On the Petition Date, the Debtors filed the following motions seeking relief critical to avoid irreparable harm to the Debtors and their businesses (collectively, the "**First Day Motions**"). On August 2, 2018, the Bankruptcy Court conducted an emergency hearing to consider the First Day Motions designed to facilitate the Debtors' transition into chapter 11 by approving certain regular business practices that may not have been specifically authorized under the Bankruptcy Code and/or required specific Bankruptcy Court approval.

A. Debtor's Motion for Entry of an Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing Joint Administration of the Chapter 11 Cases (ECF Doc. No. 2) (the "**Joint Administration Motion**").

The Joint Administration Motion requested that the Bankruptcy Court jointly administer the chapter 11 cases of 1141 Realty Owner LLC (Index No. 18-12341 (SMB)) and Flatironhotel Operations LLC (18-12342 (SMB)) to avoid duplicative notices, applications, and orders, thereby saving the Debtors' estates significant time and expense. By Order of the Court dated August 7, 2018, the Bankruptcy Court directed the joint administration of the Debtors' bankruptcy cases (ECF Doc. No. 20).

B. Debtor's Motion for Entry of an Order Extending the Debtors' Time to File Schedules and Statements of Financial Affairs (ECF Doc. No. 3) (the "**Extension Motion**").

The Extension Motion requested authority to extend the Debtors' time to file their schedules of assets and liabilities, executory contracts and unexpired leases, lists of equity security holders, statement of financial affairs and other documents pursuant to the Bankruptcy Rules and Local Bankruptcy Rules. By Order of the Court dated August 7, 2018, the Bankruptcy Court extended the time within which the Debtors were required to file their Schedules and Statements of Financial Affairs to September 14, 2018 (ECF Doc. No. 19).

C. Application for an Order Appointing Omni Management Group, Inc. as Claims and Noticing Agent for the Debtors Pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) and Local Rule 5075-1 (ECF Doc. No. 4).

By Order of the Court dated August 8, 2018, the Bankruptcy Court authorized the retention and appointment of Omni Management Group, Inc. as claims and noticing agent under 28 U.S.C. § 156(c), 11 U.S.C. § 105(A) and S.D.N.Y. Local Bankruptcy Rule 5075-1 (ECF Doc. No. 22).

D. Debtors' Motion for Entry of Interim and Final Orders: Authorizing Payment of Prepetition Employee Compensation Obligations (ECF Doc. No. 5) (the "**Wage**

**Motion**").

The Payment of Prepetition Employee Compensation Motion requested authority for the Debtors to satisfy, in the ordinary course of business, the pre-petition employee compensation obligations, including, but not limited to, the pre-petition payroll and pre-petition payroll taxes (collectively, the "**Prepetition Compensation**"). The Debtors sought this relief out of concern that, if the Prepetition Compensation was not paid on a timely basis, the Debtors' employees might refuse to work. The Bankruptcy Court approved the Wage Motion authorizing the payment of prepetition employee compensation obligations on an interim basis on August 7, 2018 (ECF Doc. No. 51), and on a final basis on September 20, 2018 (ECF Doc. No. 56).

E.    Debtors' Motion for Entry of Interim and Final Orders Authorizing, But Not Directing, Flatironhotel Operations LLC to Pay Certain Prepetition Claims of Critical Vendors (ECF Doc. No. 6) (the "**Critical Vendors Motion**").

The Critical Vendors Motion requested authority for the Debtors to pay in the ordinary course of business and consistent with their prepetition practice certain prepetition critical vendor claims. The Bankruptcy Court approved the Critical Vendors Motion authorizing the Debtors to pay certain prepetition claims of critical vendors on an interim basis on August 7, 2018 (ECF Doc. No. 18), and on a final basis on September 20, 2018 (ECF Doc. No. 55).

F.    Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to Obtain Post-Petition, Priming, Senior Secured, Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 362, 364(c) and 364(d), Bankruptcy Rule 4001(c) and Local Bankruptcy Rule 4001-2 (ECF Doc. No. 7) (the "**DIP Financing Motion**").

The DIP Financing Motion requested authority, on an interim and final basis, for the Debtors to (i) utilize cash collateral of the DIP Lender; (ii) grant the DIP Lender a senior valid, perfected and first priority security interest and lien, pursuant to 11 U.S.C. §§ 364(c) and (d), on, among other things, all of Debtors' pre- and post-petition now existing and after acquired, assets; (iii) authorize the continued limited use of cash collateral; and (iv) modify the automatic stay as to the DIP Lender. The Prepetition Secured Lender objected to the DIP Financing Motion (ECF Doc No. 40) and, at the hearing on DIP Financing Motion, the Prepetition Secured Lender consented to the Debtors' use of cash collateral on an interim basis. By Order dated August 9, 2018 (ECF Doc. No. 23), the Bankruptcy Court approved the interim stipulation between the Debtors and Prepetition Secured Lender and entered an order authorizing the Debtors to use the Prepetition Secured Lender's cash collateral.

At the final hearing to consider the DIP Financing Motion, after negotiations between the parties as to the terms of a final order approving the DIP Financing Motion, the Bankruptcy Court the Bankruptcy Court approved the DIP Financing Motion and entered an order granting the DIP Financing Motion on a final basis on September 24, 2018 (ECF Doc No. 62).

**Official Committee of Unsecured Creditors**

To date, no Official Committee of Unsecured Creditors has been appointed in the Debtors' chapter 11 cases.

**Other Key Orders Granted During the Chapter 11 Case**

In addition to the First Day Orders and Retention Orders, the Bankruptcy Court has entered the following additional orders:

- By Order dated September 20, 2018 (ECF Doc. No. 60), the Bankruptcy Court (i) restrained and enjoined all utility providers of the Debtors from altering, refusing, or discontinuing utility services to the Debtors; (ii) directed all utility providers of the Debtors to provide continued and uninterrupted utility service to the Debtors; and (iii) approved the Debtors' proposed adequate assurance for future payment in accordance with section 366(b) of the Bankruptcy Code.

- By Order dated September 24, 2018 (ECF Doc. No. 63), the Bankruptcy Court set November 5, 2018 as the last date for creditors to file claims against the Debtors that arose prior to the Petition date.  The last date for governmental entities to file claims is January 28, 2019.

- By Order dated October 30, 2018 (ECF Doc. No. 80), the Bankruptcy Court authorized and approved the Debtors' assumption of the Operator's agreements with both Booking.Com B.V. and Expedia.Com Ltd. (together, the "**Reservation Platform Contracts**") to bring positive value to the Debtors' estates.

**Management of the Reorganized Debtors**

Following the Effective Date of the Plan, if the Exit Facility closes pursuant to the Plan, the managing member of the Reorganized Debtors shall be Premier Nomad LLC. Premier Nomad LLC is managed by Uzi Ben Abraham, Yaron Jacobi and Bert H. Dweck. Brief biographies of Messrs. Ben Abraham, Jacobi and Dweck follow.

Uzi Ben Abraham: Uzi Ben Abraham is a founding partner of Premier Equities, Inc., the parent company of Premier Nomad LLC. His primary focus is on development and asset management of the company's portfolio of street retail and commercial office properties. Mr. Ben Abraham has an extensive history in the fashion retail industry. After emigrating to the United States from Israel in 1986, he founded Atrium, a high-end denim sportswear company located in Manhattan. In 1996, he co-founded the trend-setting luxury fashion retailer SCOOP in New York City and led the company to become a nationwide brand. Mr. Ben Abraham sold SCOOP in 2005 and co-founded Premier Equities in 2009 with Yaron Jacobi.

Yaron Jacobi: Yaron Jacobi is a founding partner of Premier Equities, Inc., the parent company of Premier Nomad LLC. His primary focus is on acquisitions and leasing of the company's portfolio of street retail and commercial office properties. After emigrating to the United States

from Israel and founding the hip-hop era fashion line Genesis in the mid-1990s, Mr. Jacobi began investing in real estate. He was among the first to acquire street retail locations in SoHo and played a pivotal role in transforming SoHo into one of New York City's most prestigious and dynamic retail destinations. In 2009, Mr. Jacobi joined Uzi Ben Abraham to co-found Premier Equities.

Bert H. Dweck: Bert H. Dweck is a partner of Premier Equities, the parent company of Premier Nomad LLC. His primary focus is on acquisitions and leasing of the company's portfolio of street retail and commercial office properties. A native of Brooklyn, New York, Mr. Dweck began his career handling licensing and nationwide sales for his family's textile business, which was established in the 1920s. He joined Premier Equities in 2017 after engaging in numerous transactions with co-founders Uzi Ben Abraham and Yaron Jacobi since the founding of the company in 2009.

## V.    SUMMARY OF PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND INTERESTS

Below is a summary of the Plan.  Parties in interest are urged to review the Plan in its entirety to determine how the Plan affects their rights as Creditors or Interest holders.

The Plan provides for the reorganization of the Debtors by the use of the Exit Facility, which shall provide the necessary Cash to pay the Prepetition Lender's Secured Claim, as well as the Premier Funds, which shall be sufficient to make the Effective Date Payment.  From the Effective Date Payment the Debtors will pay all Allowed Secured Claims (other than the Prepetition Lender's Secured Claim), Administrative Expenses, Priority Claims, and General Unsecured Claims.

The Debtors currently anticipate that the Effective Date will occur no later than ninety days after the confirmation of the Plan.

The treatment of Creditors under the Plan provides for payment in full on account of their Allowed Claims, and Creditors could not receive more in a liquidation of the Debtors under chapter 7 of the Bankruptcy Code. *See Exhibit B*, Liquidation Analysis.

### Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  Holders of these claims may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code.  As such, the Debtors have *not* placed the following claims in any class:

### Statutory Fees

Statutory fees, and any applicable interest thereon, are all fees payable pursuant to Chapter 123 of Title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. §1930(a)(6) plus any interest due and payable under 31 U.S.C. §3717 ("**U.S. Trustee Fees**").  U.S. Trustee Fees will accrue and be timely paid until the Case is closed,

dismissed, or converted to another chapter under the Bankruptcy Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the Effective Date of the Plan.

The following chart lists the Debtors' estimated U.S. Trustee Fees and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| U.S. Trustee Fees | $0.00 | To the extent not paid in the ordinary course pursuant to the budget attached to the Cash Collateral Order, U.S. Trustee Fees will be paid in full in Cash on the Effective Date of the Plan. |

## Administrative Expenses

Administrative Expenses are costs or expenses of administering the Debtors' Chapter 11 Case which are allowed under Bankruptcy Code § 503. Administrative Expenses also include the value of any goods sold to the Debtors in the ordinary course of business and received within twenty (20) days prior to the Petition Date. The Bankruptcy Code requires that all Administrative Expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtors' estimated administrative expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | To the extent not paid in the ordinary course pursuant to the budget attached to the Cash Collateral Order, will be paid in full on the Effective Date, in Cash, or upon such other terms as may be agreed upon by the holder of the Claim and the Debtors. |

| | | |
|---|---|---|
| Professional Fees, as approved or to be approved by the Bankruptcy Court. | $33,434 | To the extent not paid in the ordinary course pursuant to the budget attached to the Cash Collateral Order and in accordance with the Interim Compensation Order, will be paid in full on the Effective Date, in Cash, or according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date of the Plan. |
| Clerk's Office Fees | $0.00 | To the extent not paid in the ordinary course pursuant to the budget attached to the Cash Collateral Order, will be paid in full on the Effective Date. |
| Other administrative expenses | $0.00 | To the extent not paid in the ordinary course pursuant to the budget attached to the Cash Collateral Order, will be paid in full on the Effective Date, in Cash, or upon such other terms as may be agreed upon by the holder of the Claim and the Debtors. |
| TOTAL | $33,434 | |

**Priority Tax Claims**

Allowed Priority Tax Claims are not impaired.  All Allowed Priority Tax Claims shall be paid in full on the Effective Date.  Holders of Priority Tax Claims shall not be entitled to vote on the Plan.

