# Exhibit C

## Mortgage

319084

**1141 REALTY OWNER LLC**, as mortgagor
(Borrower)

to

**RIALTO MORTGAGE FINANCE, LLC**, as mortgagee
(Lender)

## CONSOLIDATED, AMENDED AND RESTATED MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING AND SECURITY AGREEMENT

| | |
|---|---|
| Dated: | As of April _16_, 2015 |
| Location: | Flatiron Hotel<br>9 West 26th Street a/k/a 1141 Broadway<br>New York, New York 10010 |
| Section: | 3 |
| Block: | 828 |
| Lot: | 25 |
| County: | New York |

PREPARED BY AND UPON
RECORDATION RETURN TO:

Cassin & Cassin LLP
711 Third Avenue, 20th Floor
New York, New York 10017
Attention: Recording Department

THIS MORTGAGE DOES NOT ENCUMBER REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGREGATE NOT MORE THAN SIX (6) RESIDENTIAL DWELLING UNITS HAVING THEIR OWN SEPARATE COOKING FACILITIES.

{00979449;4}

**THIS CONSOLIDATED, AMENDED AND RESTATED MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING AND SECURITY AGREEMENT** (this "**Security Instrument**") is made as of the *14*th day of April, 2015, by **1141 REALTY OWNER LLC**, a Delaware limited liability company, having an address at c/o Moses & Singer LLP, 405 Lexington Avenue, New York, New York 10174, as mortgagor ("**Borrower**"), for the benefit of **RIALTO MORTGAGE FINANCE, LLC**, a Delaware limited liability company, having an address at 600 Madison Avenue, 12th Floor, New York, New York 10022, as mortgagee ("**Lender**").

RECITALS:

This Security Instrument is given to secure a loan (the "**Loan**") in the principal sum of **TWENTY FIVE MILLION AND 00/100 DOLLARS ($25,000,000.00)** made pursuant to that certain Loan Agreement, dated as of the date hereof, by and between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by (i) that certain Consolidated, Amended and Restated Promissory Note A, dated the date hereof, made by Borrower in favor of Lender in the original principal amount of **TWENTY TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($22,500,000.00)** (such Consolidated, Amended and Restated Promissory Note A, together with all extensions, renewals, replacements, restatements, amendments, supplements, severances or modifications thereof being hereinafter referred to as "**Note A**"), and (ii) that certain Promissory Note B, dated the date hereof, made by Borrower in favor of Lender in the original principal amount of **TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($2,500,000.00)** (such Promissory Note B, together with all extensions, renewals, replacements, restatements, amendments, supplements, severances or modifications thereof being hereinafter referred to as "**Note B**"; collectively with Note A, the "**Note**").

Lender is the holder of the mortgages listed on **Schedule A** annexed hereto and made a part hereof (the "**Existing Mortgages**") and the notes (the "**Existing Notes**") secured thereby.

The Existing Notes were combined, consolidated and restated by Note A, given by Borrower to Lender simultaneously herewith in partial evidence of the Loan, with interest from the date hereof at the rates set forth in Note A, such interest and the principal amount thereof to be payable in accordance with the terms and conditions provided in Note A.

Borrower desires to secure the payment of the Debt (as defined in the Loan Agreement) and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents (as herein defined). All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Loan Agreement.

Borrower and Lender desire to consolidate, amend and restate the terms and conditions of the Existing Mortgages in their entirety in the manner hereinafter set forth.

In consideration of the making of the Loan and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Borrower hereby agrees, covenants, represents and warrants with and to Lender as follows:

The Existing Mortgages are hereby consolidated, modified and restated in their entirety, and the liens of the Existing Mortgages, as so consolidated are hereby modified so that all of the terms and conditions contained in this Security Instrument shall supersede and control the terms and conditions of the Existing Mortgages (it being agreed that the execution of this Security Instrument shall not impair the lien created by the Existing Mortgages) and that together they shall hereafter constitute but one mortgage and one lien represented by this Security Instrument securing the amount of the Loan plus interest, and

creating a single lien on the Property (as hereinafter defined).  Borrower hereby assumes all of the
obligations and agreements of the Existing Mortgages and the notes or bonds secured thereby.

## ARTICLE 1 - GRANTS OF SECURITY

Section 1.1    PROPERTY MORTGAGED.  Borrower does hereby irrevocably mortgage, grant,
bargain, sell, pledge, assign, warrant, transfer and convey to and grant a security interest to Lender
and its successors and assigns in, the following property, rights, interests and estates now owned, or
hereafter acquired by Borrower (collectively, the "**Property**"):

(a)    Land.  The real property described in Exhibit A attached hereto and made a part
hereof (the "**Land**");

(b)    Additional Land.  All additional lands, estates and development rights hereafter
acquired by Borrower for use in connection with the Land and the development of the Land and all
additional lands and estates therein which may, from time to time, by supplemental mortgage or
otherwise be expressly made subject to the lien of this Security Instrument;

(c)    Improvements.    The buildings, structures, fixtures, additions, enlargements,
extensions, modifications, repairs, replacements and improvements now or hereafter erected or
located on the Land (the "**Improvements**");

