# EXHIBIT 29

| | |
|---|---|
| From: | Teague, Timothy <tim.teague@wellsfargo.com> |
| Sent: | Friday, August 4, 2017 9:50 PM |
| To: | Andrea.Helm@midlandls.com; Dylan Burstyn <Dylan.Burstyn@rialtocapital.com> |
| Cc: | Sinsangkeo, Leslie K. <leslie.kirkman@wellsfargo.com>; Schleicher, Keith R. <keith.schleicher@wellsfargo.com> |
| Subject: | Flatiron Hotel - Update |

RE: Loan 300571303 (A Note) and 300571304 (B Note)

Andrea and Dylan – I wanted to provide you a quick update on the latest regarding the Flatiron Hotel. We received a call from an attorney named Rod Biermann, counsel for Robert Chan. As you will recall, the Borrower is ultimately owned 90% by Jay Vaswani and 10% by Robert Chan. Jay is in control of the Borrower and Jay appears to manage the day to day operations at the property. Also, per the Rialto's ASR, at the time of UW, aprox 37% of the property's revenues came from Food and Beverage.

Mr. Biermann called on behalf of his client, Mr. Chan, to inform us of their opinion the Borrower is selling liquor illegally. Per Mr. Biermann, in NY, the entity serving the liquor must be the same entity which holds the liquor license. Mr. Biermann states the liquor Licenses are being held by entities controlled by his client and not the Borrower. As you will recall from above, the Borrower is controlled by Mr. Vaswani. Mr. Biermann and his client believe that the property will be unable to obtain either renewed or replacement liquor licenses when they come up for renewal. Mr. Biermann further claims Mr. Chan believes the loss of the liquor licenses materially impair the property's cash flows. Mr. Biermann also states his client believes the property is not being properly managed as evidenced by the poor cash flows and a negative review on TripAdvisor where a reviewer claims to have founds a partially used heroine needle in their room. The review includes an alleged photograph of the used needle. Mr. Biermann claims Jay has turned control of the property's operations to his daughter, whom Mr. Chan believes is not qualified to run the property. Mr. Chan wants to be given control of the asset. Wells mostly just listened to Mr. Biermann's comments and expressed the Lender's desire to not get involved in a partnership fight.

After the call, Leslie and I did a little research. Per the Loan Agreement there are 3 Liquor Licenses which I have listed below. The New York State Liquor Authority allows the public to search their current licensing records ( https://www.tran.sla.ny.gov/JSP/query/PublicQueryLicenseNumSearchPage.jsp) I pulled up each of the individual licenses and the name on the license is the same as referenced in the Loan Agreement. Each of the licenses are currently active. Below is a chart summarizing the license data and the current expiration date on the state's website. I am also attaching a word doc with screen shots from the NY State Liquor Authority website showing the license info.

| License # | Holder Per Loan Agreement | Current Expiration Date |
|---|---|---|
| 1257575 | 9 WEST 26 ST. REST. LLC | 1/31/2018 |
| 1266611 | 9 WEST 26 ST. REST. LLC | *1/31/2018 |
| 1266607 | TOSHI'S PENTHOUSE INC | 12/31/2018 |

* NY Liquor Authority says this license is for an additional bar under license # 125575. Expiration is on the main license # 1257575

Per page 6 of the attached Handbook put out by the NY State Liquor Authority, the Liquor License must maintain control of the liquor and profits from the sale of the liquor.

When the loan closed, the property was managed by You Gotta Have Faith LLC. Robert Chan is the Sole Member of You Gotta Have Faith LLC. Per Section 1.03 A 10 of the Management Agreement, You Gotta Have Faith is to provide food and beverage services for the property. Based on the interactions we are having with the Borrower and comments by both Mr. Chan and his attorney, it would appear You Gotta Have Faith is not managing the property. Back in Sept 2015, we found John Reynolds, the hotel GM referenced in the ASR, no longer worked at the property about the same time we had an initial issue with the Borrower circumventing the cash management accounts. The Borrower explained the issue with the cash management accounts on an issue with the credit card processor. As best we can tell, since we contacted the Borrower about the cash management issue, all the property's revenues have been running through the cash management accounts.

Per Section 4.1.8 of the Loan Agreement, the Borrower is prohibited from terminating the manager and management agreement without prior Lender consent. Wells does not have record the Borrower either sought nor obtained consent to remove You Gotta Have Faith as property manager. I have no idea what if any impact removal of You Gotta Have Faith has on the validity of the Liquor Licenses as Robert Chan, the principal behind the entities holding the Liquor Licenses has lost control of the property and its food and beverage business. Section 4.1.8 (b) does give the Lender "kick-out" rights with respect to the property manager if the DSCR <1.10x or if there is an EOD. In addition to have DSCR materially below 1.10x, we have previously called an EOD on the basis of the Borrower's failure to provide financials. Upon exercise the Lender's manager kick out rights, the Borrower is required to find a replacement Qualified Manager. In the Loan Agreement's definition of a Qualified Manager, in addition to some base requirements, the manager must be approved by the Lender. Wells as Master Servicer does not customarily exercise property manager kick out rights on non-specially serviced loans.

I am not really sure where to go from here, as I do not want the Lender to become entangled in a partnership dispute, but I am also concerned that if Mr. Biermann's allegations are true the property may lose two of its 3 liquor licenses in Jan 2018. Additionally, it seems the Borrower may have replaced the management without Lender consent. The replacement manager is likely Jay Vaswani. Per the ASR, Jay Vaswani has extensive business experience, but the ASR states the Flatiron Hotel is Mr. Vaswani's first real estate deal and the ASR does not make reference to Mr. Vaswani having prior hotel or restaurant/bar experience. If Mr. Vaswani is managing the property, that would mean a property securing $24.3MM of mortgage debt is being operated by someone without any prior RE experience other than the past two years which has seen the property's revenues decline from $8.1MM in 2014 (most recent property data available is the ASR) to $5.7MM as of YE 2016. Given that the loan is current, in cash management, and we already have declared a formal EOD on the basis of the missing financials, I am not sure what Wells can do as Master Servicer other than monitor the situation and keep you in the loop. Please let us know if you have any questions regarding the comments above.

Tim Teague
Asset Manager
Wells Fargo Commercial Mortgage Servicing | Three Wells Fargo | 401 S. Tryon 8th Floor
Charlotte, NC 28202 |MAC D1086- 120 | Tel (704) 715-0013| fax (844) 879-3891
E-mail tim.teague@wellsfargo.com
If you are interested in registering for online access to CMSView, please click on the registration link below, CMSView offers a range of servicing information and tools which allow the user to make payments, print off billing statement(s), view escrow balances, transaction information, etc.
https://www.wellsfargo.com/com/financing/real-estate/commercial-mortgage-servicing/access

CONFIDENTIAL

P0002186