The following chart lists the Debtors' estimated section 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description | Estimated Amount Owed | Treatment |
|---|---|---|
| Tax Claims (estimated) | $2,517,358 | All Allowed Priority Tax Claims shall be paid in full, in Cash, on the Effective Date. |

**Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

<u>Classes of Priority Unsecured Claims</u>

Certain priority claims that are referred to in Bankruptcy Code § 507(a) are required to be placed in classes. The Bankruptcy Code requires that each holder of a priority claim receive Cash on the Effective Date of the Plan equal to the allowed amount of such claim; however, a class of holders of such claims may vote to accept different treatment.

The Debtors propose to pay priority unsecured claims in full on the Effective Date.

| Class # | **Description and Amount** | **Impairment** | **Treatment** |
|---------|---------------------------|----------------|---------------|
| 1 | Priority Non-Tax Claims $0.00 | Unimpaired | Allowed Priority Non-Tax Claims shall be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable, from the Effective Date Payment. In accordance with Bankruptcy Code § 1126(f), holders of Class 1 Claims shall not be entitled to vote on the Plan and shall be deemed to have accepted the Plan. |

<u>Classes of Secured Claims</u>

Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estates (or that are subject to setoff) to the extent Allowed as secured claims under Bankruptcy Code § 506. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be treated as a General Unsecured Claim.

| Class # | Description and Amount | Impairment | Treatment |
|---|---|---|---|
| 2 | Premier Secured Claim Approximately $1,166,177 | Impaired | In the event that the Exit Facility closes on or before May 15, 2019, or if Premier elects to contribute sufficient Premier Funds to pay Class 3 claims in full, the Premier Claim shall be deemed satisfied upon the Effective Date of the Plan with no amounts remaining due by the Debtors to Premier. In the event that the Exit Facility does not close on or before May 15, 2019 and the Debtors sell their real property, the Premier Claim shall be paid in full from the proceeds of the sale of the Debtors' real property. |
| 3 | Prepetition Lender Secured Claim Approximately $32,048,285[3] | Unimpaired | Holders of the Allowed Prepetition Lender's Claim shall be paid in full on the Effective Date from the proceeds of the Exit Facility as and when Allowed by the Bankruptcy Court. To the extent that the Exit Facility does not close on or before May 15, 2019, either (i) the Debtors shall market and sell their real property to satisfy any Allowed Prepetition Lender's Claim, or (ii) Premier shall provide additional Premier Funds to satisfy any Allowed Prepetition Lender's Claim. From the Confirmation Date through the Effective Date, Holders of the Allowed Prepetition Lender's Claim shall receive monthly interest payments at the rate then- |

---

[3] On November 2, 2018, the Prepetition Lender filed a proof of claim, designated Claim No. 14 on the Debtors' claims register, in the amount of $32,048,285.29 (the "**Proof of Claim**"). On November 16, 2018, the Debtors filed an objection to the Proof of Claim (ECF No. 84), which, as of the date hereof, is pending. The Prepetition Lender Secured Claim will be paid in full on the Effective Date as and when Allowed by the Bankruptcy Court.

| | | | applicable with respect to the Prepetition Lender's Claim. |
|---|---|---|---|
| 4 | Other Secured Claims Approximately $0.00 | Unimpaired | Allowed Class 4 Claims shall consist of all Allowed Secured Claims other than the Premier Claim and the Prepetition Lender's Claim. Class 4 Claims shall be paid in full on the Effective Date from the Effective Date Payment. |

<u>Classes of General Unsecured Claims</u>

General unsecured claims are not secured by property of the estate and are not entitled to priority under Bankruptcy Code § 507(a).

The following chart identifies the Plan's proposed treatment of Class 5 Claims, which consist of General Unsecured Claims against the Debtors:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | General Unsecured Claims<br><br>Approximately $2,073,722[4] | Unimpaired | Class 5 Claims are comprised of the Allowed Claims of General Unsecured Creditors. Each holder of an Allowed General Unsecured Claim shall receive payment in full on account of such claim on the Effective Date from the Effective Date Payment. |

**Class 6 Interest Holders**

All existing membership interests in the Debtors shall be cancelled, and the Reorganized Debtors' membership interests shall be reissued as follows: (i) with respect to Owner, Fifty (50%) Percent shall be owned by 1141 Realty LLC and Fifty (50%) Percent shall be owned by Premier Nomad LLC; and (ii) with respect to Operator, One Hundred (100%) Percent shall be owned by Premier Nomad LLC, provided, however, if the Debtors sell their real property pursuant to Section 3.06 of the Plan, the membership interests shall revert back to as they existed on the Petition Date.  Class 6 Interests are impaired.

**Claims and Interests Not Impaired Under the Plan**

The term "impaired" as used below shall have the same meaning as it has pursuant to Bankruptcy Code § 1124. Holders of Administrative Expenses, Priority Tax Claims, and Claims in Classes 1, 3, 4, and 5 are not impaired and shall be paid in full, on the Effective Date.

---

[4] Aggregate amount of filed claims, less duplicates. The Debtors reserve all rights to object to all proofs of claim.

Classes 1, 3, 4 and 5 are not impaired under the Plan and, therefore, holders of Claims in Classes 1, 3, 4 and 5 are deemed to accept the Plan.

**Claims and Interests Impaired Under the Plan**

Claims in Class 2 and Interests in Class 6 are impaired under the Plan. The holders of Claims in Class 2 and Interests in Class 6 are entitled to vote on the Plan.

## VI.    MEANS FOR IMPLEMENTATION OF THE PLAN

The payments under the Plan will be made from the (a) Exit Facility, and (b) the Premier Funds. With respect to the portion of the Effective Date Payment to be funded by the Premier Funds, no later than ten (10) business days prior to the anticipated Effective Date, the Debtors shall provide Premier with an accounting of all amounts the Debtors believe must be paid from such funds. No later than two (2) business days prior to the anticipated Effective Date, Premier shall transfer the Premier Funds to the Debtors for the purposes of making the Effective Date Payment.

On the Effective Date, the Debtors will have sufficient Cash to pay in full, or reserve for (as applicable), the following amounts required to be paid under the Plan:

- U.S. Trustee's fees and any applicable interest;

- Allowed Priority Tax Claims;

- Allowed Administrative Expenses, including Allowed Fee Claims (except to the extent that the holders of Administrative Expenses agree to different treatment, and except for Allowed Administrative Expenses held pursuant to Bankruptcy Code 503(b)(9) which shall be paid as soon as reasonably practicable after the Effective Date or upon such other terms as may be agreed to by the holder thereof and the Debtor); and

- Allowed Claims in Classes 1, 3, 4, and 5.

**Exit Facility**. The Debtors or Reorganized Debtors, as applicable, with the assistance of Premier, shall obtain the Exit Facility in an amount sufficient to satisfy the Allowed portion of the Prepetition Lender's Claim. The Exit Facility shall be used to satisfy the Allowed portion the Prepetition Lender's Claim and, at the Reorganized Debtors' discretion, may be used to fund ongoing operations of the Reorganized Debtors. To the extent that the Exit Facility does not close within ninety (90) days of the Confirmation Date, either (i) the Debtors shall market and sell their real property to satisfy any Allowed Prepetition Lender's Claim, or (ii) Premier shall provide additional Premier Funds to satisfy any Allowed Prepetition Lender's Claim.

**Quarterly Reports**. Until the Chapter 11 Cases are closed, the Reorganized Debtors shall file quarterly reports setting forth the status of Distributions to holders of Allowed Claims. The quarterly reports shall be filed on or before the 15th day of, January, April, July, and October. In addition, the Reorganized Debtors shall maintain an accurate register of the General Unsecured Claims.

**Vesting of Assets**. As of the Effective Date, pursuant to provisions of Bankruptcy Code §§ 1141(b) and (c), all property and assets of the Debtors shall be transferred to and shall vest in the Reorganized Debtors free and clear of all Liens, Claims and Interests, except as otherwise expressly provided in this Plan and the Confirmation Order.

**Continuing Existence**. From and after the Effective Date, the Reorganized Debtors will continue in existence and shall continue normal operations of their businesses under applicable law.

**Release of Avoidance Actions**. On the Effective Date, the Debtors, on behalf of themselves and their Estates, shall release any and all Avoidance Actions, and the Debtors and the Reorganized Debtors, and any of their successors and assigns and any entity acting on behalf of the Debtors or the Reorganized Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions.

## VII.   EXECUTORY CONTRACTS AND LEASES

All executory contracts or unexpired leases of the Debtors listed on Exhibit 1 to the Plan shall be deemed assumed by the Debtors as of the Effective Date. Simultaneously with service of the Plan and Disclosure Statement, the Debtors shall provide a notice to all counter-parties to executory contracts proposed to be assumed, substantially in the form annexed to the Plan as **Exhibit 2**.  Such counter-parties shall have until seven (7) days prior to the Confirmation Hearing to file an objection to the proposed cure amount provided in such notice.  All objections to cure amounts shall be heard at the Confirmation.

Any executory contract or unexpired lease of the Debtors not listed in Exhibit 1 to the Plan and which has not been assumed or rejected by Final Order of the Bankruptcy Court, or which is not the subject of a pending motion to assume or reject on the Confirmation Date shall be deemed rejected by the Debtors on the Effective Date. Any entity with a Claim that arises from the rejection of an executory contract or unexpired lease must file its Claim within thirty (30) days after the later of the date of the order rejecting the executory contract or unexpired lease and the Confirmation Date, and shall have the same rights as a Class 5 Claimant to the extent such Claim becomes an Allowed General Unsecured Claim. **Any Claims arising from the rejection of an executory contract or unexpired lease not filed with the Bankruptcy Court within such time will be automatically treated as a Disallowed Claim, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objections by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other entity, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or any proof of Claim to the contrary.**

## VIII.   PROCEDURE FOR RESOLVING DISPUTED CLAIMS

Article VII of the Plan sets forth the procedures for resolving Disputed Claims under the Plan, including the establishment of Disputed Claims Reserves for certain Disputed Claims.