(d)    Easements.  All easements, rights-of-way or use, rights, strips and gores of land,
streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights
and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes,
tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter
belonging, relating to the Land and the Improvements and the reversion and reversions,
remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or
proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles,
interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and
demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the
Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)    Fixtures and Personal Property.  All machinery, equipment, fixtures (including, but
not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator
fixtures, inventory and goods), inventory and articles of personal property and accessions thereof and
renewals, replacements thereof and substitutions therefor (including, but not limited to, beds,
bureaus, chiffonniers, chests, chairs, desks, lamps, mirrors, bookcases, tables, rugs, carpeting, drapes,
draperies, curtains, shades, venetian blinds, screens, paintings, hangings, pictures, divans, couches,
luggage carts, luggage racks, stools, sofas, chinaware, linens, pillows, blankets, glassware,
silverware, foodcarts, cookware, dry cleaning facilities, dining room wagons, keys or other entry
systems, bars, bar fixtures, liquor and other drink dispensers, icemakers, radios, television sets,
intercom and paging equipment, electric and electronic equipment, dictating equipment, private
telephone systems, medical equipment, potted plants, heating, lighting and plumbing fixtures, fire
prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators,
fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines,
dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning
systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs,
bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment,
dishwashers, garbage disposals, washers and dryers), other customary hotel equipment and other
tangible and all other property of every kind and nature whatsoever owned by Borrower, or in which
Borrower has or shall have an interest, now or hereafter located upon the Land and the
Improvements, or appurtenant thereto, and usable in connection with the present or future operation
and occupancy of the Land and the Improvements and all building equipment, materials and supplies
of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest,
now or hereafter located upon the Land and the Improvements, or appurtenant thereto, or usable in
connection with the present or future operation and occupancy of the Land and the Improvements

{00979449;4}

2

(collectively, the "**Personal Property**"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Property is located (the "**Uniform Commercial Code**"), superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

(f)     Leases and Rents. All leases, subleases, rental agreements, registration cards and agreements, if any, and other agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Land and/or the Improvements heretofore or hereafter entered into and all extensions, amendments and modifications thereto, whether before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (the "**Leases**") and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, any guaranties of the lessees' obligations thereunder, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, payments in connection with any termination, cancellation or surrender of any Lease, revenues, issues registration fees, if any and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and/or the Improvements, all income, rents, room rates, issues, profits, revenues, deposits, accounts and other benefits from the operation of the hotel on the Land and/or the Improvements, including, without limitation, all revenues and credit card receipts collected from guest rooms, restaurants, bars, mini-bars, meeting rooms, banquet rooms and recreational facilities and otherwise, all receivables (including Accounts Receivable), customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of sale, lease, sublease, license, concession or other grant of the right of the possession, use or occupancy of all or any portion of the Land and/or Improvements, or personalty located thereon, or rendering of services by Borrower or any operator or manager of the hotel or the commercial space located in the Improvements or acquired from others including, without limitation, from the rental of any office space, retail space, commercial space, guest room or other space, halls, stores or offices, including any deposits securing reservations of such space, exhibit or sales space of every kind, license, lease, sublease and concession fees and rentals, health club membership fees, food and beverage wholesale and retail sales, service charges, vending machine sales and proceeds, if any, from business interruption or other loss of income insurance relating to the use, enjoyment or occupancy of the Land and/or the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code and all proceeds from the sale or other disposition of the Leases (the "**Rents**") and the right to receive and apply the Rents to the payment of the Debt;

(g)     Condemnation Awards. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(h)     Insurance Proceeds. All proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(i)     Tax Certiorari. All refunds, rebates or credits in connection with a reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

(j)     Conversion. All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and condemnation awards, into cash or liquidation claims;

(k)     Rights. The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(l)     Agreements. All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any Event of Default hereunder, to receive and collect any sums payable to Borrower thereunder;

(m)     Intangibles. All right, title and interest of Borrower in all trade names, trademarks, servicemarks, logos, copyrights, goodwill, books and records, tenant or guest lists, advertising materials, telephone exchange numbers identified in such materials and all other general intangibles relating to or used in connection with the operation of the Property;

(n)     Accounts. All accounts, account collateral, reserves, escrows and deposit accounts maintained by Borrower with respect to the Property including, without limitation, the Clearing Account, the Reserve Account, the Cash Management Account and all complete securities, investments, property and financial assets held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof;

(o)     Causes of Action. All causes of action and claims (including, without limitation, all causes of action or claims arising in tort, by contract, by fraud or by concealment of material fact) of Borrower against any Person for damages or injury to the Property or in connection with any transactions financed in whole or in part by the proceeds of the Loan ("**Cause of Action**");

(p)     Accounts Receivables. All right, title and interest of Borrower arising from the operation of the Land and the Improvements in and to all payments for goods or property sold or leased or for services rendered, whether or not yet earned by performance, and not evidenced by an instrument or chattel paper, (hereinafter referred to as "**Accounts Receivable**") including, without limiting the generality of the foregoing, (i) all accounts, contract rights, book debts, and notes arising from the operation of a hotel on the Land and the Improvements or arising from the sale, lease or exchange of goods or other property and/or the performance of services, (ii) Borrower's rights to payment from any consumer credit/charge card organization or entities which sponsor and administer such cards as the American Express Card, the Visa Card and the Mastercard, (iii) Borrower's rights in, to and under all purchase orders for goods, services or other property, (iv) Borrower's rights to any goods, services or other property represented by any of the foregoing, (v) monies due to or to become due to Borrower under all contracts for the sale, lease or exchange of goods or other property and/or the performance of services including the right to payment of any interest or finance charges in respect thereto (whether or not yet earned by performance on the part of Borrower) and (vi) all collateral security and guaranties of any kind given by any person or entity with respect to any of the foregoing. Accounts Receivable shall include those now existing or hereafter created, substitutions therefor, proceeds (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof and any and all of the foregoing and proceeds therefrom; and

(q)     Other Rights. Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (p) above.