## IX.    RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over the Debtors, the Reorganized Debtors, and the Chapter 11 Cases pursuant to chapter 11 of the Bankruptcy Code and for the purposes set forth in Bankruptcy Code §1127(b), including, without limitation, with respect to the following matters:

a.  to hear and determine any claim or cause of action belonging to the Estates, and any disputes concerning the classification, allowance, or estimation of any Claim;

b.  to resolve any disputes concerning any funds held in the Disputed Claims Reserve;

c.  to hear and determine all disputed issues relating to a security or ownership interest in any property of the Estates, or in any proceeds thereof;

d.  to hear and determine all Claims arising out of any agreement entered into by the Debtors after the Petition Date but prior to the entry of the Confirmation Order;

e.  to recover all assets and property of the Debtors wherever located;

f.  to alter, modify and amend the Plan pursuant to Bankruptcy Code §1127 or to remedy any defect, cure any omissions, or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purpose and intent of the Plan, and to extent authorized by the Bankruptcy Code or Bankruptcy Rules;

g.  to hear and determine such other matters as may be provided for in the Confirmation Order and for the purposes set forth in Bankruptcy Code §§1127(b) and 1142, or in Bankruptcy Rules 1019 and 3020(d);

h.  to hear and determine all applications for compensation of professionals for services rendered and expenses incurred through the Confirmation Date, and thereafter to hear and determine any objections to compensation of professionals;

i.  to hear and determine any and all pending applications, adversary proceedings, contested matters and litigated matters;

j.  to hear and determine any disputed issues with respect to the payments to be made under the Plan;

k.  to enter orders that are necessary or appropriate to carry out the provisions of the Plan, including orders interpreting the provisions of the Plan;

l.  to enter a Final Order or decree concluding the Debtors' Chapter 11 Cases; and

m. to determine such other matters as may be provided for in the Confirmation Order, or as may be authorized under the provisions of the Bankruptcy Code.

## X.    CONFIRMATION AND EFFECTIVE DATE

**Conditions Precedent to Confirmation**. The following are the conditions precedent to the Confirmation of the Plan:

a.  The Debtors shall have entered into a commitment letter for the Exit Facility, conditioned upon the entry of the Confirmation Order;

    b.   All terms, conditions and provisions of the Plan are approved in the proposed Confirmation Order; and

    c.   The proposed Confirmation Order shall be in form and substance acceptable to counsel to the Debtors, counsel to Premier, and the U.S. Trustee.

The conditions precedent set forth in subparagraphs (a), (b), and (c) above, may be waived by the Debtors, only with the consent of Premier and upon reasonable notice to the U.S. Trustee.

**Conditions Precedent to the Effective Date**.  The following are the conditions precedent to the Effective Date of the Plan:

    a.   The Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order; and

    b.   The Debtors shall have made the Effective Date Payment.

## XI.   DISCHARGE OF CLAIMS, RELEASES AND EXCULPATION

**Interest Holders of the Debtors.**  Upon the Effective Date, all existing membership interests in the Debtors shall be cancelled, and the Debtors' membership interests shall be reissued as follows: (i) with respect to Owner, fifty (50%) Percent shall be owned by 1141 Realty LLC and fifty (50%) Percent shall be owned by Premier Nomad LLC; and (ii) with respect to Operator, One Hundred (100%) Percent shall be owned by Premier Nomad LLC.

**Injunction.**  **EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE CONFIRMATION DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE DEBTORS' PROPERTY, OR THE ESTATES BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE CONFIRMATION DATE, INCLUDING ANY CLAIMS THAT ARE PROPERTY OF THE DEBTORS' BANKRUPTCY ESTATES (COLLECTIVELY, THE "RELEASED CLAIMS"); PROVIDED THAT NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTORS, OR ANY OF THE DEBTORS' OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTORS' PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES, OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

**Release by the Debtors.  PURSUANT TO BANKRUPTCY CODE §1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, THE DEBTORS AND REORGANIZED DEBTORS SHALL RELEASE UNCONDITIONALLY, AND HEREBY ARE DEEMED TO FOREVER RELEASE UNCONDITIONALLY THE FOLLOWING PERSONS (COLLECTIVELY, THE "RELEASED PARTIES"): (A) PREMIER ITS DIRECTORS, OFFICERS, ADVISORS, ACCOUNTANTS, CONSULTANTS, AND ATTORNEYS; AND (B) THE DEBTORS' ADVISORS, INCLUDING ATTORNEYS AND ACCOUNTANTS, FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING THE RELEASED CLAIMS (EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN AND THE RIGHT TO FILE AN OBJECTION WITH THE BANKRUPTCY COURT WITH RESPECT TO ANY FEE CLAIMS), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR THOSE CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES.  IN ADDITION, THE RELEASE PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

A.    **Exculpation. TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), NEITHER THE RELEASED PARTIES NOR THEIR ADVISORS, ACCOUNTANTS, AND ATTORNEYS, SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASES IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE RELEASED PARTIES SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. IN ADDITION, THE EXCULPATION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE A RELEASE OF AN INDEPENDENT CLAIM HELD BY A CREDITOR OR INTEREST HOLDER AGAINST A NON-DEBTOR ENTITY OR PERSON BASED ON ACTS OR OMISSIONS UNRELATED TO THE DEBTORS OR THE CHAPTER 11 CASES. IN ADDITION, NOTHING CONTAINED HEREIN OR IN THE PLAN SHALL RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES AND SETTLEMENTS CONTAINED IN THE PLAN.**

**NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, INCLUDING, WITHOUT LIMITATION, ANY CLAIM ARISING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST: (I) THE DEBTORS; (II) ANY OF THE DEBTORS' MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS; AND (III) THE RELEASED PARTIES. IN ADDITION, SUBJECT TO BANKRUPTCY CODE §§ 524 AND 1141, THE RELEASES DESCRIBED HEREIN SHALL NOT PRECLUDE POLICE, FEDERAL TAX, OR REGULATORY AGENCIES FROM FULFILLING THEIR STATUTORY DUTIES.**

**THE RELEASES DESCRIBED IN THIS SECTION ARE IN ADDITION TO, AND NOT IN LIEU OF, ANY OTHER RELEASE SEPARATELY GIVEN, CONDITIONALLY OR UNCONDITIONALLY, BY THE DEBTORS TO ANY OTHER PERSON. ANY RELEASE GIVEN BY THE DEBTORS OR A PERSON WHICH IS PART OF OR SUBJECT TO A FINAL ORDER OF THE BANKRUPTCY COURT REMAINS IN FULL FORCE AND EFFECT AND ARE RATIFIED BY THE PLAN.**

<u>Persons or Entities Not Released by the Debtors</u>.  Except for the releases contained in the Plan, the Confirmation Order and the DIP Financing Order, the Debtors and the Estates are not releasing any claims or actions against any Person, or their respective affiliates, assigns, agents, directors, officers, advisors, accountants, investment bankers, consultants, attorneys and other representatives of any of the foregoing.

<u>Good Faith</u>.  The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code §§1125(e) and 1129(a)(3), with respect to the foregoing.

## XII.  MISCELLANEOUS PROVISIONS

Headings.  The headings used in the Plan are inserted for convenience or reference only and are not part of the Plan.

Notices.  Notices shall be deemed given when received.  All notices, requests or demands described in or required to be made in accordance with the Plan shall be in writing and shall be delivered by overnight mail and email transmission as follows:

> (a) If to the Debtors or Reorganized Debtors:
> Klestadt Winters Jureller Southard & Stevens, LLP
> 200 West 41st Street, 17th Floor
> New York, New York 10036
> Attn: Tracy L. Klestadt
> (212) 972-3000
> TKlestadt@Klestadt.com
>
> (b) If to Premier:
> SilvermanAcampora LLP
> 100 Jericho Quadrangle - Suite 300
> Jericho, New York 11753
> Attn: Kenneth P. Silverman
> (516) 479-6300
> KSilverman@SilvermanAcampora.com
>
> (c) If to the U.S. Trustee:
> Office of the U.S. Trustee
> 201 Varick Street, Suite 1006
> New York, New York 10014
> Attn: Susan Arbeit
> (212) 510-0500
> Susan.Arbeit@USDOJ.gov

If to a holder of a Claim or Interest, at the address set forth in its proof of Claim or proof of Interest filed with and allowed by the Court, or, if none, at its address set forth in the Schedules prepared and filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

Change of Address.  Any of the parties identified in section 11.02 of the Plan may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to counsel to the Debtors.

Modification of the Plan.  The Debtors reserve the right, in accordance with the Bankruptcy Code, upon written consent of counsel to Premier, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter.  After the Confirmation Date, the Debtors or the Reorganized Debtors may, upon appropriate motion, notice, and order of the Court, remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

<u>Reservation of Rights</u>.    Nothing contained herein shall prohibit the Debtors or the Reorganized Debtors from prosecuting or defending any of the rights of the Debtors' Estates.

<u>Severability</u>. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

<u>Successors and Assigns</u>.    The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

<u>Governing Law</u>.    Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

<u>Section and Article References</u>.    Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

# XIII.  <u>ALTERNATIVES TO THE PLAN</u>

## <u>Liquidation Analysis and Valuation</u>

The Debtors and their professionals have carefully considered alternatives to the Plan. The alternatives considered were the sale of the Debtors' assets as a "going concern" and the liquidation of the Debtors' assets. After considering these alternatives, including the Liquidation Analysis, the Debtors determined that the Plan provides creditors and Interest Holders with recoveries that are at least equal to what they would receive in the event of a sale of the Debtors' business or assets, or a liquidation of the Debtors' assets.

The Debtors believe that the total consideration offered to Creditors under the Plan is more than Creditors would receive in a liquidation under chapter 7 of the Bankruptcy Code. In addition, the Debtors believe that no party would likely offer more for the stock in the Reorganized Debtors.

## <u>Liquidation Under Chapter 7 of the Bankruptcy Code</u>

If the Plan is not confirmed under Bankruptcy Code § 1129(a), the Debtors may convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, in which case, a trustee would be elected or appointed to liquidate any remaining assets of the Debtors for distribution to creditors pursuant to chapter 7 of the Bankruptcy Code.  If a trustee is appointed, the Debtors believe that all Creditors holding Allowed General Unsecured Claims will receive less than they would under the Plan.  In this case, the Plan provides for the payment of all Allowed Claims, other than the Premier Claim, in full on the Effective Date.  In the event of liquidation under chapter 7 of the Bankruptcy Code, the Debtors submit that it is not possible for Creditors receive more on account of their Claims, and all such distributions would be significantly delayed as compared to the Distributions contemplated under the Plan.

The Debtors encourage all creditors to carefully review the Liquidation Analysis annexed hereto as Exhibit B to fully understand how General Unsecured Creditors will be treated if the Debtors' assets were liquidated.

**Certain Risk Factors**

In the event that the Plan is not confirmed or the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, the Debtors believe that such action or inaction, as these cases may be, will cause Distributions to all Creditors to be significantly delayed due to the continued administration of the Debtors' estates. In such an event, it may be necessary for the Debtors or a chapter 7 trustee to engage in a lengthy sale process for the Debtors' assets, potentially delaying Distributions to creditors by many months, if not more.