Section 1.2     ASSIGNMENT OF LEASES AND RENTS.     Borrower hereby absolutely and unconditionally assigns to Lender Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of this Section 1.2 and the Cash Management Agreement, Lender grants to Borrower a revocable

license to collect and receive the Rents. Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

Section 1.3    SECURITY AGREEMENT. This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property. By executing and delivering this Security Instrument, Borrower hereby grants to Lender, as security for the Obligations, (as herein defined) a security interest in the Property to the full extent that the Property may be subject to the Uniform Commercial Code.

Section 1.4    FIXTURE FILING. Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, described or referred to in this Security Instrument, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

Section 1.5    PLEDGE OF MONIES HELD. Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender, including, without limitation, any Reserve Funds, the Clearing Account, the Cash Management Account, the Net Proceeds and the Net Proceeds Deficiency as additional security for the Obligations until expended or applied as provided in the Loan Agreement or this Security Instrument.

### CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Lender and its successors and assigns, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly pay to Lender the Debt at the time and in the manner provided in the Note and this Security Instrument, shall well and truly perform the Other Obligations (as herein defined) as set forth in this Security Instrument and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the Note and in the Loan Agreement, these presents and the estate hereby granted shall cease, terminate and be void.

### ARTICLE 2 - DEBT AND OBLIGATIONS SECURED

Section 2.1    DEBT. This Security Instrument and the grants, assignments and transfers made in Article 1 are given for the purpose of securing the Debt.

Section 2.2    OTHER OBLIGATIONS. This Security Instrument and the grants, assignments and transfers made in Article 1 are also given for the purpose of securing the following (the "**Other Obligations**"):

(a)    the performance of all other obligations of Borrower contained herein;

(b)    the performance of each obligation of Borrower contained in any other agreement given by Borrower to Lender which is for the purpose of further securing the obligations secured hereby, and any renewals, extensions, substitutions, replacements, amendments, modifications and changes thereto; and

(c)    the performance of each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement, this Security Instrument or the other Loan Documents.

Section 2.3    DEBT AND OTHER OBLIGATIONS. Borrower's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively below as the "**Obligations**."

5

## ARTICLE 3 - BORROWER COVENANTS

Borrower covenants and agrees that:

Section 3.1     PAYMENT OF DEBT.  Borrower will pay the Debt at the time and in the manner provided in the Note, the Loan Agreement and in this Security Instrument.

Section 3.2     INCORPORATION BY REFERENCE.     All the covenants, conditions and agreements contained in the Loan Agreement, the Note and all and any of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

Section 3.3     PAYMENT FOR LABOR AND MATERIALS.  Borrower will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials ("**Labor and Material Costs**") incurred in connection with the Property and never permit to exist beyond the due date thereof in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional lien or security interest other than the liens or security interests hereof except for the Permitted Encumbrances. After prior written notice to Lender, Borrower, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Security Instrument or any of the other Loan Documents, (ii) Borrower is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Borrower and from the Property or Borrower shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Borrower is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, and (vi) Borrower shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Lender to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

Section 3.4     PERFORMANCE OF OTHER AGREEMENTS.  Borrower shall observe and perform each and every term to be observed or performed by Borrower pursuant to the terms of the Loan Agreement, any other Loan Documents and any agreement or recorded instrument affecting or pertaining to the Property, or given by Borrower to Lender for the purpose of further securing the Obligations and any amendments, modifications or changes thereto.

## ARTICLE 4 - OBLIGATIONS AND RELIANCES

Section 4.1     RELATIONSHIP OF BORROWER AND LENDER.     The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Loan Agreement, the Note, this Security Instrument and the other Loan Documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

Section 4.2     NO RELIANCE ON LENDER.     The general partners, officers, shareholders, members, principals and/or other beneficial owners of Borrower are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

Section 4.3     NO LENDER OBLIGATIONS.  (a) Notwithstanding the provisions of Subsections 1.1(f) and (l) or Section 1.2, Lender is not undertaking the performance of (i) any obligations under

{00979449;4}

6

the Leases; or (ii) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.

(b)     By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Loan Agreement, the Note or the other Loan Documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

Section 4.4     RELIANCE.     Borrower recognizes and acknowledges that in accepting the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, (i) Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Article 3 of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; (ii) that such reliance existed on the part of Lender prior to the date hereof; (iii) that the warranties and representations are a material inducement to Lender in accepting the Note, the Loan Agreement, this Security Instrument and the other Loan Documents; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth in Article 3 of the Loan Agreement.