## XIV.  **CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

THE DEBTORS AND THEIR PROFESSIONALS ARE NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN, WITH RESPECT TO THE DEBTORS, HOLDERS OF CLAIMS, OR HOLDERS OF INTERESTS, NOR ARE THEY RENDERING ANY FORM OF LEGAL OPINION OR TAX ADVICE ON SUCH TAX CONSEQUENCES. THE TAX LAWS APPLICABLE TO CORPORATIONS OR LIMITED LIABILITY COMPANIES IN BANKRUPTCY ARE EXTREMELY COMPLEX, AND HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING TAX CONSEQUENCES OF THE PLAN, INCLUDING FEDERAL, FOREIGN, STATE AND LOCAL TAX CONSEQUENCES.

## XV.  **VOTING PROCEDURES AND REQUIREMENTS**

**Ballots and Voting Deadline**

IT IS IMPORTANT THAT THE HOLDERS OF CLAIMS AND INTERESTS IN CLASSES 2 AND 6 TIMELY EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN. Holders of Claims and Interests in Classes 2 and 6 have been sent a Ballot together with this Disclosure Statement. Such holders should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot that accompanies this Disclosure Statement.

Omni Management Group (the "**Voting Agent**") to assist in the tabulation of votes with respect to the Plan. FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE RECEIVED BY THE VOTING AGENT AT THE ADDRESS SET FORTH BELOW BEFORE THE VOTING DEADLINE OF **4:00 P.M.** ON **MARCH __, 2019** AT THE FOLLOWING ADDRESS:

Omni Management Group
5955 DeSoto Avenue
Suite 100
Woodland Hills, CA  91367

IF A BALLOT IS DAMAGED OR LOST, YOU MAY CONTACT THE VOTING AGENT AT THE ADDRESS SET FORTH BELOW.  ANY BALLOT THAT IS EXECUTED AND RETURNED BUT WHICH DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.

IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, YOU MAY CONTACT THE VOTING AGENT AT:

Omni Management Group

5955 DeSoto Avenue

Suite 100

Woodland Hills, CA  91367

844-378-2695

Additional copies of this Disclosure Statement are available upon request made to the Voting Agent.

**Holders of Claims and Interests Entitled to Vote**

Classes 2 and 6 are the only classes of Claims and Interests under the Plan that are impaired and entitled to vote to accept or reject the Plan.  All holders of Class 2 Claims and Class 6 Interests should complete the enclosed Ballot and return it to the Voting Agent so that it is received by the Voting Agent before the Voting Deadline.

**Withdrawal of Ballots**

Any voter that has delivered a valid Ballot may withdraw its vote by delivering a written notice of withdrawal to the Voting Agent before the Voting Deadline.  To be valid, the notice of withdrawal must (i) be signed by the party who signed the Ballot to be revoked, and (ii) be received by the Voting Agent before the Voting Deadline.  The Debtors may contest the validity of any withdrawals.

Any holder that has delivered a valid Ballot may change its vote by delivering to the Voting Agent a properly completed subsequent Ballot so as to be received before the Voting Deadline.  In the case where more than one timely, properly completed Ballot is received, only the Ballot that bears the latest date will be counted.

**Rejections of Plan and Cram-Down**

For purposes of voting on the Plan, if any Class of Creditors votes to reject the Plan, then the Debtors will utilize the provisions of Bankruptcy Code § 1129(b) to satisfy the requirements for confirmation of the Plan over the rejections of such Class.

## XVI.  <u>CONFIRMATION OF THE PLAN</u>

The Bankruptcy Court will confirm the Plan only if all of the requirements of Bankruptcy Code § 1129 are met.

## Acceptance of the Plan

Under the Bankruptcy Code, acceptance of a plan by a class of claims occurs when holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that cast ballots for acceptance or rejection of the plan vote to accept the plan.  Thus, acceptance of the Plan by a particular class will occur only if at least two-thirds in dollar amount and a majority in number of the holders of the claims in that class cast their Ballots in favor of acceptance.  A vote may be disregarded if the Court determines, after notice and a hearing, that such acceptance or rejection was not solicited or produced in good faith or in accordance with the provisions of the Bankruptcy Code.

## Best Interests Test and Liquidation Analysis

The Bankruptcy Code provides that the Plan will not be confirmed, regardless of whether or not anyone objects to confirmation, unless the Bankruptcy Court finds that the Plan is in the "best interests" of all Classes of Claims which are impaired. The "best interests" test will be satisfied by a finding of the Bankruptcy Court that either (i) all holders of impaired Claims have accepted the Plan, or (ii) the Plan will provide such a holder that has not accepted the Plan with a recovery at least equal in value to the recovery such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

The starting point in determining whether the Plan meets the "best interests" test is a determination of the amount of proceeds that would be generated from the liquidation of the Debtors' assets in the context of a chapter 7 liquidation. Such value must then be reduced by the costs of such liquidation, including costs incurred during the Chapter 11 Cases and allowed under chapter 7 of the Bankruptcy Code (such as professionals' fees and expenses), a trustee's fees, and the fees and expenses of professionals retained by a trustee. The potential chapter 7 liquidation distribution in respect of each Class must be further reduced by costs imposed by the delay caused by conversion to chapter 7.

For the reasons set forth above, the Debtors urge all Creditors to vote in favor of the Plan because, unless such Creditor has agreed otherwise, all Allowed Claims will be paid in full much more quickly under the Plan than under a hypothetical chapter 7 liquidation.

## Feasibility of the Plan

Bankruptcy Code § 1129(a)(11) provides that a chapter 11 plan may be confirmed only if the Bankruptcy Court finds that such plan is feasible. A feasible plan is one which will not lead to a need for further reorganization or liquidation of the Debtors. The Debtors anticipate that they will have sufficient Cash on hand on the Effective Date, through the Exit Facility and the Premier Funds, to fund the Effective Date Payment and make all payments required to be made on the Effective Date under the Plan.

For these reasons, the Debtors believe that the Bankruptcy Court will find that the Plan is feasible. In addition, the Debtors will have sufficient funds to meet all post-Confirmation Date

obligations to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Case. The Debtors believe that the Plan satisfies the financial feasibility requirement imposed by the Bankruptcy Code because the Debtors will have the Cash necessary to make all the payments required under the Plan.

## Classification of Claims Under the Plan

The Debtors believe that the Plan meets the classification requirements of the Bankruptcy Code which requires that a plan of reorganization place each claim into a class with other claims that are "substantially similar." The Plan establishes classes of Claims as required by the Bankruptcy Code and summarized above. Administrative Expense Claims and Priority Tax Claims are not classified.

## Confirmation of the Plan If a Class Does Not Accept the Plan

The Bankruptcy Code contains provisions for confirmation of a plan even if it is not accepted by all impaired classes, as long as it is accepted by at least one impaired class of claims. **Acceptance of the Plan by an insider (as that term is defined in the Bankruptcy Code) holding a claim against the Debtors is not counted in determining whether an impaired accepting class exists.** The Plan may be confirmed under the so-called "cram-down" provisions set forth in Bankruptcy Code § 1129(b) if, in addition to satisfying the other requirements for confirmation, the Plan is determined to be "fair and equitable" and "does not discriminate unfairly" with respect to each class of Claims that has not accepted the Plan. If the holders of Claims in Class 2 or Interests in Class 6 vote to reject the Plan, then the Bankruptcy Court may only confirm the Plan if the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Class.

Under the Bankruptcy Code, "fair and equitable" has different meanings for secured and unsecured claims. With respect to a secured claim, "fair and equitable" means (i) the impaired secured creditor retains its liens to the extent of its allowed claim and receives deferred cash payments at least equal in value to the allowed amount of its claim with a present value as of the effective date of the plan at least equal in value to such creditor's interest in the Debtors' interest in the property securing its claim, (ii) if property subject to the lien of the impaired secured creditor is sold free and clear of that lien, the lien attaches to the proceeds of the sale, and such lien proceeds are treated in accordance with clause (i) or (iii) of this paragraph, or (iii) the impaired secured creditor realizes the "indubitable equivalent" of its claim under the plan.

With respect to an unsecured claim, the "fair and equitable" standard, also known as the "absolute priority rule," requires that a dissenting class receive full compensation for its Allowed Claim before any junior class receives or retains any property under the Plan. If the holders of claims in any impaired class vote to reject the Plan, the Plan may be confirmed under Bankruptcy Code § 1129(b) if all holders of Claims junior to those of the impaired class do not receive or retain any property under the Plan.

Under the Plan, although the Class 2 Premier Claim is not being paid under the Plan, the Debtors believe that the absolute priority rule is being followed because Premier has consented to this treatment in exchange for the treatment of Class 6 Interests under the Plan.

**Confirmation Hearing**

Bankruptcy Code § 1128 requires the Bankruptcy Court, after notice, to hold the Confirmation Hearing to consider confirmation of the Plan. Bankruptcy Code § 1128(b) provides that any party in interest may object to confirmation of a plan.

By order of the Bankruptcy Court dated February __, 2019, the Confirmation Hearing has been scheduled for **March __, 2019** at __:00 a.m. before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York, Alexander Hamilton U.S. Custom House, One Bowling Green, New York, New York. The Confirmation Hearing may be adjourned by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing, or any adjourned hearing. Any objection to confirmation of the Plan must (a) be in writing, (b) state the name and address of the objecting party and the amount and nature of the claim or interest of such party, (c) state with particularity the basis and nature of any objection or proposed modification, and (d) be filed with the Clerk of the Bankruptcy Court, with a copy delivered to Chambers, and served so that they are received on or before **March __, 2019** at **4:00 p.m.**, upon (i) Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036, Attn: Tracy L. Klestadt (attorneys for the Debtors); (ii) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, New York, New York 10014, Attn: Susan Arbeit; and (iii) SilvermanAcampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York, 11753, Attn: Gerard R. Luckman (attorneys for Premier).

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. Unless an objection to confirmation is timely served and filed, it will not be considered by the Bankruptcy Court.

At the Confirmation Hearing, the Bankruptcy Court must determine whether the requirements of Bankruptcy Code § 1129 have been satisfied and, upon demonstration of such compliance, the Bankruptcy Court will enter the Confirmation Order.

## XVII.  CONCLUSION

This Disclosure Statement was provisionally approved by the Bankruptcy Court pursuant to Bankruptcy Code § 1125. The Bankruptcy Court has determined that the Disclosure Statement contains "adequate information" as that term is defined in Bankruptcy Code § 1125(a).

The Debtors believe that confirmation of the Plan is preferable to the alternatives described above because it provides the best opportunity for Distributions to General Unsecured Creditors.