## ARTICLE 5 - FURTHER ASSURANCES

Section 5.1     RECORDING OF SECURITY INSTRUMENT, ETC.     Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other Loan Documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, the Loan Agreement, this Security Instrument, the other Loan Documents, and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, the other Loan Documents, or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

Section 5.2     FURTHER ACTS, ETC.     Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the Property and rights hereby deeded, mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Legal Requirements, and, in the event Borrower fails to do so within seven (7) Business Days after request by Lender, Borrower hereby authorizes Lender to execute any of the foregoing in the name of Borrower or without the signature of Borrower to the extent that Lender may lawfully do so. Borrower hereby authorizes Lender to file in the appropriate filing or recording offices, with or without the signature of Borrower, one or more financing statements (including any amendment or continuation thereof), chattel mortgages or other instruments to establish, maintain, or evidence more effectively the validity, perfection or priority of the security interest of Lender in the Property. Borrower grants to Lender an irrevocable power of

attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including without limitation such rights and remedies available to Lender pursuant to this <u>Section 5.2</u>.

Section 5.3    CHANGES IN TAX, DEBT CREDIT AND DOCUMENTARY STAMP LAWS.

(a)    If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option, exercisable by written notice of not less than one-hundred (120) days to declare the Debt immediately due and payable, without prepayment penalty or premium.

(b)    Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Debt. If such claim, credit or deduction shall be required by law, Lender shall have the option, exercisable by written notice of not less than one-hundred (120) days, to declare the Debt immediately due and payable, without prepayment penalty or premium.

(c)    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, the Loan Agreement, this Security Instrument, or any of the other Loan Documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

Section 5.4    REPLACEMENT DOCUMENTS.    Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Documents, Borrower will issue, in lieu thereof, a replacement Note or other Loan Documents, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Documents in the same principal amount thereof and otherwise on the same terms and conditions.

Section 5.5    PERFORMANCE AT BORROWER'S EXPENSE.    Borrower acknowledges and confirms that Lender shall impose certain reasonable administrative processing and/or commitment fees in connection with (a) the extension, renewal, modification, amendment and termination of the Loan, (b) the release or substitution of collateral therefor, (c) obtaining certain consents, waivers and approvals with respect to the Property, or (d) the review of any Lease or proposed Lease or the preparation or review of any subordination, non-disturbance agreement (the occurrence of any of the above shall be called an "<u>**Event**</u>"). Borrower further acknowledges and confirms that it shall be responsible for the payment of all costs of reappraisal of the Property or any part thereof, whether required by law, regulation, Lender (provided the requirement of such reappraisal is done in good faith) or any governmental or quasi-governmental authority; provided, however, that, in no event shall Borrower be obligated to pay for more than one (1) reappraisal per year unless such reappraisal is needed as a result of an Event of Default by Borrower. Borrower hereby acknowledges and agrees to pay, immediately, with or without demand, all such reasonable fees (as the same may be increased or decreased from time to time), and any additional fees of a similar type or nature which may be reasonably imposed by Lender from time to time, upon the occurrence of any Event. Wherever it is provided for herein that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, all reasonable legal fees and disbursements of Lender, whether with respect to retained firms, the reimbursement for the reasonable expenses of in-house staff or otherwise.

Section 5.6    LEGAL FEES FOR ENFORCEMENT.   (a) Borrower shall pay all reasonable legal fees incurred by Lender in connection with the preparation of the Loan Agreement, the Note, this Security Instrument and the other Loan Documents and (b) Borrower shall pay to Lender on demand

any and all expenses, including reasonable legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Property or in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Property (including commencing any foreclosure action), whether or not any legal proceeding is commenced hereunder or thereunder, together with interest thereon at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower.

Section 5.7    SPLITTING OF MORTGAGE.  This Security Instrument and the Note shall, at any time until the same shall be fully paid and satisfied, at the sole election of Lender, be split or divided into two or more notes and Note or more security instruments, each of which shall cover all or a portion of the Property to be more particularly described therein.  To that end, Borrower, upon written request of Lender, shall execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered by the then owner of the Property, to Lender and/or its designee or designees substitute notes and security instruments in such principal amounts, aggregating not more than the then unpaid principal amount of the Note, and containing the same terms, provisions and clauses to those contained herein and in the Note, and such other documents and instruments as may be reasonably required by Lender.

## ARTICLE 6 - DUE ON SALE/ENCUMBRANCE

Section 6.1    LENDER RELIANCE.  Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for repayment of the Debt and the performance of the Other Obligations.  Borrower acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt or the performance of the Other Obligations beyond any applicable notice and cure period, Lender can recover the Debt by a sale of the Property.

Section 6.2    NO SALE/ENCUMBRANCE.  Neither Borrower nor any Restricted Party shall Transfer the Property or any part thereof or any interest therein or permit or suffer the Property or any part thereof or any interest therein to be Transferred other than as expressly permitted pursuant to the terms of the Loan Agreement.

## ARTICLE 7 - PREPAYMENT

Section 7.1    PREPAYMENT.  The Debt may not be prepaid in whole or in part except in accordance with the express terms and conditions of the Loan Agreement.