**[ONE SIGNATURE PAGE TO FOLLOW]**

Dated:  New York, New York              **1141 REALTY OWNER, LLC**
       February 19, 2019                 **By: 1141 Realty LLC**, Manager and Sole Member

By:  _/s/ Jagdish Vaswani_
Name:  Jagdish Vaswani
Title:  Manager


Dated:  New York, New York              **FLATIRONHOTEL OPERATIONS LLC**
       February 19, 2019

By:  _/s/ Jagdish Vaswani_
Name:  Jagdish Vaswani
Title:  Managing Member


**Approved as to Form Only:**

Dated:  New York, New York
       February 20, 2019              By:  _/s/ James Katchadurian_
Name:  James Katchadurian
Title: Chief Restructuring Officer for the Debtors

**<u>Exhibit A</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                          Chapter 11

   1141 REALTY OWNER LLC., *et al*.,         Case No.:  18-12341 (SMB)

                  Debtors.        (Jointly Administered)

------------------------------------------------------------x

## FIRST AMENDED PLAN OF REORGANIZATION FOR
## 1141 REALTY OWNER LLC AND FLATIRONHOTEL
## OPERATIONS LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

This Plan of Reorganization is proposed and filed by 1141 Realty Owner LLC and Flatironhotel Operations LLC, the above-captioned debtors and debtors-in-possession, pursuant to chapter 11 of the Bankruptcy Code.[1]  The Plan provides for the reorganization and restructuring of the Debtors, the payment of Allowed Claims consistent with the distribution scheme set forth in the Bankruptcy Code, and procedures for the resolution of Disputed Claims. The Plan provides that holders of Allowed Claims against the Debtors will receive distributions of Cash on the Effective Date in full satisfaction of their Allowed Claims, as set forth below.

## ARTICLE I

## DEFINITIONS

For purposes of the Plan, the following terms shall have the meanings set forth below. Terms used in this Plan which are defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules unless otherwise defined in this Plan. The meaning of the defined terms shall be equally applicable to the singular and plural forms of the terms defined, unless a different meaning is clearly required by and explained in the text.

    1.01   "Administrative Expense" shall mean any cost or expense of administration of the Chapter 11 Cases entitled to priority in accordance with the provisions of Bankruptcy Code §§ 503(b) and 507(a)(1), including, without limitation: (i) Fee Claims; (ii) Claims relating to goods received by the Debtors within twenty (20) days before the Petition Date in the ordinary course of the Debtors' business; and (iii) any actual, necessary costs and expenses of preserving the Debtors' Estates and of operating the Debtors' business (but only to the extent they are due or payable on or before the Effective Date).

    1.02   "Affiliate" shall have the meaning set forth in Bankruptcy Code §101(2).

    1.03   "Allowed" shall mean a Claim, other than an Administrative Expense or Interest in the Debtors, which is: (i) listed in the Debtors' Schedules filed in the Chapter 11 Cases as of the Effective Date, and not listed in the Schedules as disputed, contingent, unliquidated or

---

[1]  All capitalized terms used but not defined in the text of this Plan shall have the meanings set forth in Article I of the Plan.

unknown and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; (ii) set forth in a proof of Claim timely and properly filed in the Chapter 11 Cases on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing given to counsel to the Debtors, and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; or (iii) determined to be Allowed by a Final Order of the Bankruptcy Court. To the extent permitted under Bankruptcy Code §506(b), an Allowed Claim shall include unpaid interest on the Claim and any reasonable unpaid fees, costs or charges provided for in the agreements which govern such Claim arose. Any Claim which has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered an Allowed Claim and shall be expunged without further action by the Debtors or the Reorganized Debtors.

1.04    "Allowed Administrative Expense" shall mean all or that portion of any Administrative Expense which has been Allowed by a Final Order of the Bankruptcy Court.

1.05    "Allowed General Unsecured Claim" shall mean any Allowed Claim that is not an Allowed Administrative Expense, Allowed Fee Claim, Allowed Secured Claim, Allowed Priority Tax Claim, or Allowed Priority (Non-Tax) Claim.

1.06    "Allowed Priority Claim" shall mean any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §§507(a)(3) through (a)(6).

1.07    "Allowed Secured Claim" shall mean that portion of an Allowed Claim which is secured by a valid perfected lien on property of the Debtors, to the extent of the value of the interest of the holder of such Allowed Secured Claim in the property of the Debtors as determined by the Bankruptcy Court pursuant to Bankruptcy Code §506(a), together with interest, fees, costs and charges to the extent allowed by the Bankruptcy Court under Bankruptcy Code §506(b).

1.08    "Allowed Priority Tax Claim" shall mean any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §507(a)(8).

1.09    "Avoidance Actions" shall mean (a) any and all claims, suits and causes of action now held or hereafter acquired by the Debtors, the Estates, the Reorganized Debtors, or the Debtors' creditors under Bankruptcy Code §§544, 547, 548, 549, 550, or 553 and (b) any claim against any transferee of a transfer avoidable under Bankruptcy Code §549 received from the Debtors from and after the Petition Date, but prior to the Effective Date.

1.10    "Bankruptcy Code" shall mean title 11 of the United States Code, as amended.

1.11    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, in which the Debtors' Chapter 11 Cases are pending, and the United States District Court for the Southern District of New York to the extent that in respect of the Chapter 11 Cases the District Court may have withdrawn reference, shall have determined to exercise original jurisdiction, or shall have sole authority to enter a final order or judgment.

1.12    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

1.13    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

2

1.14    "Cash" shall mean cash and cash equivalents, and other readily marketable securities or instruments, including, but not limited to, bank deposits, checks and other similar items.

1.15    "Chapter 11 Cases" shall mean the Debtors' jointly administered chapter 11 cases filed in the Bankruptcy Court, Case Nos. 18-12341 (SMB) and 18-12342 (SMB), administered under Case No. 18-12341 (SMB).

1.16    "Claim" shall mean a claim against the Debtors, as defined in Bankruptcy Code §101(5).

1.17    "Claimant" shall mean the holder of a Claim.

1.18    "Class" shall mean any class into which Allowed Claims and Allowed Interests are classified pursuant to Article II of the Plan.

1.19    "Confirmation Date" shall mean the date the Confirmation Order is entered in the Chapter 11 Case.

1.20    "Confirmation Hearing" shall mean the hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.21    "Confirmation Order" shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with Bankruptcy Code §1129.

1.22    "Creditor" shall have the meaning set forth in Bankruptcy Code §101(10).

1.23    "Debtors" shall mean 1141 Realty Owner LLC and Flatironhotel Operations LLC, as debtors and debtors in possession.

1.24    "DIP Financing Order" shall mean the Bankruptcy Court's final order authorizing the Debtors to obtain debtor in possession financing from Premier (ECF Doc. No. 62).

1.25    "Disallowed Claim" shall mean any Claim or portion of a Claim which has been disallowed by a Final Order of the Bankruptcy Court.

1.26    "Disputed Claim" shall mean any Claim, proof of which was timely and properly filed, and (a) which is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement between the Debtors and the Claimant or by an order of the Bankruptcy Court, (b) which is subject to a dispute to the extent that the Debtors or the Reorganized Debtors have asserted a claim against the holder of the Disputed Claim, or (c) as to which the Debtors have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.  Prior to the filing of an objection to a Claim, or the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim shall be considered a Disputed Claim if (x) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the Debtors as other than disputed, contingent or unliquidated, or (y) the Claim is not listed on the Schedules.

1.27    "Disputed Claims Reserve" shall mean the reserves to be established by the Debtors or the Reorganized Debtors on account of Disputed Administrative Expenses, Disputed Priority Claims, and Disputed Unsecured Claims to be used to make Distributions to holders of

3

Disputed Administrative Expenses, Disputed Claims and Undetermined Claims in the event they become Allowed Claims.

1.28    "Distribute" or "Distribution" shall mean a payment by the Debtors or the Reorganized Debtors under the terms of the Plan.

1.29    "Distribution Date" shall mean any date, subsequent to the Effective Date, on which a Distribution under the Plan is to be made to the holders of Allowed Claims.

1.30    "Effective Date" shall mean the first day on which the Confirmation Order has become a Final Order and on which all of the conditions to the Effective Date in the Plan have been satisfied or waived.

1.31    "Effective Date Payment" shall mean the payment from the Exit Facility and Premier Funds, or the proceeds of the sale of the Debtors' real property if the Debtors are unable to timely close on the Exit Facility pursuant to the Plan, to pay claims as set forth in Article III of the Plan.

1.32    "Estates" shall mean the Debtors' chapter 11 estates created on the Petition Date under Bankruptcy Code §541.

1.33    "Exit Facility" shall mean the secured loan to be obtained by the Debtors, as facilitated by Premier, on or before May 15, 2019, in an amount sufficient to pay the Prepetition Lender's Claim in full.  To the extent that the Exit Facility is insufficient to pay the Prepetition Lender's Claim in full, the Premier Funds shall be used to supplement the Exit Facility.

1.34    "Fee Claims" shall mean claims by professionals retained by the Debtors during the Chapter 11 Cases for the payment of fees and the reimbursement of expenses incurred prior to the Effective Date.

1.35    "Final Order" shall mean: (i) an order or a judgment of the Bankruptcy Court; or (ii) a stipulation or other agreement entered into which is "so ordered" by the Bankruptcy Court, in either case the operation or effect of which has not been reversed, stayed, modified or amended and as to which (x) any appeal that has been taken has been finally determined or dismissed, or (y) the time to appeal or seek reconsideration has expired by reason of statute or otherwise and as to which no appeal or petition for review, *certiorari* or reconsideration has been taken or is pending (or if such appeal or petition has been granted, it has been finally decided), as a result of which such order, judgment, stipulation or agreement shall have become final in accordance with applicable law.

1.36    "General Unsecured Claim" means an Allowed Claim that is not an Administrative Expense, a Priority (Non-Tax) Claim, Priority Tax Claim, Fee Claim, or Secured Claim.

1.37    "Interest" shall mean any rights of a shareholder in respect of an equity interest in each of the Debtors.

1.38    "Lien" shall have the meaning set forth in Bankruptcy Code §101(37).

1.39    "Objections Bar Date" shall mean the deadline for the Debtors or the Reorganized Debtors to file objections to Claims, which deadline shall be the first Business Day that is one hundred twenty (120) days after the Effective Date of the Plan.

1.40    "Operator" shall mean Flatironhotel Operations LLC.

4

1.41    "Owner" shall mean 1141 Realty Owner LLC.

1.42    "Person" shall have the meaning set forth in Bankruptcy Code §101(41).

1.43    "Petition Date" shall mean July 31, 2018.

1.44    "Prepetition Lender" shall mean Wilmington Trust, N.A., solely in its capacity as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28.

1.45    "Prepetition Lender's Claim" shall mean any and all Claims or Interests of the Prepetition Lender that have been or may be asserted by the Prepetition Lender against the Debtors, including with respect to the liens granted by the Debtors to the Prepetition Lender on account of monies loaned prior to the Petition Date, as well as those granted pursuant to the stipulation and order authorizing the use of the Prepetition Lender's cash collateral (ECF Doc. No. 23).

1.46    "Plan" shall mean this Plan of Reorganization, as it may be amended or modified.

1.47    "Premier" shall mean Premier Flatiron, LLC.

1.48    "Premier Claim" shall mean the claim against the Debtors granted to Premier pursuant to the DIP Financing Order.

1.49    "Premier Funds" shall mean the funds made available to the Debtors by Premier, in exchange for, among other things, the treatment of Class 6 Interests herein, in an amount sufficient to make the Effective Date Payment.