## ARTICLE 8 - RIGHTS AND REMEDIES

Section 8.1    REMEDIES.  Upon the occurrence of any Event of Default, Borrower agrees that Lender may, take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(a)    declare the entire unpaid Debt to be immediately due and payable;

(b)    institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the

{00979449;1}

portion of the Debt then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the Debt not then due, unimpaired and without loss of priority;

(d)     sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, in one or more parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)     institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, the Loan Agreement, or in the other Loan Documents;

(f)     recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

(g)     apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(h)     the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct business thereon; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower; (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vii) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, Insurance Premiums and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)     exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of any Property (including, without limitation, the Personal Property) or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Property (including without limitation, the Personal Property), and (ii) request Borrower at its expense to assemble the Property, including without limitation, the Personal Property, and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Property, including without limitation, the Personal Property, sent to Borrower in accordance with the provisions hereof at least five (5) Business Days prior to such action, shall constitute commercially reasonable notice to Borrower;

(j)    apply any sums then deposited in the Accounts and any other sums held in escrow or otherwise by Lender in accordance with the terms of this Security Instrument, the Loan Agreement, or any other Loan Documents to the payment of the following items in any order in its sole discretion:

> (i)    Taxes and Other Charges;
>
> (ii)    Insurance Premiums;
>
> (iii)    interest on the unpaid principal balance of the Note;
>
> (iv)    amortization of the unpaid principal balance of the Note; or
>
> (v)    all other sums payable pursuant to the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, including without limitation advances made by Lender pursuant to the terms of this Security Instrument;

(k)    surrender the Policies, collect the unearned Insurance Premiums and apply such sums as a credit on the Debt in such priority and proportion as Lender in its discretion shall deem proper, and in connection therewith, Borrower hereby appoints Lender as agent and attorney-in-fact (which is coupled with an interest and is therefore irrevocable) for Borrower to collect such Insurance Premiums;

(l)    apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its discretion;

(m)    foreclose by power of sale or otherwise and apply the proceeds of any recovery to the Debt in accordance with Section 8.2 or to any deficiency under this Security Instrument;

(n)    exercise all rights and remedies under any Causes of Action, whether before or after any sale of the Property by foreclosure, power of sale, or otherwise and apply the proceeds of any recovery to the Debt in accordance with Section 8.2 or to any deficiency under this Security Instrument; or

(o)    pursue such other remedies as Lender may have under applicable law.

In the event of a sale, by foreclosure, power of sale, or otherwise, of less than all of the Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

Section 8.2    APPLICATION OF PROCEEDS.  Upon the occurrence of any Event of Default, the purchase money, proceeds and avails of any disposition of the Property, or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument, the Loan Agreement, or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

Section 8.3    RIGHT TO CURE DEFAULTS.  Upon the occurrence of any Event of Default Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, make or do the same in such manner and to such extent as Lender may deem necessary to protect the security hereof.  Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Debt.  The cost and expense of any cure hereunder (including reasonable attorneys' fees to the extent permitted by law), with interest as provided below, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand.  All such costs and expenses incurred by Lender in remedying such Event of Default shall bear interest at the Default Rate for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender and shall be deemed to constitute a portion of the Debt and be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

Section 8.4    ACTIONS AND PROCEEDINGS. Lender has the right to appear in and defend any action or proceeding brought with respect to the Property and, after the occurrence and during the continuance of an Event of Default, to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its discretion, decides should be brought to protect its interest in the Property.

Section 8.5    RECOVERY OF SUMS REQUIRED TO BE PAID. Upon the occurrence of any Event of Default, Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for an Event of Default existing at the time such earlier action was commenced.

Section 8.6    OTHER RIGHTS, ETC.    (a) The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any Guarantor to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, the Loan Agreement, this Security Instrument or the other Loan Documents.

(b)    It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to the Property or any other Property not in Lender's possession.

(c)    Upon the occurrence of any Event of Default, Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument. The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

Section 8.7    RIGHT TO RELEASE ANY PORTION OF THE PROPERTY. Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a lien and security interest in the remaining portion of the Property.

Section 8.8    VIOLATION OF LAWS. If the Property is not in compliance with Legal Requirements, Lender may impose additional requirements upon Borrower in connection herewith including, without limitation, monetary reserves or financial equivalents.

Section 8.9    RIGHT OF ENTRY. Subject to the terms of the Loan Agreement, Lender and its agents shall have the right to enter and inspect the Property at all reasonable times subject to the rights of tenants and other occupants of the Property.

{00979449;4}

Section 8.10   SUBROGATION. If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, and the performance and discharge of the Obligations.

Section 8.11   RECOURSE AND CHOICE OF REMEDIES. Notwithstanding any other provision of this Security Instrument or the Loan Agreement, including, without limitation, Section 8.6 of the Loan Agreement, Lender and other Indemnified Parties are entitled to enforce the obligations of Borrower contained in Section 9.13(c) and (d) of the Loan Agreement without first resorting to or exhausting any security or collateral and without first having recourse to the Note or any of the Property, through foreclosure or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Lender commences a foreclosure action against the Property, Lender is entitled to pursue a deficiency judgment with respect to such obligations against Borrower and any guarantor or indemnitor with respect to the Loan but only in accordance with the other Loan Documents. The provisions of Section 9.13(c) and (d) of the Loan Agreement are exceptions to any non-recourse or exculpation provisions in the Loan Agreement, the Note, this Security Instrument or the other Loan Documents, and Borrower is fully and personally liable for the obligations pursuant to Section 9.13(c) and (d) of the Loan Agreement. The liability of Borrower with respect to the Loan pursuant to Section 9.13(c) and (d) of the Loan Agreement is not limited to the original principal amount of the Note. Notwithstanding the foregoing, nothing herein shall inhibit or prevent Lender from foreclosing or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Borrower pursuant to Section 9.13(c) and (d) of the Loan Agreement, whether or not action is brought against any other Person or whether or not any other Person is joined in the action or actions.

## ARTICLE 9 - WAIVERS

Section 9.1   WAIVER OF COUNTERCLAIM. Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Note, the Loan Agreement, any of the other Loan Documents, or the Obligations.