1.50    "Priority (Non-Tax) Claims" shall mean any Claim that is entitled to priority status in accordance with Bankruptcy Code §507(a), other than Priority Tax Claims and Administrative Expenses.

1.51    "Priority Tax Claims" shall mean any Claim for taxes entitled to priority status in accordance with Bankruptcy Code §§502(i) or 507(a)(8), but specifically excludes any penalty assessed with respect to such taxes.

1.52    "Released Parties" shall have the meaning set forth in Article X of the Plan.

1.53    "Released Claims" shall mean the claims released under Article X of the Plan.

1.54    "Reorganized Debtors" shall mean the Debtors after the Effective Date.

1.55    "Schedules" shall mean the schedules of assets and liabilities, lists and statement of financial affairs and executory contracts filed by the Debtors with the Bankruptcy Court, as they may be amended pursuant to the Bankruptcy Rules.

1.56    "Securities Act" shall mean the Securities Act of 1933, as amended.

1.57    "Unclaimed Property" shall mean any Cash (together with any interest earned thereon) unclaimed on the later of the 180th day following the Effective Date or the last Distribution Date. Unclaimed Property shall include checks (and the funds represented thereby): (i) which have been returned as undeliverable without proper forwarding addresses; (ii) which have not been paid; or (iii) which were not mailed or delivered because of the absence of a proper address for the Claimant.

5

1.58    "Undetermined Claim" shall mean any Claim that is (i) a Disputed Claim or (ii) an unliquidated or contingent Claim.

1.59    "Unsecured Creditor" shall mean the holder of an Unsecured Claim.

1.60    "U.S. Trustee" shall mean the United States Trustee for Region 2.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    General Rules of Classification.  A Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent the Claim or Interest qualifies within the description of that Class, and is classified in other Classes to the extent the Claim or Interest qualifies within the description of such Classes.

2.02    Administrative Expenses and Priority Tax Claims.  Administrative Expenses and Priority Tax Claims have not been classified and are excluded from the Classes of Claims in accordance with Bankruptcy Code §1123(a)(1).

2.03    Satisfaction of Claims and Interests. The treatment to be provided for Allowed Claims and Interests under this Plan and the consideration provided under this Plan shall be in full satisfaction, settlement, release and discharge of all Claims and Interests against the Debtors and their property.

2.04    Bar Dates for Claims. Pursuant to the Bankruptcy Court's Order, dated September 24, 2018 (ECF Doc. No. 63), all non-governmental unit Claims against the Debtors, including claims under Bankruptcy Code §503(b)(9) must be filed on or before November 5, 2018, and all Claims of governmental units must be filed on or before January 28, 2019.  Claims arising from the rejection of executory contracts and unexpired leases shall be governed by the specific orders of the Bankruptcy Court regarding the assumption or rejection of executory contracts and unexpired leases and Article VI of the Plan.

2.05    Bar Date for Fee Claims. The Confirmation Order, or the order scheduling the Confirmation Hearing, shall provide a deadline for the filing of requests for payment of Fee Claims incurred prior to the Confirmation Date.  Any Person that fails to file an application for the payment of professional fees and expenses on or before the time and date established in the Confirmation Order or the order scheduling the Confirmation Hearing shall be forever barred from seeking payment or reimbursement from the Debtors, their Estates or the Reorganized Debtors.

2.06    Acceptance of Classification.  Any holder of a Claim or Interest who fails to object in writing to the classification of Claims and Interests provided in the Plan, and who has not filed an objection with the Bankruptcy Court and served the objection upon counsel to the Debtors, counsel to Premier, and the U.S. Trustee at least ten (10) days prior to the Confirmation Hearing shall be deemed to have accepted the classification of such Claim or Interest set forth in the Plan.

2.07    Classification.  For purposes of the Plan, all Allowed Claims shall be placed in the following Classes:

➢ Class 1 (Allowed Priority (Non-Tax) Claims)
➢ Class 2 (Allowed Premier Secured Claim)
➢ Class 3 (Allowed Prepetition Lender Secured Claim)
➢ Class 4 (Other Secured Claims)
➢ Class 5 (General Unsecured Claims)
➢ Class 6 (Interests in the Debtors)

# ARTICLE III

## TREATMENT OF CLASSES

3.01    Administrative Expenses.  Administrative Expenses are not impaired.  Except with respect to Administrative Expenses Allowed under Bankruptcy Code §503(b)(9), which shall be paid as soon as reasonably practicable after the Effective Date or upon such other terms as may be agreed to by the holder thereof and the Debtors, Allowed Administrative Expenses, including Fee Claims, shall be paid by the Debtors or the Reorganized Debtors on the later to occur of (a) the Effective Date, and (b) the date such Claim becomes Allowed by a Final Order of the Bankruptcy Court, or as soon as practicable thereafter, or upon such other terms as may be agreed to by the holder thereof and the Debtors.  In the event of any subsequent conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, all payments on account of any Allowed Administrative Expenses shall be deemed to have been made in the ordinary course of the Debtors' business and shall not be deemed to be avoidable transfers under Bankruptcy Code §549.

3.02    U.S. Trustee Fees.  Statutory fees, and any applicable interest thereon, are all fees payable pursuant to Chapter 123 of Title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. §1930(a)(6) plus any interest due and payable under 31 U.S.C. §3717 ("**U.S. Trustee Fees**").  U.S. Trustee Fees will accrue and be timely paid until the Case is closed, dismissed, or converted to another chapter under the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the Effective Date of the Plan.

3.03    Priority Tax Claims.  Priority Tax Claims are not impaired.  All Allowed Priority Tax Claims shall be paid in full on the Effective Date.  Holders of Priority Tax Claims shall not be entitled to vote on the Plan.

3.04    Class 1 Priority (Non-Tax) Claims.  Class 1 Claims are not impaired.  Allowed Priority (Non-Tax) Claims shall be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable, from the Effective Date Payment.  In accordance with Bankruptcy Code § 1126(f), holders of Class 1 Claims shall not be entitled to vote on the Plan and shall be deemed to have accepted the Plan.

3.05    Class 2 Premier Claim.  In the event that the Exit Facility closes on or before May 15, 2019, or if Premier elects to contribute sufficient Premier Funds to pay Class 3 claims in full, the Premier Claim shall be deemed satisfied upon the Effective Date of the Plan with no amounts remaining due by the Debtors to Premier.  In the event that the Exit Facility does not close on or before May 15, 2019 and the Debtors sell their real property, the Premier Claim shall be paid in full from the proceeds of the sale of the Debtors' real property.  Class 2 Claims are Impaired.

7

3.06    Class 3 Prepetition Lender Claim.  Class 3 Claims are not impaired.  Holders of the Allowed Prepetition Lender's Claim shall be paid in full on the Effective Date from the proceeds of the Exit Facility as and when Allowed by the Bankruptcy Court. To the extent that the Exit Facility does not close on or before May 15, 2019, either (i) the Debtors shall market and sell their real property to satisfy any Allowed Prepetition Lender's Claim, or (ii) Premier shall provide additional Premier Funds to satisfy any Allowed Prepetition Lender's Claim.  From the Confirmation Date through the Effective Date, Holders of the Allowed Prepetition Lender's Claim shall receive monthly interest payments at the rate then-applicable with respect to the Prepetition Lender's Claim.

3.07    Class 4 Other Secured Claims.  Class 4 Claims are not impaired.  Class 4 Claims shall consist of all Allowed Secured Claims other than the Premier Claim and the Prepetition Lender's Claim.  Class 4 Claims shall be paid in full on the Effective Date from the Effective Date Payment.

3.08    Class 5 General Unsecured Claims. Class 5 Claims are not impaired. Class 5 Claims are comprised of the Allowed Claims of General Unsecured Creditors.  Each holder of an Allowed General Unsecured Claim shall receive payment in full on account of such claim on the Effective Date from the Effective Date Payment.

3.09    Class 6 Interests.  Class 6 Interests are impaired.  All existing membership interests in the Debtors shall be cancelled, and the Reorganized Debtors' membership interests shall be reissued as follows: (i) with respect to Owner, Fifty (50%) Percent shall be owned by 1141 Realty LLC and Fifty (50%) Percent shall be owned by Premier Nomad LLC; and (ii) with respect to Operator, One Hundred (100%) Percent shall be owned by Premier Nomad LLC, provided, however, if the Debtors sell their real property pursuant to Section 3.06, the membership interests shall revert back to as they existed on the Petition Date.

## ARTICLE IV

## CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

4.01    Claims and Interests in Classes 2 and 6 are impaired under the Plan, and are entitled to vote on the Plan. Claims in Classes 1, 3, 4 and 5 are not impaired under the Plan, and are not entitled to vote on the Plan.

4.02    Pursuant to Bankruptcy Code §1126(c), a Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the holders of Allowed Claims in such Class that vote on the Plan. Pursuant to Bankruptcy Code §1126(d), holders of Interest in Class 6 shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in amount of the Allowed Interests of Class 6.

4.03    Classes 2 and 6 are currently entitled to vote to accept or reject the Plan.  To the extent that any Class entitled to vote rejects the Plan, the Debtors intend to seek confirmation of the Plan in accordance with Bankruptcy Code §1129(b).

# ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.01     Payments on the Effective Date.  The payments under the Plan will be made from the (a) Exit Facility, and (b) the Premier Funds.  With respect to the portion of the Effective Date Payment to be funded by the Premier Funds, no later than ten (10) business days prior to the anticipated Effective Date, the Debtors shall provide Premier with an accounting of all amounts the Debtors believe must be paid from such funds.  No later than two (2) business days prior to the anticipated Effective Date, Premier shall transfer the Premier Funds to the Debtors for the purposes of making the Effective Date Payment.

5.02     Exit Facility.  The Debtors or Reorganized Debtors, as applicable, with the assistance of Premier, shall obtain the Exit Facility in an amount sufficient to satisfy the Allowed portion of the Prepetition Lender's Claim.  The Exit Facility shall be used to satisfy the Allowed portion the Prepetition Lender's Claim and, at the Reorganized Debtors' discretion, may be used to fund ongoing operations of the Reorganized Debtors.  To the extent that the Exit Facility does not close within ninety (90) days of the Confirmation Date, either (i) the Debtors shall market and sell their real property to satisfy any Allowed Prepetition Lender's Claim, or (ii) Premier shall provide additional Premier Funds to satisfy any Allowed Prepetition Lender's Claim.

5.03     Release of Avoidance Actions. On the Effective Date, the Debtors, on behalf of themselves and their Estates, shall release any and all Avoidance Actions, and the Debtors and the Reorganized Debtors, and any of their successors and assigns and any entity acting on behalf of the Debtors or the Reorganized Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions.

5.04     Reserves. On the Effective Date, or as soon thereafter as is reasonably practical, the Debtors shall establish and maintain adequate reserves for Disputed Claims.

On the later to occur of (a) the Effective Date, and (b) the date such Claim becomes Allowed by a Final Order of the Bankruptcy Court, or as soon thereafter is reasonably practicable, the Debtors shall use available Cash to pay Allowed Claims in accordance with Article III of the Plan.