Section 9.2   MARSHALLING AND OTHER MATTERS. Borrower hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each Person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by Legal Requirements.

Section 9.3   WAIVER OF NOTICE. Borrower shall not be entitled to any notices of any nature whatsoever from Lender except (a) with respect to matters for which this Security Instrument, the Loan Agreement or any other Loan Document, specifically and expressly provides for the giving of notice by Lender to Borrower, and (b) with respect to matters for which Lender is required by any applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender to Borrower.

Section 9.4   WAIVER OF STATUTE OF LIMITATIONS. Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Debt or performance of its Other Obligations.

## ARTICLE 10 - EXCULPATION

Section 10.1    EXCULPATION.  Notwithstanding anything to the contrary contained in this Security Instrument, the liability of Borrower to pay the Debt and for the performance of the other agreements, covenants and obligations contained herein and in the Note, the Loan Agreement and the other Loan Documents shall be limited as set forth in Section 8.6 of the Loan Agreement.

## ARTICLE 11 - APPLICABLE LAW

Section 11.1    GOVERNING LAW.    (1) THIS SECURITY INSTRUMENT WAS NEGOTIATED IN THE STATE OF NEW YORK, AND MADE BY BORROWER AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE NOTE SECURED HEREBY WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS SECURITY INSTRUMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE OTHER LOAN DOCUMENTS WITH RESPECT TO THE PROPERTY SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS AND ALL OF THE OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS, AND THIS SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

(2)    ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS SECURITY INSTRUMENT MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING.

## ARTICLE 12 - DEFINITIONS

Section 12.1    GENERAL DEFINITIONS.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word

{00979449;4}

14

"Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note," shall mean "the Note and any other evidence of indebtedness secured by this Security Instrument," the word "Property" shall include any portion of the Property and any interest therein, and the phrases "legal fees", "attorneys' fees" and "counsel fees" shall include any and all reasonable attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, reasonable fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder.

Section 12.2    HEADINGS, ETC.    The headings and captions of various Articles and Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

## ARTICLE 13 - MISCELLANEOUS PROVISIONS

Section 13.1    NO ORAL CHANGE.    This Security Instrument and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 13.2    LIABILITY.    If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

Section 13.3    INAPPLICABLE PROVISIONS.    If any term, covenant or condition of this Security Instrument or any other Loan Document, is held to be invalid, illegal or unenforceable in any respect, the Note and this Security Instrument or the other Loan Documents, as the case may be, shall be construed without such provision.

Section 13.4    DUPLICATE ORIGINALS; COUNTERPARTS.    This Security Instrument may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original.    This Security Instrument may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Security Instrument. The failure of any party hereto to execute this Security Instrument, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

Section 13.5    NUMBER AND GENDER.    Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Section 13.6    NOTICE.    All notices required or permitted under this Security Instrument shall be given and be effective in accordance with Section 9.6 of the Loan Agreement.

Section 13.7    EXISTING MORTGAGES AND NOTES.    Borrower represents and warrants to Lender, that there is no existing default under the provisions of the Existing Mortgages or the Existing Notes, or in the performance of any of the terms, covenants, conditions or warranties thereof on the part of Borrower to be performed or observed. Borrower hereby ratifies and confirms that the Loan is evidenced by the Note, which combines, amends and restates the Existing Notes, and Lender and Borrower hereby mutually covenant and agree that the lien of this Security Instrument which consolidates, amends and restates the Existing Mortgages, are hereby consolidated, made equal and coordinated in lien so that together this Security Instrument and Existing Mortgages shall constitute one mortgage on the Property in the principal sum of the Loan with interest thereon, and is to be paid in accordance with the terms hereof and the Note.

## ARTICLE 14 - INTENTIONALLY OMITTED

## ARTICLE 15 - STATE SPECIFIC PROVISIONS

Section 15.1    INCONSISTENCIES.  In the event of any inconsistencies between the terms and conditions of this Article 15 and the other provisions of this Security Instrument, the terms and conditions of this Article 15 shall control and be binding.

Section 15.2    CERTAIN MATTERS RELATING TO THE LAWS OF THE STATE OF NEW YORK. Notwithstanding any provision hereof or of any other Loan Document to the contrary, the following provisions shall apply:

(a)    SECTION 254 OF THE RPL.  In the event of any conflict, inconsistency or ambiguity between the provisions of the Loan Documents and the provisions of subsection 4 of Section 254 of the Real Property Law of New York, the provisions of the Loan Documents shall control.

(b)    SECTION 291-F OF THE RPL.  In addition to any other right or remedy contained herein or in any other Loan Document, Lender shall have all of the rights against lessees of the Property or any part thereof as are set forth in Section 291-f of the Real Property Law of New York.

(c)    TRUST FUND.  Pursuant to Section 13 of the Lien Law of New York, Borrower shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any improvement before using any part thereof for any other purpose.  Borrower shall comply strictly with Section 13-f of the Lien Law of New York.

(d)    COMMERCIAL PROPERTY.  Borrower represents and warrants that this Mortgage does not encumber real property principally improved or to be improved by one or more structures containing in the aggregate not more than six (6) residential dwelling units having their own separate cooking facilities.