5.05     Investments by the Debtors.   All Cash held by the Debtors prior to full consummation of this Plan, whether held in investment accounts, bank accounts, any Disputed Claims Reserve, or any escrow accounts, shall be invested in accordance with Bankruptcy Code §345 in a financial institution that is an authorized depository under the U.S. Trustee Operating Guidelines.

5.06     Delivery of Distributions. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder, or (b) the last known address of such holder if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address.

5.07     Undeliverable Distributions and Unclaimed Property. If any distribution made by the Debtors or the Reorganized Debtor, as applicable, is returned as undeliverable, the Debtors or the Reorganized Debtors, as applicable, may, in their sole discretion, make such efforts to

determine the current address of the Holder of the Claim with respect to which the distribution was made, but no distributions to any Holder of an Allowed Claim will be made until the Debtors  or the Reorganized Debtors, as applicable, have determined the current address of the Holder of such Allowed Claim, at which time the distribution will be made without interest. The Debtors or the Reorganized Debtors, as applicable, shall have sole discretion to determine how to make distributions in the most efficient and cost-effective manner.  Amounts in respect of any undeliverable distributions made by the Debtors or the Reorganized Debtors, as applicable, shall be returned to, and held in trust by, the Debtors or the Reorganized Debtors, as applicable, until the distributions are claimed, or are deemed to be Unclaimed Property upon the expiration of six (6) months from the date of the return of the undeliverable distribution. Unclaimed Property shall revert to the Reorganized Debtors in accordance with the provisions of the Plan.

5.08    Record Date for Distributions.  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the date of the entry of the Confirmation Order will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the date of the entry of the Confirmation Order. The Debtors and Reorganized Debtors shall have no obligation to recognize any transfer of any Claim occurring after the date of the entry of the Confirmation Order. In making any Distribution with respect to any Claim, the Debtors shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the proof of Claim filed with respect thereto or on the Schedules, as applicable, as the holder thereof as of the close of business on the date of the entry of the Confirmation Order, and upon such other evidence or record of transfer or assignment that are known to the Debtors as of the date of the entry of the Confirmation Order.

5.09    Distributions to Holders of Claims – Generally.

(a)    Distributions on Account of Allowed Claims Only.  Except as otherwise provided in this Plan, Disputed Claims shall not be entitled to any Distribution until such Disputed Claim becomes an Allowed Claim.

(b)    Method of Cash Distributions.  Any payment of Cash to be made pursuant to the Plan will be in U.S. dollars and may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(c)    Distributions on Non-Business Days.  Any payment or Distribution due on a day other than a Business Day may be made, without interest, on the next Business Day.

(d)    No Distribution in Excess of Allowed Amount of Claim.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution (of a value set forth herein or in the Disclosure Statement) in excess of the Allowed amount of such Claim.

(e)    Interest on Claims.  Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, other than the Claim of Premier in accordance with the DIP Financing Order or the Claim of the Prepetition Lender in accordance with its applicable loan documents.  Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Petition Date to the date a final Distribution

10

is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be allowed to the extent that it is for postpetition interest or other similar charges.

(f)    Disputed Payments.  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Reorganized Debtors may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account or hold such Distribution in reserve until the disposition thereof shall be determined by Bankruptcy Court order, or by written agreement among the interested parties to such dispute.

(g)    Withholding Taxes.   Any federal or state withholding taxes or other amounts required to be withheld under any applicable law may be deducted and withheld from any Distributions under the Plan.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.  The Reorganized Debtors may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Reorganized Debtors to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within ninety (90) days after the date of first notification to the holder of the need for such information, or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as Unclaimed Property herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

(h)    Time Bar to Cash Payments by Check.  Checks issued by the Reorganized Debtors on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Section may be made directly to the Reorganized Debtors by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim with respect to such voided check must be made in writing, on or before the later of the first anniversary of the Effective Date, or the six (6) month anniversary of the date on which the Distribution was made.  After that date, all Claims with respect to voided checks shall be discharged and forever barred and the proceeds of those checks shall be deemed Unclaimed Property in accordance with Bankruptcy Code §347(b) and be distributed as provided herein.

(i)    No Payments of Fractional Dollars.  Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be required to be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made may, at the Debtors' election, reflect a rounding down of such fraction to the nearest whole dollar.

(j)    Minimum Distributions.  Notwithstanding anything herein to the contrary, the Reorganized Debtors shall not be required to make distributions or payments of less than $25.00, and shall not be required to make partial distributions or payments of fractions of dollars. Any Holder of an Allowed Claim whose aggregate distribution under this Plan is less than $25.00 shall forfeit, at the option of the Reorganized Debtors, such amount to, and such amount shall vest in, the Debtors for distribution in accordance with the terms of the Plan.

(k)    Setoff and Recoupment.  The Reorganized Debtors may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant

11

to the Plan in respect thereof, any claims or defenses of any nature that the Reorganized Debtors or the Estates may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates, or the Reorganized Debtors, of any right of setoff, recoupment claims, rights or Avoidance Actions that the Debtors, the Estates, or the Reorganized Debtors, or any of their successors may possess against such holder. Any setoff or recoupment shall only be made after the affected creditor is provided not less than five days notice.

5.10    Quarterly Reports.    Until the Chapter 11 Cases are closed, the Reorganized Debtors shall file quarterly reports setting forth the status of Distributions to holders of Allowed Claims and any other open matters in the Chapter 11 Cases.  The quarterly reports shall be filed on or before the 15th day of January, April, July, and October.

5.11    Vesting of Assets. As of the Effective Date, pursuant to provisions of Bankruptcy Code §§ 1141(b) and (c), all property and assets of the Debtors shall be transferred to and shall vest in the Reorganized Debtors free and clear of all Liens, Claims and Interests, except as otherwise expressly provided in this Plan and/or the Confirmation Order.

5.12    Continuing Existence.    From and after the Effective Date, the Reorganized Debtors will continue in existence and shall continue normal operations of their business as limited liability companies under applicable law.

## ARTICLE VI

## EXECUTORY CONTRACTS AND LEASES

6.01    All executory contracts and unexpired leases listed on **Exhibit 1** hereto shall be deemed assumed by the Debtors as of the Effective Date. Simultaneously with service of the Plan and Disclosure Statement, the Debtors shall provide a notice to all counter-parties to executory contracts proposed to be assumed, substantially in the former annexed hereto as **Exhibit 2**.  Such counter-parties shall have until seven (7) days prior to the Confirmation Hearing to file an objection to the proposed cure amount provided in such notice.  All objections to cure amounts shall be heard at the Confirmation.

6.02    Any executory contract or unexpired lease of the Debtors not listed on Exhibit 1 hereto and which has not been assumed or rejected by Final Order of the Bankruptcy Court, or which is not the subject of a pending motion to assume or reject on the Confirmation Date, shall be deemed rejected by the Debtors on the Effective Date. Any entity with a Claim that arises from the rejection of an executory contract or unexpired lease must file its Claim within thirty (30) days after the later of the date of the order rejecting the executory contract or unexpired lease and the Confirmation Date, and shall have the same rights as a Class 5 Claimant to the extent such Claim becomes an Allowed General Unsecured Claim. **Any Claims arising from the rejection of an executory contract or unexpired lease not filed with the Bankruptcy Court within such time will be automatically treated as a Disallowed Claim, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objections by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other entity, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be**

**deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or any proof of Claim to the contrary.**

## ARTICLE VII

## PROCEDURE FOR RESOLVING DISPUTED CLAIMS

7.01    <u>Disputed Claim Reserves</u>. Except as provided for below, the Debtors shall set aside and reserve for the benefit of each holder of a Disputed Claim an amount equal to the Distributions to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to the amount of such Claim as estimated by the Bankruptcy Court pursuant to an order. Such reserved amounts, and the difference between the amount so reserved for each such Claim and the amount of federal, state and local taxes paid by the Debtors with respect to such Claim shall constitute the maximum Distribution amount to which the holder of such Claim may ultimately become entitled to receive.

7.02    <u>Distributions to Holders of Allowed Claims</u>. After the Effective Date, the Reorganized Debtors shall make one or more Distributions to holders of Allowed Claims in accordance with the Plan.

(i)    Distributions on Disputed Claims.  No Distributions shall be made with respect to a Disputed Claim until the resolution of such dispute by agreement with the Debtors, the Reorganized Debtors, or Final Order.  On or as soon as reasonably practicable after the first Business Day of the next calendar quarter after a Disputed Claim becomes an Allowed Claim, the Debtors shall distribute to the holder thereof Cash, from the Disputed Claims Reserve, in an amount equal to the aggregate amount of Cash that would have been distributed to such holder in respect of such Claim had such Claim been an Allowed Claim, in the amount in which it is ultimately allowed.

(ii)    Treatment of Excess Cash in Disputed Claims Reserve.  To the extent a Disputed Claim becomes a Disallowed Claim or is reclassified, any Cash previously reserved for such portion of such Disputed Claim shall be distributed in accordance with the Plan. To the extent all payments required under the Plan have already been made, Cash previously reserved for Disputed Claims shall be paid to the Reorganized Debtor in accordance with Section 5.11 of the Plan.

7.03    <u>Resolution of Disputed Claims</u>.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, after the Confirmation Date the Reorganized Debtors shall have the right to make and file objections to all Claims, and shall serve a copy of each objection upon the holder of the Claim to which the objection is made, as soon as practicable, but in no event later than the Objections Bar Date.  From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Reorganized Debtors elect to withdraw any claim objection, or the Reorganized Debtors and the claimant elect to compromise, settle or otherwise resolve any claim objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim without further approval of the Bankruptcy Court. A Disputed Claim as to which no objection is filed by the Objections Bar Date shall become an Allowed Claim.

7.04    <u>Procedure for Omnibus Objections to Claims</u>.  The Debtors and the Reorganized Debtors are permitted to file omnibus objections to claims (an "**Omnibus Objection**") on any

grounds, including but not limited to those grounds specified in Bankruptcy Rule 3007(d). For claims that have been transferred, a notice shall be provided only to the person or persons listed as being the owner of such claim on the Debtors' claims register as of the record date as provided for in Article V of the Plan. The notice of an Omnibus Objection shall include a copy of the relevant Omnibus Objection but not the exhibits thereto listing all claims subject to the objection thereby; rather, the notice shall (i) identify the particular claim or claims filed by the claimant that are the subject of the Omnibus Objection, (ii) provide a unique, specified and detailed basis for the objection, (iii) explain the proposed treatment of the claim, (iv) notify such claimant of the steps that must be taken to contest the objection, and (v) otherwise comply with the Bankruptcy Rules.

7.05    <u>Maintenance of Disputed Claims Reserve</u>. To the extent that the property placed in a Disputed Claims Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account in a financial institution that is an authorized depository under the U.S. Trustee Operating Guidelines. The Disputed Claims Reserve shall be closed and extinguished by the Reorganized Debtors when all Distributions and other dispositions of Cash or other property required to be made under the Plan from such reserves will have been made in accordance with the terms of the Plan.