(e)    TRANSFER TAX PROVISIONS.  (i) Borrower covenants and agrees that, in the event of a sale of the Property or other Transfer, it will duly complete, execute and deliver to Lender contemporaneously with the submission to the applicable taxing authority or recording officer, all forms and supporting documentation required by such taxing authority or recording officer to estimate and fix any and all applicable state and local real estate transfer taxes (collectively, "**Transfer Taxes**") by reason of such sale or other Transfer or recording of the deed evidencing such sale or other Transfer.

(ii)    Borrower shall pay all Transfer Taxes that may hereafter become due and payable with respect to any Transfer, and in default thereof Lender may pay the same and the amount of such payment shall be added to the Debt and, unless incurred in connection with a foreclosure of this Mortgage, be secured by this Mortgage.  The provisions of this Section shall survive any Transfer and the delivery of the deed in connection with any Transfer.

(f)    MAXIMUM PRINCIPAL AMOUNT.  NOTWITHSTANDING ANY PROVISION SET FORTH HEREIN TO THE CONTRARY, THE MAXIMUM AMOUNT OF PRINCIPAL INDEBTEDNESS SECURED BY THIS SECURITY INSTRUMENT AT EXECUTION, OR WHICH UNDER ANY CONTINGENCY MAY BECOME SECURED HEREBY AT ANY TIME HEREAFTER, IS U.S. **$25,000,000.00** PLUS ALL INTEREST PAYABLE UNDER THE NOTE AND ALL AMOUNTS EXPENDED BY LENDER AFTER DEFAULT BY BORROWER: (A) FOR THE PAYMENT OF TAXES, CHARGES OR ASSESSMENTS WHICH MAY BE IMPOSED BY LEGAL REQUIREMENTS UPON THE MORTGAGED PROPERTY; (B) TO MAINTAIN THE INSURANCE REQUIRED UNDER THIS SECURITY INSTRUMENT; (C) FOR ANY EXPENSES INCURRED IN MAINTAINING THE SECURITY INSTRUMENT PROPERTY AND UPHOLDING THE LIEN OF THIS SECURITY INSTRUMENT, INCLUDING, BUT NOT LIMITED TO, THE EXPENSE OF ANY LITIGATION TO PROSECUTE OR DEFEND THE RIGHTS AND LIEN CREATED BY THIS SECURITY INSTRUMENT, AND (D) FOR ANY AMOUNT, COST OR CHARGE TO WHICH MORTGAGEE BECOMES SUBROGATED, UPON

{00979449;4}

16

PAYMENT, WHETHER UNDER RECOGNIZED PRINCIPLES OF LAW OR EQUITY, OR UNDER EXPRESS STATUTORY AUTHORITY, TOGETHER WITH INTEREST ON ALL OF THE FOREGOING AMOUNTS AT THE DEFAULT RATE (AS DEFINED IN THE LOAN AGREEMENT).

(g)     COVENANTS IN ADDITION TO RPL.  All covenants hereof shall be construed as affording to Lender rights in addition to and not exclusive of the rights conferred under the provisions of Sections 254, 271, 272 and 291-f of the Real Property Law of the State of New York or any other applicable laws.

(h)     Non-Judicial Foreclosure.  If an Event of Default shall occur hereunder, Lender may elect to sell the Property or any part thereof by exercise of the power of foreclosure or of sale granted to Lender by Article 13 of the Real Property Actions and Proceedings Law of the State of New York (the "**RPAPL**").  In such case, Lender may commence a civil action to foreclose this Security Instrument pursuant to and in accordance with Article 13 of the RPAPL.

**IN WITNESS WHEREOF,** Mortgagor has executed this instrument the day and year first above written.

**MORTGAGOR:**

**1141 REALTY OWNER LLC**
A Delaware Limited Liability Company

By:     **1141 REALTY LLC**
        A New York limited liability company,
        It's managing member



By:
Name: Jagdish Vaswani
Title:    Manager

**ACKNOWLEDGEMENT**                    SEAL

STATE OF ~~CLAIFORNIA~~ CALIFORNIA                )

                                                  ) SS.:

COUNTY OF LOS ANGELES          )

KAREN MICHELLE ALBA
COMM. # 2035600
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Comm. Exp. Aug. 2, 2017

On the 9th day of April in the year 2015, before me, the undersigned personally appeared **JAGDISH VASWANI**, ~~personally known to me or~~ proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/~~she~~ executed the same in his/~~her~~ capacity, and that by his ~~her~~ signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

K. Michelle Alba
Notary Public

LENDER:

**RIALTO MORTGAGE FINANCE, LLC,** a
Delaware limited liability company

By: 

Name:       Jasmin Drinkwater
Title:        Authorized Signatory

### ACKNOWLEDGMENT

STATE OF FLORIDA         )
                         ) SS.:
COUNTY OF MIAMI-DADE   )

On the _____ 15 th _____ day of April in the year 2015 before me, the undersigned, personally
appeared **JASMIN DRINKWATER,** personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within instrument and
acknowledged to me that she executed the same in her capacity, and that by her signature on the
instrument, the individual, or the person upon behalf of which the individual acted, executed the
instrument, and that such individual made such appearance before the undersigned in the City of
Miami, County of Miami-Dade, State of Florida.