## ARTICLE VIII

## RETENTION OF JURISDICTION

8.01    The Bankruptcy Court shall retain jurisdiction over the Debtors, the Reorganized Debtors, and the Chapter 11 Cases pursuant to chapter 11 of the Bankruptcy Code and for the purposes set forth in Bankruptcy Code §1127(b), including, without limitation, with respect to the following matters:

(a)    to hear and determine any claim or cause of action belonging to the Estates, and any disputes concerning the classification, allowance, or estimation of any Claim;

(b)    to resolve any disputes concerning any funds held in the Disputed Claims Reserve;

(c)    to hear and determine all disputed issues relating to a security or ownership interest in any property of the Estates, or in any proceeds thereof;

(d)    to hear and determine all Claims arising out of any agreement entered into by the Debtors after the Petition Date but prior to the entry of the Confirmation Order;

(e)    to recover all assets and property of the Debtors wherever located;

(f)    to alter, modify and amend the Plan pursuant to Bankruptcy Code §1127 or to remedy any defect, cure any omissions, or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purpose and intent of the Plan, and to extent authorized by the Bankruptcy Code or Bankruptcy Rules;

(g)    to hear and determine all matters related to the sale of the Debtors' real property prior to the Effective Date;

14

(h)    to hear and determine such other matters as may be provided for in the Confirmation Order and for the purposes set forth in Bankruptcy Code §§1127(b) and 1142, or in Bankruptcy Rules 1019 and 3020(d);

(i)    to hear and determine all applications for compensation of professionals for services rendered and expenses incurred through the Confirmation Date, and thereafter to hear and determine any objections to compensation of professionals;

(j)    to hear and determine any and all pending applications, adversary proceedings, contested matters and litigated matters;

(k)    to hear and determine any disputed issues with respect to the payments to be made under the Plan;

(l)    to enter orders that are necessary or appropriate to carry out the provisions of the Plan, including orders interpreting the provisions of the Plan;

(m)    to enter a Final Order or decree concluding the Debtors' Chapter 11 Cases; and

(n)    to determine such other matters as may be provided for in the Confirmation Order, or as may be authorized under the provisions of the Bankruptcy Code.

## ARTICLE IX

### CONFIRMATION AND EFFECTIVE DATE

9.01    Conditions Precedent to Confirmation. The following are the conditions precedent to the Confirmation of the Plan:

(a)    The Debtors shall have entered into a commitment letter for the Exit Facility, conditioned upon the entry of the Confirmation Order;

(b)    All terms, conditions and provisions of the Plan are approved in the proposed Confirmation Order; and

(c)    The proposed Confirmation Order shall be in form and substance acceptable to counsel to the Debtors, counsel to Premier, and the U.S. Trustee.

The conditions precedent set forth in subparagraphs (a), (b), and (c) above, may be waived by the Debtors, only with the consent of Premier and upon reasonable notice to the U.S. Trustee.

9.02    Conditions Precedent to the Effective Date.  The following are the conditions precedent to the Effective Date of the Plan:

(a)    The Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order; and

(b)    The Debtors shall have made the Effective Date Payment.

# ARTICLE X

## DISCHARGE OF CLAIMS, RELEASES AND EXCULPATION

10.01   Interest Holders of the Debtors shall be treated as provided in section 3.09 of this plan.

10.02   Injunction.   EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE CONFIRMATION DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE DEBTORS' PROPERTY, OR THE ESTATES BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE CONFIRMATION DATE, INCLUDING ANY CLAIMS THAT ARE PROPERTY OF THE DEBTORS' BANKRUPTCY ESTATES (COLLECTIVELY, THE "RELEASED CLAIMS"); PROVIDED THAT NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTORS, OR ANY OF THE DEBTORS' OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTORS' PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES, OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

10.03   Release by the Debtors.   PURSUANT TO BANKRUPTCY CODE §1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, THE DEBTORS AND REORGANIZED DEBTORS SHALL RELEASE UNCONDITIONALLY, AND HEREBY ARE DEEMED TO FOREVER RELEASE UNCONDITIONALLY THE FOLLOWING PERSONS (COLLECTIVELY, THE "RELEASED PARTIES"): (A) PREMIER ITS DIRECTORS, OFFICERS, ADVISORS, ACCOUNTANTS, CONSULTANTS, AND ATTORNEYS; AND (B) THE DEBTORS' ADVISORS, INCLUDING ATTORNEYS AND ACCOUNTANTS, FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, INCLUDING THE RELEASED CLAIMS (EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN AND THE RIGHT TO FILE AN OBJECTION WITH THE BANKRUPTCY COURT WITH RESPECT TO ANY FEE CLAIMS), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR THOSE CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT

16

CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES.  IN ADDITION, THE RELEASE PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

10.04 Exculpation. TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), NEITHER THE RELEASED PARTIES NOR THEIR ADVISORS, ACCOUNTANTS, AND ATTORNEYS, SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASES IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE RELEASED PARTIES SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN. IN ADDITION, THE EXCULPATION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE A RELEASE OF AN INDEPENDENT CLAIM HELD BY A CREDITOR OR INTEREST HOLDER AGAINST A NON-DEBTOR ENTITY OR PERSON BASED ON ACTS OR OMISSIONS UNRELATED TO THE DEBTORS OR THE CHAPTER 11 CASES.  IN ADDITION, NOTHING CONTAINED HEREIN OR IN THE PLAN SHALL RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES AND SETTLEMENTS CONTAINED IN THE PLAN.**

**NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, INCLUDING, WITHOUT LIMITATION, ANY CLAIM ARISING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST: (I) THE DEBTORS; (II) ANY OF THE DEBTORS' MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND**

17

**ASSIGNS; AND (III) THE RELEASED PARTIES. IN ADDITION, SUBJECT TO BANKRUPTCY CODE §§ 524 AND 1141, THE RELEASES DESCRIBED HEREIN SHALL NOT PRECLUDE POLICE, FEDERAL TAX, OR REGULATORY AGENCIES FROM FULFILLING THEIR STATUTORY DUTIES.**

**THE RELEASES DESCRIBED IN THIS SECTION ARE IN ADDITION TO, AND NOT IN LIEU OF, ANY OTHER RELEASE SEPARATELY GIVEN, CONDITIONALLY OR UNCONDITIONALLY, BY THE DEBTORS TO ANY OTHER PERSON.  ANY RELEASE GIVEN BY THE DEBTORS OR A PERSON WHICH IS PART OF OR SUBJECT TO A FINAL ORDER OF THE BANKRUPTCY COURT REMAINS IN FULL FORCE AND EFFECT AND ARE RATIFIED BY THE PLAN.**

10.05  Persons or Entities Not Released by the Debtors.  Except for the releases contained in the Plan, the Confirmation Order and the DIP Financing Order, the Debtors and the Estates are not releasing any claims or actions against any Person, or their respective affiliates, assigns, agents, directors, officers, advisors, accountants, investment bankers, consultants, attorneys and other representatives of any of the foregoing.

10.06  Good Faith.  The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code §§1125(e) and 1129(a)(3), with respect to the foregoing.

## ARTICLE XI

### MISCELLANEOUS PROVISIONS

11.01  Headings.  The headings used in the Plan are inserted for convenience or reference only and are not part of the Plan.

11.02  Notices.  Notices shall be deemed given when received.  All notices, requests or demands described in or required to be made in accordance with the Plan shall be in writing and shall be delivered by overnight mail and email transmission as follows:

(a)  If to the Debtors or Reorganized Debtors:
Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Attn: Tracy L. Klestadt
(212) 972-3000
TKlestadt@Klestadt.com

(b)  If to Premier:
SilvermanAcampora LLP
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
Attn: Kenneth P. Silverman
(516) 479-6300
KSilverman@SilvermanAcampora.com

18

(c)    If to the U.S. Trustee:
Office of the U.S. Trustee
201 Varick Street, Suite 1006
New York, New York 10014
Attn: Susan Arbeit
(212) 510-0500
Susan.Arbeit@USDOJ.gov

If to a holder of a Claim or Interest, at the address set forth in its proof of Claim or proof of Interest filed with and allowed by the Court, or, if none, at its address set forth in the Schedules prepared and filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

11.03   Change of Address.  Any of the parties identified in section 11.02 of the Plan may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to counsel to the Debtors.

11.04   Modification of the Plan. The Debtors reserve the right, in accordance with the Bankruptcy Code, upon written consent of counsel to Premier, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter.  After the Confirmation Date, the Debtors or the Reorganized Debtors may, upon appropriate motion, notice, and order of the Court, remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

11.05   Reservation of Rights. Nothing contained herein shall prohibit the Debtors or the Reorganized Debtors from prosecuting or defending any of the rights of the Debtors' Estates.

11.06   Severability. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

11.07   Successors and Assigns. The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

11.08   Governing Law.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

11.09   The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the bankruptcy Court to close the Chapter 11 Cases.

11.10   Section and Article References.  Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

**[ONE SIGNATURE PAGE TO FOLLOW]**

19

Dated:  New York, New York
        February 19, 2019

**1141 REALTY OWNER, LLC**
  **By: 1141 Realty LLC**, Manager and Sole Member

By:  _/s/ Jagdish Vaswani_____
Name:  Jagdish Vaswani
Title:  Manager

Dated:  New York, New York
        February 19, 2019

**FLATIRONHOTEL OPERATIONS LLC**

By:  _/s/ Jagdish Vaswani_ _____
Name:  Jagdish Vaswani
Title:  Managing Member

**Approved as to Form Only:**

Dated:  New York, New York
        February 20, 2019

By:  __/s/ James Katchadurian_____
Name:  James Katchadurian
Title: Chief Restructuring Officer for the Debtors

20

**<u>Exhibit B</u>**

**1141 Realty Owner, LLC et al (Case #18-12341)**
**Liquidation Analysis**

| Assets | Chapter 11 | Chapter 7 | Variance | NOTES |
|---|---|---|---|---|
| Real Property located at 1141 Broadway, NY NY | 45,500,000 | 45,500,000 | $ - | Going Concern \ As is Appraisal by CBRE dated April 2018; Assumes that a Chapter 7 Trustee would achieve same asset sale results which in all likelyhood would not be the case |
| **Total Assets** $ | **45,500,000** | $ **45,500,000** | $ **-** | |
| | | | | |
| **Professional Liabilities** | | | | |
| Chapter 7 Professional Fees & Expenses | - | (2,275,000) | $ (2,275,000) | Estimated Chapter 7 Trustee fees, and Chapter 7 legal and accounting fees at 5%. |
| | | | | |
| **Net Assets Available for Distribution** $ | **45,500,000** | $ **43,225,000** | $ **(2,275,000)** | |
| | | | | |
| **Total Liabilities (as Scheduled)** | | | | |
| Total Liabilites | 28,475,701 | 28,475,701 | $ - | Total Liabilities from Schedules of Assets and Liabilities |
| | | | | |
| **Total Liabilities (as Scheduled)** $ | **28,475,701** | $ **28,475,701** | $ **-** | |
| | | | | |
| | | | | |
| **Net Surplus (defecit)** | **$ 17,024,298.85** | **$ 14,749,298.85** | $ **(2,275,000)** | |