Notary Public

TANIA LUMBRERAS
MY COMMISSION # FF 053940
EXPIRES: September 15, 2017
Bonded Thru Notary Public Underwriters

**SEAL**

## EXHIBIT A

### (Description of Land)

ALL that certain lot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of West 26th Street where premises Nos. 1141 and 1143 are divided from premises No. 11-1/2 West 26th Street, adjoining on the West thereof, which point is about ninety-six feet, eleven and one-half inches westerly (deed) (96 feet 11 3/8 inches, actual) from the corner formed by the intersection of the northerly side of West 26th Street and the westerly side of Broadway;

RUNNING THENCE northerly along said division line at an angle of 90 degrees 34 minutes and 24 seconds (deed) (90 degrees 32 minutes 00 seconds, actual), twenty feet and four and one-half inches (deed) (19 feet 11 3/8 inches, actual) to the division line between premises Nos. 1143 and 1145 Broadway;

THENCE easterly along said division line, eighty-three feet six and one-half inches (deed) (83 feet 8-3/4 inches, actual) and part of the distance through a party wall to the westerly side of Broadway, at a point fifty feet two and one-half inches (deed) (50 feet 3 inches, actual) northerly from the corner formed by the intersection of the northerly side of West 26th Street with the westerly side of Broadway;

THENCE southerly along the westerly side of Broadway, fifty feet two and one-half inches (deed) (50 feet 3 inches, actual) to the northerly side of West 26th Street;

THENCE westerly along the northerly side of West 26th Street, ninety-six feet eleven and one-half inches (deed) (96 feet 11-3/8 inches, actual) to said division line between No. 11-1/2 West 26th Street and premises herein, at the point or place of BEGINNING.

## SCHEDULE A

### (Existing Mortgages)

**MORTGAGE "A"**

Mortgage made by 1141 Realty LLC to First Central Savings Bank in the amount of
$5,000,000.00 dated April 13, 2007 and recorded with the City Register of the City of New
York, New York (the "City Register") on May 4, 2007 in CRFN 2007000234349.
mtg tax paid $ 140,000.00

The above Mortgage A was amended pursuant to a First Amendment to Mortgage, Note and
Other Loan Documents by and between 1141 Realty LLC, Ming Chu Wu Li, Ibrahim Saleh
a/k/a Abraham Saleh and First Central Savings Bank dated August 27, 2009 and recorded
with the City Register on September 3, 2009 in CRFN 2009000285536.

The above Mortgage A, as amended was assigned pursuant to an Assignment of Mortgage
from First Central Savings Bank to Brick 1141 Capital LLC dated August 16, 2011 and
recorded with the City Register on August 31, 2011 in CRFN 2011000309655.

The above Mortgage A, as amended and assigned was further assigned pursuant to an
Assignment of Mortgage from Brick 1141 Capital LLC to Flatiron Notebuyer LLC dated
May 24, 2013 and recorded with the City Register on June 6, 2013 in CRFN 2013000224379.

The above Mortgage A, as amended and assigned was further assigned pursuant an
Assignment of Mortgage from Flatiron Notebuyer LLC to HRC Fund V REIT LLC dated
December 30, 2013 and recorded with the City Register on January 28, 2014 in CRFN
2014000034265.

**MORTGAGE "B"**

Second Mortgage made by 1141 Realty LLC to First Central Savings Bank in the amount of
$3,000,000.00 dated November 29, 2007 and recorded with the City Register on December
10, 2007 in CRFN 2007000605212. mtg tax paid $ 84,000.00

The above Mortgage B was modified pursuant to a Modification and Extension Agreement
by and between 1141 Realty LLC and First Central Savings Bank dated August 27, 2009 and
recorded with the City Register on September 3, 2009 in CRFN 2009000285537.

The above Mortgage B, as modified and extended was assigned pursuant to an Assignment of
Mortgage from First Central Savings Bank to Brick 1141 Capital LLC dated August 16, 2011
and recorded with the City Register on August 31, 2011 in CRFN 2011000309654.

The above Mortgage B, as modified, extended and assigned was further assigned pursuant to
an Assignment of Mortgage from Brick 1141 Capital LLC to Flatiron Notebuyer LLC dated
May 24, 2013 and recorded with the City Register on June 6, 2013 in CRFN 2013000224380.

The above Mortgage B, as modified, extended and assigned was further assigned pursuant an
Assignment of Mortgage from Flatiron Notebuyer LLC to HRC Fund V REIT LLC dated
December 30, 2013 and recorded with the City Register on January 28, 2014 in CRFN
2014000034266.

**MORTGAGE "C"**

GAP Mortgage made by 1141 Realty LLC for the benefit of HRC Fund V REIT LLC in the amount of $11,001,021.72 dated December 30, 2013 and recorded with the City Register on January 28, 2014 in CRFN 2014000034267. Mtg tax paid $ 308,030.00

The above Mortgages A, B and C were consolidated, extended and modified pursuant to a Mortgage Consolidation, Extension and Modification by 1141 Realty LLC to HRC Fund V REIT LLC dated December 30, 2013 and recorded with the City Register on January 28, 2014 in CRFN to form a single lien of $19,000,000.00.

The above Mortgages A, B and C, as consolidated, extended and modified were assigned pursuant to an Assignment of Mortgage from HRC Fund V Reit LLC to Rialto Mortgage Finance, LLC dated as of April 16, 2015 and intended to be recorded with the City Register on which there remains an unpaid principal balance of $18,500,000.00.

**MORTGAGE "D"**

Gap Mortgage made by 1141 Realty Owner LLC to Rialto Mortgage Finance, LLC given to secure a sum of $6,500,000.00 dated as of April 16, 2015 and intended to be recorded with the City Register.